UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation sole, a/k/a the "MORMON CHURCH"; LDS SOCIAL SERVICES a/k/a LDS FAMILY SERVICES, a Utah corporation,<br><br>Defendants | NO. C04-2338RSM<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS<br><br>HEARING DATE: January 7, 2005 |

I.     RELIEF REQUESTED

Plaintiffs' Kenneth Fleming and John Doe respectfully request that this Court deny the motion of Defendants' Corporation of the President of the Church of Jesus Christ of Latter-day Saints ("COP") and LDS Social Services a/k/a LDS Family Services ("LDSSS") to dismiss the plaintiffs' claim for punitive damages.

II.     STATEMENT OF FACTS

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 1 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

A. **The Plaintiffs' Claims for Sexual Abuse.**

Despite repeated complaints by parents to Mormon church leaders of the Kent 2nd Ward, Jack Loholt, a Mormon priest, church elder, and scout leader, was allowed to rape and sodomize children for decades. *Complaint ¶¶ 3.1-3.19, attached as Exhibit A to Declaration of Timothy D. Kosnoff ("Kosnoff Decl.").* Rather than turning him in to the police, church officials sent him to defendant LDS Social Services ("LDSSS"), its social service agency, for religious based counseling. LDSSS also failed to report Loholt to civil authorities and allowed him to continue to sexually abuse children, including the plaintiffs.[1] Based on these facts, among others, Plaintiffs' have alleged negligence, breach of fiduciary duty, negligent infliction of emotional distress, fraudulent concealment, estoppel and civil conspiracy against the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ("COP") and LDS Social Services ("LDSSS"). *Complaint §§ IV – VII.*

B. **The Organizational Structure of the Mormon Church and its Interconnection with the State of Utah**

The Mormon Church, which is a strictly hierarchical and centralized religious and social organization, maintains it administrative and spiritual foundation in Utah. *Complaint ¶¶ 1.3-1.4.* Although the connection between Utah and the Mormon Church is well known,

---

[1] Anecdotal evidence suggests the problem of child sexual abuse concealment within the Mormon Church is common. Gerdes, Beck, Cowan-Hancock and Winkinson-Sparks, *Adult Survivors of Child Sexual Abuse: The Case of Mormon Women*, 1 JOURNAL OF SOCIAL WORK 1 (Spring 1996), at 434-458 (Study of 71 Mormon women survivors of abuse in their dealings with church leaders. Revealing high percentage were counseled to forget their abuse or were disbelieved; and of eighty perpetrators, only three were disciplined by church in any way. Survivors of abuse were punished more harshly than was the sexual abuse of children by male priesthood holders); Bob Van Voris, *Mormons Hit by Child-Sex Lawsuits*, NATIONAL LAW JOURNAL, Nov. 16, 1998; Paul McKay, *Mormons Caught Up in Wave of Pedophile Accusations/Church Deals with Abuse Cases without Reporting them, Critics Say*, HOUSTON CHRONICLE, May 9, 1999; Lisa Davis, *Sins of the Temple: The Church of Jesus Christ of Latter Day Saints Emphasized Personal Propriety and the Value of Children. The Same Church Has Protected Serial Child Molesters Across the Country*, PHOENIX TIMES, Dec. 10, 1994; Marion Smith, *Keeping Mum on Mormon Sexual Abuse*, 15 THE EVENT 23, Mar. 28, 1996. *Kosnoff Decl., Exs. B-F*

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 2 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

the following facts establish the most important aspects of the Mormon Church's foundation in Utah.

### 1. COP and LDSSS are Utah corporations sole

Defendants COP and LDSSS are Utah corporations sole, headquartered in Utah. The corporate sole of COP and the President, Prophet and Seer of the Mormon Church are the same man - Gordon B. Hinckley. Mr. Hinckley, a resident of the state of Utah, wields absolute authority over every official and every member within the church. *Deposition of Lloyd Hale in Scott v. Mormon Church, pp 145-146; 9812-08640 (Multnomah County, OR). Kosnoff Decl., Ex. G.*

### 2. All Administration of the Mormon Church is Headquartered in Utah

In addition to their corporate foundation in Utah, the Mormon Church's administrative governing bodies, the Office of the President, the Quorum of the Twelve Apostles and The First Quorum of the Seventy (General Authorities) are all headquartered in Utah.[2] Significantly, from Utah, the First Presidency and Quorum of the Twelve Apostles, through its *General Handbook of Instructions* and *Ensign*, *New Era* and *Friend* magazines, defines and establishes uniform procedures, methods and topics of ministry for its lay clergy throughout the world.[3]

The Mormon Church's Risk Management Division is also headquartered in Utah. There, risk management policies related to the prevention of child sexual abuse within the worldwide church are developed and implemented. *Deposition Dwayne Liddell in Scott v.*

---

[2] Daniel H. Ludlow, *Priesthood and Church Organization, Selections from the Encyclopedia of Mormonism* (1992) at 240, *Kosnoff Decl., Ex. H.*

[3] *Id.*

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 3 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

