# EXHIBIT A

Dockets.Justia.com



2

3

4

5

6

7

8

9                        SUPERIOR COURT OF THE STATE OF WASHINGTON
                                      FOR KING COUNTY

10

11   KENNETH FLEMING and JOHN DOE,          04-2-33910-3KNT

12                        Plaintiffs,        COMPLAINT

13   v.

15   THE CORPORATION OF THE PRESIDENT
     OF THE CHURCH OF JESUS CHRIST OF
     LATTER-DAY SAINTS, a Utah corporation
16   sole, a/k/a the "MORMON CHUCH," LDS
     SOCIAL SERVICES a/k/a LDS FAMILY
17   SERVICES, a Utah corporation,

18                        Defendants

19

20        Comes now plaintiffs Kenneth Fleming and John Doe, by and through their attorneys

21   Michael T. Pfau, Gordon Thomas Honeywell Malanca Peterson & Daheim, LLP and Timothy

22   Kosnoff, Law Offices of Timothy Kosnoff, PC, and hereby states and alleges as follows.

23

24

25

26

COMPLAINT - 1 of 14                                                    NASH 4
()
[126468 v04.doc]            CONFORMED
                                           LAW OFFICES
                            GORDON, THOMAS, HONEYWELL, MALANCA,
                                      PETERSON & DAHEIM LLP
                                         ONE UNION SQUARE
                                    600 UNIVERSITY, SUITE 2100
                                   SEATTLE, WASHINGTON 98101-4185
                            (206) 676-7500 - FACSIMILE (206) 676-7575

I.

## GENERAL ALLEGATIONS AND PARTIES

1.1    Plaintiffs KENNETH FLEMING and JOHN DOE are adults and at all times relevant hereto were boys residing with their parents in Kent, Washington. Kenneth, his mother and his four siblings were recruited into the Mormon Church.

1.2    At all relevant times, plaintiffs were members of the Church of Jesus Christ of Latter-day Saints and attended the Kent 2nd Ward.

1.3    Defendant CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, also known as the "Mormon Church," operates its worldwide affairs as the Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors, a Utah Corporation Sole ("COP").

1.4    COP is a corporation governed by a single individual, the President of the Mormon Church. The President wields ultimate and absolute authority within the Mormon Church.    The President of the Mormon Church, Gordon B. Hinckley, is the "Divine Prophet, Seer and Revelator" of the Church and has the authority to appoint and remove anyone in the Mormon Church, including all members of wards and stakes, at will. The President of the Mormon Church controls everything in the Mormon Church and all of its wards and stakes. As such, the President of the Church has authority to dictate changes in Church policy, discipline, ecclesiastical doctrine or anything else he so chooses. The acts of the President, in his capacity as head of the Mormon Church, are the acts of COP.    COP is registered to do

COMPLAINT - 2 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

NASH 5

business within, and conducts continuous and systematic activities within, the State of Washington.

1.5    COP administers the Mormon Church through a multi-level structure. Structurally, the Mormon Church follows a strict hierarchical form. At the local level are wards, consisting of a geographic area administered by a bishop and two counselors which comprise the governing "bishopric." A cluster of 8-12 wards are grouped into a stake, which is administered by a stake president. Stakes are, in turn, grouped into areas, which are administered by an area president. All bishops, stake presidents, and area presidents are answerable, directly or indirectly, to COP and are its agents and servants. The wards, stakes and areas of the Mormon Church are instruments of COP and are not separate corporate entities.

1.6    All members of the Mormon Church are required to tithe 10% of their annual gross income to the Church as a condition of membership. The Church's income from tithing is approximately 5.5 to 7.5 billion dollars annually.

1.7    During all times material to this action, the plaintiffs' families regularly attended and tithed to the Mormon Church.

1.8    LDS SOCIAL SERVICES a/k/a LDS FAMILY SERVICES (hereinafter "LDSSS") was at all relevant times the official social service arm of the Mormon Church. Its purpose was to provide ward bishops and priesthood leaders access to state-licensed social services delivered "by staff members and volunteers whose values, knowledge, and professional skills are in harmony with the gospel and the order of the Church."

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

1.9    LDSSS was at all relevant times a Utah Corporation headquartered in Salt Lake City, Utah. On information and belief it has branch offices throughout the United States and worldwide.

