# EXHIBIT G

## Page 1

```
 1   IN THE CIRCUIT COURT OF THE STATE OF OREGON
 2              FOR THE COUNTY OF MULTNOMAH
 3
 4   JEREMIAH SCOTT,           )
 5         Plaintiff,          )
 6      vs                     )  No. 98-12-08640
 7   GREGORY LEE FOSTER, an    )
 8   individual; THE CHURCH OF )
 9   JESUS CHRIST OF LATTER-DAY)
10   SAINTS, an unincorporated )
11   association, aka, the "Mormon )
12   Church," THE CORPORATION OF )
13   THE PRESIDENT OF THE CHURCH OF )
14   JESUS CHRIST OF LATTER-DAY )
15   SAINTS, a Utah corporation sole,)
16   CORPORATION OF THE PRESIDING )
17   BISHOP OF THE CHURCH OF JESUS )
18   CHRIST OF LATTER-DAY SAINTS, )
19   a Utah corporation sole,  )
20         Defendants.         )
21
22        DEPOSITION OF LLOYD DEAN HALE, MD
23            Taken in behalf of the Plaintiff
24
25            Thursday, October 28, 1999
```

## Page 2

```
 1   EXHIBIT      DESCRIPTION
 2     1    Curriculum Vitae
 3     2    Section 10, Church Discipline - Bates Nos.
 4          0010-0022
 5     3    The Salt Lake Tribune - Excerpts of the
 6          Interview with LDS Church Officials
 7     4    Child Abuse - Helps for Ecclesiastical
 8          Leaders - Bates Nos. 0118-0147 and 0104-0117
 9
10   (Exhibits attached hereto)
```

## Page 3

```
 1       BE IT REMEMBERED THAT, the deposition of LLOYD
 2   DEAN HALE, MD was taken before Debra C. Symonds,
 3   Registered Professional Reporter and Certified Shorthand
 4   Reporter for the State of Oregon, on Thursday, October
 5   28, 1999, commencing at the hour of 9:15 a.m., in the
 6   Conference Room of the law firm of Dunn, Carney, Allen,
 7   Higgins & Tongue, 651 SW Sixth Avenue, Suite 1500, in
 8   the City of Portland, County of Multnomah, State of
 9   Oregon.
10                       -:-
11              APPEARANCES:
12   DUNN, CARNEY, ALLEN, HIGGINS & TONGUE
13      By Gary E. Rhoades
14         and
15      Tim Kosnoff and Joel Salmi
16      Attorneys at Law
17         Appearing in behalf of the Plaintiff
18   BULLIVANT, HOUSER, BAILEY
19      By David A. Ernst
20      Attorney at Law
21         Appearing in behalf of the Church Defendants
22   KILMER, VORHEES & LAURICK
23      By Jeffrey M. Kilmer
24      Attorney at Law
25         Appearing in behalf of Defendant Foster
```

## Page 4

```
 1             LLOYD DEAN HALE, MD
 2   was thereupon produced as a witness in behalf of the
 3   Plaintiff and, having been first duly sworn on oath, was
 4   examined and testified as follows:
 5
 6                 EXAMINATION
 7   BY-MR. SALMI:
 8      Q. Dr. Hale, please state your full name and
 9   address for the record.
10      A. It's Lloyd, L L O Y D, Dean Hale, H A L E. I
11   live at West Linn. 4950 Summit Street, West Linn,
12   that's Oregon, 97068.
13      Q. Dr. Hale, again, I'm Joel Salmi and I
14   represent Jeremiah Scott in his lawsuit against Bishop
15   Foster and the church defendants, I'll call them. We're
16   going to talk about how to designate the church in this
17   deposition in a minute, but I wanted to explain to you,
18   you've had an opportunity to talk to your attorney today
19   or previously about the procedure involved in a
20   deposition?
21      A. Yes.
22      Q. And you understand that when you give
23   responses to the court reporter, they need to be audible
24   responses rather than shaking your head or nodding?
25      A. Yes.
```

