THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING and JOHN DOE, <br><br>        Plaintiffs, <br><br>    v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation, <br><br>        Defendants. | **NO. C04-2338 RSM** <br><br> DECLARATION OF STEVEN T. REICH IN SUPPORT OF PLAINTIFFS' MOTION FOR LETTERS ROGATORY <br><br> **Note for Motion: September 26, 2005** |

I, Steven T. Reich, am competent to testify to the matters set forth herein and make this declaration of my own personal knowledge and belief.

    1.      I am one of the attorneys for the plaintiffs in this case.

    2.      Plaintiffs, Kenneth Fleming and John Doe filed a Complaint for Personal Injuries ("Complaint") on or about October 25, 2004, in King County Superior Court for the

DECLARATION OF STEVEN T. REICH - 1 of 2
**(C04-2338 RSM)**
[150191 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Dockets.Justia.com

State of Washington.[1]  The Defendants removed this action to U.S. District Court for the Western District of Washington on November 18, 2004.[2]

3.      This is a personal injury action in which the plaintiffs allege that defendants' negligence allowed Jack Loholt, a/k/a Jack Onefrey (hereinafter, Jack "Loholt" Onefrey), to sexually abuse plaintiffs when they were children.

4.      The deposition testimony of Jack "Loholt" Onefrey in British Columbia, Canada, is necessary for the preservation of testimony for trial.  His deposition will likely produce material evidence in the pending litigation in Washington State.  Jack "Loholt" Onefrey is an essential witness to the injury-causing incidents as he was the person that sexually abused the plaintiffs.  Jack "Loholt" Onefrey currently resides in Lac La Hache, British Columbia, Canada.

5.      Letters Rogatory are necessary because the British Columbia Court does not permit the taking of depositions within its borders without the issuance of Letters Rogatory by a Court of competent jurisdiction where the action is pending.[3]

I declare the foregoing to be true and accurate to the best of my knowledge under penalty of perjury.

SIGNED AT Seattle, Washington this 15 day of September, 2005.

_____
Steven T. Reich

[26313-00001]

_____

[1]  A true and correct copy of the Complaint is attached to this declaration as **Exhibit A.**

[2]  A true and correct copy of the Notice of Removal is attached to this declaration as **Exhibit B.**

[3]  A true and correct copy of § 53 of the British Columbia Evidence Act, R.S.B.C. 1996, C. 124, is attached to this declaration as **Exhibit C.**

DECLARATION OF STEVEN T. REICH - 2 of 2
**(C04-2338 RSM)**
[150191 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

RECEIVED
In King County Superior Court Clerk's Office

OCT 2 5 2004

Cashier Section KNT
Superior Court Clerk

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

KENNETH FLEMING and JOHN DOE,

               Plaintiffs,

v.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole, a/k/a the "MORMON CHUCH," LDS
SOCIAL SERVICES a/k/a LDS FAMILY
SERVICES, a Utah corporation,

               Defendants

**04-2-33910-3 KNT**

COMPLAINT

Comes now plaintiffs Kenneth Fleming and John Doe, by and through their attorneys Michael T. Pfau, Gordon Thomas Honeywell Malanca Peterson & Daheim, LLP and Timothy Kosnoff, Law Offices of Timothy Kosnoff, PC, and hereby states and alleges as follows.

COMPLAINT  - 1 of 14
()
[126468 v04.doc]

**EXHIBIT A** CONFORMED

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

3

I.

## GENERAL ALLEGATIONS AND PARTIES

1.1     Plaintiffs KENNETH FLEMING and JOHN DOE are adults and at all times relevant hereto were boys residing with their parents in Kent, Washington. Kenneth, his mother and his four siblings were recruited into the Mormon Church.

1.2     At all relevant times, plaintiffs were members of the Church of Jesus Christ of Latter-day Saints and attended the Kent 2nd Ward.

1.3     Defendant CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, also known as the "Mormon Church," operates its worldwide affairs as the Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors, a Utah Corporation Sole ("COP").

1.4     COP is a corporation governed by a single individual, the President of the Mormon Church.  The President wields ultimate and absolute authority within the Mormon Church.   The President of the Mormon Church, Gordon B. Hinckley, is the "Divine Prophet, Seer and Revelator" of the Church and has the authority to appoint and remove anyone in the Mormon Church, including all members of wards and stakes, at will.  The President of the Mormon Church controls everything in the Mormon Church and all of its wards and stakes. As such, the President of the Church has authority to dictate changes in Church policy, discipline, ecclesiastical doctrine or anything else he so chooses.  The acts of the President, in his capacity as head of the Mormon Church, are the acts of COP.   COP is registered to do

COMPLAINT  - 2 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

4

business within, and conducts continuous and systematic activities within, the State of Washington.

