THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation, <br><br> Defendants. | NO. C04-2338 RSM <br><br> **PLAINTIFF'S MOTION TO COMPEL** <br><br> NOTE ON MOTION CALENDAR: OCTOBER 28, 2005 |

## I.   INTRODUCTION

This case involves claims of sexual abuse by four children at the hands of a Mormon boy scout leader, Jack LoHolt. In prosecuting the claims, plaintiffs have attempted to take several depositions of Mormon bishops. Those attempts have been thwarted by defense witnesses' refusal to answer questions and/or defense counsel's improper instructions to the witnesses not to answer certain questions, in violation of the spirit and letter of the Federal

MTN TO COMPEL - 1 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Dockets.Justia.com

Rules governing discovery. In bringing this motion to compel, plaintiffs provide brief excerpts from the depositions of three Mormon bishops – Bishop Randall Borland, Bishop Philip J. Coleman and Bishop Frederick Johansen. Plaintiffs request that these bishops be compelled to appear for deposition and answer questions posed consistent with this Court's order.

## II. STATEMENT OF RELEVANT FACTS

### A. BRIEF FACTUAL BACKGROUND.

Plaintiffs have alleged that they were either members of the Mormon Church and during their childhood attended the Kent 2nd Ward of that entity or came into contact with Jack LoHolt through his involvement with the Mormon Church, Mormon clergy, or Mormon scouting organization.[1] Jack Allen Loholt was also a member of the Kent 2nd Ward of the Mormon Church during the plaintiffs' childhood and was an assistant scout leader for that Ward.

Plaintiffs also contend defendant Corporation of the President of the Church of Latter-day Saints ("COP") and LDS Social Services had control over the actions of Loholt, had notice of his pedophilia, and failed to take any steps to protect plaintiffs from Loholt. Plaintiffs now bring this action seeking damages as a result of the sexual abuse they suffered at the hands of Jack Loholt.

### B. PROCEDURAL FACTS.

During the discovery phase of this case, plaintiffs have attempted to take depositions of three Mormon Bishops. On numerous occasions, the witnesses have refused to answer

---

[1] *See Complaint on file herein.*

MTN TO COMPEL - 2 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

questions by assertions of privilege. Additionally, defense counsel have, on numerous occasions, impermissibly instructed the witnesses not to answer questions and made speaking objections.

Plaintiffs have asserted, and believe, that these Bishops have information critical to the prosecution of this case. Unfortunately, the Bishops, and counsel for defendants have refused to answer the questions posed. For the reasons discussed below, plaintiffs request that this Court compel the deposition answers and allow further inquiry of these bishops.

C.  **DEPOSITION EXCERPTS.**

Throughout the discovery in this case, COP has asserted that its witnesses need not answer questions if **any** information sought was obtained by the witness in his "ecclesiastical" capacity as a Mormon Bishop. For example, in the deposition of Randall Borland, COP's attorney, Thomas Frey, asserted that the witness need not answer questions because the clergy-penitent privilege applied and the First Amendment barred the inquiry. At other times the instructions not to answer were based on other oblique assertions of privilege and confidentiality.

The following excerpts from the depositions of Randall Borland, Philip Coleman and Frederick Johansen, are demonstrative:

**(1) Randall Borland:**[2]

Q. . . . Did you ever make a referral to LDS Social Services for counseling Jack Loholt?

A. I don't remember. I do not remember that.

Q. Did you do anything or say anything to anyone else following the communication that you received from this person?

---

[2] The excerpts from the deposition of Randall Borland are attached to the Declaration of Michael T. Pfau as **Exhibit A.**

MTN TO COMPEL - 3 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

1     A. Regarding specifics?

2     Q. Anything.

3     A. Yes.

4     Q. What did you do or say?

5     A. I talked –

       MR. FREY: Again, I'm going to caution you that if you took any steps in your capacity as a clergyman and ecclesiastical in accordance with the teachings and beliefs of the LDS religion that you are not obligated to break that confidentiality if in fact you learned that in those circumstances.

