The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| KENNETH FLEMING, et al., | NO. 04-2338 RSM |
|---|---|
| Plaintiffs, v. CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, et al., Defendants. | DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL  Note on Motion Calendar: Friday, October 28, 2005 |

## I. INTRODUCTION

Plaintiffs' motion is both procedurally flawed and lacking in substantive merit. The motion is six pages longer than allowed by local rules and plaintiffs did not seek leave of court to file an overlength memorandum. Likewise, plaintiffs failed to confer with counsel for the Corporation of the President of The Church of Jesus Christ of Latter-day Saints (hereafter "LDS Church" or "Church") regarding several of the issues raised in this motion that likely could have been resolved without the need for court intervention.

Plaintiffs assert that the LDS Church has invoked the clergy privilege too broadly, but plaintiffs are asking this Court to read the privilege so narrowly that it would rarely, if ever, apply. Even though an LDS Church bishop has testified that the communications at issue were penitential in nature and intended to be confidential, plaintiffs are seeking the "name" of an unidentified communicant and the "substance" of the privileged communications.[1] Plaintiffs cite no legal authority that would justify this

---
[1] Motion to Compel at p.18

OPPOSITION TO MOTION TO COMPEL - 1
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Dockets.Justia.com

implied abrogation of the privilege. To the contrary, Washington law regarding the clergy privilege provides broad protection for private communications between clergy and members of his congregation which clearly protects the communications at issue here. Accordingly, plaintiffs' motion is lacking merit and should be denied.

## II. STATEMENT OF RELEVANT FACTS

1. Plaintiffs are seeking to compel testimony from three LDS Church Bishops, namely Bishop Randall Borland, Bishop Philip J. Coleman and Bishop Frederick Johansen.

2. At the local level, bishops preside over LDS Church congregations. They are the ecclesiastical leaders for these local congregations, which are referred to as wards.[2]

3. The bishop is the presiding clergyman of his ward and has ecclesiastical authority over its members.[3] Bishops must be "ordained" by a laying-on-of-hands ceremony by those with priesthood authority before they can serve in their respective callings.

4. Church doctrine, policies and ecclesiastical practice require a bishop to hold all private communications made by members in the strictest confidence. Exhibit 1 to Declaration of Marcus Nash ("Nash Decl."), Church Handbook of Instructions ("Church Handbook") at 22, 93. Maintaining the confidentiality of bishop-member communications is essential to the ability of all bishops to fulfill their ecclesiastical responsibilities. Without the expectation of confidentiality, they would not be able to provide effective spiritual guidance to members of their ward, an essential aspect of the office of bishop.

### A. Bishop Johansen Did Not Invoke the Clergy-Communicant Privilege.

5. Plaintiffs deposed Bishop Frederick R. Johansen on September 16, 2005. During the deposition, Bishop Johansen never invoked the clergy-communicant privilege.

6. On a few occasions when plaintiffs' counsel asked questions that could have potentially elicited responses that would have included clergy privileged communications, counsel for the Church

---

[2] A ward consists of approximately 300-600 members living within specific geographical boundaries. Members attend the ward in which they reside.
[3] Bishops are laymen, not professional churchmen: they are doctors, lawyers, businessmen, plumbers, etc. who perform their heavy clerical responsibilities after work hours and on weekends.

OPPOSITION TO MOTION TO COMPEL - 2
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

instructed Bishop Johansen not to answer *if* he would have to reveal penitential communications in doing so:

> MR. FREY: Before you answer that, I am going to claim privilege if he learned it in any context in which he had a member of the ward coming to him in his capacity as a bishop, either in a confessional sense or in a sense of spiritual counseling with him.
>
> If he learned it otherwise, that he just heard a rumor in the ward, he's free to answer that.

Exhibit 2 to Nash Decl., Deposition of Bishop Johansen ("Johansen Dep.") at 29:8-15.

7. Although counsel for the Church renewed this instruction in response to other questions, Bishop Johansen answered all questions Plaintiffs' counsel asked of him without ever invoking the clergy privilege. Johansen Dep. at 28:6-37:21.

**B.   Bishop Coleman Did Not Invoke the Clergy Privilege As Asserted by Plaintiffs.**

8. Contrary to plaintiffs' claims, Bishop Coleman testified regarding his communication with a member of his congregation about sexual molestation allegations against Jack LoHolt.

