THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation, <br><br> Defendants. | NO. C04-2338 RSM <br><br> **PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO COMPEL** <br><br> NOTE ON MOTION CALENDAR: OCTOBER 28, 2005 |

REPLY TO OPP. TO MTN TO COMPEL - i
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## I. INTRODUCTION

Plaintiffs respectfully request that this Court overlook defendants' non-substantive arguments and address the merits of the discovery issues presented.[1]

Counsel's instruction to the witnesses for the Corporation of the President of the Church of Jesus Christ of Latter Day Saints LDS Church (hereinafter COP) were clearly designed to thwart lawful discovery. Bishops were, in various ways, essentially instructed not to answer questions concerning reports of Jack Loholt's pedophilia, if the information "was gained in their capacity" as COP Bishops.[2] They were further instructed not to reveal what action they took or statements they made to others upon receiving information about Jack Loholt's sexual improprieties.[3] Plaintiffs were thus prevented, under the guise of freedom of religion, from learning how COP became aware of Jack Loholt's sexual abuse of children and the details of the action COP took in response to that knowledge.

This motion is clearly not about protecting privacy rights of sexual abuse victims.[4] There are several other COP distortions which should be eliminated: 1) This motion has nothing to do with the priest/penitent confessional privilege. No one has suggested that a child "confessed" to a sexual relationship with Jack Loholt; even if they had, the Bishop would have been obligated by then-existing state law to report such a "confession" (RCW 26.44.030); 2). If someone (other than a victim) complained, reported, or repeated to a

---

[1] Plaintiffs concede the motion to compel exceeded the Local Rule in length and apologize to the Court. In retrospect, the deposition quotes inserted into the body of plaintiffs' brief, should have simply been highlighted in the attachments. Removing the quotes found elsewhere would have reduced the substantive discussion within the 12 page limitation. Regarding the breadth of the meet and confer, plaintiffs will rely upon Mr. Pfau's Declaration and Mr. Nash's lack of memory concerning discussions regarding Bishops Johansen or Coleman. The issue herein is not so much whether each bishop actually withheld information based upon privilege, but rather counsel's continual efforts to prevent the bishops from disclosing relevant information. Clearly, the most egregious discovery violations took place in Bishop Borland's deposition.

[2] Borland deposition at pps. 51, lines 16-18, p. 55, lines 3-9; and Coleman deposition, p. 47.

[3] Borland deposition at pps. 58-60.

[4] Indeed, COP's responsive brief states at p. 4, line 15: "Counsel for the church is willing to turn over the names of victims if plaintiffs are willing to enter into a Protective Order keeping the identities of the victims confidential".

REPLY TO OPP. TO MTN TO COMPEL - 1
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Bishop about Jack Loholt's sexual impropriety with children (even their own), presumably, they did so with the hope and expectation that the Bishop would take some action, not keep it a secret; and 3) Bishops have not been reticent to report their conversations with Jack Loholt; likewise, such conversations are not at issue.

## II.    ARGUMENT

### 1.    ALL COMMUNICATIONS WITH BISHOPS ARE NOT PRIVILEGED.

COP's reliance upon *State v. Martin,* 137 Wn.2d 774, 969 P.2d 450 (1999) is misplaced. That case was a criminal matter wherein the "penitent" was charged with murder arising out of his abuse of his son. In examining whether his "confessions" to a pastor were privileged, the Court first examined <u>who</u> would be entitled to claim such a privilege. The Court stated at 778. "We adopt the ordinary dictionary meaning "penitent" as one who repents of sin and asks for forgiveness." Clearly, that definition fit the confessor in *Martin*, but has no bearing on the instant case. While the Supreme Court did provide some leeway for a church to define the meaning of "confession," it did not permit the Church to disregard the concept altogether, nor to misconstrue the person entitled to claim that privilege.

The instant case is not about "confessions" by Jack Loholt to his Bishop. This case is about reports of child abuse to Bishops who were expected to take some action in response to that report. The priest penitent privilege simply has no application to the instant facts. The fact that a Bishop may have considered the discussions with parishioners to be personal, and perhaps even the identity of persons held to be confidential, such presumptions do not give the Bishops (or their counsel in this case) the right to use their belief to shield these highly-probative matters from discovery. The fact that the COP handbook provides for keeping

REPLY TO OPP. TO MTN TO COMPEL - 2
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

confessions confidential, likewise does not justify counsel's instruction to the witnesses not to answer.[5]

2. **DISCUSSIONS ABOUT CHILD SEXUAL ABUSE WITHIN A CHURCH ARE NOT ENTITLED TO FREEDOM OF RELIGION PROTECTION AND ARE NOT "PRIVILEGED COMMUNICATIONS."**

The Washington Courts have repeatedly held that privileges claimed to prevent examination of witnesses should be strictly construed. *State v. Martin*, *supra,* at 785; *CJC v. Corps. Of Catholic Bishop*, 138 Wn. 2d 699, 717, 985 P.2d 262 (1999) ("legislative grants of testimonial privilege conflict with the inherent power of the Courts to compel the production of relevant evidence and are, therefore, strictly construed.")

