THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; <br> LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation, <br><br> Defendants. | NO. C04-2338 RSM <br><br> **PLAINTIFFS' MOTION TO COMPEL** <br><br> NOTE ON MOTION CALENDAR: <br> JANUARY 13, 2006 |

## I. INTRODUCTION

This case involves claims of sexual abuse by four children at the hands of a Mormon Church Boy Scout leader, Jack Loholt. In prosecuting these claims, plaintiffs have attempted to take the depositions of Mormon Bishops Randall Borland and Philip Coleman, who have knowledge about Loholt's abuse. The depositions were interfered with by defense witnesses' refusal to answer questions and/or defense counsel's improper instructions to the witnesses not

MTN TO COMPEL - 1 of 12
**(C04-2338 RSM)**
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

to answer certain questions, in violation of the spirit and letter of the Federal Rules governing discovery.

Plaintiffs seek an Order compelling witnesses Borland and Coleman to appear for deposition, at defendant COP's expense, responding to specific and enumerated deposition questions, where the witnesses failed to provide testimony. In this re-filed motion to compel, counsel have held the required Rule 37 conference and have narrowed the contested issues before the Court.

This Court should reject defense counsel's attempt to silence Church witnesses claiming an overbroad privilege such as "any privilege [deponent] has as clergyman."[1] Plaintiffs should be permitted to discover what defendants knew about child molester, Jack LoHolt, and when they knew it, by inquiring about child sexual abuse reports to church leaders. Such reporting cannot and should not be hidden from scrutiny under the guise of Freedom of Religion. Accordingly, Plaintiffs' motion to compel should be granted.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiffs deposed Mormon Bishops Randall Borland and Philip Coleman. Each of the deponents refused to answer critical questions based on various alleged privileges. These Bishops have information central to the prosecution of this case. Plaintiffs filed a motion to compel their testimony, which was opposed. The Court struck plaintiffs' motion because the motion exceeded the page limitation and had to satisfy the Rule 37 conference requirement. The Court held:

> Nothing in this Order prevents plaintiffs from refiling a motion
> to compel of the correct length, and supported by an adequate

---

[1] Borland Dep., 61: 19-20, Pfau Decl., Ex. 3.

MTN TO COMPEL - 2 of 12
**(C04-2338 RSM)**
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

certification that a good faith effort to meet and confer with opposing counsel occurred prior to refiling.[2]

Counsel has held a Rule 37 conference, which was followed-up by correspondence.[3] The areas of disagreement have been narrowed to specific deposition testimony of only two bishops – Borland and Coleman. Plaintiffs identify each of those deposition inquiries below, providing excerpts from the depositions in some instances for illustrative purposes and more fully in documents attached to the Declaration of Michael T. Pfau.

**A.    Bishop Borland.**

Randall Borland refused to answer the following questions by overly broad and misconstrued assertions of various religious privileges:

1.    If Borland received a complaint or report from anybody that Scout Master, Jack LoHolt had engaged in sexually inappropriate activity during the time Borland was bishop;[4]

2.    What Borland did upon receiving a complaint; and what he said to LoHolt concerning the complaint;[5]

---

[2] Order Striking Plaintiffs' Motion to Compel, p. 2.

[3] Declaration of Michael T. Pfau, ¶ 2, Ex. 1, Ex. 2.

[4] Q: (By Mr. Kosnoff) Did you receive a complaint or report from anybody that Jack LoHolt had engaged in sexually inappropriate activity during the time that you were Bishop of the Kent Second Ward?
MR. FREY: Now, again, Bishop, I'm going to caution you that if you learned any of this information in your capacity as a Bishop in a confidential communication that you have the privilege not to answer it, in my opinion. Counsel may differ with that, but I would instruct you not to answer it if that's the basis upon which you gained your information. Borland Dep., 54: 24-55: 9, Pfau Decl., Ex. 3.

[5] Q: . . . Did you ever make a referral to LDS Social Services for counseling Jack LoHolt?
A: I don't remember. I do not remember that.
Q: Did you do anything or say anything to anyone else following the communication that you received from this person?
A: Regarding specifics?
Q: Anything.
A: Yes.
Q: What did you do or say?
A: I talked –

MTN TO COMPEL - 3 of 12
**(C04-2338 RSM)**
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

3.  If Borland ever investigated a report of child sexual abuse;[6]

4.  Why Borland released LoHolt from service in the Mormon Church;[7]

---

MR. FREY: Again, I'm going to caution you that if you took any steps in your capacity as a clergyman and ecclesiastical in accordance with the teachings and beliefs of the LDS religion that you are not obligated to break that confidentiality if in fact you learned that in those circumstances.

