1

The Honorable Ricardo S. Martinez

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K. and T.D. <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/k/a LDS FAMILY SERVICES, a Utah corporation <br><br> Defendants. | No.  C 04-2338 RSM <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **Note on Motion Calendar: Friday, February 3, 2006** <br><br> *Oral Argument Requested* |

9

10

11

12

13

14

15

16

## I.    <u>RELIEF SOUGHT</u>

17

        Defendants Corporation of the President of The Church of Jesus Christ of Latter-

18

day Saints (hereinafter "COP") and LDS Family Services (hereinafter "LDSFS") request

19

an order granting summary judgment in their favor on the following claims:  (1) plaintiffs'

20

claim based on a failure to report sexual abuse pursuant to RCW 26.44; (2) plaintiff

21

R.K.'s negligence/special relationship claim for lack of duty; (3) plaintiffs' claims for

22

equitable estoppel and fraudulent concealment; (4) plaintiffs' claims for negligent

23

infliction of emotional distress; (5) plaintiff T.D.'s claims for lack of proven damages; (6)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-1
No. C 04-2338 RSM
7566-025226   60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   plaintiffs' civil conspiracy claims; (7) plaintiffs Doe and R.K.'s claims for sexual abuse

2   that occurred before first notice to defendant COP in 1972, and (8) plaintiffs' claims for

3   failure to prove proximate cause of damages caused by defendants' conduct.

4   Defendants also request legal rulings on the issue of segregation of damages between

5   intentional tortfeasors and negligent tortfeasors.

6   ## II.    FACTUAL BACKGROUND

7        In their Complaint, plaintiffs allege that they were sexually abused in the 1970's

8   by Jack LoHolt (hereinafter "LoHolt"), a former Boy Scout leader who was a member of

9   defendant COP.  Defendants set forth the facts relevant to this motion below.

10   ### A.    Plaintiff R.K.

11        At times during the 1970's, LoHolt lived on the property of Dr. Herman Allenbach.

12   Plaintiff R.K. lived with his parents on property adjacent to the Allenbachs.  Plaintiff R.K.

13   alleges that he was abused by LoHolt in the "early to mid 1970's."   Neither plaintiff R.K.

14   nor his parents, siblings or step-siblings were members of the LDS Church at any time

15   during which the alleged abuse occurred.[1]  *Deposition of R.K. ["R.K. Dep."] at 28:6-12;*

16   *32:8-10 attached as Ex. A to Declaration of Marcus Nash ("Nash Decl.").*  R.K. did not

17   come into contact with LoHolt in connection with any church activity.  *R.K. Dep. at*

18   *75:11-14.*  R.K. was not a member of any Boy Scout troop sponsored by the Church,

19   and none of his abuse occurred on a Scout activity.  *R.K. Dep. at 32:1-7.*  R.K. met

20   LoHolt solely because LoHolt was a neighbor, living at the home of R.K.'s good friend,

21

22

---

23   [1]   Plaintiff R.K. was a member of the Roman Catholic Church.  He regularly attended
St. Anthony's Church in Kent, where he also received "CCD," or Catholic catechism classes,
under Father Lyons and another pastor.  *R.K. Dep. at 28:13-25.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-2
No. C 04-2338 RSM
7566-025226   60944

## STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    John Doe, where R.K. occasionally would go for sleepovers.  *R.K. Dep. at 18:8-18;*

2    *75:15-17.*

3         R.K. asserts that he was abused by LoHolt in a field near the Allenbach house,

4    and in LoHolt's apartment at the Allenbach house.  *R.K. Dep. at 19:4-15.*  LoHolt would

5    lure them into his basement apartment, down the hall from John Doe's bedroom, with

6    homemade ice cream, root beer floats, and firecrackers, which R.K. liked.  *R.K. Dep. at*

7    *20:13-15; 26:16-24.*  R.K. testified that the abuse may have begun in 1971, when he

8    was nine years old.  *R.K. Dep. at 13: 20-25.*  R.K. testified that he told his mother of the

9    abuse after the incident in the field, which is one of the first incidents of abuse.  *R.K.*

10   *Dep. at 13:22-25; 70:20-71:1.*[2]

11        **B.    Plaintiff T.D.**

12        Plaintiff T.D. attended a scout camping trip in 1975 or 1976 after being invited by

13   a friend, Dan Fleming, who was part of the troop.  *T.D. Dep. at 14:12-13; 17-17-23,*

14   *attached as Ex. C to Nash Decl.*  T.D. was not a member of the LDS church and not a

15   Boy Scout.  *T.D. Dep. at 13:14-19.*  T.D. had no acquaintance with LoHolt prior to the

16   camping trip.  *T.D. Dep. at13:10-13.*  While T.D. was sleeping on the floor of a cabin

17   with the other boys, T.D. was awoken by LoHolt, who fondled him and sucked on his

18   toes.  T.D. thought LoHolt's conduct was "weird," and then fell back to sleep.  *T.D. Dep.*

19   *at 10:16-25 to 21:1-16*; *Deposition of Dr. Jon Conte ("Conte Dep.") at 42-5-25; 43:1-12:*

20

21   [2]   R.K.'s mother confirmed that she was told of the incident; she claims that, in turn, she told
     her husband and Dr. Allenbach, who said that he would take care of it.  *Dep. of D.K. at 10:23-*
22   *25; 11-4-5; 12:15-17; 14:9-21, attached as Ex. B to the Nash Decl.*  She then forbade R.K. to
     visit the Allenbachs' house when LoHolt was present.  *D.K. Dep. at 16:15-20.*  When asked if
23   she called the police or did anything further, D.K.'s mother explained that things were done
     differently back then.  *D.K. Dep. at 33:11-21.*

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  *44:8-11, attached as Ex. D to Nash Decl.*  The next morning, T.D. rode home with

2  LoHolt, but did not discuss the incident with him; this was the last time plaintiff T.D. saw

3  or spoke to LoHolt.  *Conte Dep. at 46:5-9.*  Plaintiff T.D. did not discuss the issue with

4  anyone until a private investigator for plaintiffs visited him at his home just prior to his

5  joining in this lawsuit.  *Conte Dep. at 46:8-25; 47:1-7.*

6      Plaintiff T.D. has never received any counseling for the abuse.  *T.D. Dep. at*

7  *25:10-16.*  He did see Dr. Jon Conte in 2005, an expert mental health professional hired

8  by plaintiffs.  Dr. Conte did certain psychological tests on plaintiff T.D. and found that

9  they were not significant for any psychological disorders.  *Conte Dep. at 54: 13-18.*

10  Throughout his life, T.D was successful academically, successful athletically, and has

11  been successful professionally.  *Conte Dep. at 35:1-9; 36:9-15.*  Although T.D. is

12  divorced, he has a good relationship with his ex-wife and children.  *Conte Dep. at 36:16-*

13  *25.*  Plaintiff T.D. thinks he is divorced because he spent too much time and attention on

14  his own interests, like golf.  Plaintiff T.D. noticed a similarity between him and his father

15  in this regard.  *Conte Dep. at 37-9-25 to 39:1-12.*

16      Dr. Conte interviewed plaintiff and uncovered two issues, neither of which

17  appeared to rise to the level of any disorder.  *Conte Dep. at  25:22-25: 26:1-7.*  First,

18  plaintiff T.D. does not like public speaking.  Plaintiff T.D. speaks publicly when asked for

19  work, but he does not like it because it makes him nervous.   Dr. Conte conceded that

20  this issue was very common among the general population, and could not link it to any

21  sexual abuse.  *Conte Dep. at 26:15-25 to 28:1-11.*  Second, plaintiff T.D. does not like

22  eating in front of others.  Dr. Conte does not know when plaintiff T.D. began having this

23  concern.  Again, plaintiff T.D. does eat in front of others, when the situation calls for it.

