The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K. and T.D.<br><br>       Plaintiffs,<br><br>   v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/k/a LDS FAMILY SERVICES, a Utah corporation<br><br>       Defendants. | NO.  04-2338 RSM<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS**<br><br>**Note on Motion Calendar: Friday, February 3, 2006**<br><br>*Oral Argument Requested* |

## I.        <u>INTRODUCTION</u>

Plaintiffs allege that about 30 years ago they were sexually abused by a member of The Church of Jesus Christ of Latter-day Saints who served as a volunteer in a local church scouting troop.  Plaintiffs seek to impose liability on defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints (hereinafter "COP") for that abuse.

Plaintiffs' claims have long been barred under Washington's three-year limitations period.  Over two decades have passed since plaintiffs reached the age of majority and the statute of limitations commenced running.  Although Washington has a generous discovery rule for abuse victims, plaintiffs cannot meet their burden of proof under that rule because (1) they did not repress their memories of the abuse, (2) they have always known the abuse was wrongful and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 1
NO. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

injurious, and (3) for many years they have been mentally and emotionally capable of connecting their alleged injuries to the abuse. In short, plaintiffs had the knowledge and capacity to sue decades ago but didn't. Under these facts, Washington's discovery rule does not apply and plaintiffs' claims are barred.

The simple reality is that plaintiffs long ago made personal decisions to deal with their alleged abuse through private means, such as counseling, rather than pursue legal action. It appears that only recently – after being contacted by their current lawyers and learning about large verdicts in the press – did they decide to sue. Be that as it may, Washington's discovery rule does not exempt these types of delays from the ordinary effects of the statute of limitations. Like all jurisdictions, Washington recognizes the dangers of stale claims. Those dangers are abundantly present here. In the 30 years following the alleged abuse, memories on all sides have faded, evidence has been lost, witnesses have died. Even the social standards by which we understand and address abuse issues have changed dramatically. As a matter of Washington law, due process, and basic fairness, plaintiffs' belated claims must be dismissed.

## II.    RELIEF SOUGHT

Defendants request an order granting summary judgment in their favor dismissing plaintiffs' claims due to running of the applicable statute of limitations, RCW 4.16.340.

## III.    STATEMENT OF FACTS

### A.    Plaintiff Kenneth Fleming

Plaintiff Kenneth Fleming (hereinafter "Fleming") was born on April 1, 1962. *Fleming Dep. at 9:9.* He joined The Church of Jesus Christ of Latter-day Saints (hereinafter "Church") in 1972, when he was twelve years old. *Fleming Dep. at 44:22-25; 45:1-6.*[1] Fleming asserts that after joining the Church he was abused by Church-member Jack LoHolt ("LoHolt") in LoHolt's home, on scout outings and activities, and in the course of being employed by LoHolt. *Fleming*

---

[1] There is an inconsistency in Fleming's testimony. Though not necessarily relevant, he alleges that he was first abused when he was twelve in 1972; however, he was born in 1962. For purposes of this motion, it is assumed that he was twelve in 1972.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 2

NO. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    *Dep. at 46:11-19; 52:10-18.*  He asserts that the abuse continued until he was seventeen years

2    old.  *Fleming Dep. at 44:22-25; 45:1-6.*

3        Fleming has long known that LoHolt's injurious actions were wrongful.  From the time

4    the abuse first occurred, Fleming felt guilty about the abuse and knew it was wrong.  *Fleming*

5    *Dep. at 100:16-20.*  Fleming states that from the outset the abuse frightened him, and that he

6    prayed it would stop.  *Fleming Dep. at 100:13-15.*  He knew he was being abused and "to [him]

7    it was bad."  *Fleming Dep. at 100:18-20, 23.*  He felt insecure and distrustful of others, he felt

8    that the abuse made it difficult to engage in other friendships and relationships, and he felt lost

9    and trapped.  *Fleming Dep. at 100:11-25; 101:1-12.*

10        After the abuse ended, Fleming discussed it and its impact on him with others, including

11    a counselor.  After graduating from high school, Fleming desired to serve a mission for the

12    Church.  Fleming Dep. at 21:18-20.  In 1979, he reported to his ecclesiastical leader, Bishop

13    Pettit, that he had been sexually abused by LoHolt, which he erroneously thought might

14    disqualify him from being a missionary.  *Fleming Dep. at 21:20-25.*  Fleming expressed to the

15    bishop that as a result of the abuse, he felt guilty and unworthy.  *Fleming Dep. at 22:5-9.*

16    According to Fleming, the bishop (whose own son had been abused by LoHolt), apologized to

17    Fleming for LoHolt's abuse, and stated that local leaders had mistakenly believed that LoHolt

18    had been reformed many years ago.  *Fleming Dep. at 22:14-19.*  The bishop told him that the

19    abuse was not his fault and authorized him to become a missionary.  *Fleming Dep. at 23: 1-3.*

20    During this 1979 meeting, when Fleming allegedly learned that the Church had earlier received

21    complaints about LoHolt, Fleming felt angry and frustrated and believed that the Church had

22    wronged him.  *Fleming Dep. at 81: 16-21.*  He was nineteen years old at the time.