*Mormon Church, pp. 18-20, 36-43, Kosnoff Decl., Ex. I.* Specifically, from its headquarters in Utah, defendant formulates guidelines for the handling of victims of child sexual abuse and sex offenders.[4] These policies, guidelines, pamphlets and training materials were authored, created or published by the Mormon Church for distribution to its lower clergy throughout the world-wide church, including Washington. Significantly, one such policy directs local church officials who have received reports of child sex abuse to contact church officials in Utah through a special toll free "hotline" that rings directly in to church headquarters in Utah.[5]

In addition to the fact that the Mormon Church's policy making related to child sex abuse is conducted in Utah, the status of church members who have committed child sex abuse is generally handled by the Office of the President in Utah. For example, appeals of disciplinary decisions regarding members are made directly to the office of the church president in Utah.[6] Furthermore, those excommunicated for serious transgressions, such as child sexual abuse, may not be re-baptized back in to the church without the approval of the office of the President in Utah.[7]

3.  **The Mormon Church's Vast Repository of Records is Maintained in Utah.**

It is well-known that the Mormon Church is an extraordinary record keeper; many non-members use Mormon Church records to conduct genealogical research into their own families. In fact, the Mormon Church maintains a massive centralized database of biographical and disciplinary information on its members in Utah. *See Affidavit of Dwayne*

---

[4] The Church of Jesus Christ of Latter-Day Saints, *Child Abuse, Helps for Ecclesiastical Leaders* (1985), *Kosnoff Decl., Ex. J*; The Church of Jesus Christ of Latter-Day Saints, *General Handbook of Instructions* (1976), pp 10-3-10-4, *Kosnoff Decl., Ex. K.*
[5] *HelpLine Intake Form, Kosnoff Decl., Ex. L.*
[6] *General Handbook of Instructions, p. 10-8.*
[7] *General Handbook of Instructions, p. 10-11.*

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 4 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

*Liddell, p. 2, Kosnoff Decl., Ex. M.* One database of particular relevance to this matter - the Confidential Records - is maintained at the defendant's Office of the President at church headquarters in Utah. *Id.* It is believed to be the main repository of detailed reports of child sexual abuse allegations throughout the worldwide church. *Id.*

4. **Utah is the Financial Center of the Mormon Church**

Church membership in good standing is conditioned upon tithing 10% of one's gross annual income to the church.[8] At all relevant times, plaintiffs or their parents regularly tithed. *Complaint ¶ 1.7*

Every week tithing receipts are collected at the ward level and transferred from local financial institutions to the defendant's bank in Utah.[9] Remarkably, the Mormon Church collects an estimated five to seven billion dollars a year from member tithing, which it uses to operate its world-wide operations and extensive financial realm.[10]

## II. Issue Presented

Whether plaintiffs have stated cognizable claims for punitive damages under Utah law where Utah has the "most significant relationship" with the controversy in this case.

## III. Evidence Relied Upon:

Plaintiffs' Response to Defendants' Motion to Dismiss is based upon the Declaration of Patricia T. O. Kosnoff and attached Exhibits, and the records and files herein.

## IV. Legal Authority and Analysis

---

[8] *General Handbook of Instructions, p. 9-1.*
[9] *General Handbook of Instructions, p. 9-3.*
[10] John Heinerman and Anson Shupe, *The Mormon Corporate Empire* (1985), pp. 109-127, *Kosnoff Decl., Ex. N*; Richard Ostling, *Mormon America: The Power and the Promise* (1999), Appendix B: How the Wealth and Income Estimates Were Made, pp. 395-400, *Kosnoff Decl., Ex. O.*

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 5 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

A.  **The Court Should Not Dismiss the Plaintiffs' Punitive Damages Claim Under the General Standards of CR 12(b)(6).**

Motions for dismissal under CR 12(b) (6) are disfavored and rarely granted. *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (1986). A claim will only be dismissed if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957). The trial court has a duty to examine the complaint to determine if the allegations provide for relief under *any possible theory. United States v. Howell,* 318 F.2d 162 (9th Cir. 1963). A claim will not be dismissed even though the asserted legal theories are not cognizable or the relief sought is unavailable, so long as other tenable legal claims are evident on the face of the complaint, or the pleader is entitled to any type of relief under another possible legal theory. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957).

A claim will not be dismissed merely because the trial court doubts the pleader's allegations or suspects that the pleader will not ultimately prevail at trial. *Scheuer v. Rhodes,* 416 U. S. 232, 236, 94 S. Ct. 1683 1686, 40 L. Ed 2d 90 (1974), *abrogated on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

A court should not dismiss novel or unusual claims before the opportunity to develop the facts through discovery. *Electrical Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.,* 764 F.2d 619, 623 (9th Cir. 1985)("[t]he court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 6 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.'")(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1357, at 601-603 (1969)).

Here, the Court should not dismiss the Plaintiffs' claims for punitive damages under the general principles of CR 12(b)(6), which allow plaintiffs' a liberal opportunity to plead and prove their claims.