1.10    At all relevant times, LDSSS was an agent of COP.

1.11    COP and LDSSS were, at all relevant times, mandatory child abuse reporters subject to RCW § 26.44.030

1.12    DR. HERMAN M. ALLENBACH was at relevant times a High Priest, Bishopric Counselor and Scout leader in the Kent 2nd Ward of the Church of Jesus Christ of Latter-day Saints and he was their agent. ALLENBACH was an oral surgeon with a practice in Kent. In addition to owning and operating a professional oral surgery practice in Kent, Allenbach owned and managed commercial and residential rental properties in the Kent area.

1.13    ALLENBACH died March 6, 2000.

1.14    At relevant times RANDY BORLAND, PHILLIP COLEMAN and RICHARD PETITT were ward bishops of the Kent 2nd Ward.

1.15    JACK ALLEN LOHOLT, a/k/a JACK ALLEN ONOFREY ("Loholt"), is a twice-convicted, compulsive sexual predator of children. At all relevant times LOHOLT was a member of the Mormon Church and held the status of Melchizedek Priest, and Elder. At all relevant times, LOHOLT was the assistant scout leader in the Kent 2nd Ward of the Mormon Church. As such, he was subject to the control and discipline of the Church, and he was, at all relevant times, COP's agent.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

II.

## JURISDICTION AND VENUE

2.1    The subject matter hereof and the parties hereto, is subject to the jurisdiction of the above-entitled court; and that venue is proper.

III.

## FACTS

3.1    Adherents of the Mormon faith who have been baptized into the Church are known as members.  COP has the power to limit or restrict the capacity in which any member serves the Church, and may place such conditions on a member as may be in the interests of the Church and of its members and prospective converts.

3.2    Adult male members of the Church are eligible to be ordained as a Priest. There are various levels of priesthood, including elevation to the rank of "Elder," "Melchizedek" Priest and High Priest.  Elders and Melchizedek and High Priests are held out by the Mormon Church as men that are morally worthy and deserving of the trust of its members.

3.3    At all relevant times, the Mormon Church assumed special responsibilities toward its members including a disciplinary and red-flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent members from harm they might inflict.

3.4    The Mormon Church is closely affiliated with the Boy Scouts of America. The Mormon Church is the oldest and one of the largest sponsoring organizations of boy scouting in the United States. Since 1913 the Mormon Church has used the Scouting program as an

COMPLAINT - 5 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

NASH 8

integral part of its ministry to boys and young men. Scouting is the exclusive youth activity for males in the Mormon Church.

3.5     In approximately 1969, LOHOLT resided in a rental home owned by Dr. Allenbach. The home was located on the same property as the Allenbach family home in Kent.

3.6     At all relevant times, LOHOLT worked as contractor and handyman for Allenbach. Both were Mormon priests and both were active in the Kent 2nd ward scouting program.

3.7     In approximately 1970-1971, LOHOLT masturbated and ejaculated in front of the neighbors' seven year old son. The neighbors complained to Dr. Allenbach. Allenbach told them that he would "take care of it."

3.8     Despite this complaint, neither ALLENBACH nor any other church officials reported LOHOLT to civil authorities, warned church members about LOHOLT or took any action to protect children. Instead, Mormon Church officials did nothing about LOHOLT and continued him as assistant scoutmaster.

3.9     In approximately 1971-73, members of the Kent 2d Ward complained to Bishop Randy Borland that LOHOLT was sexually abusing their thirteen-year-old sons. Borland confronted LOHOLT about the allegations. LOHOLT denied abusing those boys but admitted that he was molesting other boys in the ward, including the instant plaintiff, John Doe.

3.10     In response, Borland interviewed those boys and their parents and confirmed that LOHOLT had been abusing them. Despite this certain knowledge that LOHOLT was an

COMPLAINT - 6 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

abuser, COP failed to report LOHOLT to civil authorities, failed to warn parents and failed to take any measures to protect children from LOHOLT. Further, COP failed to provide guidance counseling and support to the victims. Instead, Bishop Borland temporarily removed LOHOLT from his position as assistant scout master and sent LOHOLT to LDSSS for counseling. LOHOLT underwent a brief period of counseling with LDSSS during which he fully informed his counselors that he had constant, uncontrollable urges to have sex with children. Instead of providing him proper treatment, LDSSS counseled LOHOLT to read scripture, to repent of his sins and to pray more.