Page 5

1  Q. When I ask you a question, if you don't
2  understand the question or have some uncertainty as to
3  what I'm asking for, I'd appreciate it if you could ask
4  me to clarify it and I'll do my best to do that, okay?
5  A. All right.
6  Q. And you understand that everything you say
7  today is being taken down by the court reporter,
8  correct?
9  A. Yes.
10  Q. And I want you to understand that if your
11  testimony today is different than your testimony at the
12  trial of this matter, I will use the deposition
13  transcript to point out that difference in testimony to
14  a jury in the matter. You understand that?
15  A. Yes.
16  Q. If you want to take a break at any time, let
17  me know and we can take a break, all right?
18  A. Okay.
19  Q. You've been designated by the church
20  defendants in this case to testify on behalf of the
21  church, and so I want to talk about what the church is
22  for a minute and how we want to designate it.
23      I have in the past in this case used the term
24  "Mormon church." Is the Mormon church an accurate
25  description of the church defendants in this case?

Page 6

1      MR. ERNST: That is kind of a legal
2  conclusion. I'd object. If you're just talking about
3  terminology so you guys can talk, that's fine.
4  Q. All I'm doing is talking about terminology.
5  How would you like me to refer to the church today,
6  Doctor?
7  A. I think "the church" is quite fine for me.
8  Q. And if you had to distinguish this church from
9  any other church, what term would you use?
10  A. Casually Mormon church. Officially the Church
11  of Jesus Christ of Latter-Day Saints.
12  Q. Today when I say "the church," I'm going to be
13  referring to the Church of Jesus Christ of Latter-Day
14  Saints, all right?
15  A. Yes.
16  Q. The term "Mormon," is there anything about the
17  term "Mormon" that you understand to be inaccurate in
18  describing --
19  A. No.
20  Q. -- the Church of Jesus Christ of Latter-Day
21  Saints?
22  A. No.
23  Q. Does the term "Mormon" in any way, is it
24  inconsistent with the way in which the church is
25  organized?

Page 7

1  A. No.
2  Q. In the notice of deposition -- Have you had a
3  chance to review the notice of deposition in this case?
4  A. I did.
5  Q. In the notice of deposition, we're asking for
6  testimony regarding policies, practices and procedures
7  of the church relating to four different subject areas,
8  and I just want to make sure that you believe that you
9  have the background and experience to testify in those
10  areas. And they include discipline and disciplinary
11  procedures. Do you have some background and experience
12  in that area?
13  A. Yes, I -- Yes.
14  Q. In relating to confessions within the Mormon
15  church, you have background in that area?
16  A. Yes.
17  Q. Relating to policies, practices and procedures
18  regarding reporting of sexual abuse to law enforcement
19  and social service agencies?
20  A. Yes.
21  Q. And then finally, organizational structure,
22  authority and lines of authority within the church, do
23  you have some background and experience in that area?
24  A. Yes.
25  Q. Thank you. I also wanted to confirm that you

Page 8

1  are represented by Mr. Ernst's law firm in this matter?
2  A. Yes.
3  Q. Are you represented by any other attorneys
4  with respect to this lawsuit?
5  A. No.
6  Q. As an official of the church, and we'll talk
7  about your position in the church in a minute, have you
8  ever been represented by any other attorneys?
9  A. Never.
10  Q. Have you received any formal training in the
11  disciplinary procedures and practices of the church?
12  A. Yes.
13  Q. And can you describe for me what that formal
14  training consists of?
15  A. General instruction on the feelings, the
16  policies of the church, but nothing specific with an
17  individual.
18  Q. When you say "general instruction," is that
19  instruction in the form of written material?
20  A. Sometimes it is written, sometimes there will
21  be a talk given by a church authority.
22  Q. And does that instruction include
23  interpretation of the general handbook of instructions?
24  A. Yes.
25  Q. And you're familiar with the general handbook