1.5    COP administers the Mormon Church through a multi-level structure. Structurally, the Mormon Church follows a strict hierarchical form. At the local level are wards, consisting of a geographic area administered by a bishop and two counselors which comprise the governing "bishopric." A cluster of 8-12 wards are grouped into a stake, which is administered by a stake president. Stakes are, in turn, grouped into areas, which are administered by an area president. All bishops, stake presidents, and area presidents are answerable, directly or indirectly, to COP and are its agents and servants. The wards, stakes and areas of the Mormon Church are instruments of COP and are not separate corporate entities.

1.6    All members of the Mormon Church are required to tithe 10% of their annual gross income to the Church as a condition of membership. The Church's income from tithing is approximately 5.5 to 7.5 billion dollars annually.

1.7    During all times material to this action, the plaintiffs' families regularly attended and tithed to the Mormon Church.

1.8    LDS SOCIAL SERVICES a/k/a LDS FAMILY SERVICES (hereinafter "LDSSS") was at all relevant times the official social service arm of the Mormon Church. Its purpose was to provide ward bishops and priesthood leaders access to state-licensed social services delivered "by staff members and volunteers whose values, knowledge, and professional skills are in harmony with the gospel and the order of the Church."

COMPLAINT - 3 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

1.9    LDSSS was at all relevant times a Utah Corporation headquartered in Salt Lake City, Utah. On information and belief it has branch offices throughout the United States and worldwide.

1.10    At all relevant times, LDSSS was an agent of COP.

1.11    COP and LDSSS were, at all relevant times, mandatory child abuse reporters subject to RCW § 26.44.030

1.12    DR. HERMAN M. ALLENBACH was at relevant times a High Priest, Bishopric Counselor and Scout leader in the Kent 2nd Ward of the Church of Jesus Christ of Latter-day Saints and he was their agent. ALLENBACH was an oral surgeon with a practice in Kent. In addition to owning and operating a professional oral surgery practice in Kent, Allenbach owned and managed commercial and residential rental properties in the Kent area.

1.13    ALLENBACH died March 6, 2000.

1.14    At relevant times RANDY BORLAND, PHILLIP COLEMAN and RICHARD PETITT were ward bishops of the Kent 2nd Ward.

1.15    JACK ALLEN LOHOLT, a/k/a JACK ALLEN ONOFREY ("Loholt"), is a twice-convicted, compulsive sexual predator of children. At all relevant times LOHOLT was a member of the Mormon Church and held the status of Melchizedek Priest, and Elder. At all relevant times, LOHOLT was the assistant scout leader in the Kent 2nd Ward of the Mormon Church. As such, he was subject to the control and discipline of the Church, and he was, at all relevant times, COP's agent.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

II.

## JURISDICTION AND VENUE

2.1     The subject matter hereof and the parties hereto, is subject to the jurisdiction of the above-entitled court; and that venue is proper.

III.

## FACTS

3.1     Adherents of the Mormon faith who have been baptized into the Church are known as members. COP has the power to limit or restrict the capacity in which any member serves the Church, and may place such conditions on a member as may be in the interests of the Church and of its members and prospective converts.

3.2     Adult male members of the Church are eligible to be ordained as a Priest. There are various levels of priesthood, including elevation to the rank of "Elder," "Melchizedek" Priest and High Priest. Elders and Melchizedek and High Priests are held out by the Mormon Church as men that are morally worthy and deserving of the trust of its members.

3.3     At all relevant times, the Mormon Church assumed special responsibilities toward its members including a disciplinary and red-flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent members from harm they might inflict.

3.4     The Mormon Church is closely affiliated with the Boy Scouts of America. The Mormon Church is the oldest and one of the largest sponsoring organizations of boy scouting in the United States. Since 1913 the Mormon Church has used the Scouting program as an

COMPLAINT - 5 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

integral part of its ministry to boys and young men. Scouting is the exclusive youth activity for males in the Mormon Church.

3.5    In approximately 1969, LOHOLT resided in a rental home owned by Dr. Allenbach. The home was located on the same property as the Allenbach family home in Kent.

3.6    At all relevant times, LOHOLT worked as contractor and handyman for Allenbach. Both were Mormon priests and both were active in the Kent 2nd ward scouting program.

3.7    In approximately 1970-1971, LOHOLT masturbated and ejaculated in front of the neighbors' seven year old son. The neighbors complained to Dr. Allenbach. Allenbach told them that he would "take care of it."