       And for the record, Counsel, what I'm trying to do here is allow you to ask questions without reaching what I believe is a privilege that he has as a bishop to receive information, treat it with confidentiality, and act on it in ecclesiastical fashion.

       MR. KOSNOFF: Could you identify the source of that privilege.

       MR. FREY: *State v. Martin* and the statute, the First Amendment.[3]

       * * *

       MR. FREY: And there's a third item involved here that we haven't gotten to yet, but that is the privacy rights of individuals who may be involved, if any. But I'm trying not to interfere with your legitimate discovery area, and so I'm trying to be very careful here. And I want you to understand that it's not my purpose here to frustrate your discovery, but I do want him to be careful that he doesn't breach any of the confidentiality that is imposed upon him by his position as a clergyman.

       So if you can read back the question. Sorry about the speech –

       MR. KOSNOFF: Well, I -- we have gone through the criteria for the appropriate assertion of the clergy penitent privilege,

---

[3] *Borland Dep., pg. 58, ll. 4 – pg. 59, ll. 4.*

MTN TO COMPEL - 4 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

and that shields him from disclosing the content of privileged communications based upon that statute. My questions now are not directed at the content of that communication. My questions are directed at what he did or said to others following that communication.

MR. FREY: But that may very well involve his working in an ecclesiastical capacity and involve conversations with other people that are privileged, and that's my point.

MR. KOSNOFF: That – it's our position that that would not be privileged and that he is required to answer those questions.

MR. FREY: Just a second.

(Defense counsel confer)

MR. FREY: I – I've made my objection. We disagree. Okay?

MR. KOSNOFF: Are you directing him not to answer.

MR. FREY: No, I'm not. I'm asking him if he can answer without violating – if he can answer about what he did without violating any confidentiality that I believe he has the right to maintain as a bishop, then he may answer the question.

A. I believe I can do that. Confidentiality is very important to me. I – the only reason I even hesitate at all is because of the conversation, and I'm very respectful of both of you. I didn't talk about, to another person, the content of my discussion with the ward member that contacted me, but the circumstance surrounding it I did, and that was Jack LoHolt. I had to talk with him.[4]

### (2) Philip J. Coleman:[5]

Q.  Did you receive any information of any kind from any person that Jack LoHolt was allegedly engaging in sexually inappropriate activity?

---

[4] *Borland Dep.*, pg. 59, ll. 22 – pg. 61, ll. 13.

[5] The excerpts from the deposition of Philip Coleman are attached to the Declaration of Michael T. Pfau as **Exhibit B.**

MTN TO COMPEL - 5 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

A    Yes.

Q    From who whom did you learn that?

MR. FREY: I am going to object at this point in time.

Let me tell you the basis for the objection.

He was a bishop at the time, and we treat those communications as confidential, and in trying to help you with this answer, I'm not trying to present a roadblock.

As an accommodation and because of the fact that the individuals involved have not authorized this information to be given, I think they have a right to privacy in that regard and a right to have it protected.

As an accommodation, I'll allow the witness to tell you in a general sense what he heard had happened, and I'm not waiving any privilege by doing that.

If you'll accept that, we can go forward. You don't have to accept my objection, but if you want to go forward, I'm willing to do that on this basis.

MR. KOSNOFF: Tom, I would like to take a brief bathroom break and come back and continue this dialogue on that point.

MR. KOSNOFF: Mr. Frey, this is not unfamiliar ground to the two of us, this point. We've been at similar points in other cases.

From your comments I take that you are making an objection based upon a number of criteria. One, I think I heard an assertion of the clergy penitent privilege.