9. Counsel for the Church initially instructed the bishop not to divulge any confidential communications made to him while acting as clergy:

> Q: Did you receive any information of any kind from any person that Jack LoHolt was allegedly engaging in sexually inappropriate activity?
> A: Yes.
> Q: From who whom did you learn that?
> MR. FREY: I am going to object at this point in time. Let me tell you the basis for the objection. He was a bishop at the time, and we treat those communications as confidential, and in trying to help you with this answer, I'm not trying to present a roadblock.
>
> As an accommodation and because of the fact that the individuals involved have not authorized this information to be given, I think they have a right to privacy in that regard and a right to have it protected.

Exhibit 3 to Nash Decl., Dep. of Bishop Coleman ("Coleman Dep.") at 45:18-46:9.

10. Bishop Coleman decided during the deposition that the responsive communication with the member of his congregation regarding Jack LoHolt was likely not covered by the clergy privilege:

> Q: Was the person who communicated this to you a member of the Mormon church?
> A: Yes.

OPPOSITION TO MOTION TO COMPEL - 3
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900   FAX 206.624.6885

| | | |
|---|---|---|
| 1 | Q: | Was this communication made to you in your capacity as bishop? |
| 2 | A: | I think so. |
| | Q: | Okay. Did it occur at, for example, the ward building or your office? |
| 3 | A: | I don't remember that. |
| 4 | Q: | Okay. Was the person who communicated this to you, in your view, making a statement of confession or penitential contrition? |
| 5 | A: | No. |
| 6 7 | Q: | Under the doctrines and tenants of your faith, do you believe that you are absolutely required to keep what that person said to you confidential, and I mean that you cannot repeat it to anyone? |
| 8 | A: | No. |

Coleman Dep. at 50:6-23.

11.    Bishop Coleman revealed the contents of his discussion regarding sexual molestation by Jack LoHolt. Coleman Dep. at 53:5-25.

12.    However, Counsel for the Church instructed Bishop Coleman not to reveal the names of the victims because he was concerned about the privacy rights of third parties who are not involved in this litigation. Coleman Dep. at 53:5-25.

13.    Counsel for the Church is willing to turn over the names of the victims if Plaintiffs are willing to enter a protective order keeping the identities of the victims confidential.

14.    Bishop Coleman did invoke the clergy privilege in regard to privileged communications with Jack LoHolt, but Plaintiffs did not object to this in the Motion to Compel or during the deposition. Coleman Dep. at 54:15-56:3.

**C.    Bishop Borland Invoked the Clergy Privilege in Regard to Confidential Communications Between Him and Members of His Congregation.**

15.    Bishop Borland did invoke the clergy-communicant privilege as to confidential communications he had with an unidentified member of his congregation or ward (the "Ward Member"), testifying that this was a confidential communication revealed to him during spiritual counseling that he was required to keep confidential under the discipline of his church:

Q:    So again my question is: Was this something that you learned in connection with pastoral counseling within the Church?

A:    Yes.

OPPOSITION TO MOTION TO COMPEL - 4
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

| | | |
|---|---|---|
| Q: | Was the information that you received something that you are required to keep confidential under the doctrines and teachings of your church? | |
| A: | Yes. | |
| Q: | Was the communication that you received something that you in fact kept confidential, that is, that you did not disclose to any other person? | |
| A: | Let me make sure I understand that. A communication not disclosed to anybody else? | |
| Q: | Correct. | |
| A: | The answer to that question, if I've heard the question correct, is yes or -- let me rephrase it, and then tell you what I thought you said. | |
| Q: | Go ahead. | |
| A: | I did not disclose what was said confidentially to me to others. | |
| Q: | Just so that I'm clear on this, you did not disclose the content of what was said to you by that person to any other person? | |
| A: | The content of that conversation, that meeting, I did not. | |

Exhibit 4 to Nash. Decl., Dep. of Bishop Borland ("Borland Dep.") at 57:2-58:1.

16. Bishop Borland also claimed the clergy privilege in regard to certain confidential communications with Jack LoHolt. Borland Dep. at 71:17-72:7. Bishop Borland likewise testified that these communications were penitential communications that he was required to keep confidential under the teachings of the Church. Borland Dep. at 71:17-72:7.

## ARGUMENT

I. **Plaintiffs' Motion Should Be Stricken.**

   A. **Plaintiffs' Motion is Impermissibly Overlength.**

The Local Rules of Civil Procedure in the Western District of Washington clearly provide that a motion to compel "shall not exceed twelve pages." CR 7(e)(4). Plaintiffs' motion is a full six pages longer than allowed under this rule. Nor did Plaintiffs comply with CR 7(f), which requires the party file motion seeking leave to file an overlength memorandum. This alone is grounds for the court to strike plaintiffs' motion to compel.