The *CJC* case involved the issue of client psychologist privilege with regard to sexual misconduct with a child. In discussing the issue of privilege in general, our court stated at 717 as follows:

> Even were we inclined to recognize a unity of interest between a cleric and his or her church and protect communications made in furtherance of that interest against compulsory disclosure, this is not the case in which to do so. Where childhood sexual abuse is at issue, even long established privileges do not apply. *See, e.g., State v. Fagalde,* 85 Wn.2d 730, 735-37, 539 P.2d 86 (1975) (client-psychologist privilege does not apply to any judicial proceeding regarding a child's injury, neglect, or sexual abuse); *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968) (attorney-client privilege is not absolute and exceptions to the privilege may result from a balancing of the privilege against the public interest in full disclosure of all the facts). *See also State v. Waleczek*, 90 Wn.2d 746, 751, 585 P.2d 797 (1978) (husband-wife privilege may be "subordinated to the overriding and paramount legislative intent to protect children from physical and sexual abuse").[6]

---

[5] The Church Handbook of Instructions excerpt [Ex. 1 to Nash Decl.] provides "**Responding to Abuse.** While interviewing or counseling a person, a priesthood leader may become aware of incidence of abuse of a child, spouse or other person. Abuse cannot be tolerated in any form. Guidelines for responding to abuse are provided on pages 157-58." It is interesting to note these additional pages were not provided to the Court.

[6] See also *JF v. DSHS*, 109 Wn.App. 718, 728, 731-32, 37 P.2d 1227 (2001) (involving claim of counselor-patient privilege: "In cases involving child abuse or neglect, courts are particularly reluctant to keep relevant information from the trier of fact); *State v. Ackerman*, 19 Wn.App. 477, 486, 953 P.2d 816 (1998) ("The legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of

REPLY TO OPP. TO MTN TO COMPEL - 3
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Plaintiffs contend that a statutorily recognized privileged communication does not exist between a COP Bishop and anyone coming to them to report child sexual abuse by another, regardless of how "private or confidential" the Bishop may treat such a communication.  Freedom of Religion under the First Amendment of either the State or Federal Constitution has never been stretched to protect such information from disclosure.  It cannot do so in this case.

If COP is truly interested in maintaining confidential the identity of the person making a complaint or the child victim of other abuse by Jack Loholt, there are well-recognized methods to do so, which do not prevent the Bishop from describing in some detail the nature of the conversation, what the Bishop did, if anything, and who he talked to about that revelation.  Protective Orders are available for such concern.

Finally, if a Bishop did, in fact, confront Jack Loholt about complaints from parents or acquaintances of children who he had sexually abused, certainly Mr. Loholt was not seeking out his Bishop to make a confession.  Plaintiffs are entitled to know when and under what circumstances such confrontations were accomplished and what Mr. Loholt's response was. While the Bishop may have been acting within the scope of his role as a Bishop, that fact does not shield his communications with Mr. Loholt and others from discovery.

### III.   CONCLUSION

Defense counsel's attempt to "muzzle" their Church leader witnesses under the guise of First Amendment Freedom of Religion must be stopped.  Plaintiffs should be permitted to discover what COP knew about Jack Loholt, and when they knew it, by inquiring about child sexual abuse reports to COP leaders.  Such reporting cannot and should not be hidden from

---

perpetrators than the counseling and treatment of persons whose mental or emotional problems caused them to inflict such abuse").

REPLY TO OPP. TO MTN TO COMPEL - 4
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 -  FACSIMILE (206) 676-7575

1 scrutiny under the guise of Freedom of Religion. Plaintiffs' motion to compel as set forth in
2 the original motion should be granted.
3    DATED this 27th day of October, 2005.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP


By /s/ Michael T. Pfau _____
    Michael T. Pfau, WSBA No. 24649
    mpfau@gth-law.com
    Mark G. Honeywell, WSBA No. 01469
    mhoneywell@gth-law.com
    Michelle A. Menely, WSBA No. 28353
    mmenely@gth-law.com
    Co-Counsel for Plaintiffs

LAW OFFICES OF TIMOTHY D. KOSNOFF


By _____
    Timothy D. Kosnoff, WSBA No. 16586
    timkosnoff@comcast.net
    Co-Counsel for Plaintiffs

REPLY TO OPP. TO MTN TO COMPEL - 5
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on October 27, 2005, I electronically filed the foregoing PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO COMPEL with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas D. Frey and
Marcus Nash
STAFFORD FREY COOPER
601 Union Street, Suite 3100
Seattle, WA 98101-1374

DATED this 27th day of October, 2005.

/s/ Lyndsay C. Taylor
Lyndsay C. Taylor
Assistant to Michelle A. Menely,
WSBA No. 28353

REPLY TO OPP. TO MTN TO COMPEL - 6
(C04-2338 RSM)
[153166 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575