And for the record, Counsel, what I'm trying to do here is allow you to ask questions without reaching what I believe is a privilege that he has as a bishop to receive information, treat it with confidentiality, and act on it in ecclesiastical fashion.

MR. KOSNOFF: Could you identify the source of that privilege?

MR. FREY: *State v. Martin* and the statute, the First Amendment.

MR. KOSNOFF: So are you relying on the clergy penitent privilege?

MR. FREY: And his First Amendment rights.

MR. KOSNOFF: What First Amendment rights are you referring to?

MR. FREY: Free exercise rights.

. . .

MR. FREY: And there's a third item involved here that we haven't gotten to yet, but that is the privacy rights of individuals who may be involved, if any. But I'm trying not to interfere with your legitimate discovery area, and so I'm trying to be very careful here. And I want you to understand that it's not my purpose here to frustrate your discovery, but I do want him to be careful that he doesn't breach any of the confidentiality that is imposed upon him by his position as a clergyman.

So if you can read back the question. Sorry about the speech –

MR. KOSNOFF: Well, I – we have gone through the criteria for the appropriate assertion of the clergy penitent privilege, and that shields him from disclosing the content of privileged communications based upon that statute. My questions now are not directed at the content of that communication. My questions are directed at what he did or said to others following that communication.

MR. FREY: But that may very well involve his working in an ecclesiastical capacity and involve conversations with other people that are privileged, and that's my point.

MR. KOSNOFF: That – it's our position that that would not be privileged and that he is required to answer those questions.

MR. FREY: Just a second.

(Defense counsel confer)

MR. FREY: I – I've made my objection. We disagree. Okay?

MR. KOSNOFF: Are you directing him not to answer?

MR. FREY: No, I'm not. I'm asking him if he can answer without violating – if he can answer about what he did without violating any confidentiality that I believe he has the right to maintain as a bishop, then he may answer the question.

A: I believe I can do that. Confidentiality is very important to me. I – the only reason I even hesitate at all is because of the conversation, and I'm very respectful of both of you. <u>I didn't talk about, to another person, the content of my discussion with the ward member that contacted me, but the circumstance surrounding it I did, and that was Jack LoHolt. I had to talk with him.</u>

Q: And that conversation that you had with Jack LoHolt took place fairly soon after?

A: Yes, sir.

Q: And what was said?

MR. FREY: Again, you may answer that question if it will not violate any privilege that you have as a clergyman.

A: I don't believe I can answer that. (*Id.*, 58:4 – 61:21). (*emphasis added*).

---

[6] *Id.*, 70: 20 – 70:11.

[7] Q: Why did you release him?

MR. FREY: You can't —

MTN TO COMPEL - 4 of 12
**(C04-2338 RSM)**
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

5. Did Borland ever speak to his stake president (his superior) regarding a concern about a scoutmaster;[8] and

6. If LoHolt returned to a position with the Church ward with youth would that have been a concern to Borland while Borland was Bishop?[9]

**B.   Bishop Coleman.**

Coleman refused to answer from whom he learned that LoHolt was allegedly engaging in sexually inappropriate activity.[10] Coleman admitted that this person was not making this statement to him as a confession, and under his faith he does not believe that he has to keep it confidential.[11] Coleman also refused to answer a question concerning a conversation that he initiated with LoHolt.[12] Coleman admits that he was concerned about a report he received of LoHolt exposing himself to young boys and was prompted to discuss it with LoHolt in that

---

A: I can't divulge that.
Q: I'm not asking you to reveal any communications. I'm asking you your personal reasons why you released him from Scouting.
MR. FREY: Same objection. You're entitled to claim that privilege. One reveals the other, Counsel.
Q: (By Mr. Kosnoff) Isn't it a fact that you removed Jack LoHolt from Scouting because you knew he presented a danger to boys of sexual abuse?
A. I - - I am not going to answer that. (*Id.*, 73: 7-19).