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   He just does not like it.  While this is certainly more unusual than a dislike of public

2   speaking, Dr. Conte also could not provide any affirmative link between the dislike of

3   eating in front of others and the sexual abuse.  *Conte Dep. at 28:12-25; 25:1-6.*

4   Dr. Conte admitted that victims of sexual abuse can escape without suffering

5   psychological damage.  Conte Dep. at 50:20-25; 51:1-20.

6       **C.    Plaintiff John Doe (J.A.)**

7       Plaintiff John Doe asserts that he was abused by LoHolt beginning when he was

8   eight years old, in 1970, when LoHolt moved into his parents' home.  John Doe also

9   alleges that he joined a scout troop in 1974 at the age of 12, and was abused by LoHolt

10  during scout activities.  *John Doe (J.A.) Dep. at 36: 8-25; 37:1-3, attached as Ex. E. to*

11  *Nash Decl.*

12      John Doe had other stressors in his childhood.  He observed his biological

13  mother commit suicide when he was three years old.  *John Doe (J.A.) Dep. at 78:2-25.*

14  His adoptive mother was physically and emotionally cruel to him, beating him over the

15  head, unfairly blaming him, treating his worse than his siblings, and locking him in the

16  closet.  *John Doe (J. A.) Dep. at 51: 2-25; 52:1-18; Report of Dr. Stuart Greenberg at 4,*

17  *attached as Ex. F-1 to Nash Decl.*  Dr. Greenberg conceded that he cannot discern

18  what damages were caused by the abuse versus what damages were caused by the

19  other traumatic incidents in his life.  He stated:

20          Each traumatic event, including the alleged abuse, would have been
            capable of causing him profound trauma especially given the
21          compounding effect of the later events on preceding events.

22  *Greenberg Report at 19.*

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-5
No.  C 04-2338 RSM
7566-025226  60944

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1

D.    **Plaintiff Ken Fleming**

2      Plaintiff Fleming asserts that he was abused by LoHolt in LoHolt's home and on

3  scout outings, beginning when he joined the LDS scout troop at age 12, i.e., in 1974.

4  He further asserts that the abuse continued (sometimes in conjunction with scouting

5  activities and sometimes not) until he was 17 years old (i.e., until 1979).  *Fleming Dep.*

6  *at 97: 17-24; 44:22-25; 45:1-15, attached as Ex. G to Nash Decl.*

7      Fleming had other stressors in his childhood.  His parents divorced when he was

8  10 years old, and he has described it as the worse time of his life.  *Fleming Dep. at 13:*

9  *22-25; 14:1; 15:15-18; Report of Dr. Stuart Greenberg, at 4, attached as Ex. F-2 to the*

10  *Nash Decl.*  His mother married three additional times while he was a child, causing

11  considerable disarray in Fleming's life.  *Fleming Dep. at 14-2-15: 15:1-21.*  Fleming

12  observed his mother being physically abused by his father (as a result of his drinking)

13  and a stepfather.  *Fleming Dep. at 16:1-24.*  As Dr. Greenberg concluded, Fleming "had

14  been experiencing a moderate to significant degree [of] stress in his home environment"

15  prior to the abuse.  *Greenberg Report at 29.*

16      [M]any of the things he experienced before the alleged abuse such as his
        father's misuse of alcohol, the domestic violence, and his parents' divorce
17      are all capable of leading to significant problems for a child then and later
        in life.
18
*Greenberg Report at 30.*
19
E.    **Notice to Church**
20
       LoHolt was first called to the position of assistant Boy Scout leader in January
21
1971.  In February 1972, he was released from the position after Bishop Borland
22
received a complaint from a member, Richard Pettit, that LoHolt had sexually touched
23

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-6
No. C 04-2338 RSM
7566-025226   60944

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

his son.  *Dep. of Richard Pettit at 31:22-25: 32: 1-25; 33:1-33, attached as Ex. H to Nash Decl.*  There is no evidence that defendants had received any complaints or notice of sexual misconduct, or other sexually inappropriate behavior, by LoHolt before February 1972.

### III.    ARGUMENT

**A.    Plaintiffs' Claim Based on Violation of RCW 26.44[3] is Properly Dismissed**.

As an apparent alternative to a common law duty, plaintiffs allege that defendants owed them a statutory duty under Chapter 26.44 RCW.  *Plaintiffs' Amended Complaint at ¶ 4.4.*  However, the statute does not create a private right of action for an alleged failure to report abuse under RCW 26.44.030.  *Id.*  Rather, the sole legal recourse provided for a violation of the reporting obligation is criminal punishment: RCW 26.44.080.  Under well-established law, a civil right of action does not arise from an alleged violation of a criminal statute unless such intent is expressed or clearly implied in the statute. *See, e.g.,* Dexter v. Spokane County Health Dist., 76 Wash. App. 372, 376, 884 P.2d 1353 (1994); *see also* Beegle v. Thomson, 138 F.2d 875, 880 (7th Cir. 1943), cert. denied, 322 U.S. 743 (1944); Mezullo v. Maletz, 118 N.E.2d 356, 359 (Mass. 1954); Parker v. Lowry, 446 S.W.2d 593, 595 (Mo. 1969).[4]

---

[3]  Chapter RCW 24.44, referenced in the Complaint, addresses the "Uniform Management of Institutional Funds Act."  It is Chapter 26.44 RCW that sets forth reporting requirements and guidelines.

[4]  The following additional cases have held there is no private right of action for failure to report child abuse:  Arbaugh v. Board of Education, 591 S.E.2d 235 (W.V. 2003);Borne v. N.W. Allen County School Corp., 532 N.E.2d 1196 (Ind. App.3 Dist. 1989); C.B. v. Bobo, 659 So.2d 98 (Ala. 1995); Cechman v. Travis, 414 S.E.2d 282 (Ga. App. 1991); *Childers v. A.S.*, 909 S.W.2d 282 (Tx. App. 1995); Doe v. The Corporation of the President of The Church of Jesus Christ of Latter-day Saints, 98 P.3d 429 (Ut.App..2004); Doe "A" v. Special School Dist. Of  St. Louis, 637

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    Whenever the Washington State Legislature has intended to create a private civil

2   right of action based upon violation of a criminal statute, it has done so explicitly.  *See,*

3   *e.g.,* RCW 70.105D.080 (authorizes a private right of action for the recovery of remedial

4   action costs under the Model Toxics Control Act); RCW 70.94.430-.431 (authorizes

5   both criminal and civil penalties for violations of the Clean Air Act); RCW 9A.82.100

6   (provides civil remedy for damage from criminal profiteering activity).    Here, the

7   Legislature did not provide or clearly imply a private right of action, but gave exclusive

8   enforcement authority to the State.    Thus, any claims against defendants seeking

9   private damages for alleged violations of the statute must be dismissed.