23        In the early 1980s, while in his twenties, Fleming was concerned enough about the abuse

    to discuss it again with his new bishop--Bishop Hoisington.  *Fleming Dep. at 24:17-19.*  Bishop

    Hoisington arranged a series of professional counseling sessions for Fleming to help him resolve

    problems associated with the abuse.  *Fleming Dep. at 20:11-14; 24:17-23; 25:1-24.*  Fleming

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 3
NO. 04-2338 RSM
7566-025226  61691

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   met with Fred Denison, a counselor, on twelve separate occasions. *Fleming Dep. 18:14-18;*

2   *24:20-23.* As a direct result of this counseling, Fleming felt that he had "resolved the issues" and

3   was able to put "the whole ordeal [to rest]." *Fleming Dep. at 25:14-18.* He testified: "I had

4   come to know that it wasn't my fault, that I wasn't at guilt" and was able to move on. *Fleming Dep. at 25:18-24.*

5       Denison recalls that Fleming came to him specifically because of his concerns about the

6   effect that the abuse was having on his life. He indicates that Fleming seemed depressed,

7   exhibited symptoms of anxiety, and was having difficulty in courses he was taking to become a

8   certified court reporter. *Denison Dep. 14:15-16; 24:11-12.* Fleming believed those difficulties

9   were connected to the abuse by LoHolt. *Id.* Denison also testified that Fleming had engaged in

10   consensual homosexual conduct that was contrary to the teachings of the Church. Fleming was

11   concerned that the abuse had created or contributed to his sexual attraction to other males.

12   *Denison Dep. 14:23-24; 17:7-9; 41:6-18.* Denison also indicates that Fleming exhibited

13   symptoms of depression and anxiety which Denison explained to him were connected to the

14   abuse. *Denison Dep. 14:23-24; 17:7-9; 41:6-18.* Fleming also felt guilty for having been

15   abused, which Denison helped to dispel as he helped him understand that he was a victim.[2]

16   *Denison Dep. 21:8-20.* Denison's professional view was that Fleming was not only mentally and

17   emotionally capable of understanding that the abuse had caused him significant injury, but that

18   Fleming actually knew and believed that it had. *Denison 21:21-24.*

19       Fleming's statements to others confirm Denison's conclusions. From his teen years and

20   into to his twenties, Fleming developed a close relationship with the Searle family. Fleming

21   Dep. at 70: 14-25, 71: 16. Although Fleming has no memory of what he told Barbara Searle

22

23   [2] The Court should note that due to the lengthy passage of time the memories of both Ken Fleming and Fred Denison have faded.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 4

NO. 04-2338 RSM
7566-025226  61691

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    about the abuse and its impact on him, Fleming Dep. at 71: 17-25, 72: 1-25, 73: 1-25, 74: 1-25,

2    75:1-19, Barbara Searle (the mother) recalls the details of what he told her:

3    > In one of our lengthy conversations in the late 1980's or early 1990's, Kenny
> [Fleming] was very upset, and told me that he had confronted Jack LoHolt, and
4    > had told Jack that he was very angry with Jack for what Jack had done to him. He
> stated to me that he had told Jack face-to-face that Jack had "ruined my [Ken's]
5    > life." In one of our discussions, Kenny expressed emotional problems about the
> abuse. Kenny was at times upset about his family. He told me that Jack's abuse
> was the reason why he had a hard time with relationships with girls. He told me
6    > that he hated what Jack had done to him. He was very angry with Mr. LoHolt
> about the abuse and what it did to him.

7    *Searle Decl. at ¶ 7.*

8

9        Fleming did not seek any other professional help regarding the abuse until 2003.

10   *Fleming Dep. at 28:16-17; 29:21-24.* After his mid-1980s counseling sessions, for a span of

11   almost twenty years, Fleming did not experience any significant problems with the abuse or the

12   aftermath of the events. *Fleming Dep. at 30:10-13.* Fleming was "functioning to what [he] felt

13   was normal." *Fleming Dep. at 31:9.* He began discussing the abuse again with a counselor only

14   at about the same time he became involved with this litigation. *Fleming Dep. at 33:1-25.*

15       Fleming turned 18 on April 1, 1980. Thus, his statute of limitations expired on April 1,

16   1983 unless he can establish some delayed discovery of the abuse or his injuries. The complaint

17   in this case was filed on October 26, 2004, over 24 years after Fleming reached the age of

18   majority.

**B.    Plaintiff R.K.**

        Plaintiff R.K. (hereinafter "R.K.") was born on June 26, 1962. *R.K. Dep. at 5:18.* R.K.

obtained a Bachelor's Degree and Master's Degree from Seattle University, attended Harvard

University Graduate School of Education, was honored as a Fulbright Memorial Fund Scholar,

and is currently training to be a school principal at a graduate program at Seattle Pacific

University. *R.K. Dep. at 7:20-25; 8:5-16.* He currently teaches chemistry, leadership, and math

at a local high school. *R.K. Dep. at 6:18-21.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 5

No. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

R.K. asserts that LoHolt abused him on six separate occasions when R.K. was between the ages of nine and twelve years old. *R.K. Dep. at 13:22-25.* R.K. did not come into contact with LoHolt in connection with any Church or scouting activity – R.K. was not even a member of the Church at the time of the abuse. *R.K. Dep. 75:11-14.* R.K. encountered LoHolt solely because LoHolt was a neighbor who lived at the home of R.K.'s friend John Doe. *R.K. Dep. at 18:13-18; 75:15-17.* R.K. was never abused on Church premises; rather, he was allegedly abused in a vacant field and in LoHolt's apartment. *R.K. Dep. at 19:4-15.* While in graduate school, R.K. joined the Church, but does not actively participate or attend meetings. *R.K. Dep. at 29:5-25: 30:1-1-23.*

R.K. did not repress his memories of the abuse. In fact, he spoke of the abuse to close friends, family members, and other individuals for thirty years. For example, he told his mother and father, stepsisters, Evalyn deGuzman, Jovine Umali, Julie Garasi, Rochelle Cope, and Dr. Wight. *R.K. Dep. at 37:1-4; 37:13-21, 38:22-25; 39:9-22; 40:10-11.* R.K. never specifically sought psychological or psychiatric counseling to assist him in dealing with the abuse. *R.K. Dep. at 32:11-14.* R.K. does not allege that he did not know that he was a victim. Further, R.K. does not allege that he did not know that the conduct was wrong. R.K. joined this lawsuit after reading an article in the local newspaper. *R.K. Dep. at 17:11-21.* R.K. does not allege any new or more severe injury than what he experienced directly from the abuse while a teenager-- twenty-five years ago. *R.K. Dep. at 43:18-24.*

R.K. turned 18 on June 26, 1980. Thus, his statute of limitations expired on June 26 1983, unless he can establish some delayed discovery of the abuse or his injuries. R.K. filed his claims on March 29, 2005, almost 25 years after reaching the age of majority.