B.  **Utah's Punitive Damages Law Should Apply to Plaintiff's Claim Under the "Most Significant Relationship" Analysis.**

Generally, Washington law does not provide for the recovery of punitive damages. *Spokane Truck and Dray Company v. Hoefer*, 2 Wash. 45, 25 P. 1072 (1891). However, Washington courts will allow the recovery of punitive damages by applying the punitive damages law of another state if it has the "most significant relationship" with the controversy. *Kammerer v. Western Gear*, 27 Wn. App. 512, 618 P.2d 1330 (1980). Here, the substantial evidence uncovered through pre-discovery has already established that Utah's law of punitive damages should apply to the plaintiffs' claims under the *Kammerer* "most significant relationship" analysis.

In *Kammerer,* plaintiffs, California residents, brought suit against Western Gear, a Washington Corporation, alleging fraud and breach of contract in connection with a patent licensing agreement. The court, in upholding the application of California's punitive damages law first noted that both states had significant contacts with the controversy: 1) Washington was the forum state; 2) Western Gear was a Washington Corporation that manufactured the machinery at issue in Washington; 3) the agreement was signed in Washington; 4) California was the sight of all negotiations and the place where allegedly fraudulent representations were

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 7 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

made; 5) the plaintiffs were residents of California; 6) the agreement recited that California law would govern disputes; and 7) payments and royalties were made in California. After weighing the above factors and considering the interests of the two states to the controversy, the Court concluded that California's punitive damages law should apply. *Kammerer*, at 422.

Here, like in *Kammerer*, the Court should apply the punitive damages law of the state of Utah because Utah has the "most significant relationship" with the controversy based on several factors. First, the Defendants are both Utah Corporation Soles, headquartered in Utah. In addition, all of the leaders of the Mormon Church reside in Utah and both Defendants operate their main administrative functions from Utah. Most significantly, both Defendants set religious and social policies related to child sexual abuse from their headquarters in Utah and the COP, located in Utah, makes membership determinations about members all over the world who have committed child sexual abuse. The Defendants also maintain a vast repository of records about members, including those that have committed child sex abuse, in Utah. Finally, the Defendants maintain their financial headquarters in Utah, collecting money from tithing by members all over the world and using that money to maintain their programs-programs that caused the sexual abuse of the plaintiffs.

The Plaintiffs' allegations and the facts established to date demonstrate that Utah has the most significant relationship to the controversy. Plaintiffs' allege that the defendants negligently failed to train and supervise the hierarchical clergy in the proper implementation of its policies and guidelines and that it either knew its published policies and guidelines were inadequate or knew the policies were not being followed by their hierarchical clergy. *Complaint* ¶¶ 4.7, 4.8. All of the policy making related to child sex abuse occurred in Utah.

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 8 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Furthermore, the training and supervision of clergy is conducted from Utah; thus the failure to properly train and supervise clergy occurred in Utah. In addition, because the Mormon Church maintains numerous records about it members in Utah and the Utah-based Mormon Church president has complete access to those records, Utah is the center of the dispute regarding whether the defendants knew the policies and guidelines were inadequate or knew the policies and guidelines were not being followed.

While the above facts clearly establish that Utah has the most significant relationship to the controversy, it is also important that Utah has a clear interest in the protection of children from sexual abuse. This interest is reflected in its mandatory child abuse reporting law, which is stronger than Washington's because it unequivocally provides that clergy are not exempt from reporting. U.C.A. 62A-4a-403. Utah's interest is further reflected in its progressive statute of limitations for civil actions based on child sexual abuse. U.C.A. 78-12-25.1.

Finally, while it is evident that Utah has the most significant relationship to the controversy, Utah's punitive damages should be applied in this matter, because the application of Utah's punitive damages law would be consistent with Washington law and policy. Washington also has a strong interest in protecting children from child sexual abuse. It declares that the protection of children from sexual abuse is its highest priority. [11] Applying

---

[11] "The Washington state legislature finds and declares:

The children of the state of Washington are the state's greatest resource and the greatest source of wealth to the state of Washington. Children of all ages must be protected from child abuse. Governmental authorities must give the prevention, treatment, and punishment of child abuse the highest priority, and all instances of child abuse must be reported to the proper authorities who should diligently and expeditiously take appropriate action, and child abusers must be held accountable to the people of the state for their actions." LEGISLATIVE FINDINGS -- 1985 C 259 § 1.

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 9 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

the punitive damages law of Utah to the defendants will help deter other entities from negligently allowing child sexual abuse to occur within their organization and ultimately cause harm to the children of Washington.

V. Conclusion

For all the reasons discussed above, plaintiffs' respectfully request that this Court deny the Defendants motion to dismiss the plaintiffs' claims for punitive damages.

Dated this 30th day of December, 2004.

GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

By _____
Michael T. Pfau, WSBA No. 24649
mpfau@gth-law.com
Attorneys for Plaintiffs'

By _____
Timothy D. Kosnoff, WSBA No. 16586
LAW OFFICE OF TIMOTHY D. KOSNOFF
Attorneys for Plaintiffs'

PLAINTIFFS' RESP. TO MOT. TO DIS. PUNITIVE DAM. - 10 of 10
(C04-2338RSM)
[132621 v37]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575