3.11 LDSSS and COP, despite being mandatory child abuse reporters in Washington, and despite having certain knowledge that LOHOLT presented a severe and immediate threat to children, failed to report him to civil authorities, failed to warn parents and failed to take any reasonable steps to warn or protect children it knew or should have known were at risk of abuse by LOHOLT. Instead, COP put LOHOLT back in to his role as assistant scoutmaster and allowed him to resume working with boys in the ward's scouting program.

3.12 For the next seven years, LOHOLT sodomized young boys in the ward's scouting program including plaintiffs beginning when they were approximately ten or eleven years old.

3.13 In approximately 1979 or 1980, LOHOLT sexually abused two twelve year old scouts on a campout and it was reported to Bishop Petit.

3.14 Petit removed LOHOLT from the ward's scouting program but never reported the incidents to the police or to civil authorities and failed to investigate the full extent of

COMPLAINT - 7 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

NASH 10

LOHOLT's predations of boys in the ward. Further, COP failed to provide adequate guidance, counseling and support to the victims.

3.15  In 1980, LOHOLT moved to Kenora, Ontario, Canada to get a "fresh start." In Kenora, LOHOLT joined a Mormon ward and immediately got involved in the scouting program. COP failed to warn church and scout officials in Kenora about LOHOLT's history of sexually abusing children in the United States.

3.16  In Canada, LOHOLT sexually abused five boy scouts. He was arrested, prosecuted and convicted of child sexual abuse in Winnipeg. COP knew that LOHOLT had been convicted of abusing boys in Canada but did nothing to warn or protect children when he returned to the United States after his release from prison.

3.17  After serving a prison sentence in Canada, LOHOLT moved back to Kent and back in to one of Allenbach's rental properties. Mormon Church officials never warned parents or civil authorities that LOHOLT, a serial sexual predator of children and had returned to the community.

3.18  Upon his return to Kent, LOHOLT immediately began sexually abusing another neighbor child, an eight year old girl with whom he had sexual contact 50-100 times between 1985 and 1988. LOHOLT was prosecuted and convicted of indecent liberties with a child in 1991. At sentencing, a Mormon church official asked the court for leniency for LOHOLT. One church official represented to the sentencing court that LOHOLT had served as a ward scout leader from 1972 to 1979 and that he was "very diligent and gave outstanding service." LOHOLT was sentenced to prison. Upon release from prison, LOHOLT returned to Canada.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

NASH 11

3.19    LOHOLT now lives in Lake La Hache, B.C. and goes by the name Jack Onofrey. He is married and attends the local branch of the Mormon Church. COP has not warned members of the branch that LOHOLT is a child sexual predator.

IV.

## FIRST CAUSE OF ACTION

(Negligence and Breach of Fiduciary Duty)

4.1    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth under this count and further alleges:

4.2    Defendant COP had a special relationship with plaintiffs and with LOHOLT. Knowing that LOHOLT was a pedophile who was actively abusing children, COP had a duty to warn or protect foreseeable victims including plaintiffs.

4.3    Defendant LDSS had a "special relationship with LOHOLT. Knowing that LOHOLT was a dangerous pedophile, LDSSS had a duty to warn or protect foreseeable victims including plaintiffs.

4.4    Furthermore, at all relevant times, the Mormon Church's bishops, stake presidents, Boy Scout leaders and LDS Social Services therapists were all mandatory child abuse reporters pursuant to R.C.W. 24.44.

4.5    The Mormon Church's bishops, stake presidents, Boy Scout leaders and therapists within the State of Washington breached both a statutorily proscribed duty and a duty of reasonable care by failing to report their knowledge of LOHOLT'S sexual abuse of children to civil authorities.

4.6    But for the breach of duty, acts, omissions and deceit of COP, church bishops, boy scout leaders, stake presidents and area presidents, LOHOLT would not have been able to

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

NASH 12

abuse plaintiffs because LOHOLT would have been arrested, prosecuted and convicted or would have been in prison or under an order of supervision or would otherwise have been publicly identified as a child molester.

4.7    Moreover, COP adopted guidelines for handling victims of child sexual abuse and sex offenders. Plaintiffs are of the class of people whom the guidelines were designed to protect. The harm Plaintiffs suffered as a result of Defendant's negligence was the harm contemplated in Defendant's Handbook of Instruction to clergy.

4.8    Notwithstanding Defendant COP's duty, it failed to train and supervise its hierarchal clergy in the proper implementation of its guidelines, policies and procedures regarding the treatment of victims of child sexual abuse, to monitor and insure compliance with their guidelines, policies and procedures, treatment of child sexual abusers and reporting of child sexual abuse.