Page 145

1  heard anything like it and I can't imagine it.
2     Q. But if there is such a dispute, who has the
3  ultimate authority to resolve that? Does that go
4  directly to the office of the first presidency?
5     A. In that case it would be more not doctrinal
6  and it would go to the area president.
7     Q. How are area presidents called to that
8  position? Who is responsible for doing that?
9     A. The calling comes from the first presidency,
10 but as to how it's issued, I don't know. I don't know
11 if they assign a member of the 12 apostles to make the
12 calling or whether they do that themselves.
13    Q. Does the office of the first presidency have
14 the authority to remove area presidents?
15    A. Yes.
16    Q. Do they have the authority to remove stake
17 presidents?
18    A. Yes.
19    Q. And they have the authority to remove bishops
20 as well, correct?
21    A. Yes, but a bishop would be removed by the
22 stake president, it wouldn't come from Salt Lake.
23    Q. Right. What's the organization within the
24 office of the first presidency? Can you tell me that?
25    A. I don't know. I can only tell you they're the

Page 146

1  three members of the first presidency and there is a
2  staff of secretaries and others who assist and take care
3  of a lot of the business and that's all.
4     Q. Who are the three members of the office of the
5  first presidency?
6     MR. ERNST: Do you want their names?
7     MR. SALMI: Yes.
8     A. Gordon Hinkley is the president, Thomas Monson
9  is the first counselor, and James Faust is the second
10 counselor.
11    Q. So it has the same structure as the stakes and
12 the wards in the sense of a head and two assistants, if
13 I can put it that way?
14    A. Yes, that's right.
15    Q. And doesn't Mr. Hinkley have the authority to
16 appoint and remove anyone within the Mormon church?
17    A. Yes.
18    Q. Does he have the authority to appoint and
19 remove his first and second counselor?
20    A. Yes.
21    Q. If there's a direction from the stake
22 president to a bishop and the bishop disobeys that
23 direction, what sanctions are available?
24    A. In terms of sanctions, I'm not sure I
25 understand. The course that would be pursued is

Page 147

1  obviously the bishop -- the president would sit down
2  with the bishop and attempt to resolve that. If it
3  could not be resolved, then -- and I have never known of
4  a circumstance, so again I'm going to tell you how I
5  would approach it. I'm not speaking how someone else
6  would handle it. I would discuss this with the -- a
7  member of the area presidency, explain my circumstances
8  to them, explain the issues to them, and if I felt
9  justified, ask for permission or authorization to
10 proceed with release of the bishop, which could only
11 come from the office of the first presidency, by the
12 way. But I first would go for counsel and advice just
13 to a member of the area presidency who would tell me how
14 he would have me handle it.
15    Q. So in and of themselves, the president of the
16 stake doesn't have the authority to remove a bishop,
17 they need the approval up the line all the way to the
18 office of the first presidency?
19    A. Yes.
20    Q. Who supervises Sunday school teachers in a
21 ward?
22    A. The bishop will assign a counselor to each
23 organization and they will supervise.
24    Q. And so that's true of home teachers as well,
25 that there's a counselor assigned to supervise them?

Page 148

1     A. No, that would come under the direction of the
2  priesthood quorums and they are -- they report to the
3  bishop regarding what occurs, but in terms of teaching,
4  training and accounting, that generally is done then to
5  a member of the stake presidency.
6     Q. Who supervises the Scout masters?
7     A. The bishop.
8     Q. That's a direct line of supervision?
9     A. Yes. Again, he will have a counselor assigned
10 and delegate a lot of responsibility, but the ultimate
11 in the ward is the bishop.
12    Q. I want to talk a little bit about the budget
13 within the ward and how that's handled, but I want to
14 take a break first.
15    A. Okay.
16             (Break: 2:23-2:31)
17    Q. Doctor, can you tell me, describe for me as
18 best you can, how a ward is budgeted? How does the
19 budget work, where do they get the money from, how is it
20 spent? Or I could ask you a bunch of separate
21 questions.
22    A. The stake president receives a budget from
23 Salt Lake for the running of the entire stake, then he,
24 with input from counselors and others, establishes a
25 stake budget. And money is kept aside to run the stake,