3.8    Despite this complaint, neither ALLENBACH nor any other church officials reported LOHOLT to civil authorities, warned church members about LOHOLT or took any action to protect children. Instead, Mormon Church officials did nothing about LOHOLT and continued him as assistant scoutmaster.

3.9    In approximately 1971-73, members of the Kent 2d Ward complained to Bishop Randy Borland that LOHOLT was sexually abusing their thirteen-year-old sons. Borland confronted LOHOLT about the allegations. LOHOLT denied abusing those boys but admitted that he was molesting other boys in the ward, including the instant plaintiff, John Doe.

3.10    In response, Borland interviewed those boys and their parents and confirmed that LOHOLT had been abusing them. Despite this certain knowledge that LOHOLT was an

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

abuser, COP failed to report LOHOLT to civil authorities, failed to warn parents and failed to take any measures to protect children from LOHOLT.    Further, COP failed to provide guidance counseling and support to the victims.    Instead, Bishop Borland temporarily removed LOHOLT from his position as assistant scout master and sent LOHOLT to LDSSS for counseling. LOHOLT underwent a brief period of counseling with LDSSS during which he fully informed his counselors that he had constant, uncontrollable urges to have sex with children. Instead of providing him proper treatment, LDSSS counseled LOHOLT to read scripture, to repent of his sins and to pray more.

3.11    LDSSS and COP, despite being mandatory child abuse reporters in Washington, and despite having certain knowledge that LOHOLT presented a severe and immediate threat to children, failed to report him to civil authorities, failed to warn parents and failed to take any reasonable steps to warn or protect children it knew or should have known were at risk of abuse by LOHOLT. Instead, COP put LOHOLT back in to his role as assistant scoutmaster and allowed him to resume working with boys in the ward's scouting program.

3.12    For the next seven years, LOHOLT sodomized young boys in the ward's scouting program including plaintiffs beginning when they were approximately ten or eleven years old.

3.13    In approximately 1979 or 1980, LOHOLT sexually abused two twelve year old scouts on a campout and it was reported to Bishop Petit.

3.14    Petit removed LOHOLT from the ward's scouting program but never reported the incidents to the police or to civil authorities and failed to investigate the full extent of

COMPLAINT - 7 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

LOHOLT's predations of boys in the ward.    Further, COP failed to provide adequate guidance, counseling and support to the victims.

3.15    In 1980, LOHOLT moved to Kenora, Ontario, Canada to get a "fresh start." In Kenora, LOHOLT joined a Mormon ward and immediately got involved in the scouting program. COP failed to warn church and scout officials in Kenora about LOHOLT's history of sexually abusing children in the United States.

3.16    In Canada, LOHOLT sexually abused five boy scouts. He was arrested, prosecuted and convicted of child sexual abuse in Winnipeg. COP knew that LOHOLT had been convicted of abusing boys in Canada but did nothing to warn or protect children when he returned to the United States after his release from prison.

3.17    After serving a prison sentence in Canada, LOHOLT moved back to Kent and back in to one of Allenbach's rental properties. Mormon Church officials never warned parents or civil authorities that LOHOLT, a serial sexual predator of children and had returned to the community.

3.18    Upon his return to Kent, LOHOLT immediately began sexually abusing another neighbor child, an eight year old girl with whom he had sexual contact 50-100 times between 1985 and 1988. LOHOLT was prosecuted and convicted of indecent liberties with a child in 1991. At sentencing, a Mormon church official asked the court for leniency for LOHOLT. One church official represented to the sentencing court that LOHOLT had served as a ward scout leader from 1972 to 1979 and that he was "very diligent and gave outstanding service." LOHOLT was sentenced to prison. Upon release from prison, LOHOLT returned to Canada.

COMPLAINT  - 8 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 -  FACSIMILE (206) 676-7575

3.19    LOHOLT now lives in Lake La Hache, B.C. and goes by the name Jack Onofrey. He is married and attends the local branch of the Mormon Church. COP has not warned members of the branch that LOHOLT is a child sexual predator.

IV.

## FIRST CAUSE OF ACTION

(Negligence and Breach of Fiduciary Duty)

4.1    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth under this count and further alleges:

4.2    Defendant COP had a special relationship with plaintiffs and with LOHOLT. Knowing that LOHOLT was a pedophile who was actively abusing children, COP had a duty to warn or protect foreseeable victims including plaintiffs.

4.3    Defendant LDSS had a "special relationship with LOHOLT. Knowing that LOHOLT was a dangerous pedophile, LDSSS had a duty to warn or protect foreseeable victims including plaintiffs.