MR. FREY: I'll make it simple for you. I'll tell you what the basis for my objection is: one, it's a constitutional objection on the free exercise clause; number two, it **may** also be on the basis of the priest penitent privilege depending on the circumstances under which he may have heard something; and the third ground is that we've said in our answers to interrogatories I'm not prepared to reveal the names of anybody or have my client reveal the names of anyone who has been molested without that person's consent because I know for a fact, and I've gotten court

MTN TO COMPEL - 6 of 18  
(C04-2338 RSM)  
[152188 v03.doc]

LAW OFFICES  
GORDON, THOMAS, HONEYWELL, MALANCA,  
PETERSON & DAHEIM LLP  
ONE UNION SQUARE  
600 UNIVERSITY, SUITE 2100  
SEATTLE, WASHINGTON 98101-4185  
(206) 676-7500 - FACSIMILE (206) 676-7575

orders on this, that it can be devastating to have someone knock on their door and say, "I understand you've been abused and I'd like to talk to you about it."

For those three reasons-- I am willing to go forward because I know that you have the right to determine knowledge and what they knew and should have known, and I'm willing to let him tell you in a general fashion, and I guess I could proffer this for the record what he can tell you to get you to where you need to go—

MR. KOSNOFF: Before we go there, I think this is important that we establish enough of a factual record here for Judge Martinez so we only have to take one trip up and bring Dr. Coleman back one more time as opposed to two more times, so I would propose that with respect to the assertion of the claimed privileges that you're making, that you take a moment and establish whatever factual basis you would like with Dr. Coleman to support the assertion of those privileges.

I'm inviting you to do that because, as you know, it's the proponent of the privilege that carries the burden of establishing it, and I just want to make sure that when this goes up to Judge Martinez, that you've had a full opportunity to make as full an evidentiary record as you need to make your arguments to him.

MR. FREY: It's not my burden. Under the rule I'm exercising those privileges, and I've enumerated them.

If you wish to question the witness, you are free to do that. If you choose to go to Judge Martinez, I'll be happy to supply whatever additional information I need by way of affidavit or otherwise.

I've tried to explain to you, and you're free to ask him the circumstances and free to ask him a number of questions, and I think you can get the information that you need without revealing these names.

Quite frankly, Tim, I don't want to reveal any names or my client to reveal any names that he may have heard of that are not public right now because I simply don't think it's appropriate.[6]

---

[6] *Coleman Dep., pg. 45, ll. 18 – pg. 49, ll. 11 (emphasis added).*

MTN TO COMPEL - 7 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

**(3) Frederick Johansen:**[7]

Q: For the purposes of this question, I would like you to refer to the definition of sexual contact if you have any question about the definition, but during your time as a bishop did you ever come to learn any information about Jack LoHolt having sexual contact as it's defined there in Exhibit No. 1, with any children under the age of 18?

  MR. FREY: Before you answer that, I am going to claim privilege if he learned it in any context in which he had a member of the ward coming to him in his capacity as a bishop, either in a confessional sense or in a sense of spiritual counseling with him. If he learned it otherwise, that he just heard a rumor in the ward, he's free to answer that.

Do you understand what I'm saying?

A: Yes.

  MR. FREY: Then go ahead and answer.

  THE WITNESS: The answer is no.

Q: By Mr. Reich) "No," meaning you've had no person in my capacity approach you with any information about LoHolt, Jack LoHolt, having sexual contact with Children under the age of 18?

  MR. FREY: Again, I'm going to object and instruct the witness not to answer that question with regard to anyone who came to see him in his capacity as a bishop. Other than that, he can answer, and I think he has.

  MR. REICH: Well, I want to explore that because I'm not satisfied that there has been any foundation yet for asserting that as a privilege.[8]

                              * * *

---

[7] The excerpts from the deposition of Frederick Johansen are attached to the Declaration of Michael T. Pfau as **Exhibit C.**

[8] *Johansen Dep., pg. 29, ll. 1 – pg. 30, ll. 7.*

MTN TO COMPEL - 8 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

1
2      Q: I just want to know whether at any point in time you learned while you were a bishop that LoHolt had had sexual contact with children under the age of 18.
3
4      MR. FREY: I am making the same objection. You can go ahead and answer within the confines that I told you.
5
       THE WITNESS: The answer is no.[9]
6
                        * * *
7
8      Q: Have you ever had discussions with any others in the church hierarchy, meaning other bishops, stake presidents, area presidents, regarding Jack LoHolt?
9
10     MR. FREY: Before you answer that, if you had discussions with them in your capacity as a bishop, in your ecclesiastical capacity concerning Jack LoHolt, then that's protected in my opinion, and I instruct you not to answer. If you had discussions outside of that, then you should answer Counsel's question.
11
12
13     THE WITNESS: The answer is no.[10]
14