   B. **Plaintiffs' Attempt to Confer and Certificate of Conference Are Both Inadequate.**

In addition, plaintiffs failed to adequately confer with counsel for the Church before filing their Motion to Compel. Plaintiffs included a one-line statement in the Declaration of Michael Pfau stating

OPPOSITION TO MOTION TO COMPEL - 5
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  that "On October 6, 2005, I along with my co-counsel Timothy Kosnoff, held a conference with
2  Marcus Nash Counsel for [COP] about the issues set forth in the Motion, including the assertion of
3  privilege and instructions not answer."  Declaration of Michael Pfau at ¶ 5.  Although plaintiffs'
4  counsel did speak with Mr. Nash, they only generally discussed their concerns that the Church asserted
5  the clergy privilege during Bishop Borland's deposition.  Nash Decl. at ¶¶ 2-5.  They never raised the
6  allegedly problematic claims of privilege made during the depositions of Bishop Johansen and Bishop
7  Coleman as they were required to do.[4]  *See, e.g., Shuffle Master v. Progressive Games*, 170 F.R.D. 166,
8  172 (D. Nev. 1996) ("the personal consultation requirement had to be more than just a 'formalistic
9  prerequisite' to judicial resolution of a discovery dispute, but rather a 'sincere effort' where both
10 parties presented the merits of their respective positions and meaningfully assessed the relative
11 strengths of each.") (citation omitted).

The whole purpose of the Rule 37 meet and confer requirement is to avoid involving the court
needlessly in these sorts of disputes.  Since plaintiffs' counsel did not confer in good faith as required
by Fed. R. Civ. P. 37(a)(2)(B), plaintiffs' motion to compel should be stricken.[5]

## II.  Plaintiffs' Motion Has No Application to Bishop Johansen, Since He Never Invoked the Clergy Privilege.

Bishop Johansen never claimed clergy privilege and plaintiffs' motion in regard to him is
utterly baffling.  Plaintiffs appear to assert in their motion that Bishop Johansen invoked the clergy
privilege in regard to questions regarding whether he learned of abuse while serving as bishop in the

---

[4] Had plaintiffs' counsel raised the allegedly problematic claims of privilege made during the depositions of Bishops Johansen and Coleman, those issues likely could have been resolved without court involvement since there were no claims of clergy privilege for Plaintiffs to take issue with in either of these depositions.
[5] *See, e.g., Loritz v. Pfingst*, 94 Fed.App. 439 (9th Cir. 2004) (upholding a district court's denial of a motion to compel because the moving party failed to adequately confer before filing the motion).  Plaintiffs' certificate of conference is also inadequate.  In order to satisfy the standard for a certificate of conference,

> Counsel seeking court-facilitated discovery ... must adequately set forth in the motion essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties.  That is, a certificate must include, *inter alia*, the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any. [*Shuffle Master v. Progressive Games*, 170 F.R.D 166 (Nev. 1996)].

Plaintiffs' declaration fails to specifically explain whether all allegedly objectionable claims of privilege Plaintiffs raise in their motion were discussed with Marcus Nash or only those relating to Bishop Borland.  Likewise, Plaintiffs do not state the outcome of the conference or what issues could not be resolved between counsel.

OPPOSITION TO MOTION TO COMPEL - 6
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

early 1970s, but no such assertion of privilege was ever made. *See* Facts at ¶¶ 6-7. Any fair reading of Bishop Johansen's deposition makes clear that he answered all questions posed to him. Plaintiffs may not be happy with Bishop Johansen's answers—that he never learned of any sexual abuse by Jack LoHolt while he was bishop—but their claim that he asserted the clergy privilege and should be compelled to answer further questions clearly lacks merit.

### III. Bishop Coleman Did Not Claim the Clergy Privilege As to the Information Plaintiffs Seek.

Contrary to plaintiffs' claims, Bishop Coleman testified regarding the discussion he had with a member of his congregation about sexual molestation allegations made against Jack LoHolt. *See* Facts at ¶¶ 10-11. Counsel for the Church allowed Bishop Coleman to testify on this point, objecting only to revealing the names of the victims. Bishop Coleman should not be required to turn over these names without a confidentiality agreement. The victims are third parties to this litigation, who have certain privacy rights and they have not given Bishop Coleman consent to make public the fact that they are victims of sexual abuse. *See Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir. 1976) (balancing the invasion of minor's privacy rights against the court's need for ward files).[6] These privacy rights should be respected even if no clergy privilege applies.