[8] Q: Did you ever speak with your stake president generally about – without identifying the individual, a concern about a Scoutmaster, assistant Scoutmaster molesting children?
MR. FREY: Object to the form of the question. What time period are we talking about now?
MR. KOSNOFF: When he was Bishop of the Kent Second Ward.
MR. FREY: Okay. Again, as long as this doesn't violate any type of confidence that you have between your counselors and your stake president in your ecclesiastical position.
A: That's what I'm wrestling with, and I believe it does. I don't believe I can answer that question.
Q: (By Mr. Kosnoff) So did I understand, your hesitancy to answer the question is that you're taking the privilege – or the position that any communication between you and the stake president is also privileged?
A: Anything that would break confidentiality I take as an ecclesiastical privilege, yes. *Id.*, 76: 6-25).

[9] *Id.*, 77: 13-17.

[10] Coleman Dep., 45:22, Pfau Decl., Ex. 4.

[11] *Id.*, 53:17-54:3.

[12] *Id.*, 54:25.

MTN TO COMPEL - 5 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

conversation.[13] LoHolt denied the accusation.[14] Defense counsel cut off further questioning with the oblique claim and speaking objection that included:

> In those conversations where you're acting with your bishop's hat on and you're speaking to one of your people and it involves what could be classified as a transgression within the church, you do have the right not to disclose that information.[15]

### III.  ARGUMENT

**A.  Discussions About Child Sexual Abuse Within a Church are Not "Privileged Communications."**

Defense counsel invoked "confidential communication"[16] privilege in response to the deposition questions for which plaintiffs bring this motion to compel. This case is not about "confessions" either by a child to a sexual relationship with Jack LoHolt or by LoHolt to his Bishop. The clergy-penitent privilege does not apply. This case is about reports of child abuse by a Mormon scout master to Bishops who were expected to take some action in response to that report. The fact that a Bishop may have considered the discussions with a reporter of abuse or the confrontation of LoHolt with this report, to be personal and confidential, does not give the Bishops (or their counsel in this case) the right to use their beliefs to shield these highly-probative matters from discovery.

The Washington courts have repeatedly held that privileges claimed to prevent examination of witnesses should be strictly construed. *See, e.g., CJC v. Corp. Of Catholic Bishop*, 138 Wn. 2d 699, 717, 985 P.2d 262 (1999). The clergy-penitent statute, RCW 5.60.060(3) provides:

---

[13] *Id.*, 53: 14-54:16.
[14] *Id.*, 54: 23-24.
[15] *Id.*, 55: 4-8.
[16] Borland Dep., 55:5, Pfau Decl., Ex. 3.

MTN TO COMPEL - 6 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

> A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any **confession** made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs.

(*emphasis added*.) A confession is defined as a confidential communication between a clergy and a penitent. *State v. Martin*, 137 Wn.2d 774, 789, 974 P.2d 1020 (1999) (*emphasis added*). The privilege will only apply if following elements must be present:

    a.    a **communication** must be heard by a member of the clergy:

    b.    The clergy must have a religious duty to keep the communication secret and the **penitent must have a reasonable expectation that it will remain private.**

    c.    The communication must be **penitential in nature** and the clergy receiving the communication must be required by the tenets of his religion to receive penitential communications and to provide spiritual instruction and guidance in return.

    d.    The communication must have been received in the course of discipline enjoined by the church to which he or she belongs.

*Martin*, 91 Wn. App. at 630 (*emphasis added*). An objective test is used to determine whether the communicator intended a communication be confidential and the privilege will apply only if the communicator's intent that the "communication be confidential" is reasonable under the circumstances. *State v. Warner*, 125 Wn.2d 876, 892, fn. 8, 889 P.2d 479 (1995). When communications are made for the purpose of providing a third party with information, there is no confidentiality anticipated or expected. *Id.*, citing *J.N. v. Bellingham Sch. Dist. 501*, 74 Wn. App. 49, 63-64, 871 P.2d 1106 (1994).

MTN TO COMPEL - 7 of 12
**(C04-2338 RSM)**
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

1. **Bishop Borland.**

COP's assertions of the privilege with regard to Bishop Borland are misplaced.

   a. **Borland's Refusal to Answer if he, While Bishop, Received a Complaint or Report that LoHolt Engaged in Sexually Inappropriate Conduct.**

Borland admitted he received the notification that LoHolt was sexually abusing children of the Mormon Church,[17] and admitted that he discussed the "content of [his] discussion" about LoHolt's sexual misconduct with LoHolt himself.[18] Bishop Borland would not disclose the identity of the person who made the disclosure and would not disclose the content of the communication he had with LoHolt or even the reason the communication was made during deposition.[19] The clergy-penitent privilege simply does not apply in these circumstances.[20] First, the person reporting the abuse very likely did not have a reasonable

---

[17] Borland Dep., pg. 56-58; pg. 61, Pfau Decl., Ex. 3.