10        **B.    Plaintiff R.K.'s Claims are Properly Dismissed for Lack of Duty**

11    Defendants seek judgment as a matter of law that defendant COP had no duty to

12   plaintiff R.K.    Defendants R.K. owed no duty of care in the absence of a special

13   relationship between him and COP.    *See* CJC v. Corporation of Catholic Bishop, 138

14   Wn.2d 699, 985 P.2d 262 (1999).    The questions of whether a special relationship

15   exists or whether any duty arises therefrom are issues of law to be decided by the court.

16   *See* Miller v. U.S. Bank, 72 Wn.App. 416, 426, 865 P.2d 536 (1994); S.H.C. v. Lu, 54

17   P.3d 174, 180 (Wn. App. 2002).    In CJC, the Washington State Supreme Court ruled

18   that each of the following four factors is necessary to establish a duty of care:

19   F.Supp. 1138 (E.D. Mo. 1986); Fischer v. Metcalf, 543 So.2d 785 (Fla.App. 1989); Isley v.
      Capuchin Province, 880 F.Supp. 1138 (E.D. Mich. 1995);   J.A.W. v. Roberts, 627 N.E.2d 802
20   (Ind. App., 1994);   *JB. v. DHRS*, 591 So.2d 317 (Fla.App.1991); Kansas State Bank v.
      Specialized Transportation Services, 819 P.2d 587 (Kan. 1991); Marshall v. First Baptist Church
21   of Houston, 949 S.W.2d 504 (Tx. App. 1997); Marquay v. Eno, 662 A.2d 272 (NH 1995); Nelson
      v. Freeman, 537 F.Supp. 602 (1982); Perry v. S.N., 973 S.W.2d 301 (Tx. 1998); Randi W. v.
22   Muroc Joint Unified School District, 929 P.2d 582 (Cal. 1997); Thelma D. v. Board of Education,
      669 F.Supp. 947 (E.D. Mo. 1987); *Vance v. T.R.C.*, 494 S.E.2d 714 (Ga. App. 1998); Valtakis v.
23   Putnam, 504 N.W.2d 264 (Minn.App. 1993); Welker v. Southern Baptist Hospital, 2004 WL
      34512 (Fla. App., Jan. 8, 2004); Wilson v. Darr, 553 N.W.2d 579 (Iowa 1996).

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

(1)     there must be a special relationship between the church and the perpetrator;

(2)     there must be a special relationship between the church and the plaintiffs;

(3)     the church allegedly must have "knowledge of the risk of harm"; and

(4)     there must be a causal connection between the perpetrator's position in the Church and the resulting harm to plaintiffs.

CJC, 138 Wn.2d at 724.  In this case, as demonstrated below, there was no special relationship between the Church and R.K. and no causal link between LoHolt's status in the Church and R.K.'s abuse.  Therefore, the Church could have had no duty to protect R.K., and the negligence claims should be dismissed as a matter of law.

There is no "generalized" duty to protect a person from the intentional harm of another, including intentional sexual misconduct.[5]  However, a duty may arise when "a special relationship exists between the defendant and either the third party or a foreseeable victim of the third party's conduct."  Niece, 131 Wn.2d at 43.  The CJC court held that "in general" a special relationship exists "between a church and the children of its congregation."  138 Wn.2d at 721-22 (emphasis added).  This is so, the court reasoned, because "[t]he children of a congregation may be delivered into the custody and care of a church and its workers, whether it be on the premises for services and Sunday school, or off the premises at church sponsored activities or youth camps."  Id. at 722 (emphasis added).  The court analogized churches to schools, innkeepers, and hospitals, which each have duties to protect their respective students, guests and

---

[5]  Indeed, the Washington courts are reluctant to impute a duty even for an employee's sexual assault.  In CJC, the court reiterated that "'[v]icarious liability for intentional or criminal actions of employees would be incompatible with recent Washington cases rejecting vicarious liability for sexual assault, *even in cases involving recognized protected special relationship.*'"  CJC, 138 Wn.2d at 719 (quoting Niece v. Elmview Group Home, 131 Wn.2d 39, 55, 929 P.2d 420 (1997) (alteration and emphasis in original)).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-9
No. C 04-2338 RSM
7566-025226  60944

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   patients "within [their] custody." Id. at 721 (discussing Niece v. Elmview Group Home,

2   131 Wn.2d 39, 44, 55, 929 P.2d 420 (1997).

3       Here, R.K. was not a member of the Church or any of its congregations when

4   LoHolt allegedly abused him.[6]  Nor were his parents, siblings or step-siblings members

5   of the Church or its congregations.  There is no evidence that the LDS Church ever

6   accepted custody of him in any way as a child; he admitted that he did not come into

7   association with LoHolt through any involvement with the Church.  Thus, under CJC,

8   there was no special relationship between the Church and R.K. as a matter of law.  It

9   would be an incredible stretch of Washington law to find a special relationship under

10  these facts.   The CJC court's analogy to schools, innkeepers and hospitals is

11  instructive.  For a special relationship to exist in each of those cases, students must

12  enroll, hotel guests must register, and hospital patients must be admitted for care.

13  There is an affirmative act on the part of the defendant to accept custody of the victim.

14  Here, there is no evidence of any action by the Church to accept R.K. into its

15  membership.

16      Moreover, the CJC court itself emphasized a reluctance to impose a duty on a

17  principal for the intentional misconduct of an agent.  CJC, 138 Wash.2d at 727.  To

18  defendants' knowledge, no court nationwide has ever found a special relationship

19  between a church and someone outside the congregation absent some affirmative

20  action by the church to accept custody of the nonmember.  Cf. Bryan R. v. Watchtower

21  Bible and Tract Soc. of New York, 738 A.2d 839, 847 (Me. 1999) (declining to find a

22  special relationship between the church and its members because "an amorphous

23

---

[6]  He later joined the Church as a graduate student.  R.K. Depo at 29:5-8.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-10
No. C 04-2338 RSM
7566-025226  60944

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  common law duty on the part of a Church or other voluntary organization requiring it to

2  protect its members from each other would give rise to 'both unlimited liability and

3  liability out of all proportion to culpability,'" and finding such a duty would necessarily

4  require secular inquiry into doctrinal matters, which the First Amendment proscribes);

5  Meyer v. Lindala, 675 N.W.2d 635, 640-41 (Minn. App. 2004) (declining to find a special

6  relationship between sexual assault victims and their religious congregation and its

7  governing body, thus precluding an affirmative duty on the part of those defendants to

8  protect victims from another member of the congregation).

9       As CJC held, a special relationship between the Church and R.K. is a critical

10 factor for imposing a duty on the Church to protect R.K.  Absent that relationship, there

11 can be no common law duty on the Church, and R.K.'s claims must be dismissed.