C.    **Plaintiff T.D.**

Plaintiff T.D. (hereinafter "T.D.") was born in about 1964. *T.D. Dep. at 17:17-19.* T.D. considered himself a "good student," attended Washington State University, and graduated from Western Washington University with a degree in political science. *T.D. Dep. at 7:3-9.* T.D. has

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

completed some post-graduate studies at Western Washington University and has worked for Boeing since graduation. *T.D. Dep. at 7:10-23.* He was married and has three children. *T.D. Dep. at 8:3-20.*

Plaintiff T.D. alleges only one single event of abuse. The abuse occurred when T.D. attended a scout camping trip in either 1975 or 1976 after being invited by a friend, Dan Fleming, who was part of the troop. *T.D. Dep. at 14:8-14; 17:17-23.* T.D. was not a member of the Church and not a Boy Scout. *T.D. Dep. at 9:9-11; 13:14-22.*

At the scout camping trip, while sleeping on the floor of a cabin with the other boy scouts, T.D. was awakened by LoHolt, who fondled him and sucked on his toes. *T.D. Dep. at 18:19-25, 19:1-25; 20:1-25.* T.D. thought LoHolt's conduct was weird. *T.D. Dep. at 19:9-12.* The next morning, T.D. told Dan Fleming about the incident. *T.D. Dep. at 21:17-21.* T.D. did not allege or provide any evidence that he was unaware he was a victim of abuse or that he did not know that LoHolt's conduct was wrong. Rather, he thought that the incident was "very strange" and, like any stressing situation, that the incident seemed to go on for a "quite a while." *T.D. Dep. at 19:23-25; 20:1-2.* Further, T.D. does not claim that he ever forgot the incident or repressed his memory of the events; at deposition, he stated that his memory of the event is "as clear as [if] it happened yesterday." *T.D. Dep. at 30:11-12.*

T.D. saw Dr. Jon Conte in August 2005, an expert mental health professional hired by plaintiffs' counsel. Dr. Conte did certain psychological tests on T.D. and found that they were not significant for any psychological disorders. *Conte Dep. at 26:1-7.* Throughout his life, Plaintiff T.D was successful academically, successful athletically, and has been successful professionally. *Conte Dep. at 32:19-33:22; 36:3-15.* Although T.D. is divorced, he has a good relationship with his ex-wife and children. *Conte Dep. at 36:18-37:8.* T.D. thinks he is divorced because he spent too much time and attention on his own interests, like golf. T.D. noticed a similarity between him and his father in this regard. *Conte Dep. at 36:9-19.*

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Dr. Conte interviewed T.D. and then purported to link two issues with the abuse. First, T.D. does not like public speaking. T.D. speaks publicly for work, but he does not like it because it makes him nervous. Dr. Conte conceded that this issue was very common among the general population, and could not link it to any sexual abuse. *Conte Dep. at 26:15-25; 28:4-11.* Second, T.D. does not like eating in front of others. Dr. Conte does not know when T.D. began having this concern. T.D. does eat in front of others, when the situation calls for it, but he doesn't like it. Although more unusual than a dislike of public speaking, Dr. Conte likewise could not provide any affirmative link between a dislike of eating in front of others and the sexual abuse. *Conte Dep. at 28:12-29:1.* Dr. Conte admitted that victims of sexual abuse can escape without suffering psychological damage. *Conte Dep. at 50:20-51:21.*

T.D. turned eighteen in 1982. Thus, his statute of limitations expired on his birthday in 1985, unless he can establish some delayed discovery of the abuse or his injuries. T.D. filed his on March 29, 2005, about 23 years after he reached the age of majority.

## D.  Plaintiff John Doe

Plaintiff John Doe (hereinafter "Doe") was born September 22, 1962. *Doe Dep. at 6:15.* Doe has been married for twenty-three years to his wife Sharon. Doe Dep. at 6:22. He first learned of this lawsuit through the plaintiffs' investigator who contacted him on multiple occasions. *Doe Dep. at 23: 2-25; 24:1-5.*

Doe alleges that LoHolt first abused him in about 1970 when he was eight years old. *Doe Dep. at 36:15-20.* The abuse consisted of a couple of isolated incidents until Doe turned twelve years old and entered the scouting program. *Doe Dep. at 36:12-24.* The abuse ceased altogether when Doe was about age thirteen. *Doe Dep. at 44:12-19.*

Doe always knew that LoHolt's conduct was inappropriate. *Doe Dep. at 32:23-25; 33:1-9.* Doe knew that he was a victim and knew the conduct was wrong. Doe Dep. at 43:3-8. In the years after the abuse, Doe discussed the events with his father because he "felt something wrong

1  had been done to [him]" and he felt "dirty." *Doe Dep. at 43:5-8, 43:22*.  Doe stated, "I knew it

2  was wrong" (*Doe Dep. at 43:6*), and that he "felt abused." *Doe Dep. at 44:4*.

3       Doe never forgot or repressed his memory of the abuse; rather he discussed the events

4  and his feelings with different people.  *Doe Dep. at 63:19-23*.  Doe told his ecclesiastical leader,

    Bishop Pettit, about the abuse shortly after it occurred.  *Doe Dep. at 55:1-25*.  He discussed it

5  with his wife and friends in the early 1990s.  *Doe Dep. at 59:13-25; 60:1-5*.  Records at Pugent

6  Sound Hospital suggest that he talked about it with staff there, though Doe cannot fully

7  remember.  *Doe Dep. at 60:21-25; 61:1*.