4.9    Defendant COP failed to properly investigate allegations of abuse and failed to reach out and provide services to victims.

4.10    Defendants COP and LDSSS knew, or in the exercise of reasonable care should have known, that its failure to report LOHOLT'S sexual abuse to appropriate law enforcement or social services agencies or to notify Plaintiff's family or other families would result in LOHOLT sexually abusing members of the ward scout troop including plaintiffs.

4.11    As a result of the molestation and breach of trust, each plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to their general, non-economic damage in an amount to be determined. As a further result of the sexual abuse, each plaintiff has incurred and/or will continue to incur costs for counseling and

COMPLAINT - 10 of 14
()
[126468 v04.doc]

NASH 13

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial.

4.12    Defendants' conduct was the result of a willful, reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety and welfare of plaintiffs. COPs conduct is socially intolerable and plaintiffs give notice of intent to seek exemplary damages.

IV.

## SECOND CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)

5.1    Plaintffs re-allege and incorporate the paragraph set forth above.

5.2    Defendants' negligence acts and omissions exposed plaintiffs to emotional injuries from Loholt's sexual abuse and exploitation of him.

5.3    As a direct and proximate result, therefore, plaintiffs have suffered and will continue to suffer physical and emotional injuries.

VI.

## THIRD CAUSE OF ACTION

(Estoppel and Fraudulent Concealment)

6.1    Plaintiffs re-allege the paragraphs set forth above.

6.2    Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by its Melchizedek priests and scout leaders and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, the transfer of abusive Melchizedek priests and scoutmasters, coercion of victims and their

COMPLAINT - 11 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

families and by failure to seek out and redress the injuries these men had caused. Based on these actions, the defendants engaged in fraudulent concealment and are estopped from asserting defense of limitations.

VII.

**FOURTH CAUSE OF ACTION**:

(Civil Conspiracy)

7.1    Plaintiffs re-allege the paragraphs set for above.

7.2    Defendants, by and through their agents and representatives, conspired to cover up incidents of sexual abuse of minors by Melchizedek priests and scout leaders and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, aiding criminal child molesters in evading detection, arrest and prosecution, allowing them to cross state and international borders for purposes of gaining access to uninformed parents whose innocent children could sexually abused, failure to warn, and by failure to seek out and redress the injuries its priests and scoutmasters had caused. Based on these actions, the defendants conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that its priests posed to unsuspecting children, including the plaintiffs.

VIII.

**DAMAGES**

8.1    As a direct and proximate result, the wrongful acts of defendants, plaintiffs have suffered serious and continuing physical and emotional harm.

COMPLAINT  - 12 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

8.2    As a proximate cause of the aforementioned acts, plaintiffs have sustained past general and special damages, including but not limited to, the following damages in an amount to be proven at trial.

8.3    Past, present and future physical and emotional pain and suffering.

8.4    Past, present and future permanent and continuing physical and psychological injury.

8.5    Past, present and future impaired earning capacity, and

8.6    Medical bills and other related expenses for past and future treatment.

IX.

## PUNITIVE DAMAGES

9.1    Plaintiffs give notice of intent to seek an amount of punitive damages under foreign law.

X.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter a judgment against the Defendants, jointly and severally, and in Plaintiffs' behalf, for the following:

1.    For special damages for medical treatment expenses, lost earnings, and lost earnings capacity, and the expenses of medication and other special expenses, both in the past and continuing into the future, in amounts to be determined at the time of trial;

2.    For all general damages, for mental, physical and emotional upset and disturbance, and other disorders resulting from the acts complained of herein;

COMPLAINT - 13 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA.
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

3.    For such attorney's fees, prejudgment interest, costs and exemplary damages allowed by RCW 9.68A.130 and other law; and

4.    For punitive damages under foreign law.

5.    For such other and further relief as this Honorable Court determines just in the premises.

Dated this 25 day of October, 2004.

GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM, P.L.L.C.

By _____
      Michael T. Pfau, WSBA No. 24649
      mpfau@gth-law.com
      Attorneys for Plaintiffs


By _____
      Timothy D. Kosnoff WSBA 16586
      LAW OFFICE OF TIMOTHY D. KOSNOFF
      Attorneys for Plaintiffs

COMPLAINT - 14 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575