4.4    Furthermore, at all relevant times, the Mormon Church's bishops, stake presidents, Boy Scout leaders and LDS Social Services therapists were all mandatory child abuse reporters pursuant to R.C.W. 24.44.

4.5    The Mormon Church's bishops, stake presidents, Boy Scout leaders and therapists within the State of Washington breached both a statutorily proscribed duty and a duty of reasonable care by failing to report their knowledge of LOHOLT'S sexual abuse of children to civil authorities.

4.6    But for the breach of duty, acts, omissions and deceit of COP, church bishops, boy scout leaders, stake presidents and area presidents, LOHOLT would not have been able to

COMPLAINT - 9 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

abuse plaintiffs because LOHOLT would have been arrested, prosecuted and convicted or would have been in prison or under an order of supervision or would otherwise have been publicly identified as a child molester.

4.7     Moreover, COP adopted guidelines for handling victims of child sexual abuse and sex offenders. Plaintiffs are of the class of people whom the guidelines were designed to protect. The harm Plaintiffs suffered as a result of Defendant's negligence was the harm contemplated in Defendant's Handbook of Instruction to clergy.

4.8     Notwithstanding Defendant COP's duty, it failed to train and supervise its hierarchal clergy in the proper implementation of its guidelines, policies and procedures regarding the treatment of victims of child sexual abuse, to monitor and insure compliance with their guidelines, policies and procedures, treatment of child sexual abusers and reporting of child sexual abuse.

4.9     Defendant COP failed to properly investigate allegations of abuse and failed to reach out and provide services to victims.

4.10     Defendants COP and LDSSS knew, or in the exercise of reasonable care should have known, that its failure to report LOHOLT'S sexual abuse to appropriate law enforcement or social services agencies or to notify Plaintiff's family or other families would result in LOHOLT sexually abusing members of the ward scout troop including plaintiffs.

4.11     As a result of the molestation and breach of trust, each plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to their general, non-economic damage in an amount to be determined. As a further result of the sexual abuse, each plaintiff has incurred and/or will continue to incur costs for counseling and

COMPLAINT - 10 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

12

psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial.

4.12    Defendants' conduct was the result of a willful, reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety and welfare of plaintiffs. COPs conduct is socially intolerable and plaintiffs give notice of intent to seek exemplary damages.

IV.

## SECOND CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)

5.1    Plaintffs re-allege and incorporate the paragraph set forth above.

5.2    Defendants' negligence acts and omissions exposed plaintiffs to emotional injuries from Loholt's sexual abuse and exploitation of him.

5.3    As a direct and proximate result, therefore, plaintiffs have suffered and will continue to suffer physical and emotional injuries.

VI.

## THIRD CAUSE OF ACTION

(Estoppel and Fraudulent Concealment)

6.1    Plaintiffs re-allege the paragraphs set forth above.

6.2    Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by its Melchizedek priests and scout leaders and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, the transfer of abusive Melchizedek priests and scoutmasters, coercion of victims and their

COMPLAINT - 11 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

13

families and by failure to seek out and redress the injuries these men had caused. Based on these actions, the defendants engaged in fraudulent concealment and are estopped from asserting defense of limitations.

VII.

## FOURTH CAUSE OF ACTION:

(Civil Conspiracy)

7.1     Plaintiffs re-allege the paragraphs set for above.

7.2     Defendants, by and through their agents and representatives, conspired to cover up incidents of sexual abuse of minors by Melchizedek priests and scout leaders  and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, aiding criminal child molesters in evading detection, arrest and prosecution, allowing them to cross state and international borders for purposes of gaining access to uninformed parents whose innocent children could sexually abused,  failure to warn, and by failure to seek out and redress the injuries its priests and scoutmasters had caused.  Based on these actions, the defendants conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that its priests posed to unsuspecting children, including the plaintiffs.

VIII.

## DAMAGES

8.1     As a direct and proximate result, the wrongful acts of defendants, plaintiffs have suffered serious and continuing physical and emotional harm.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

14

8.2     As a proximate cause of the aforementioned acts, plaintiffs have sustained past general and special damages, including but not limited to, the following damages in an amount to be proven at trial.

8.3     Past, present and future physical and emotional pain and suffering.

8.4     Past, present and future permanent and continuing physical and psychological injury.

8.5     Past, present and future impaired earning capacity, and

8.6     Medical bills and other related expenses for past and future treatment.

IX.