15                     ### III. ARGUMENT

16     **A.  BROAD DISCOVERY RULES.**

17     The purpose of discovery is to provide a mechanism for making relevant information
18     available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties
19     is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct.
20     385 (1947). Thus the spirit of the rules is violated when advocates attempt to use discovery
21     tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse
22     of discovery or unnecessary use of defensive weapons or evasive responses. All of this results
23     in excessively costly and time-consuming activities that are disproportionate to the nature of
24
       ---
25     [9] *Johansen Dep.*, pg. 30, ll. 12-18.
       [10] *Johansen Dep.*, pg. 36, ll. 8-18.
26
       MTN TO COMPEL - 9 of 18
       (C04-2338 RSM)
       [152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

the case, the amount involved, or the issues or values at stake. *Wash. State. Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993).

The concept that a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials is reflected in numerous decisions from the Washington Court of Appeals. In *Gammon v. Clark Equip. Co., 38 Wash. App. 274, 686 P.2d 1102 (1984), aff'd,* 104 Wash. 2d 613, 707 P.2d 685 (1985), the Court of Appeals held that a new trial should have been ordered because of discovery abuse by the defendant:

> The Supreme Court has noted that the aim of the liberal federal discovery rules is to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." The availability of liberal discovery means that civil trials no longer need be carried on in the dark. The way is now clear . . . for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

This system obviously *cannot* succeed without the full cooperation of the parties. Accordingly, the drafters wisely included a provision authorizing the trial court to impose sanctions for unjustified or unexplained resistance to discovery. *Gammon*, 38 Wash. App. at 280.

B.  **COP ASSERTS THE CLERGY-PENITENT PRIVILEGE TOO BROADLY AND, IN DOING SO, IS INTERFERING WITH THE DISCOVERY PROCESS.**

The clergy-penitent statute, RCW 5.60.060(3) provides:

> A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any **confession** made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs.

MTN TO COMPEL - 10 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

(Emphasis added). A confession is defined as a confidential **communication** between a clergy and a **penitent.** *State v. Martin,* 137 Wn.2d 774, 789, 974 P.2d 1020 (1999) (emphasis added). The privilege will only apply if following elements must be present:

    a. a **communication** must be heard by a member of the clergy:

    b. The clergy must have a religious duty to keep the communication secret and the **penitent** must have a reasonable expectation that it will remain private.

    c. The communication must be **penitential in nature** and the clergy receiving the communication must be required by the tenets of his religion to receive penitential communications and to provide spiritual instruction and guidance in return.

    d. The communication must have been received in the course of discipline enjoined by the church to which he or she belongs.

*State v. Martin,* 91 Wash. App. 621,630, 789; 959 P.2d 152,158-159(1998) (emphasis added).

Ostensibly on the basis of this privilege, COP has refused to permit its witnesses to answer myriad questions far beyond the narrow strictures of *State v. Motherwell,* 114 Wn.2d 353, 788 P.2d 1066 (1990). As discussed below, COP's assertions of the privilege is misplaced.

### (1) THE CLERGY-PENITENT PRIVILEGE DOES NOT NECESSARILY APPLY TO IDENTIFICATION OF PERSONS WHO DISCLOSED INSTANCES OF CHILD ABUSE.

COP, and their witnesses, have refused to disclose the identity of persons who advised them that Jack LoHolt was sexually abusing minors or to answer questions about those conversations, instead of invoking a blanket assertion of privilege. A brief sampling of Bishop Borland's testimony and (COP's attorney's improper interjection of privilege objections is set out below):

    Q. At some point in time when you were a member of the Kent Second Ward, did you become aware of any complaints or

MTN TO COMPEL - 11 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

concerns that Jack Loholt may be engaging in sexually inappropriate activity?