### IV. Bishop Borland Properly Claimed the Clergy Privilege.

Bishop Borland claimed the clergy privilege as to a confidential communication with (1) an unidentified Ward Member and (2) Jack LoHolt. These communications were clearly privileged despite plaintiffs' assertions to the contrary.

#### A. The Clergy-Communicant Privilege Protects the Substance of the Communications between the Bishops and the Communicants.

Washington law provides broad protection for such confidential communications between clergy and the communicant:

> A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any confession made to him or her in his or her

---

[6] *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992), *cert. den.*, 507 U.S. 910, 122 L. Ed. 2d 654, 113 S. Ct. 1255 (1993) (denying discovery of names of participants in a medical study due to privacy interests of the individual participants); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal. 1990) (balancing targeted individual's right of privacy against public's need for discovery in employment discrimination case).

OPPISITION TO MOTION TO COMPEL - 7
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

professional character, in the course of discipline enjoined by the church to which he or she belongs.

Wash. Rev. Code § 5.60.060. Washington courts have consistently held that communications between clergy and penitent are privileged when they are: (1) made to an ordained member of the clergy;[7] (2) a "'confession'"... "'in the course of discipline enjoined by the church'"; and (3) confidential. *State v. Martin*, 137 Wn.2d 774, 791, 975 P.2d 1020 (1999); *Doe v. Corp. of the President of the Church of Christ of Latter-Day Saints*, 122 Wn. App. 556, 563 (Wash. Ct. App. 2004).

1. **The Communications at Issue Clearly Qualify as Confessions Made in the Course of Discipline Enjoined by the LDS Church.**

In *State v. Martin*, 137 Wash.2d 774, 975 P.2d 1020 (1999), the Supreme Court of Washington held that "the religious entity, and not the courts, should decide what types of communications constitute confessions within the meaning of a particular religion." *Id.* at 787. It is important to note that the term "confession" does not refer solely to the disclosure of sins but also includes "spiritual counseling." *Id.* at 785. The court in *Martin* relied heavily on the Utah Supreme Court's decision in *Scott v. Hammock*, 870 P.2d 947 (Utah 1994); indeed, *Martin* cites *Scott* on how to define "confession." 137 Wn.2d at 787 n. 73. The *Scott* court determined that the term confession includes not only formal, penitential communications such as occur in the Catholic Sacrament of Penance, but also a disclosure or acknowledgment of something personal (*see* 870 P.2d at 951) or the "providing [of] confidential counsel and advice to . . . communicants in helping them to abandon wrongful or harmful conduct, adopt higher standards of conduct, and reconcile themselves with others and God." *Id.* at 952.

Bishop Borland unequivocally testified that the communications plaintiffs seek to discover involved the disclosure of deeply personal matters, that these communications were part of spiritual counseling and that he is required to keep these communications confidential under Church policy. *See* Facts at ¶¶ 15-16.[8] In other words, these were communications that the Bishops were duty bound to receive as LDS clergy in the "course of discipline enjoined" by the LDS Church. *Martin*, 975 P.2d at

---

[7] Plaintiffs have not disputed that the bishops were clergy for the LDS Church at all relevant times. Accordingly, it is not necessary to address this issue as the bishops clearly were ordained clergy at the time of their communications with the communicants.
[8] The Church Policy itself makes clear that Bishop Borland is required to keep these communications confidential. Church Handbook at p. 22.

OPPOSITION TO MOTION TO COMPEL - 8
7566-023128 36414.DOC

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

787 ("Determination of the definition of 'confession' [under the statute] is to be made by the church of the clergy member," and "'not the courts.'").

### 2. The Communications at Issue Are Confidential.

Likewise, LDS Church doctrine and policy explicitly mandate that bishops keep confidential these private communications. Church Handbook at 93 (requiring "[b]ishops" to "keep confidential all information that members give them in confessions and interviews.") This duty of confidentiality is so significant that Church clergy are required to maintain this confidentiality both "[d]uring and after their term of service in a calling ... [since] a breach of confidence can damage trust, testimonies, and faith." *Id.* at 22.

Thus the communications Bishop Borland had with the Ward Member and Jack LoHolt are privileged communications—they were made to clergy, they meet the definition of confession as explained in *State v. Martin* and the bishop is required by Church doctrine and policy to keep the communications confidential.