[18] *Id.*, 61: 12-13.

[19] *Id.*, 61: 17-21.

[20] In *Scott v. Foster and the Church of Jesus Christ of Latter Day*, No. 98-12-08640, Cir. Court, Multnomah County, OR), a case involving identical issues and allegations, the Church's 30(b)(6) designee testified regarding the church's policies and its confession doctrine and practice.

Dr. Lloyd Hale testified that with respect to confessions in the Mormon religion a bishop is obliged to keep a "confession" strictly confidential. A bishop may not disclose the information to anyone without the permission of the confessor. Hale Dep., 42: 17-23. Pfau Decl., Ex. 5. The confession may not be disclosed to the bishop's counselors nor to the Stake President without the consent of the penitent. *Id.*, 43: 7-16. Disciplinary proceedings can be based upon the confession but the confession itself is generally not used in the disciplinary court. *Id.*, 45: 13-16.

Here, Bishop Borland received a communication from someone because shortly after receiving it he immediately went to Jack LoHolt and removed him as the ward's Scoutmaster. Borland Dep., pg. 81, Pfau Decl., Ex. 3. According to Borland, LoHolt accepted his reasons for removing him as scoutmaster. *Id.*, at 82. If the complaint Bishop Borland received regarding LoHolt had been a confession, then under Mormon doctrine according to the defendants' own 30(b)(6) designee, Borland would not have been permitted to disclose it to LoHolt.

Clearly, victims' complaints or other reports of sexual molestation by a church member would not constitute confessions within the doctrine of the Mormon Church. According to Dr. Hale, a parent's complaint to a bishop that her child had been molested by another member would not constitute a confession under Mormon doctrine. Hale Dep., 114: 10-18, Pfau Dec. Ex. 6.

MTN TO COMPEL - 8 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

expectation of privacy about the communication. For example, the person may have been reporting the sexual misconduct for the purpose of ensuring that LoHolt was removed from any further contact with minors.[21] Furthermore, if the communication was for such a purpose, it cannot be said that the communication was "penitential in nature." In addition, if the person who reported to Bishop Borland was knowledgeable about the then-existing[22] statutory duty of clergymen to report instances of child abuse, they certainly would not have had a reasonable expectation that the information would remain secret. Indeed, the Church policy and practice is to inform various leadership bodies within the ward when it becomes aware that an individual is a child molester.[23]

        **b.**     **Borland's Refusal to Answer What He Did Upon Receiving an Abuse Complaint and What He Said to LoHolt About It.**

What Borland did *after* receiving this report of abuse is not protected by the clergy-penitent privilege, including his discussions with LoHolt about the complaint and if Borland spoke to his superior (stake president) about the complaint. Borland's own communications were not that of a penitent, and not penitential in nature, and he did not make them in the course of church discipline of which he was the subject. Defense counsel improperly interfered with plaintiff's legitimate inquiry here.

---

[21] Plaintiffs do not know the answer to this question because defense counsel would not permit the witness to answer even foundational questions on this issue.

[22] LoHolt's abuse of the plaintiffs occurred during the time when the mandatory reporting statute applied to members of the clergy.

[23] *See* Hale Dep., 51:8 – 52:8, Pfau Decl., Ex. 5.

MTN TO COMPEL - 9 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

      **c.**      **Borland Refuses to Answer If He Ever Investigated a Report of Child Sexual Abuse.**

Inquiring as to whether Borland ever investigated a claim of child sexual abuse does not invade the domain of the clergy-penitent privilege because it does not ask him to reveal a penitent's communication to him. Instead, it relates to Borland's *own actions*.

      **d.**      **Borland Refuses to Tell Why He Removed LoHolt as a Scoutmaster for the Church.**

There is no authority for the proposition that the reason underlying one's removal from a position over children is contained within the statutory clergy-penitent privilege. Borland may very well have removed LoHolt as a Scoutmaster because Borland believed LoHolt was a danger to young boys. Borland's own actions are not a communication by a penitent to a clergy member that was penitential in nature expected to remain private. In contrast, at issue is Borland's own overt action – removing LoHolt as a Scoutmaster – and plaintiffs are entitled to know the reason why.