12      A separate basis for dismissal of R.K.'s claims against COP is that R.K. cannot

13 establish the fourth CJC factor – a causal connection between the perpetrator's position

14 in the Church and R.K.'s injuries.  Under CJC, even if there is a special relationship

15 between the church and the victim and the church and the wrongdoer, the lynchpin of

16 any duty on the church to protect the victim is that the nexus between the victim and the

17 intentional wrongdoer must be occasioned by the church.  138 Wn.2d at 723-24; see

18 also Restatement of Torts § 302(B), cmt. e, ¶ D.  As stated in CJC:

19          The focus is not on when or where the harm occurred but on whether the
            church or its individual officials negligently caused the harm by placing its
20          agents into association with the plaintiffs ….

21 CJC,  38 Wn.2d at 724.

22

23

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    Here, R.K. admitted in his answers to interrogatories and again in his deposition

2    that none of the abuse took place on Church premises or in connection with a Church

3    function.  R.K. admitted in his answers to interrogatories and in his deposition that every

4    episode of abuse took place either in a field near his friend John Doe's home or in

5    LoHolt's basement apartment in John Doe's home.  Moreover, he testified that LoHolt

6    was the master of manipulation, and would entice R.K. to his apartment – down the hall

7    from John Doe's bedroom – with homemade ice cream, root beer floats, and

8    firecrackers.  There is absolutely no evidence of a Church connection that brought

9    LoHolt and R.K. together or gave rise to any particular episode of abuse.  As a matter of

10   law, the Church had no common law duty to R.K.[7]

11   Any attempt to expand CJC to impose a duty on COP to R.K. under these

12   circumstances would contravene CJC's express warning, offend common sense, and

13   violate the First Amendment of the U.S. Constitution by effectively transforming religion

14   into the insurer for its members' wrongs and by impermissibly entangling secular

15   government in the conduct of religion.[8]

16

17

---

18   [7]As "reasonable minds could reach but one conclusion," the Court can resolve the issue of

19   causation as a matter of law.  Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985). Even
     assuming a special relationship between the Church and R.K. and that that relationship was
     sufficient to create a duty of care, well-established negligence law requires proof of causation to

20   sustain any claim.  See, e.g., Rikstad v. Holmberg, 76 Wn.2d 265, 268, 456 P.2d 355 (1969);
     Estate of Lee v. City of Spokane, 101 Wn.App., 158, 176, 2 P.3d 979 (2000) (discussing

21   element of negligent infliction of emotional distress claim).  Given these undisputed facts, there
     is no causation between the Church's alleged negligence and the harm to R.K.

22   [8] The deficiencies of the plaintiffs' claims as against LDSFS are even more profound.  There is
     no evidence that LDSFS had a special relationship with LoHolt or the plaintiffs.  There is no

23   evidence that LDSFS had any knowledge of any risk that LoHolt posed to anyone, much less
     these plaintiffs.  In short, there is no common law duty on the part of LDSFS to protect these
     plaintiffs on the facts of this record.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-12
No. C 04-2338 RSM
7566-025226  60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

C.    **Plaintiffs' Claims for Equitable Estoppel and Fraudulent Concealment are Properly Dismissed**.

Plaintiffs seek to sue defendant on "claims" of equitable estoppel and fraudulent concealment.  Neither is a claim under Washington law for which plaintiffs may seek recovery.

### 1.    Equitable Estoppel

Equitable estoppel is an affirmative defense.  Under Washington law, plaintiffs may not seek damages on a claim of equitable estoppel.  Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 258-59, 616 P.2d 644 (1980) (equitable estoppel is available only as shield or defense); McCormick v. Lake Wash. Sch. Dist., 99 Wn. App. 107, 117, 992 P.2d 511 (1999) ("Equitable estoppel is available only as a defense to claims against enforcement of a contract:  it is a shield . . . ") ; Department of Ecology v. Theodoratus, 135 Wn.2d 582, 957 P.2d 1241 (1998); Harberd v. City of Kettle Falls, 120 Wn. App. 498, 519, 84 P.2d 1241 (2004); State ex rel. D.R.M. v. Wood, 109 Wn. App. 182, 195, 34 P.3d 887 (2001); Estate of Hall v. HAPO Fed. Credit Union, 73 Wn. App. 359, 362, 869 P.2d 116 (1994).  Because plaintiffs have cited equitable estoppel as a claim on which they are seeking damages, and this claim has been rejected in Washington, this claim is properly dismissed.

### 2.    Fraudulent Concealment

The theory of fraudulent concealment has several recognized uses in Washington law.  First, the issue of concealment has been utilized by plaintiffs to argue that the Court should apply the discovery rule to the normal statute of limitations because defendant somehow concealed from plaintiff the fact that she had a cause of

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    action. *See* <u>Kittinger v. Boeing</u>, 21 Wn. App. 484, 585 P.2d 812 (1978) (discovery rule

2    applies to statute of limitations on libel suit because defendant concealed the

3    memorandum containing the libel); <u>White v. Johnsville</u>, 103 Wn.2d 344, 355, 693 P.2d

4    687 (1985) (discovery rule may toll statute of limitations on wrongful death action when

5    defendant fraudulently concealed cause of death); <u>Ruth v. Dight</u>, 75 Wn.2d 660, 667,

6    453 P.2d 631 (1969) (discovery rule may toll statute of limitations on medical

7    malpractice claim when physician concealed cause of injury).  In this context, fraudulent

8    concealment is not a claim, but a means to extend the statute of limitations.  Because

9    RCW 4.16.340, the statute of limitations applicable in these cases already provides a

10   mechanism to extend the statute, a "claim" for fraudulent concealment is neither

11   necessary nor appropriate.

12   Washington law also recognizes a claim for fraudulent concealment as a species

13   of common law fraud.  <u>Liebergesell v. Evans</u>, 93 Wn.2d 881, 892, 613 P.2d 1170

14   (1980). In accordance with Fed.R.Civ.P. 9(b), plaintiff must plead fraud with particularity.

15   <u>Vess v Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003).  Fed.R.Civ.P. 9(b)

16   authorizes dismissal when a complaint fails to plead fraud with particularity.  In this

17   case, plaintiffs did not identify any specific misrepresentations or specify when and

18   where they occurred.  These allegations are not particular enough to satisfy Rule 9(b)).

19   <u>Id</u>. (citing <u>U.S. ex rel. SmithKline Beecham, Inc.</u>, 245 F.3d 1048, 1051 (9th Cir. 2001)

20   (holding that broad allegation that the defendant "knowingly changed control numbers

21   [on various tests] to wrongfully represent that the laboratory results fell within an

22   acceptable standard of error," where the plaintiff did not specify the "types of tests

23   implicated in the alleged fraud, identify the [defendant's] employees who performed the

**STAFFORD FREY COOPER**

1   tests, or provide any dates, times, or places the tests were conducted," did not satisfy

2   Rule 9(b)); In re GlenFed, Inc. v. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir.

3   1994) (requiring a plaintiff to state the time, place, and content of an alleged

4   misrepresentation and explain why the statement is false or misleading in order to

5   satisfy Rule 9(b)).