8       Doe turned 18 on September 22, 1980.  Thus, his statute of limitations expired on

9  September 22, 1983, unless he can establish some delayed discovery of the abuse or his injuries.

10  The complaint in this case was filed on October 26, 2004, over 24 years after reaching the age of

    majority.

11
                                    **IV.     LAW AND ARGUMENT**

12

13  **A.     Statutes Of Limitation Are Well Recognized As An Essential Part Of A Fair
    And Equitable Judicial System Under Washington Law.**

14       Statutes of limitation are universally recognized as essential components of a fair and

15  equitable judicial system.  As stated in the Washington Supreme Court's key decision on the

16  issue:

17       Statutes of limitation … contemplate that a qualified freedom from unending
         harassment of judicial process is one of the hallmarks of justice.  No civilized
18       society could lay claim to an enlightened judicial system which puts no limits on
         the time in which a person can be compelled to defend against claims brought in
19       good faith, much less whatever stale, illusory, false, fraudulent or malicious
         accusations of civil wrong might be leveled against him.

20

21  *Ruth v. Dight*, 75 Wn.2d 660, 664 (1969), superseded by statute on other grounds as stated in

22  *Teeter v. Lawson*, 25 Wn. App. 560 (1980).

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 9
NO. 04-2338 RSM
7566-025226   61691

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Washington Courts have consistently recognized at least four important reasons for enforcement of limitation periods: (1) "[S]tale claims" are by their very nature "more apt to be spurious" and "old evidence is more likely to be untrustworthy than new." (2) "Time dissipates and erodes the memory of witnesses and their abilities to accurately describe the material events." Likewise, as time passes "witnesses die or disappear, and the longer the time the more likely this will happen." (3) "With the passing of time, minor grievances may fade away, but they may grow to outlandish proportions, too." (4) "Finally, and not to be ignored, is the basic philosophy underlying the idea that society itself benefits, except in capital cases, when there comes a time to everyone, be it long or short, that one is freed from the fears and burdens of threatened litigation." *Ruth,* 75 Wn.2d at 664-65; *see also In re Estates of Hibbard*, 118 Wn.2d 737, 749, 826 P.2d 690 (1992) ("[W]e still follow the reasoning of *Ruth v. Dight*."); *Young v. Estate of Snell*, 134 Wn.2d 267, 279, (1997).

In short, Washington law acknowledges that "[c]ompelling one to answer stale claims in the courts is in itself a substantial wrong." *Gunnier v. Yakima Heart Ctr., Inc*., 134 Wn.2d 854, 860 (1998) (citations and quotations omitted). At some point, even the most valid claim expires.

**B.** **Statutes Of Limitation May Be Tolled Temporarily When Litigants Cannot Reasonably Be Expected To Detect Their Injuries In A Timely Fashion.**

When a person is justifiably unaware of his injuries, however, Washington law recognizes the need, in some circumstances, for a reasonable opportunity to discover and bring his claims. *Hibbard*, 118 Wn.2d at 749. Washington courts have recognized the discovery rule which at times allows injured parties to bring claims they did not have reason to know of at an earlier date. *See id.*

When the discovery rule applies, Washington courts have consistently maintained that the standard for determining when the statute of limitations should begin to run is an objective one – when the person knew or should have known about the connection between the wrongful act and his injury. *See, e.g., Hibbard,* at 746 ("Even with extended application of the discovery rule, this court continues to emphasize the exercise of due diligence by the injured party."). The statute of

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

limitations begins to run once the claimant "reasonably suspects that a specific wrongful act has occurred" because "at that point, the potential harm with which the discovery rule is concerned-- that remedies may expire before the claimant is aware of the cause of action--has evaporated." *Beard v. King County*, 76 Wn. App. 863, 868, (1995).[3]

## C.    RCW 4.16.340 Addresses Issues Which Are Unique To The Child Abuse Context.

RCW 4.16.340 addresses the statute of limitations and discovery rule as applied in the child abuse context.    *C.J.C. v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 712-14 (1999).  Section 4.16.340 allows plaintiffs to bring suit to redress injuries suffered as a result of childhood sexual abuse within three years of :

(a)    the act alleged to have caused the injury or condition,

(b)    the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act, or

(c)    the time the victim discovered that the act caused the injury for which the claim is brought."

RCW 4.16.340(1)(a)-(c); *C.J.C.*, 138 Wn.2d at 707.  The three year limitations period does not begin to run until the plaintiff reaches the age of eighteen.  RCW 4.16.340(1); *Cloud v. Summers*, 98 Wn.App. 724, 734 (1999).

Parts (a) and (b) of RCW 4.16.340(1) do not alter the statute of limitations and discovery rule as traditionally applied in other contexts—the statute of limitations expires within three

---

[3]  This objective standard has been recognized in a myriad of different contexts under Washington law. *See, e.g.*, *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 221, (Wash. 1975) (holding in a negligent cancellation of an insurance policy that "respondent's cause of action accrued when he first suffered actual loss and had the first opportunity by the exercise of reasonable diligence to discover he had an actionable claim ...."); *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, (1988) (recognizing an objective standard for the discovery rule in the construction defect context); *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, (Wash. 1979) (holding in a medical malpractice case that the cause of action "did not accrue until she discovered or reasonably should have discovered all of the essential elements of her possible cause of action...."); *White v. Johns-Manville Corp.*, 103 Wn.2d 344, (Wash. 1985) (applying objective standard in asbestos case); *Reichelt v. Johns-Manville Corp.*, 107 Wash.2d 761 (Wash. 1987) (holding that objective standard barred an asbestos claim where the injured party reasonably should have been aware of it.); *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315 (Wash. 1988) (applying objective standard in case of defective product).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS - 11

NO. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

years of when the victim turns age eighteen unless the injured person reasonably did not discover the injury until a later date.