## PUNITIVE DAMAGES

9.1     Plaintiffs give notice of intent to seek an amount of punitive damages under foreign law.

X.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter a judgment against the Defendants, jointly and severally, and in Plaintiffs' behalf, for the following:

1.      For special damages for medical treatment expenses, lost earnings, and lost earnings capacity, and the expenses of medication and other special expenses, both in the past and continuing into the future, in amounts to be determined at the time of trial;

2.      For all general damages, for mental, physical and emotional upset and disturbance, and other disorders resulting from the acts complained of herein;

COMPLAINT  - 13 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

3.    For such attorney's fees, prejudgment interest, costs and exemplary damages allowed by RCW 9.68A.130 and other law; and

4.    For punitive damages under foreign law.

5.    For such other and further relief as this Honorable Court determines just in the premises.

Dated this 2 5 day of October, 2004.

GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM, P.L.L.C.

By _____
           Michael T. Pfau, WSBA No. 24649
           mpfau@gth-law.com
           Attorneys for Plaintiffs


By _____
           Timothy D. Kosnoff WSBA 16586
           LAW OFFICE OF TIMOTHY D. KOSNOFF
           Attorneys for Plaintiffs

COMPLAINT - 14 of 14
()
[126468 v04.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

ORIGINAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

———— FILED ————ENTERED
———— LODGED.——— ——RECEIVED

NOV 1 8 2004   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING and JOHN DOE,

        Plaintiffs,

    v.

THE CORPORATION OF THE
PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER-DAY
SAINTS, a Utah corporation sole, a/k/a the
"MORMON CHURCH," LDS SOCIAL
SERVICES a/k/a LDS FAMILY SERVICES,
a Utah corporation,

        Defendants.

No. **CV4 2338** ksm

King County Superior Court
Cause No.: 04-2-33910-3KNT

**NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C.
§1441
(DIVERSITY JURISDICTION)**



04-CV-02338-CMP

TO: THE UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

    Defendants hereby give notice that they are removing this case to the United

States District Court for the Western District of Washington on the grounds set forth

below.

    1.    On October 25, 2004, the above-entitled action was filed by plaintiffs

against defendants in King County Superior Court and thereafter was given cause

number 04-2-33910-3 KNT.  The matter was assigned to The Honorable James D.

NOTICE OF REMOVAL
OF ACTION TO FEDERAL COURT - 1
M:\Clients\7566\25226\PLD Removal-Notice2FedCourt.doc

STAFFORD FREY COOPER
*Professional Corporation*
A T T O R N E Y S
3100 Two UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-1374
TEL. (206) 623-9900
FAX (206) 624-6885

**EXHIBIT B**

17

1  Cayce. See Exhibit 1 attached to the Verification of State Court Records. A copy of the

2  Order Setting Civil Case Schedule issued by the King County Superior Court Clerk on

3  October 25, 2004, is attached as Exhibit 2.

4      2.    On October 26, 2004, defendant LDS Social Services was served with a

5  copy of plaintiffs' Summons and Complaint. See Exhibit 3 attached to the Verification of
   State Court Records.

6      3.    On November 10, 2004, counsel for defendants filed a Notice of

7  Appearance on behalf of all defendants with King County Superior Court, which is

8  attached as Exhibit 4 to the Verification of State Court Records.

9      4.    On November 10, 2004, counsel for defendants filed an Acceptance of

10  Service on behalf of defendant The Corporation of the President of the Church of Jesus

11  Christ of Latter-Day Saints, which is attached as Exhibit 5 to the Verification of State
    Court Records.

12      5.    All defendants join in this removal without waiving insufficiency of service

13  or process of service.

14      6.    There have been no further proceedings in this action.

15      7.    Under the express terms of the complaint, plaintiffs allege claims of

16  negligence and breach of fiduciary duty, negligent infliction of emotional distress,

17  estoppel and fraudulent concealment and civil conspiracy against defendants, both
    incorporated in the State of Utah and both with its principal place of business in Utah.

18      8.    This is a civil action over which this Court has original jurisdiction pursuant

19  to 28 U.S.C. § 1332. The entire case may be removed to the United States District

20  pursuant to 28 U.S.C. § 1441 because the action involves a controversy between

21  citizens of different states and the amount in controversy exceeds $75,000.00 exclusive

22  of interest and costs.

23

NOTICE OF REMOVAL
OF ACTION TO FEDERAL COURT - 2
M:\Clients\7566\25225\PLD Removal-Notice2FedCourt.doc

STAFFORD FREY COOPER
——Professional Corporation——
A T T O R N E Y S
3100 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-1374
TEL. (206) 623-9900
FAX (206) 624-6885

18

9.    Defendants have filed this Notice of Removal within thirty days after receipt, through service or otherwise, of a copy of plaintiffs' Complaint. See 28 U.S.C. § 1446(b).