MR. FREY: Before you answer that question, I want to tell you that you are not to reveal any confidences that you gained in your capacity as a bishop.

A. Okay. Would you say that again, please?

MR. KOSNOFF: Could you repeat the question.

(The record was read as requested)

A. You said, 'May be.' Yes, I did. [11]

* * *

Q. (BY MR. KOSNOFF) Did you receive a complaint or report from anybody that Jack Loholt had engaged in sexually inappropriate activity during the time that you were bishop of the Kent Second Ward?

MR. FREY: Now, again, Bishop, I'm going to caution you that if you learned any of this information in your capacity as a bishop in a confidential communication that you have the privilege not to answer it, in my opinion. Counsel may differ with that, but I would instruct you not to answer if it that's the basis upon which you gained you information.[12]

A series of questions relating to plaintiffs' attorney's attempt to obtain foundational informational about the assertion of privilege, and to obtain information about the identity of the person who complained followed this testimony. As is demonstrated by the various deposition excerpts provided herewith, the entire line of questioning was constantly interrupted by defense counsel's directions and speaking objections to the witness to "remind" him of the clergy-penitent privilege.

---

[11] *Borland Dep., pg. 51, ll. 12-22.*

[12] *Borland Dep., pg. 54, ll. 11 – pg. 55, ll. 9.*

MTN TO COMPEL - 12 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Plaintiffs' counsel then attempted to determine whether the witness was properly invoking the clergy-penitent privilege. For instance, counsel questioned the witnesses on whether the content of the communication had been divulged to third persons. Unfortunately, while Bishop Borland admitted he received the notification that Jack LoHolt was sexually abusing children of the Mormon Church,[13] and admitted that he discussed the "content of [his] discussion" about Jack LoHolt's sexual misconduct with Jack LoHolt himself,[14] Bishop Borland would not disclose the identity of the person who made the disclosure and would not disclose the content of the communication he had with Jack LoHolt or even the reason the communication was made.[15] This was a blanket violation of the Federal Rules of Civil Procedure.

The clergy-penitent privilege simply does not apply in this circumstance. If someone came to Bishop Borland (as is clear happened) and advised Borland that LoHolt was committing sexual abuse on minors such information cannot be said to be within the clergy-penitent privilege.[16]

---

[13] *Borland Dep., pg. 56-58; pg. 61.*

[14] *Borland Dep., pg. 61, ll. 12-13.*

[15] *Borland Dep., pg. 61, ll. 17-21.*

[16] In *Scott v. Foster and the Church of Jesus Christ of Latter Day*, No. 98-12-08640, Cir. Court, Multnomah County, OR), a case involving identical issues and allegations, the Church's 30(b)(6) designee testified regarding the church's policies and its confession doctrine and practice.

Dr. Lloyd Hale testified that with respect to confessions in the Mormon religion a bishop is obliged to keep a "confession" strictly confidential. A bishop may not disclose the information to anyone without the permission of the confessor. *Deposition of Lloyd Hale, pg. 42 (attached to Declaration of Michael Pfau as **Exhibit D**).* The confession may not be disclosed to the bishop's counselors nor to the Stake President without the consent of the penitent. *Hale Dep., pg. 43.* Disciplinary proceedings can be based upon the confession but the confession itself may not be used in the disciplinary court. *Hale Dep., pg. 45*

In the instant case, Bishop Borland received a communication from someone because shortly after receiving it he immediately went to Jack LoHolt and removed him as the ward's scoutmaster. *Borland Dep. (**Exhibit A** to Declaration of Michael Pfau, pg. 81).* According to Borland, LoHolt accepted his reasons for removing him as scoutmaster. *Borland Dep., pg. 82.* If the complaint Bishop Borland received regarding LoHolt had been a confession, then under Mormon doctrine according to the defendants' own 30(b)(6) designee, Borland would not have been permitted to disclose it to LoHolt.