### 3. Bishop Borland Is Entitled to Invoke the Privilege on the Ward Member's Behalf.

Clergy are entitled to invoke the privilege on the communicant's behalf. *See, e.g., Harris v. Drake*, 65 P.3d 350, 362-63 (Wash. App. 2003) (citing *Martin* for the proposition that clergy may claim privilege on behalf of communicant); *In re Grand Jury Investigation*, 918 F.2d 374, 379-80 (3d Cir. 1990) (citing Proposed Fed. R. Evid. 506 for proposition that "[t]he clergyman may claim the privilege on behalf of the person. His authority is presumed in the absence of evidence to the contrary.").

Plaintiffs claim, without any factual support, that the Ward Member may not have had a reasonable expectation that this communication would be kept in confidence. Plaintiffs had ample opportunity to ask Bishop Borland about this directly, but elected not to do so. Bishop Borland has made clear, however, that he believes both he and the communicant expected this to be a confidential communication. *See* Facts at ¶¶ 15-16. Indeed, the fact that the Ward Member has not chosen to make

OPPOSITION TO MOTION TO COMPEL - 9
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

public the contents of the communication during the ensuing thirty plus years since the communication was made strongly suggests that a reasonable expectation of privacy existed.

### 4. The Privilege as to the Communications at Issue Has Not Been Waived.

Under Washington law, only the communicant can waive the privilege. *State v. Martin*, 137 Wn.2d at 789 (Wash. 1999) (stating that only the penitent can waive the privilege). Plaintiffs allege that Bishop Borland waived the privilege to his communication with the unidentified penitent by discussing "the 'content of [his] discussion' about Jack LoHolt's sexual misconduct with Jack LoHolt himself . . . ." Motion to Compel at 13 (quoting Bishop Borland Dep. at 61:11-12). Plaintiffs have badly misconstrued Bishop Borland's testimony. The very testimony plaintiffs cite to states just the opposite: "I didn't talk about, to another person, the content of my discussion with the ward member that contacted me, but the circumstance surrounding it I did, and that was Jack LoHolt." Bishop Borland Dep. at 61:11-12. In other words, Bishop Borland never revealed the contents of this confidential communication to anyone, although he did generally question Jack LoHolt about some of the issues raised in the confidential communication.[9] Plaintiffs' counsel should have been well aware that Bishop Borland testified he never breached this confidence. Plaintiffs' counsel asked Bishop Borland this very question several times and each time the bishop made clear that he had revealed the communication to no one. *See* Facts at ¶ 15. Accordingly, plaintiffs' waiver argument is disingenuous and lacks merit.

### B. Plaintiffs Are Not Entitled To Discover The Name Of The Unidentified Communicant.

Plaintiffs also assert that they are entitled to discover the name of the unidentified Ward Member that spoke confidentially with Bishop Borland. But Plaintiffs are unable to cite any legal support for their contention. Indeed, the identity of a communicant is integral to the confidentiality of the confession, and has been held so by every court that has addressed the issue. *See generally* 93 A.L.R. 5th 327 § 30[a]. In *Simpson v. Tennant*, 871 S.W.2d 301 (Tex.App. 1994), the court considered

---

[9] Even assuming arguendo that Bishop Borland disclosed some confidential communications received from the member of his congregation to Loholt, this would not necessarily waive the privilege since, as established above, the communication with LoHolt is also a privileged communication that the bishop is required to keep confidential under the discipline of the LDS Church. *See, e.g., State v. Guthrie*, 627 N.W.2d 401, 426 (S.D. 2001) (noting that the privilege is not waived when privileged information is disclosed in a second privileged communication).

OPPOSITION TO MOTION TO COMPEL - 10
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

whether the identity of a communicant who had knowledge concerning an accident that permanently paralyzed a three year old girl was also covered by the clergy privilege. The *Simpson* court concluded "that the identity of [the pastor's] communicant is protected" by the clergy privilege. *Id.* at 303. *See also Lewis v. New York City Housing Auth.*, 151 A.D.2d 237, 542 N.Y.S.2d 165 (N.Y.App.Div.1989) (holding that the communicant's identity is protected by the clergy privilege).

These holdings are consistent with numerous cases interpreting the patient-physician privilege that have found both the identity of the patient and the substance of the treatment to be protected by the privilege. *See, e.g., People ex rel. Dep't of Prof'l Regulation v. Manos*, 202 Ill. 2d 563, 577-578 (Ill. 2002); *Board of Medical Quality Assurance v. Gherardini*, 93 Cal.App.3d 669, 678-79 (1979). Thus, the clergy privilege clearly protects the identity of the Ward Member at issue.