      **e.**      **Borland Refuses to Answer If He Would Be Concerned If LoHolt Would Return to a Position in the Church with Youth.**

The inquiry of whether Borland would be concerned if LoHolt returned to a position in the Church with youth does not implicate the clergy-penitent testimonial privilege, where the question does not ask for Borland to reveal any communication of a penitent, much less one that was penitential in nature.

      **2.**      **Bishop Coleman.**

MTN TO COMPEL - 10 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

      a.    **Coleman Refuses to Answer from Whom He Learned That LoHolt was Abusing Children.**

Coleman refused to answer from whom he learned that LoHolt was allegedly engaging in sexually inappropriate activity. However, Coleman later testified that this person was not making this statement to him as a confession and that under his faith he does not believe that he has to keep the communication confidential.[24] There is no support for the invocation of the clergy-penitent privilege.

      b.    **Coleman Refuses to Tell About a Conversation He Initiated About His Own Concern of a Report of Sexual Abuse.**

The discussion Coleman initiated with LoHolt after receiving the report that LoHolt exposed himself to young boys is not a clergy-penitent privileged communication. The communication was not penitential in nature. Indeed, LoHolt was far from repentant, denying the accusation.[25] There was no reasonable expectation that it would remain private as LoHolt was hauled into the bishop's office to be confronted with a third party complaint of sexually inappropriate conduct.[26] Indeed, Coleman did tell the boys' parents after speaking to LoHolt.[27] Plaintiff's counsel is entitled to inquire concerning this non-penitential confrontation.

**B.**    **There is No "First Amendment" Testimonial Privilege.**

This Court should reject defense's bid to create a wholly new, unrecognized testimonial privilege – "The First Amendment" testimonial privilege. Defense counsel raised this creation in response to the inquiry: what Borland did upon receiving a complaint that

---

[24] Coleman Dep., 53: 17 – 54: 3, Pfau Decl., Ex. 4.
[25] *Id.*, 54: 23-24.
[26] *Id.*, 54: 17-18.
[27] *Id.*, 56: 4-6.

MTN TO COMPEL - 11 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

LoHolt had engaged in sexually inappropriate conduct and what Borland said to LoHolt concerning the complaint.[28] There is no such privilege.[29]

C.  **There is No Privacy Rights Testimonial Privilege.**

In thwarting responses to plaintiffs' inquiry to Borland on what he did upon receiving a complaint about LoHolt and what he said to LoHolt, defense counsel claimed a privilege in part based on "privacy rights of individuals involved."[30] There is no right-to-privacy testimonial privilege.[31] If COP is truly interested in maintaining the confidentiality of the victims' identity, that can be accomplished via redaction in court filings. Indeed, as to Bishop Coleman, defendant has now agreed that with the entry of a protective order, it will turnover the victims' names.

D.  **Award of Costs.**

Plaintiffs do not seek sanctions or fees associated with this motion but do request the Court order defendants to pay all costs associated with the continued depositions.

| | |
|---|---|
| GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP<br>By / s / Michael T. Pfau<br>Michael T. Pfau, WSBA No. 24649<br>mpfau@gth-law.com<br>Co-Counsel for Plaintiffs | LAW OFFICES OF TIMOTHY D. KOSNOFF<br><br>By / s / Timothy D. Kosnoff<br>Timothy D. Kosnoff, WSBA No. 16586<br>timkosnoff@comcast.net<br>Co-Counsel for Plaintiffs |

---

[28] Borland Dep., 59:7, Pfau Decl., Ex. 3.

[29] Furthermore, even if such a privilege existed, it would not apply in the circumstances of this case because even if a statute compels or pressures persons to violate a sincerely held tenet of their religious beliefs, it does not violate the free exercise clause of the First Amendment if the statute carries out a compelling governmental interest and the statutory means of satisfying such interest imposes the least amount of restriction on the practice of religious beliefs. *Motherwell,* 114 Wn.2d 353, 365, 788 P.2d 1066 (1990). Washington State Courts have already held that the prevention of child abuse constitutes a compelling state interest for purposes of determining the validity of a statute under the First Amendment's guaranty of the free exercise of religion. *Id.,* at 362-363.

[30] Borland Dep., 55: 23-24, Pfau Decl., Ex. 3.

[31] Notably, in responding to the prior motion to compel, defendant conspicuously omitted reliance on such an alleged privilege.

MTN TO COMPEL - 12 of 12
(C04-2338 RSM)
[155797 v21.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575