6       Virtually all of the fraudulent concealment cases in Washington involve claims

7   that a seller of real estate failed to disclose a material defect in the property, often in

8   preparation of the seller's disclosure statement. Svendson v. Stock, 143 Wn. 2d 546,

9   552, 23 P.3d 455 (2001); Atherton Condomium Apartment Owners Ass'n Board of

10  Directors v. Blume Dev. Co., 115 Wn.2d 506, 513, 799 P.2d 250 (1990). In these

11  cases, the new owners allege that they were harmed when they purchased property not

12  knowing about the fraudulent defect that the seller had a duty to disclose. Washington

13  has never recognized a claim for fraudulent concealment when the plaintiff is claiming

14  that an employee of the defendant tortiously harmed him. A review of cases from other

15  jurisdictions also reveals an absence of case law recognizing such a claim. Instead,

16  Washington recognizes a specific cause of action for negligence/special relationship

17  that governs plaintiffs' claims, CJC v. Corporation of Catholic Bishop, 138 Wn.2d 699,

18  985 P.2d 262 (1999), and the claim for fraudulent concealment is properly dismissed.

19      **D.    Plaintiffs' Claim for Negligent Infliction of Emotional Distress is**

20          **Properly Dismissed**.

21      Plaintiffs assert that defendants are liable on the claim of negligent infliction of

22  emotional distress. This claim is properly dismissed as superfluous given plaintiffs'

23  claim of negligence. In order to recover for negligent infliction of emotional distress,

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100

Seattle WA 98101.1374

TEL 206.623.9900  FAX 206.624.6885

1  plaintiff must demonstrate that her claim meets all the elements of a negligence claim:

2  duty, breach, proximate cause, and damages.  Snyder v. Med. Serv. Corp., 145 Wn.2d

3  233, 243, 35 P.3d 1158 (2001).  Because plaintiffs are already suing for negligence, their

4  claim for negligent infliction of emotional distress is also properly dismissed as

5  superfluous.

6      In Francom v. Costco Wholesale Corporation, 98 Wn. App. 845, 991 P.2d 1182

7  (2000), plaintiff sued for emotional distress damages under theories of unlawful

8  discrimination and negligent infliction of emotional distress.  Both theories were based

9  on the same facts.  In affirming the dismissal of the negligent infliction claim, the court

10  stated:

11      Because the law will not permit a double recovery, a plaintiff will not be
        permitted to be compensated twice for the same emotional injuries.
12      However, when a plaintiff alleges that non-discriminatory conduct caused
        separate emotional injuries, he or she may maintain a separate claim for
13      negligent infliction of emotional distress.    But here, the Francoms'
        separate claim for emotional distress arises directly from Mr. Hathaway's
14      harassment, which they allege was discriminatory.

15  98 Wn. App. at 864-65 (internal citations omitted); see also, Johnson v.  DSHS, 80

16  Wn. App. 212, 230, 907 P.2d 1223 (1996) (claim for negligent infliction is superfluous

17  when plaintiff can recover emotional distress damages on another claim).   Here,

18  plaintiffs assert two negligence-based claims.  The claim for negligent infliction, which

19  imposes an additional element  (e.g., objective symtomology)[9] on plaintiffs' ability to

20  recover, is superfluous and unnecessary and is properly dismissed to prevent a double

21  recovery.

22

23

---

[9] Kloepful v. Bokor, 149 Wn.2d 192, 197-97, 66 P.3d 630 (2003).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-16
No.  C 04-2338 RSM
7566-025226   60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

E.    **Plaintiffs' Claim for Civil Conspiracy is Properly Dismissed**.

In their fourth cause of action, plaintiffs raise a "civil conspiracy" claim.  Plaintiffs assert that "[d]efendants, by and through their agents and representatives, conspired to cover up incidents of sexual abuse" and thereby caused plaintiffs injury.    Amended Complaint at ¶ 7.2.  To establish a civil conspiracy, plaintiffs "must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." Wilson v. State, 84 Wn. App. 332, 350-51, 929 P.2d 448 (1996), cert. denied, 522 U.S. 949 (1997).  Because Washington law requires civil conspiracy be proved by clear, cogent, and convincing evidence, plaintiffs "must show in opposition to the motion for summary judgment that [they] can produce evidence which, if believed, will meet the higher standard."    Inge v. Rock Fin. Corp., 388 F.3d 930, 938 (6th Cir. 2004); *see also* Kaelin v. Globe Communs. Corp., 162 F.3d 1036, 1039 (9th Cir. 1998) (holding that the appropriate standard at summary judgment when clear and convincing evidence is required is whether a reasonable jury could find such evidence exists).  Further, "[m]ere suspicion or commonality of interests is insufficient to prove a conspiracy."  Id. "[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." All Star Gas, Inc., of Washington v. Bechard, 100 Wn. App. 732, 740, 998 P.2d 367, 372 (Wn. App. 2000) (quoting Lewis Pacific Dairymen's Ass'n v. Turner, 50 Wn.2d 762, 772, 314 P.2d 625 (1957)).

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    In order to sustain a civil conspiracy claim against defendants, plaintiffs must now

2    provide clear and convincing material evidence showing that (1) COP through its agents

3    or representatives combined with another party (2) to accomplish an "unlawful purpose"

4    or utilized "unlawful means" to accomplish a "lawful purpose" and that (3) Plaintiffs were

5    injured by this conspiracy.  All Star Gas, 100 Wn.App. at 740.  Plaintiffs' Amended

6    Complaint is so vague that defendants are required to guess regarding the basis for

7    Plaintiffs' civil conspiracy claim.[10]  Plaintiffs generally allege that "defendants, by and

8    through their agents and representatives, conspired to cover up incidents of sexual

9    abuse" by failing to report the abuse, warn others, and take other protective measures

10   that the law allegedly requires them to take.  *Amended Complaint at ¶ 7.2.*  However,

11   plaintiffs give no details as to which of defendants' agents were allegedly involved in this

12   conspiracy, when the conspiratorial agreement was made, who made the agreement, or

13   how the alleged conspiracy is anyway connected with the present case.  Plaintiffs have

14   not presented any additional details regarding this claim during discovery.

15   Plaintiffs have no evidence that COP, through one of its agents or otherwise,

16   entered a conspiratorial agreement with another party.  *See* Larson by Larson v. Miller,

17   76 F.3d 1446, 1456 (8th Cir. 1996) (recognizing that the intra-corporate doctrine bars a

18   conspiracy claim based on an agreement between agents of the same corporation).

19   Plaintiffs deposed several COP agents, but these depositions are bereft of any

20   reference to an agreement to engage in illegal conduct.  Plaintiffs likewise were

21   deposed and provided no information suggesting they had knowledge of any

22

---

23   [10]  Plaintiffs' allegations in regard to civil conspiracy are unquestionably insufficient to meet the
heightened pleading requirement for such a claim.  *See, e.g.*, Khan Air, LLC v. United States
Aircraft Ins. Group, 2005 U.S. Dist. LEXIS 27524, 7-8 (D. Wash. 2005).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-18
No. C 04-2338 RSM
7566-025226  60944

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    conspiratorial agreement.    Discovery in this case has been thorough and no evidence

2    of any conspiracy has emerged.  There is no evidence of any conversations, much less

3    agreements, between COP and LDSFS, that could form the basis of civil conspiracy.