Part (c), however, was specifically adopted by the Legislature to address a special and relatively narrow issue that can arise in the child abuse context. As the legislative history makes clear, part (c) was included only to address situations where the abused plaintiff "*represses* the memory of the abuse" or is "*unable* to connect the abuse" to "serious injury" until after the statute of limitations has expired. RCW 4.16.340, Finding -- Intent -- 1991 C 212 (emphasis added). Thus, the Legislature acted to protect child abuse victims who could not reasonably be expected to learn of their injuries within the normal three-year statute of limitations period, either because of disability or repressed memory. But it did not intend – and it certainly did not enact language – that would allow an individual to toll the statute of limitations for decades (or avoid it all together) when that individual has not suffered from repressed memory or similar disability. The Legislature drew a careful balance here. It knew exactly what it wanted to achieve, and it used precise language in doing so. As this Court interprets and applies the statute of limitations – and particularly part (c) – to plaintiffs' claims in this case, it should do so with careful consideration for the balance the Legislature struck in dealing with child abuse cases that are filed years (in this case, decades) after the statute of limitation otherwise would have expired.[4]

Consistent with RCW 4.16.340, Washington courts have found the statute of limitations to be tolled where the plaintiff labors under a "disability" such that he is "unable" to understand the significant emotional injury he has suffered. *Cloud,* 98 Wn. App. at 736. Significantly, these courts have found such a disability to exist when a plaintiff considers the sexual abuse to be natural or normal, does not see himself as a victim, does not understand that the perpetrator's

---

[4] In understanding the careful balance drawn by the Legislature here, it is important to understand the context in which part (c) arose. Just previously, in *Tyson v. Tyson,* the Washington Supreme Court had held that a complete repressed memory of child abuse did not toll the statute of limitations. 107 Wn.2d 72 (1986). Similarly, in *Raymond v. Ingram,* the Washington Court of Appeals had concluded that a plaintiff who was otherwise unable to connect her abuse to serious injury before the three-year period had run was nevertheless precluded from bringing suit under the statute of limitations because she had suffered stomach aches. 47 Wn. App. 781 (1987). The Legislature disagreed with these two court decisions and desired to give a child abuse plaintiff a fair time period to litigate a claim after the plaintiff became free from the repressed memory or other disability that precluded her from recognizing her serious injuries. *See generally* H.R. Rep. No. 2058, at ¶¶ 3, 4.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 12

NO. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

conduct is wrongful, or otherwise is unable to recognize the serious injury he has suffered. *See*, *e.g.*, *Hollman v. Corcoran*, 89 Wn. App. 323, 328-29 (1997) (noting that the plaintiff saw the perpetrator as "his friend" and did not recognize the wrongfulness of the perpetrator's conduct); *Oostra v. Hostine*, 86 Wn. App. 536, 538-39 (1997) (noting that the plaintiff's parents had taught her it was rude to avoid sexual abuse perpetrated by her stepfather and that, as a result, she was not able to connect her injuries including alcoholism and suicidal ideation to her abuse until she met with a counselor). But just as significantly, courts applying this kind of a provision have not found such a disability – and have refused to allow an action to be maintained – when the victim was fully aware that she had been victimized and knew the conduct was wrongful. *See, e.g.,* *Marsha V. v. Gardner*, 231 Cal. App. 3d 265, 273 (1991) (concluding that a plaintiff who was always aware that she was a victim, that the conduct was wrongful and that she experienced more than nominal injury as result of the abuse cannot invoke the discovery rule to toll the limitations period).

In sum, RCW 4.16.340(c) specifically intends to give an injured person a reasonable opportunity to recognize the injury they have suffered if that person represses all memory of past abuse or is otherwise "unable" to recognize the serious injury he has suffered. But part (c) goes no further than that, either in express language or intent.

**D.    To Toll The Statute Of Limitations, Plaintiffs Must Show That They Were Psychologically Unable To Recognize The Injury Suffered For The More Than Twenty Year Period They Are Seeking To Toll The Limitations Period.**

Washington law does not indefinitely toll the statute of limitations for every claim of abuse. *See* RCW 4.16.340(1)(a); *E.R.B. v. Church of God*, 89 Wn. App. 670, 683 (1998) (finding that the victim "knew before he turned 18 that the molestation was wrong and causing him substantial harm"), *rev'd on other grounds by C.J.C. v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699 (1999). As seen, complete repression of the memory of abuse can toll the limitations period for substantial lengths of time because it precludes the victim from discovering the abuse. But repressed memories are not at issue here. Thus, to withstand

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 13
NO. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

summary judgment, Plaintiffs have the burden of providing genuine, material evidence that for more than two decades they were unable to recognize the significant injuries they allege. In bearing this burden, Washington law does not allow Plaintiffs to turn *Raymond v. Ingram* on its head and toll the limitations period by claiming that, although they recognized the wrongfulness of the abuse and the serious injury it caused, they did not recognize some lesser symptom or impact (such as a stomachache) that also allegedly arose from the abuse.

    1.    **Establishing a Disability Preventing Discovery of Abuse Requires Material Evidence; Mere Allegations Are Not Enough.**

When finding that the plaintiffs were unable to recognize their injuries, Washington courts have been careful to note that their findings were supported by material evidence that the plaintiffs were laboring under psychological conditions resulting from the abuse which prevented them from discovering the connection between the abuse and the significant injury at an earlier date. *See id.*; *Cloud*, 98 Wn. App. at 736 (noting that the plaintiff was suffering from a "mental illness" and was temporarily unable to connect the illness to the abuse). Accordingly, Plaintiffs cannot simply allege that they were unable to recognize their injuries. They must put on material evidence demonstrating that they were unable to connect the significant injury they allegedly suffered to the abuse they experienced because of psychological disability or repressed memory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (holding that in the summary judgment context "the question is whether plaintiffs adduced enough admissible evidence to create a genuine issue of material fact" to support their claim).