10.    This Court is the district court of the United States for the district and division embracing the place where the state court action is currently pending. See 28 U.S.C. § 1441(a).

WHEREFORE, defendants hereby give notice that the civil action in King County Superior Court of the State of Washington has been removed from that Court to the United States District Court for the Western District of Washington.

DATED this ___16th___ day of November, 2004 at Seattle, Washington.

STAFFORD FREY COOPER
Professional Corporation

By _____
    Thomas D. Frey, WSBA #1908
    Marcus B. Nash, WSBA #14471
    Attorneys for Defendants

NOTICE OF REMOVAL
OF ACTION TO FEDERAL COURT - 3
M:\Clients\7566\25226\PLD Removal-Notice2FedCourt.doc

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
3100 Two Union Square
601 Union Street
Seattle, Washington 98101-1374
Tel. (206) 623-9900
Fax (206) 624-6885

19

Copyright (c) 2004: Queen's Printer,
Victoria, British Columbia, Canada

IMPORTANT INFORMATION

# EVIDENCE ACT

## [RSBC 1996] CHAPTER 124

### *Contents*

Section

1   Definitions
2   Application of this Act
3   Competency unaffected by interest or crime
4   Privilege
5   Witness whose capacity is in doubt
6   Person charged and spouse competent
7   Parties to civil causes and their spouses may be witnesses
8   Communications made during marriage need not be disclosed
9   In actions by or against mentally disordered persons
10   Evidence of experts
11   Testimony of experts
12   Section 11 confined to civil proceedings
13   Cross examination of witnesses as to previous statements in writing
14   Proof of prior inconsistent statement made by witness
15   Questioning a witness as to convictions and proving convictions
16   Impeachment and contradiction of witness
17   A witness who is unable to speak
18   Record of Provincial Court
19   Sound recording apparatus and official record
20   Affirmation or oath
21   Validity of oath not affected by absence or difference of religious belief
22   Oath may be administered with uplifted hand
23   Power to administer oaths
24   Judicial notice of statutes
25   Proof of state documents
26   Evidence of proceedings in courts in Canada and elsewhere
27   Proof of judge's signature
28   Evidence of documents and proceedings of corporations
29   Evidence of public books and documents
30   No proof of signature or official position
31   Orders signed by Secretary of State
32   Copies in Gazette evidence
33   Evidence of entries in departmental books of governments of Canada and British Columbia

EXHIBIT C

20

34   Financial institution records

35   Admissibility of photographs taken to keep a permanent record

36   Evidence of notarial acts or instruments made or filed in Province of Quebec

37   Procedure for proving will by production of probate or stamped copy

38   Procedure for proving will by production of probate from court of British possession

39   Certified copies of documents in land title and Supreme Court offices as evidence

40   Certified copies of records of chief gold commissioner or gold commissioner as evidence

41   Production and proof of original documents filed in land title office or County Court

42   Admissibility of business records

43   Proof of commercial paper

44   Proof of attesting witness not required if instrument need not be attested

45   Evidence of disputed writing by comparison with other writing proved to be genuine

46   Impounding documents

47   Filing certified copy as exhibit instead of original

48   Proof of insertion of advertisements in newspapers

49   Leaflet bearing name of printer evidence leaflet printed by that printer

50   Proof of death of member of military

51   Health care evidence

52   Evidence of marriage

53   Power to order examination of witness under commission issued by foreign court

54   Act gives additional powers

55   Affidavit evidence

56   Appointment of commissioners for taking affidavits

57   Fees to be paid by commissioners

58   Commissioner fee exceptions

59   Powers of commissioner

60   Commissioners because of office or employment

60.1  Police forces

61   Social workers

62   Revocation of commissioner appointment

63   Affidavits sworn out of British Columbia for use in British Columbia

64   Commissioned officers empowered to administer oaths

65   Admissibility of documents attesting to affidavits having been sworn

66   Effect given to affidavits

67   Receipt of affidavits despite defects

68   Taking of affidavits required by an insurer

69   Statutory declarations

70   Reports of judge

71   Evidence of previous conviction admissible in subsequent proceeding

72   Testimony outside courtroom or behind screen

73   Witness testifying by closed circuit television or other technology

**Definitions**

**21**

1 In this Act, **"Lieutenant Governor"** and **"Lieutenant Governor in Council"**, when referring to other provinces than British Columbia, have the same meaning as in the *Interpretation Act* (Canada).

### Application of this Act

2 This Act applies to all proceedings and other matters for which the Legislature has jurisdiction.

### Competency unaffected by interest or crime

3 A person is not incompetent to give evidence only because of interest or crime.

### Privilege

4 (1) In this section, **"witness"** includes any person who testifies in the course of any proceedings authorized by law.