MTN TO COMPEL - 13 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

First, the person reporting the abuse very likely did not have a reasonable expectation of privacy about the communication. For example, the person may have been reporting the sexual misconduct for the purpose of ensuring that LoHolt was removed from any further contact with minors.[17] Furthermore, if the communication was for such a purpose, it cannot be said that the communication was "penitential in nature." Defendant's blanket objections limit plaintiffs from exploring these issues. At the very minimum, plaintiffs should be allowed to learn the identity of the person or persons who reported LoHolt's sexual abuse of minors and should be permitted to obtain information about the reason for the communications. Follow-up discovery into the content of the communication may or may not be permitted after such information is obtained. However, defendants should not be permitted to completely thwart plaintiffs' attempts at discovering relevant information without divulging the basis for the assertion of privilege.

### (2) THE CLERGY-PENITENT PRIVILEGE DOES NOT APPLY IF THERE WAS NO REASONABLE EXPECTATION THE COMMUNICATION WOULD BE KEPT CONFIDENTIAL.

A communication is privileged when, among other things, the penitent has a reason to believe that the communication will remain private. *State v. Martin,* 137 Wn.2d at 789. An objective test is used to determine whether the communicator intended a communication be confidential and the privilege will apply only if the communicator's intent that the "communication be confidential" is reasonable under the circumstances. *State v. Warner,* 125 Wn.2d 892, fn. 8. When communications are made for the purpose of providing a third party

---

Further, victims' complaints or other reports of sexual molestation by a member would not constitute confessions within the doctrine of the Mormon church. According to Dr. Hale, a parent's complaint to a bishop that her child had been molested by another member would not constitute a confession under Mormon doctrine. *Hale Dep., pg. 114.*

[17] Of course, plaintiffs do not know the answer to this question because defense counsel would not permit the witness to answer even foundational questions on this issue.

MTN TO COMPEL - 14 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

with information, there is no confidentiality anticipated or expected. *Id.* citing *J.N. v. Bellingham Sch. Dist. 501*, 74 Wn.App. 49, 63-64, 871 P.2d 1106 (1994).

Here, again, because of blanket assertions of privilege, plaintiffs cannot determine whether the persons who made the communications to Bishop Borland had a reasonable expectation that the communication would remain strictly confidential or that the information would be held inviolate by the bishop. A number of examples come to mind as to why such expectation would not exist. For example, if the persons who communicated the information to Bishop Borland were knowledgeable about the then-existing[18] statutory duty of clergymen to report instances of child abuse, they certainly could not have had a reasonable expectation that the information would remain secret. In that regard, it cannot be logically argued that when information is disclosed knowing it will be reported to a third person that there is a reasonable expectation that the communication will remain secret.

Second, if the persons reporting the instances of sexual abuse to Bishop Borland expected him to do something about Jack Loholt, e.g., remove him from his position as a scout master, it would be reasonable to assume that the information would be disclosed – at least for the purpose of advising Loholt, and others within the congregation, as to the reason Loholt was being removed as a scout master.[19]

Plaintiffs should be allowed, at a minimum, to obtain information about whether the persons who reported the abuse had any reasonable expectation that their disclosures would remain secret. COP's and its witnesses blanket invocation of the clergy-penitent privilege prohibits plaintiffs ability to do so.

---

[18] LoHolt's abuse of the plaintiffs occurred during the time when the mandatory reporting statute applied to members of the clergy.

[19] In fact, again referring to COP's own 30(b)(6) designee's testimony, the Church policy and practice is to inform various leadership bodies within the ward when it becomes aware that an individual is a child molester. *Hale Dep., pg. 51 – 53.*

MTN TO COMPEL - 15 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## C. THE CLERGY-PENITENT PRIVILEGE DOES NOT APPLY AS TO REASONS LOHOLT WAS REMOVED FROM BEING A SCOUT MASTER.