    C.    **Bishop Borland Is Entitled to Claim the Privilege When Answering a Question that Would Involve Disclosure of Privileged Communications.**

Plaintiffs allege that it was inappropriate for Bishop Borland to claim the privilege in regard to his explanation for releasing Jack LoHolt as an assistant scout master. Motion to Compel at 16. Plaintiffs believe the bishop should have been able to do this without revealing privileged information. Bishop Borland did not agree. *See* Borland Dep. at 73:7-19. He believed he could not answer the question without revealing the substance of the privileged communications. *See id.* The bishop cannot be required to answer questions that would force him to risk inadvertently breaching the privilege.[10]

**V.    Counsel for the Church Properly Cited the First Amendment as a Basis for the Clergy Privilege.**

Plaintiffs correctly note that the Church cited to the First Amendment as a basis for the clergy privilege. But they fail to point out that this was not the only basis for the claims of privilege. Counsel for the Church consistently referred as well to Washington law and *State v. Martin*. There is no reason for the court to address here whether the First Amendment is an additional basis for the clergy privilege as Washington law alone provides an adequate basis for the Church's privilege claims. *Sissoko v.*

---

[10] In addition, the Free Exercise Clause church autonomy doctrine may prohibit discovery into ecclesiastical decision-making. *See, e.g., Hadnot v. Shaw*, 826 P.2d 978, 989 (Okl. 1992) ("The Free Exercise Clause prohibits civil courts from inquiring into any phase of ecclesiastical decisionmaking – its merits as well as procedure."); *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1 (1929); *Nally v. Grace Community Church of the Valley*, 763 P.2d 948 (Cal. 1988), *cert. denied* 490 U.S. 1007 (1989)

OPPOSITION TO MOTION TO COMPEL - 11
7566-023128 36414.DOC

*Rocha*, 412 F.3d 1021, 1032 (9th Cir. 2005) (holding the court "must avoid reaching constitutional questions where possible").

It is worth noting, however, that several courts, including the U.S. Supreme Court and Ninth Circuit, have cited to the First Amendment as a basis for the clergy privilege in dicta. *See, e.g., Trammel v. United States*, 445 U.S. 40, 51 (1980); *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532-33 (9th Cir. 1997). Thus Plaintiffs misstate the law when they contend that the First Amendment is not grounds for claiming the privilege.[11]

### VI. Counsel for the Church Correctly Asserted the Clergy Privilege by Way of Objection During the Depositions.

Plaintiffs also assert that counsel for the Church inappropriately made speaking objections when asserting the clergy privilege. Plaintiffs fail to note that the Federal Rules of Civil Procedure specifically call for this. Fed R. Civ. P. 30(d)(1) provides that a witness may be instructed not to answer "when necessary to preserve a privilege" such as the clergy communicant privilege. Thus, the speaking objections made by counsel for the Church are authorized by the Federal Rules and necessary to ensure the privilege is not breached.

### CONCLUSION

Plaintiffs' Motion to Compel should be denied because (1) it is inappropriately overlength, (2) plaintiffs failed to adequately meet and confer before filing the motion and (3) the Church and its bishops appropriately invoked the clergy privilege.

Respectfully submitted this 24th day of October, 2005.

STAFFORD FREY COOPER

By: /s/
Thomas D. Frey, WSBA # 1908
Marcus B. Nash, WSBA # 14471

---

[11] Plaintiffs also cite the Washington Supreme Court's holding in *State v. Motherwell*, 114 Wn.2d 353 (1990). There, the Court concluded that a child abuse reporting statute that at one time included clergy on the list of mandatory reporters served a compelling state interest and did not run afoul of the First Amendment. *Motherwell* clearly does not address the issue of whether the First Amendment is a basis for the clergy privilege.

OPPOSITION TO MOTION TO COMPEL - 12
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

## CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed Defendants' Opposition to Plaintiffs' Motion to Compel using the CM/ECF system which will send notification of such filing to the following persons:

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim
600 University Street, Suite 2100
Seattle, WA  98101-4185
Email:  mpfau@gth-law.com
    *Attorneys for Plaintiffs*

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA  98101
Email:  timkosnoff@comcast.net
    *Attorneys for Plaintiffs*

DATED this 24th day of October, 2005, at Seattle, Washington.

/s/ _____

OPPOSITION TO MOTION TO COMPEL - 13
7566-023128 36414.DOC

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885