4    Accordingly, Plaintiffs' conspiracy claim must fail.

5        Plaintiffs must also show clear and convincing evidence that COP, as an alleged

6    conspirator, intended to accomplish an unlawful purpose or to utilize unlawful means.

7    All Star Gas,100 Wn.App. at 740, 998 P.2d at 372.  Further, the wrongful conduct must

8    be intentional and not merely negligent.  Accurate Products, Inc. v. Snow, 67 Wn.2d

9    416, 425, 408 P.2d 1, 7 (Wash. 1965) (holding that to be actionable a conspiracy must

10   include "an intentional interference with a right without lawful justification").   Plaintiffs

11   likewise cannot prove this element of conspiracy.

12       Further, Plaintiffs must show that the alleged conspiracy actually injured

13   Plaintiffs.  See, e.g.,16 Am Jur. 2d, Conspiracy, § 53A (West 2004) ("[C]onspiracy, in

14   and of itself … does not give rise to a cause of action unless a civil wrong has been

15   committed resulting in damage.").    Accordingly, Plaintiffs must show clear and

16   convincing evidence not only that there was a conspiracy, but that it actually injured

17   Plaintiffs.  They cannot do so.   In short, Plaintiffs cannot present the requisite evidence

18   to support a civil conspiracy claim and COP is, therefore, entitled to summary judgment.

19       **F.**    **Plaintiff T.D.'s Claims are Properly Dismissed for Lack of**
              **Causation of Provable Damages**.

20
         Plaintiff T.D. alleges that he was inappropriately touched by LoHolt once at a

21   scouting function.   T.D. testified that his reaction to the incident was to think it was

22   weird.  Immediately afterward, however, T.D. fell back asleep.  T.D. did not mention the

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-19
No. C 04-2338 RSM
7566-025226   60944

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

incident to anyone for the next thirty years until a private investigator retained by plaintiffs' attorney visited him at home in connection with this lawsuit.  T.D. has never received any counseling for the abuse.  He did see Dr. Jon Conte in 2005, an expert mental health professional hired by plaintiff.  Dr. Conte did certain psychological tests on plaintiff T.D. and found that they were not significant for any psychological disorders.

Throughout his life, T.D has been successful academically, athletically, and professionally.  Plaintiff T.D. is divorced, a common occurrence in this country, he has a good relationship with his ex-wife and children (a less common occurrence).  Plaintiff Denny thinks he is divorced because he spent too much time and attention on his own interests, like golf.  Plaintiff Denny noticed a similarity between him and his father in this regard.

Dr. Conte interviewed plaintiff and uncovered two issues.  First, T.D. does not like public speaking.  T.D. speaks publicly when asked for work, but he does not like it because it makes him nervous.  T.D. conceded that this issue was very common among the general population, and could not causally link it to the sexual abuse.  Second, plaintiff Denny does not like eating in front of others.  Again, plaintiff Denny does eat in front of others, when the situation calls for it.  He just does not like it.  While this is certainly more unusual than a dislike of public speaking, Dr. Conte also could not provide any affirmative link between the dislike of eating in front of others and the sexual abuse.  Dr. Conte admitted that victims of sexual abuse can escape without suffering psychological damage.

The elements of a negligence tort claim are as follows:  duty, breach, causation and damages.  Plaintiff must allege and prove all four in order to recover.  <u>Ahmann-</u>

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Yamane, 105 Wn. App. 103, 108, 19 P.3d 436 (2001); Bowman v. Two, 104 Wn.2d 181, 186, 704 P.2d 140 (1985); Matson v. Wiedenkopf, 101 Wn. App. 472, 484, 3 P.3d 805 (2000).  As the expert has admitted, sexual abuse does not necessarily cause damage, to some it is just a weird or unpleasant thing that happened.   In this case, T.D. experienced an isolated incident that did not cause him to remain awake afterwards. He thought it was weird and fell back to sleep.  At the time of his expert evaluation, he was wondering whether the abuse had any impact on him, a question that his expert therapist could not answer in the affirmative based on the lack of any evidence of damages experienced by this incident.   To allow T.D.'s claim to go forward would necessitate the substitution of speculation for provable damages.   Under these circumstances, admittedly somewhat unique, plaintiff T.D's claims are properly dismissed.

G.    **Plaintiffs' Claims for Any Damages Related to Pre-1972 Conduct by LoHolt on the Basis that Such Damages are not, as a Matter of Law, Proximately Caused by Defendant COP's Post-1972 Alleged Negligence**

Plaintiffs John Doe and R.K. both allege abuse by LoHolt prior to 1972.  This abuse allegedly occurred at or around the Allenbach home, and not in connection with any scouting or LDS church activities.  There is no claim, allegation, or evidence that the church had any knowledge – any inkling or even any reason to suspect – that LoHolt was abusing anyone prior to February of 1972, at which time Bishop Borland was informed that LoHolt had inappropriately touched one of the scouts (who is not one of the named plaintiffs) through his sleeping bag. Upon receiving this information, Bishop Borland immediately released LoHolt from his position in scouting.  There is _no_ allegation or evidence: that any of the pre-1972 alleged abuse perpetrated by LoHolt

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  against plaintiffs John Doe or R.K. occurred at the location of, or as a result of, any

2  church function, nor was the result of any church activity or church position of LoHolt.

3      Plaintiffs' allegations against defendant COP are based upon notice: they assert

4  that defendant COP should have reported the alleged abuse to civil authorities after

5  they had learned of it.  According to the extensive discovery done to date, the earliest

6  that could have occurred was in 1972.  There is no claim or allegation by plaintiffs that

7  defendant COP should or could have acted or done anything different than it did prior to

8  allegedly receiving information in 1972 that LoHolt had inappropriately touched a

9  member of the scout troop.  Thus, it cannot be reasonably disputed that, as a matter of

10  law, there was no possible way for defendant COP's conduct to contribute causally to

11  any abuse prior to that time.

12      It is axiomatic that, in order to "prove a negligence cause of action, a plaintiff

13  must establish causation."  <u>Miles v. Child Protective Services</u>, 102 Wn. App. 142,

14  159-60, 6 P.3d 112 (2000), *citing* <u>Hartley v. State</u>, 103 Wn.2d 768, 777, 698 P.2d 77

15  (1985); <u>Harberson v. Parke-Davis, Inc.</u>, 98 Wn.2d 460, 468, 656 P.2d 483 (1983); and

16  <u>Hunsley v. Giard</u>, 87 Wn.2d 424, 434, 553 P.2d 1096 (1976).  A plaintiff can establish

17  causation only by producing:

18          Evidence sufficient to support [at least] an inference that the claimed harm
        would not have occurred but for the claimed negligence.

19

20  <u>Miles v. Child Protective Services</u>, 102 Wn. App., at 160 (*citing* <u>Hartley v. State</u>, 103

21  Wn.2d at 778 (1985)).  Here, there is no such evidence: even according to the plaintiffs'

22  sworn testimony and the allegations in their complaint, the church had no knowledge –

23  nor any reason to know – of the abuse prior to that time.