    2.    **The Plaintiff Must Be Unable to Recognize the Significance of the Injury Suffered During the Entire Period They Claim the Statute of Limitations Was Tolled.**

Further, even if a plaintiff is initially psychologically unable to recognize his injuries, once he comes to understand that he was seriously injured by the abuse, the statute of limitations begins to run. *See, e.g.*, *Cloud*, 98 Wn. App. at 735 (finding that the statute of limitations began to run on "January 31, 1994" when the plaintiff connected his mental illness to the abuse and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 14

NO. 04-2338 RSM
7566-025226   61691

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

thus would have expired on "January 31, 1997"); *Hollman*, 89 Wn. App. at 334 (finding that the plaintiff's statute of limitations began to run no later than 1993 when he recognized the connection between the abuse and his injuries). And no Washington case has suggested that, once a plaintiff understands he was seriously injured by abuse, simple recognition of a new symptom or problem associated with that abuse restarts the statute of limitations. Accordingly, in the case at bar, even if one or more of the plaintiffs can show that initially he was psychologically unable to recognize a significant injury, he must also demonstrate that he was never able to recognize such an injury at any time during the two decades necessary to toll the statute long enough to save their claims.

3.    **No Washington Court Has Ever Found the Statute of Limitations to Be Tolled for longer than Ten Years in a Sexual Abuse Case; Plaintiffs Are Asking this Court to Find that the Statute Has Been Tolled for over Twenty Years.**

Although Washington courts have found the statute of limitations to be tolled because of an inability to recognize a significant injury, no decision of the Washington Supreme Court, Court of Appeals, Ninth Circuit or Federal District Court has extended the statute of limitations more than ten years under Washington law. *See, e.g., C.J.C.*, 138 Wn.2d at 705-06 (extending time period eight years); *Oostra*, 86 Wn. App. At 538-39 (1997) (tolling statute of limitations four additional years); *Cloud*, Wn. App. At 726-27 (tolling statute of limitations five additional years); *Hollman,* 89 Wn. App. At 324-25 (extending time period ten years); *E.R.B, 89 Wn. Aoo, at 673-74* (seeking to toll statute of limitations for one additional year) *Tyson*, 107 Wn.2d at 73-74(seeking to extend time period eight years).

Here, Plaintiffs are asking this Court to extend the limitations period for more than twenty years beyond the date Plaintiffs' statute of limitations would ordinarily have expired. *Hollman* grants a ten year extension of the statute of limitations, the longest of any case decided under Washington law. But it does so based on unchallenged evidence that the plaintiff "was not capable of understanding the connection" between his injuries and the perpetrator's abuse at any

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   time during this ten year period. 89 Wn. App. at 328. In *Hollman*, the plaintiff first met the

2   defendant at age twelve and was abused by him until his eighteenth birthday and beyond. *Id.* at

3   325-26. Throughout the time period of the abuse and for several years thereafter, the plaintiff

4   believed the defendant was "a good friend whom he could trust" and "viewed the sexual

5   relationship as something he 'owed' [the defendant], and as something that did not hurt him."

6   *Id.* at 327. A few years later, the plaintiff "continued to regard [the defendant] as his friend, and

7   he did not see their relationship as one of perpetrator and victim [rather] he thought he was a

8   'volunteer' in the relationship." *Id.* at 329. In fact, the plaintiff invited the defendant to his

    wedding. *Id.*

9       It was not until the plaintiff went to a counselor who fully explored his abuse as a child

10  that Hollman finally understood "his role as a victim rather than a volunteer, and [thus] began to

    see [the defendant] as the person responsible for his emotional and psychological injuries." *Id.*

11  Under these compelling facts, the court was willing to extend the statute of limitations ten years.

12  [5] None of the situations in the cases before this Court come close to the facts in *Hollman*.

13      Cases in other jurisdictions applying similar discovery rules have addressed how difficult

14  it is to support claims seeking to toll the statute of limitations longer than ten years. In *Evans v.*

15  *Eckelman*, a case where the plaintiff sought to extend the statute of limitations a little over ten

16  years, the court granted a motion to dismiss noting that the plaintiff failed to show that he

17  remained unaware of the connection between his injury and the abuse during the extended period

    he sought to toll the statute. 216 Cal. App. 3d 1609, 1612 (Cal. Ct. App. 1990). Moreover, in

18  *Cassidy v. Smith*, 817 P.2d 555 (Colo. App. 1991), a Colorado appeals court granted summary

19  judgment on child abuse claims filed more than ten years after the statute of limitations would

20

21  [5] It is true that the *Hollman* court (and the *Oostra* court as well) used very broad language ("statute of limitations begins to run only on . . . the date the victim discovers the nexus between the act and the claimed injury . . . ." (86 Wn.App. at 542). However, as discussed above, that statement was made in a

22  context where the victim had no idea that he had been victimized, and where he thought the abuse was natural and wholesome. It may very well be true that the statute of limitations does not begin to run until a plaintiff comes to an understanding that the abuse was evil and injurious. The problem for plaintiffs is

23  that they came to this conclusion many decades ago, and their statute of limitations clock has long since run under this standard. The language from *Hollman* and *Oostra* simply does not help them.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

ordinarily have expired.  The court noted that because the plaintiffs were in their early thirties, college educated, and had spent significant time away from the perpetrator, the plaintiffs were more likely to have made the connection between the abuse and the injury suffered and that general statements to the contrary were insufficient to avoid summary judgment.  *Id.* at 557.