(2) A witness must not be excused from answering a question or producing a document on the ground that the answer or the document may tend to incriminate the witness or any other person, or may tend to establish his or her liability to a civil proceeding at the instance of the Crown or of any person or to a prosecution under any Act.

(3) If a witness objects to answering a question on any of the grounds referred to in subsection (2), and if, but for this section or any Act of Canada, the witness would have been excused from answering the question, then, although the witness is by reason of this section or by reason of any Act of Canada compelled to answer, the answer given must not be used or receivable in evidence against that witness in any civil proceeding or in any proceeding under any Act.

### Witness whose capacity is in doubt

5 (1) If a proposed witness in a proceeding is a person under 14 years of age or a person whose mental capacity is challenged, the judge, justice or other presiding officer must, before permitting the person to give evidence, conduct an inquiry to determine whether

    (a) the person understands the nature of an oath or a solemn affirmation, and

    (b) the person is able to communicate the evidence.

(2) Subject to section 20 (3), a person referred to in subsection (1) of this section who understands the nature of an oath or a solemn affirmation and is able to communicate the evidence must testify under oath or solemn affirmation.

(3) A person referred to in subsection (1) who does not understand the nature of an oath or a solemn affirmation but is able to communicate the evidence may testify on promising to tell the truth.

(4) A person referred to in subsection (1) who neither understands the nature of an oath or a solemn affirmation nor is able to communicate the evidence must not testify.

(5) A party who challenges the mental capacity of a proposed witness who has reached 14 years of age has the burden of satisfying the judge, justice or other presiding officer that there is an issue as

to the capacity of the proposed witness to testify under an oath or a solemn affirmation.

**Person charged and spouse competent**

6 A person charged with an offence, and the wife or husband of the person charged, is a competent witness whether the person charged is charged solely or jointly with any other person.

**Parties to civil causes and their spouses may be witnesses**

7 (1) Except as provided by this Act, the parties to an action, suit, petition or other matter of a civil nature in any of the courts of British Columbia, and their wives and husbands, are competent as witnesses and compellable to attend and give evidence in the same manner as they would be if not parties to the proceedings, or wives or husbands of the parties.

(2) Despite any rule to the contrary, a husband or wife may in proceedings in court give evidence that he or she did or did not have sexual intercourse with the other party to the marriage at any time or within any period of time before or during the marriage.

**Communications made during marriage need not be disclosed**

8 A husband is not compellable to disclose any communication made to him by his wife during the marriage, and a wife is not compellable to disclose any communication made to her by her husband during the marriage.

**In actions by or against mentally disordered persons**

9 In an action or proceeding by or against a person

(a) who is found to be of unsound mind, or

(b) who is a patient in a Provincial or other mental health facility,

an opposite or interested party is not entitled to obtain a verdict, judgment or decision, on his or her own evidence, unless that evidence is corroborated by other material evidence.

**Evidence of experts**

10 (1) In this section and sections 11 and 12, **"proceeding"** includes a quasi-judicial or administrative hearing but does not include a proceeding in the Court of Appeal, the Supreme Court or the Provincial Court.

(2) This section and section 11 do not apply to proceedings of a tribunal, commission, board or other similar body that enacts or makes its own rules for the introduction of expert evidence and the testimony of experts, and if there is a conflict between any such rules and this section or section 11, those rules apply.

(3) A statement in writing setting out the opinion of an expert is admissible in evidence in a proceeding without proof of the expert's signature if, at least 30 days before the statement is given in evidence, a copy of the written statement is furnished to every party to the proceeding that is adverse in interest to the party tendering the statement.

(4) The assertion of qualifications as an expert in a written statement is proof of the qualifications.

(5) If the written statement of an expert is given in evidence in a proceeding, any party to the proceeding may require the expert to be called as a witness.

(6) If an expert has been required to give evidence under subsection (5) and the person presiding at the hearing is of the opinion that the evidence obtained does not materially add to the information in the statement furnished under subsection (3), the person presiding may order the party that required the attendance of the expert to pay, as costs, a sum the person presiding considers appropriate.

**Testimony of experts**

**11** (1) A person must not give, within the scope of that person's expertise, evidence of his or her opinion in a proceeding unless a written statement of that opinion and the facts on which that opinion is formed has been furnished, at least 30 days before the expert testifies, to every party that is adverse in interest to the party tendering the evidence of the expert.