Finally, and most importantly, Bishop Borland would not answer questions relating to why he took steps to remove Jack Loholt as a scout master for the church. Again, Borland, on the advise of COP's counsel, determined that such information would reveal the content of allegedly privileged communications. The following testimony occurred on that issue:

> Q. Did you remove Jack Loholt from any positions working with youth in the ward while you were bishop?
>
> A. Did I removed him?
>
> Q. Yes.
>
> A. Released him –
>
> Q. Okay.
>
> A. – yes.
>
> Q. And what positions did you release him from?
>
> A. His responsibility in scouting.
>
> Q. Why did you release him?
>
>    MR. FREY: You can't –
>
> A. I can't divulge that.
>
> Q. I'm not asking you to reveal any communications. I'm asking you for your personal reasons why you released him from scouting.
>
>    MR. FREY: Same objection. You're entitled to claim the privilege.[20]

As discussed herein, under certain circumstances, a communication may be privileged. However, there is **no** authority for the proposition that the reason underlying one's removal

---

[20] *Borland Dep.*, pg. 72, ll. 23 – pg. 73, ll. 15.

MTN TO COMPEL - 16 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

from a position over children is contained within the privilege. For example, Borland may have removed LoHolt as a scout master because he (Borland) believed LoHolt was a danger to young boys. If such an example is the reason for removal, the reason would not be covered by the privilege because, simply, a **belief** is not a **communication**. Plaintiffs should, at a minimum, be permitted to inquiry into the reasons why Borland removed LoHolt from his position as scout master.

### D. THERE IS NO "FIRST AMENDMENT" TESTIMONIAL PRIVILEGE.

COP asserted, throughout the witnesses' deposition, that the witnesses could invoke the "First Amendment" testimonial privilege. There is no such privilege. Furthermore, even if such a privilege existed, it would not apply in the circumstances of this case because even if a statute compels or pressures persons to violate a sincerely held tenet of their religious beliefs, it does not violate the free exercise clause of the First Amendment if the statute carries out a compelling governmental interest and the statutory means of satisfying such interest imposes the least amount of restriction on the practice of religious beliefs.[21] Washington state Courts have already held that the prevention of child abuse constitutes a compelling state interest for purposes of determining the validity of a statute under the First Amendment's guaranty of the free exercise of religion.[22]

If COP has authority for the proposition that there is a First Amendment testimonial privilege it must come forward with that authority. Plaintiffs' assert there is none. COP cannot shield itself from liability or thwart plaintiffs quest for the truth by asserting a broad, blanket First Amendment privilege.

---

[21] *Motherwell*, 114 Wn.2d at 362-363.
[22] *Motherwell*, 114 Wn.2d at 365.

MTN TO COMPEL - 17 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

E.  **AWARD OF COSTS.**

Plaintiffs do not seek sanctions or fees associated with this motion but do request the Court order defendants to pay all costs associated with the continued depositions.

## IV.  CONCLUSION

Plaintiffs seek the opportunity to re-depose these bishops as to all communications they had regarding the abuse of children by LoHolt outside of the narrow confines of the clergy-penitent privilege. Specifically, plaintiffs request the opportunity to obtain testimony regarding the (1) the names of the witnesses who complained and/or reported LoHolt's abuse of minors; (2) the substance of the complaint and/or reports of abuse; (3) the circumstances surrounding complaints and/or reports about LoHolt's abuse of minors; (4) all communications between clergy regarding complaints and/or reports of LoHolt's abuse of minors; (5) the reason for LoHolt's removal as boy scout leader; and (6) all other appropriate relief this Court deems just under the circumstances.

DATED this 7th day of October, 2005.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By _____
Michael T. Pfau, WSBA No. 24649
mpfau@gth-law.com
Michelle A. Menely, WSBA No. 28353
mmenely@gth-law.com
Co-Counsel for Plaintiffs


LAW OFFICES OF TIMOTHY D. KOSNOFF

By _____
Timothy D. Kosnoff, WSBA No. 16586
timkosnoff@comcast.net
Co-Counsel for Plaintiffs

MTN TO COMPEL - 18 of 18
(C04-2338 RSM)
[152188 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575