**STAFFORD FREY COOPER**

It cannot be seriously disputed that the church cannot and should not be held responsible under any theory of negligence for failing to report or take action regarding something which it did not know.  There is no allegation or proof that defendants were aware, or even should have been aware, that LoHolt had sexually abused anyone prior to 1972.

Given the lack of any allegation or proof of notice to the church, and the agreement between both plaintiffs and defendant that there was no notice to COP prior to 1972, this Court should enter an order dismissing all claims for any sex-abuse-related damages suffered by any of the plaintiffs prior to February, 1972.

### H.   The Jury Must Segregate Damages Attributed to LoHolt as An Intentional Tortfeasor.

It will be necessary for the damages caused by LoHolt's intentional conduct to be segregated from the damages, if any, resulting from COP's alleged negligence.[11]  *See,* <u>Tegman v. Accident & Medical Investigation</u>, 150 Wn.2d 102, 117, 75 P.3d 497 (2003), wherein the court ruled:

> Similarly, under RCW 4.22.070(1), where [as allegedly here] the damages result from both intentional acts and omissions and "fault," i.e., negligence, recklessness, and conduct subjecting the actor to strict liability, the damages resulting from the intentional acts and omissions *must* be segregated from damages that are fault-based.

(Emphasis added).

_____

[11]   As set forth above – and according to both plaintiffs' and defendants' experts – it is undisputed that defendant COP had no notice of the alleged abuse prior to 1972.  Defendant COP, therefore, can only be liable, if at all, for plaintiffs' post-1972 damages caused by COP's negligence, if any, and not for any damages caused by LoHolt's intentional conduct.

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   In short, defendant COP – as a matter if law – can be legally responsible only for

2   those damages resulting from the at-fault conduct of those parties against whom

3   judgment is entered, and cannot be legally responsible for damages caused by the

4   LoHolt's intentional conduct. This rule of law requires that the trier of fact: (1) determine

5   the respective plaintiffs' post-1972 total compensatory damages caused by both

6   intentional and at-fault conduct (as distinct from the other causative factors such as

7   plaintiffs' dysfunctional family life); (2) segregate/separate from that total those damages

8   attributable to intentional acts or omissions (Id., at 117-18) – doing so by reference to

9   the parties' varying degrees of culpability and causation (see, Tegman, 150 Wn.2d. at

10   116-117, quoting in part, Gregory C. Sisk, The Constitutional Validity of the Modification

11   of Joint and Several Liability in the Washington Tort Reform Act of 1986, 13 U. Puget

12   Sound L. Rev. 433, 437 (1990)); and (3) apportion responsibility pursuant to

13   RCW 4.22.070(1) among at-fault parties only for those damages resulting from at-fault

14   conduct. See generally, Tegman, 150 Wn.2d at 118-19. Defendant COP will be jointly

15   and severally liable, if at all, only for those damages resulting from the at-fault conduct

16   of parties against whom judgment is entered.

17   That this may result in the plaintiffs not being able to recover 100% of their

18   alleged damages from an allegedly negligent actor such as COP reflects the legislative

19   intent set forth in the 1986 Tort Reform Act. Id. at 119. Furthermore, as the Tegman

20   court observed, this analysis fulfills the legislative purposes "to provide some relief to

21   negligent defendants [like defendant COP] whose conduct is not as egregious as the

22   intentional tortfeasor, nor the cause of the intentionally based damages. This serves

23   purposes of the tort reform act to achieve 'a more equitable distribution of the cost and

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1    risk of injury and increase the availability and affordability of insurance.'" <u>Tegman</u>, 150

2    Wn.2d at 119.[12]

3        **I.    Plaintiffs' Failure to Segregate Damages Requires Dismissal of
            Their Case.**

4

5        It cannot be reasonably disputed that, <u>*prior to ever participating in the LDS scout*</u>

6    <u>*troop in question, as well as thereafter,*</u> plaintiffs Fleming and Doe suffered significant,

7    permanent harm as a result of their respective dysfunctional family environment.  This

8    included heated arguments between parents, physical/domestic violence between

9    parents, divorce, sadness, physical and emotional isolation, physical and emotional

10   abuse of plaintiff Doe by his emotionally absent mother, anger, alienation, lacking in

11   love, etc., all of which it is anticipated that Dr. Greenberg, plaintiffs' expert, will agree

12   has caused plaintiffs Fleming and John Doe significant harm to this day.  There is no

13   way for Dr. Greenberg – or any expert – by means of the testing, to determine to what

14   degree plaintiffs' damages are due to the sexual abuse versus the family/life difficulties.

15   The sexual abuse, family dysfunctionality, and other life difficulties have combined to

16   create who the plaintiffs are and that he cannot distinguish one causal factor from

17   another.

18       Fleming's and John Doe's emotional disturbances were caused by the combined

19   effects of the sexual abuse, family dysfunction, physical and emotional abuse, as well

20   as other life events, and that the sexual abuse cannot be segregated from the family

21   issues due to the abundance and longstanding nature of the family problems.

22
     _____
     [12] The only evidence of record in this case indicates that LDSFS had no knowledge of any of this
23   until plaintiff Fleming was seen by Fred Denison in the mid-1980's, well after the abuse at issue
     here had ended.  Thus, this serves as an additional basis upon which to dismiss LDSFS from
     the case.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-25
No. C 04-2338 RSM
7566-025226  60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1    The damages alleged by plaintiffs are exclusively psychological, mental, and/or

2  emotional in nature.  All agree that plaintiffs' damages (if any) are the result of multiple

3  significant life factors as outlined above.  It cannot be seriously disputed that these

4  factors – in addition to the post-1972 sexual abuse (in the case of John Doe) – were

5  significant contributors to the plaintiffs' damages/mental and emotional state with

6  significant, lasting effect.  It must also be agreed that these factors cannot be

7  segregated from the sexual abuse as to the degree they contributed to the plaintiffs'

8  emotional distress.

9    In light of the lack of evidence that would enable plaintiffs Fleming and Doe to

10  segregate their significant damages caused by their dysfunctional home/family life and

11  life events (including, in the case of John Doe, the pre-1972 abuse) from their damages

12  related to LoHolt's abuse, plaintiffs' claims against defendant COP must fail as a matter

13  of law.

14    In Wappenstein v. Schrepel, 19 Wn.2d 371, 142 P.2d 897 (1943), the plaintiff

15  was struck as a pedestrian by an automobile and suffered numerous injuries.  The

16  evidence showed that the plaintiff had experienced various injuries, some of which were

17  related to the accident, some of which were not; nonetheless, the jury had been

18  erroneously permitted by the trial judge to consider all of the injuries and expenses

19  related thereto without any segregation as to causation.  The court reversed the jury

20  verdict, observing that the jury had no basis upon which to allocate damages, including

21  medical expenses, for accident-caused injuries versus those unrelated to the accident.

22  In so doing, the court stated:

23

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

> Where there is evidence as to injuries or loss resulting from various causes, for some of which the defendant cannot be held responsible, but no evidence of the portion of such injuries or loss for which the defendant may be liable, the proof is too uncertain to enable the jury to determine the amount of such injury or loss.