**E.    The Limitations Period Has Expired On All Of Plaintiffs' Claims.**

> **1.    Ken Fleming Undisputedly Understood the Connection Between His Injury and the Abuse Many Years Prior to Filing this Action and, Accordingly, His Claims Are Time Barred.**

The statute of limitations bars Ken Fleming's claims.  At least twenty years ago, Fleming connected the abuse to serious injuries.  During his early to mid-twenties, Fleming frequently met with a counselor to discuss the sexual abuse he had suffered.  Fleming Dep. 20:11-14; 24:17-23; 25:14-18.   His counselor recalls that Fleming connected the abuse he had suffered to depression, anxiety, problems in school, difficulties in relationships with women and homosexual attraction.  Denison Dep. 14:15-24; 17:7-9; 24:11-12; 41:6-18.   Further, Fleming admits that after meeting with this counselor he fully understood that he was a victim and blameless and that LoHolt was a perpetrator.   Fleming Dep. 25:18-24.   Following this counseling, if not before, Fleming clearly had made the connection between the abuse he suffered and the significant injury he suffered from it.   Plaintiffs' understanding of this connection is amply supported by his statements to others, including Barbara Searle, made many years before this case was filed:

> He stated to me that he had told Jack face-to-face that Jack had "ruined my [Ken's] life."  In one of our discussions, Kenny expressed emotional problems about the abuse.  Kenny was at times upset about his family.  He told me that Jack's abuse was the reason why he had a hard time with relationships with girls. He told me that he hated what Jack had done to him.  He was very angry with Mr. LoHolt about the abuse and what it did to him.

Searle Decl. at ¶ 7.

In sum, even assuming – at the time of his abuse -- that Fleming did not immediately connect his sexual abuse to serious injury, he clearly made this connection many years before this litigation was filed.  Indeed, one of the core purposes of the professional counseling he

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 17

NO. 04-2338 RSM
7566-025226  61691

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

received over twenty years ago was to properly understand and then overcome the serious injuries he allegedly suffered from the abuse.  Fleming's claims therefore do not fit within the relatively narrow category that the Legislature sought to address when it passed part (c).  His statute of limitations ran long ago, and it is patently insufficient for him to try to avoid that clear conclusion simply by alleging that he has discovered some new symptom/manifestation of the problems about which he has complained for many years, or that he has now somehow more fully discovered the consequences of the abuse.  Fleming's claims are barred as a matter of law.

> **2.      The Undisputed Facts Demonstrate that T.D.'s Claims Are Barred by the Statute of Limitations.**

The statute of limitations also bars T.D.'s claims.  T.D. was abused on one occasion.  He never forgot the abuse and has always understood that he was a victim and that LoHolt's conduct was wrongful. T.D. Dep. 19:9-12, 23-25; 20:1-2; 30:11-12.  Further, the injuries alleged--poor communication and inability to trust others--are not new injuries; rather he has known about them for years.  T.D. Dep. 27:11-12; 28:18-21.  Even plaintiffs' expert was unable to diagnose any significant injury of which T.D. has supposedly been unaware.  Accordingly, T.D.'s claims are barred by the statute of limitations as a matter of law

> **3.      John Doe's Claims Are Likewise Barred.**

The statute of limitations also bars John Doe's claims.  By Doe's own admission, he has long since understood that he was a victim of abuse, Doe Dep. 32:23-25; 33:1-9; 43:3-8, and that he was significantly injured by it.  Doe Dep. 43:5-8, 22; 44:4.  On several occasions during the last thirty years, Doe spoke with friends and family about the abuse and the injuries he suffered. Doe Dep. 55:1-25; 59:13-25; 60:1-5; 63:19-23.   Doe simply does not fit into the category of repressed memory or disability that the Legislature addressed when it passed part (c). Accordingly, his claims are time-barred.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 4.     R.K.'s Claims Also Fail Under the Statute of Limitations.

Lastly, the statute of limitations bars R.K.'s claims.  R.K. did not repress or forget about the events, but rather spoke of them to friends, family, and other individuals.  R.K. Dep. 37:1-4, 13-21; 38:22-25; 39:9-22; 40:10-11.     He joined this lawsuit after reading an article in the newspaper.  R.K. Dep. 17:11-21.  Further, he does not allege that he suffers from any new or more severe injury than when he was teenager--twenty-five years ago.  R.K. Dep. 43:18-24.

Further, R.K. is very well-educated.  He has a college degree, a master's degree, and even attended Harvard University.  R.K. Dep. 7:20-25; 8:5-16.  He is a successful teacher and working on completing the requisites to become a school principal.  *Id.*  As noted in *Cassidy v. Smith*, any claim by T.D. that he only recently recognized the connection between the abuse and an alleged injury is wholly inconsistent with T.D.'s age, educational background, and training as a school teacher and principal.  817 P.2d 555, 557 (Colo. App. 1991).  This is true for all Plaintiffs but perhaps most particularly for R.K.  Thus R.K.'s claims, like the others, are barred as a matter of law by the statute of limitations.

### F.     Due Process Considerations Also Require This Court To Find That The Plaintiffs' Claims Are Time-Barred.

In opposition to this motion, plaintiffs undoubtedly will advance an argument that the statute of limitations clock should be reset any time a plaintiff can identify a specific symptom or new alleged injury that he had not focused on before.  Essentially, to avoid dismissal of their claims on summary judgment in this case, plaintiffs are forced to argue that even though they may have known about more than a dozen specific serious injuries much more than three years ago, their alleged discovery of a new symptom or injury resurrects their entire claim.  In essence, as plaintiffs effectively concede, such a rule would allow any determined plaintiff to extend the statute of limitations indefinitely, simply by the discovery of a single new symptom (or even by simply changing the way one articulates that symptom).

As explained above, that outcome would run directly contrary to Washington's longstanding recognition of the importance of statutes of limitation and to the limited and narrow

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

legislative purpose behind part (c). The Washington Legislature knew very well how to eliminate the statute of limitations if it had so desired. It also knew how to broaden that statute of limitations to the degree that plaintiffs desire. But it did not do so. Instead, it carefully crafted a new subsection to address very limited situations where a plaintiff is mentally unable to understand that serious injury has occurred.