(2) Despite subsection (1), the person presiding in a proceeding may, on his or her own initiative or on the application of a party, do one of the following:

    (a) if the statement has not been furnished, order that the expert may testify;

    (b) if the statement was furnished less than 30 days before the expert is to testify, order that the expert may testify;

    (c) order that the expert must be allowed to testify if the statement is furnished within a time less than 30 days before the expert is to testify, and specify the time;

    (d) if it appears that a party will tender the evidence of an expert in the proceeding, order that a statement be furnished at a time earlier than 30 days before the expert is to testify and specify the time by which the statement must be furnished.

(3) For the purpose of proving that a copy of a written statement was furnished to a party to a proceeding, the person presiding at the hearing may accept an affidavit made by the person who furnished the statement.

**Section 11 confined to civil proceedings**

**12** Section 11 does not apply in proceedings to enforce a law in which punishment by fine, penalty or imprisonment may be imposed.

**Cross examination of witnesses as to previous statements in writing**

**13** (1) Subject to subsection (2), a witness may be cross examined as to previous statements made by that witness in writing, or reduced into writing, relative to the subject matter of the proceedings, without the writing being shown to that witness.

(2) If it is intended to contradict the witness by the writing referred to in subsection (1), the attention of the witness must, before the contradictory proof can be given, be called to those parts

**24**

of the writing that are to be used for contradicting the witness.

(3) At any time during the proceedings, the judge or person presiding over the proceedings may

(a) require the production of the writing referred to in this section for his or her inspection, and

(b) after that, make use of the writing for the proceedings as he or she thinks fit.

**Proof of prior inconsistent statement made by witness**

**14** (1) Subject to subsection (2), if a witness, in cross examination as to a former statement made by the witness relative to the subject matter of the proceedings and inconsistent with the present testimony of the witness, does not distinctly admit to making the statement, proof may be given that the witness did in fact make that statement.

(2) Before giving the proof referred to in subsection (1),

(a) the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and

(b) the witness must be asked whether or not the witness made the statement.

**Questioning a witness as to convictions and proving convictions**

**15** (1) Subject to subsection (4), a witness may be questioned as to whether the witness has been convicted of an offence, indictable or not, and if the witness denies the fact or refuses to answer, the opposite party may prove the conviction.

(2) On proof of the identity of the witness as the convict, a certificate that

(a) contains the substance and effect of the indictment and conviction for the offence, and

(b) is signed by

(i) the registrar or clerk of the court, or other officer having the custody of the records of the court at which the offender was convicted, or

(ii) the deputy of a person under subparagraph (i),

is sufficient evidence of the conviction of the witness, without proof of the signature or of the official position of the person signing the certificate.

(3) The fee prescribed by the Lieutenant Governor in Council may be taken for the certificate referred to in subsection (2).

(4) Subsection (1) does not apply to the questioning of a witness in a civil proceeding conducted before a jury, if the judge thinks that the questioning of that witness would unduly influence the jury.

**Impeachment and contradiction of witness**

16 (1) A party producing a witness must not impeach the credibility of the witness by general evidence of bad character, but if, in the opinion of the judge or person presiding over the proceedings, the witness proves adverse, that party may

    (a) contradict the witness by other evidence, or

    (b) subject to subsection (2) and by leave of the judge or person presiding, prove that the witness made at other times a statement inconsistent with the present testimony of the witness.

(2) Before giving the proof referred to in subsection (1) (b),

    (a) the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and

    (b) the witness must be asked whether or not the witness made the statement.

**A witness who is unable to speak**

17 A witness who is unable to speak may give his or her evidence in any other manner that is intelligible.

**Record of Provincial Court**

18 (1) An official reporter or court recorder may be appointed to report or record the evidence and proceedings in the Provincial Court or before a justice and the notes taken or recording made at any proceeding by the reporter or recorder is the record of the evidence offered in the court or before the justice.

(2) An official reporter or court recorder must take the following oath before the Provincial Court and the oath must be filed in the office of the court clerk or with the court:

I,................, swear that I will faithfully and accurately, to the best of my skill and ability, report or record the proceedings in each case or matter in which it is my duty to act as reporter or recorder and will transcribe or have transcribed, my notes, or the record of them, should that be required. So help me God.

(3) No further oath is required to be administered to an official reporter or court recorder for proceedings in the court or before a justice.

**Sound recording apparatus and official record**

19 The Lieutenant Governor in Council may

    (a) make regulations for the use of sound recording apparatus in the recording of evidence and statements in the courts of British Columbia,

    (a.1) make regulations respecting what constitutes the official record of a court proceeding and respecting evidence recorded in, amendment of and supplements to the official record,

    (b) authorize the use of any type, make or model of apparatus, and

**26**