Wappenstein v. Schrepel, 19 Wn.2d at 375-76.  *Accord:* Vanderhoff v. Fitzgerald, 72 Wn.2d 103, 107, 431 P.2d 969 (1967), wherein the court observed:

> It is true that where there is evidence of injuries or loss resulting from various causes, for some of which a defendant is not liable, there must be proof from which the jury can determine the amount of injury or loss caused by the defendant.

*See also,* Haner v. Quincy Farm Chemicals, Inc., 29 Wn.App 93, 97, 627 P.2d 571 (1981), wherein the court noted the general rule that:

> . . . if there is evidence of loss from several causes, only a portion of which is caused by the defendant, the evidence is too uncertain to award damages without proof of that portion.

Likewise, as set forth in the foregoing cases, plaintiffs' injuries in the present case are a compound of several causative factors, with defendant COP's alleged negligence only causing some portion or fraction of plaintiffs' respective overall damages.  Notably, *with regard to the significant, negative impact of plaintiffs' families* (according to the testimony of both the plaintiff and defense experts), this is *not* a case of successive or concurrent tortfeasors.  Rather, it is a case where it is undisputed that factors unrelated to LoHolt's sexual misconduct and indisputably outside of defendant COP's control (and for which COP is not responsible as a matter of law) have caused significant, lasting, permanent psychological, mental, and emotional injury to the plaintiffs prior to defendant's allegedly tortious conduct.  If plaintiffs were permitted to present their case to the jury on the basis of the testimony of their expert witness, the

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   jury would impermissibly be "compelled to resort to speculation and conjecture" in

2   determining what portion of each plaintiff's damages, if any, are attributable to

3   defendant COP's alleged negligence – something which this court cannot permit.  Miller

4   v. Staton, 58 Wn.2d 879, 887, 365 P.2d 333 (1961), *quoting,* Wappenstein v. Schrepel,

5   19 Wn.2d at 375-76.

6        In Scott v. Rainbow Ambulance, 75 Wn.2d 494, 452 P.2d 220 (1969), the

7   plaintiff fell and injured her left arm on an icy sidewalk, only to have her left arm injured

8   again when the ambulance personnel dropped her from the stretcher onto the ground,

9   onto her left arm.  At trial the plaintiff admitted in opening statement – just as plaintiffs

10  here admit per their expert witness – that it was impossible to attribute the extent of her

11  injury caused in the first fall and the extent of the injury caused in the second fall.  The

12  court granted the defendant's motion to dismiss following the opening statement for the

13  reason that it was plaintiff's burden to segregate damages, and plaintiff had admitted

14  that she could not satisfy that burden of proof.

15       In so ruling, the court observed that shifting the burden of proof for allocating

16  damages to the defendants is justified in a case where – unlike here:  (1) the plaintiff is

17  without fault; (2) there are concurrent or successive tortfeasors causing damage to

18  plaintiff; and (3) "it is certain that between them they caused it all [i.e., all of the damage

19  to the plaintiffs]."  (*Id.*, at 497-98.)  Although plaintiffs in the present case are faultless, it

20  is far from "certain" that the defendants caused all of plaintiffs' psychological, emotional,

21  and mental damage; indeed, it is undisputed that the fighting, abandonment, physical

22  abuse, etc. in the family are significant, lasting, permanent contributors to the plaintiffs'

23  emotional, psychological and mental states.

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   This being the case, plaintiffs' claims – given their inability to segregate their

2   damages – must fail as a matter of law since the issue of damages will therefore

3   impermissibly and "…necessarily be left to speculation, conjecture and surmise…[and it

4   is]..plaintiff's responsibility to remove the issue from the realm of guesswork…  (*Id.*, at

5   498.)

6   Even if the Scott criteria identified above were not applicable, where—as here—

7   the liability is several and not joint, the burden of segregating damages nonetheless falls

8   upon the plaintiff.  Thus, in Smith v. Rodene, 69 Wn.2d 482, 418 P.2d 741 (1966), the

9   plaintiff was injured when the automobile in which she was a passenger was rear-

10  ended.  She suffered injuries which principally included headaches, neck pain, and pain

11  in her upper extremities.  At the time of her subsequent rear-end accident approximately

12  eight months later, many of her symptoms had improved although she was continuing to

13  experience occasional headaches, and pain in her neck and upper extremities.  The

14  court noted that those facts presented "two independent torts" and "two separate harms"

15  (i.e., traumas to the body) because the collisions were "widely separated by both time

16  and distance…there was neither concert of action nor independent torts uniting to cause

17  a single injury."[13]  (Id., at 484.)  On that basis, the court observed that the liability of

18  each defendant was several, with the plaintiff bearing the burden to segregate

19  damages, i.e., to "prove the amount of damages attributable to each collision."  (Id., at

20  485.)

---

21  [13]  Moreover, by virtue of Tort Reform Act, the liability of defendants and LoHolt in this case is

22  several given that his conduct was intentional and there is no allegation of intentional conduct
    against the church Defendants in this case.  Notably, plaintiffs cannot collect money damages
    for the same injury twice; thus, they must either accede to dismissal of all but one tort claim for

23  emotional distress damages, or they must agree that they bear the burden of segregating
    damages as between the various causes of action.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-29
No. C 04-2338 RSM
7566-025226  60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    Similarly, the sexual abuse of plaintiffs by LoHolt is clearly separated in time and

2  type from the dysfunctional family environments experienced by plaintiffs Fleming and

3  John Doe, as well as from the pre-1972 damages.  Because the defendants are only

4  severally liable (if at all) for those injuries attributable to the post-1972 sexual abuse,

5  plaintiffs bear the burden of segregating damages.  *Accord:* Holmes v. Toothaker, 52

6  Wn.2d 574, 328 p.2d 146 (1958) (wherein the court notes: "where there is evidence

7  regarding injuries or loss resulting from various causes, for some of which the defendant

8  cannot be held responsible, but no evidence of the portion of such injuries or loss for

9  which the defendant may be liable, the proof is too uncertain to enable the jury to

10  determine the amount of injury or loss.")

11    DATED this 6th day of January, 2006.

12
13                                      STAFFORD FREY COOPER

14                                      By:    /s/ Marcus B. Nash via ECF
15                                          Thomas D. Frey, WSBA #1908
                                           Marcus B. Nash, WSBA #14471
16                                          Attorneys for Defendants

17
18
19
20
21
22
23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-30
No.  C 04-2338 RSM
7566-025226  60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1

## CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed **Defendants' Motion for Summary Judgment** using the CM/ECF system which will send notification of such filing to the following persons, in addition to service by hand delivery:

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim
600 University Street, Suite 2100
Seattle, WA 98101-4185
Email: mpfau@gth-law.com
        *Attorneys for Plaintiffs*

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA 98101
Email: timkosnoff@comcast.net
        *Attorneys for Plaintiffs*


DATED this 6th day of January, 2006, at Seattle, Washington.


_/s/ Marcus B. Nash via ECF_____

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-31
No. C 04-2338 RSM
7566-025226  60944

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885