More deeply, however, even if plaintiffs were correct and the Washington Legislature had intended such a broad change to the statute of limitations, significant due process claims would result. Courts have recognized that due process considerations can operate to bar a claim even if a state's statute of limitations would seem to permit it. *See, e.g., United States v. Marion*, 404 U.S. 307 (1971); *Melanie H. v. Defendant Doe*, No. 04-1596 (D. So. Cal. Filed Dec. 21, 2005), attached as exhibit J to the Declaration of Marcus B. Nash. The United States Supreme Court has declared that the "right to be free from stale claims in time comes to prevail over the right to prosecute them." *Marion,* at 325. While *Marion* was a criminal case, federal courts have recognized the principle in civil cases too. *See Melanie H.*

The *Melanie H* court addressed a due process challenge to a California statute that revived abuse claims thought to be time-barred. Although the court declined to hold the statute facially unconstitutional, the court ruled that the extension of the limitations period might well be unconstitutional as applied to a particular case. The factors to consider include the prejudice to the Defendant, missing witnesses, and faded memories, among others. *See*, Exhibit J to the Declaration of Marcus B. Nash. Those elements are clearly present in this case.

With the passage of nearly thirty years since the alleged abuse, memories have faded, evidence has been lost, and witnesses have become unavailable. Plaintiffs cannot accurately place the time, dates, and locations of critical events, but must instead give dates in ranges of years. Doe Dep. at 30:3-12; 39:25-40:1; 40:4-8; 46:24-47:4; T.D. Dep. at 17:17-23. Fleming Dep. at 20:1-8; 23:4-6; 25:3-7;46:1-6; 52:2-9; 57:1-6; 62:21-24; 71:17-23; 112:8-9. R.K. Dep. at 13:22-25; 15:4-15; 18:22-23; 27:16-17; 43:4-8; 70:8-22. Plaintiffs struggle to remember key

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

conversations they had. For example, Fleming cannot remember any of the details regarding what he discussed with a counselor in the mid 1980s regarding his abuse. Fleming Dep. at 25:3-4. The memories of Church leaders have also faded. Borland Dep. at 35:7-21; 45:10-17; 50:1-20; 58:4-6; 74:4-15; 83:6-23. Coleman Dep. at 26:7-10; 43:23-44:8; 45:6-8; 66:5-10; 70:3-12. Johansen Dep. at 38:7-20. Pitts Dep. at 20:12-14; 26:4-17. Therapists struggle to recall conversations with the Plaintiffs. Key witnesses are dead.[6] And the names of other key witnesses and potential defendants are forgotten. In a case like this, the timing of events is critical to issues of notice, duty, and the reasonableness of actions taken. But the decision of each one of the plaintiffs to wait for decades (essentially until solicited by their attorney's investigator or by newspaper reports) before bringing their suits makes it virtually impossible to determine these issues with any degree of accuracy and fairness.

Prejudice arises in another manner. In the thirty years since the abuse, society's standards and understanding regarding abuse have changed dramatically. The intractable nature of pedophilia, for example, was not well understood thirty years ago. What was considered perfectly reasonable in dealing with an abuser then may be entirely unreasonable now. Because of plaintiffs' delay, the reality is that COP will be judged by 2006 standards for 1970 events regardless of any instructions the Court may give. That is fundamentally unfair.

Such considerations have led Washington courts to require plaintiffs to exercise "due diligence" to bring their claims in a timely manner. *Hibbard*, 118 Wash.2d at 752. The plaintiffs in this case failed to do so – not because they didn't know of their abuse or were unable to discovery their injuries, but simply because they chose not to pursue legal action. Now, decades later – and encouraged on by lawyers who sought them out and by news reports of large verdicts against churches – they have changed their minds.[7] That may be understandable, but under these circumstances principles of fundamental fairness and equity prohibit plaintiffs from

---

[6] Dr. Herman Allenbach, a separate potential defendant and key witness who had extensive notice of LoHolt's abusive tendencies before COP, is dead.
[7] And even then, Plaintiffs Allenbach and Fleming waited well over a year after contacting their attorneys before filing a claim.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 21

NO. 04-2338 RSM
7566-025226  61691

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

bringing these claims at such a late date. *See*, *e.g.*, *Ruth v. Dight*, 75 Wn.2d at 664-665 (1969). This Court should construe the statute of limitations as outlined above or rule that on the facts of this case that Plaintiffs' use of the statute to pursue their extremely belated claims against COP violates due process.

### G.    Plaintiffs' Claims Are Barred By The Doctrine Of Laches

Finally, the doctrine of laches bars Plaintiffs' claims.  As the court knows, laches is an equitable doctrine.  Under Washington law, laches consists of two elements: "(1) inexcusable delay and (2) prejudice to the other party from such delay. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 241 (2004).  Both are present here.  As established above, Plaintiffs have been aware of their injuries for years and are inexcusably late in bringing them.  Further, Defendants have been deeply prejudiced by this delay.  Key witnesses are dead or unavailable, the memories of all involved are irreparably faded and evidence has been lost or forgotten. Accordingly, Plaintiffs' claims are also barred by the doctrine of laches.

## V.    CONCLUSION

Based upon the foregoing analysis of relevant law and policy, Defendants are entitled to summary judgment and all Plaintiffs' claims should be dismissed as a matter of law.

DATED this 6th day of January, 2006.

STAFFORD FREY COOPER


By:    /s/ Marcus B. Nash via ECF
        Thomas D. Frey, WSBA #1908
Attorneys for Defendants



STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

## Certificate of Service

I certify that on the date noted below I electronically filed this document entitled ***Motion For Summary Judgment On Statute Of Limitations*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons, as well as service via hand delivery:

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA  98101
(425) 837-9692

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim, LLP
600 University Street, Suite 2100
Seattle, WA  98101-4185
(206) 676-7575

DATED this 6th day of January, 2006, at Seattle, Washington.

/s/ Marcus B. Nash via ECF
Marcus B. Nash

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE
STATUTE OF LIMITATIONS - 23

NO. 04-2338 RSM
7566-025226   61691