**Fleming, et al. v. COP, et al.**
No. CV04-2338 RSM

DECLARATION OF MARCUS B. NASH
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# EXHIBIT F-2

## DR. STUART GREENBERG AND ASSOCIATES
1217-24ᵗʰ AVE EAST • SEATTLE WA 98112 • PHONE 206-320-0044 • FAX 206-320-7733

STUART GREENBERG, PHD, ABPP
PAST PRESIDENT, AMERICAN BOARD OF FORENSIC PSYCHOLOGY
FELLOW, AMERICAN ACADEMY OF FORENSIC PSYCHOLOGY
FELLOW, SOCIETY FOR PERSONALITY ASSESSMENT
DEPARTMENTS OF PSYCHOLOGY AND OF PSYCHIATRY & BEHAVIORAL SCIENCES, UW
VICE-CHAIR, SPECIALTY GUIDELINES FOR FORENSIC PSYCHOLOGY, REVISIONS COMMITTEE
STUARTGREENBERG@COMCAST.NET

LORIANN GENNAIOS
OFFICE MANAGER
DANIELLE HESSLER, MS, AND ALISON LEARY, MS, PHC
PRE-DOCTORAL TRAINEES IN FORENSIC PSYCHOLOGY

C O N F I D E N T I A L
For Professional Use Only

September 7, 2005

Mr. Michael Pfau
Gordon, Thomas & Honeywall
One Union Square
600 University, Suite 2100
Seattle, WA 98101

Mr. Timothy Kosnoff
Law Offices of Timothy Kosnoff
One Union Square
600 University, Suite 2101
Seattle, WA 98101

Re:   Mr. Kenneth Fleming:

Dear Mr. Pfau and Mr. Kosnoff:

As requested, this is the report of my forensic psychological examination of Mr. Kenneth Fleming. This examination and report were prepared in the anticipation of the current litigation and should not be used for any other purpose. Please be aware that it may be modified as a result of any new information that is available or provided to his examiner subsequent to this date.

**Informed Consent**

Prior to commencing the first interview, I explained to the party my role, by whom I was retained, the forensic examination process, and that forensic examinations are not covered by therapist-patient privilege, but may be covered under attorney work-product privilege. Mr. Fleming indicated that he understood each of the above, that the examination was not therapy, and agreed to proceed.

EXHIBIT F-2

To:   Mr. Pfau and Mr. Kosnoff
Re:   Mr. Kenneth Fleming
      September 7, 2005

CONFIDENTIAL
For Professional Use Only
Page 4 of 32

## EXAMINEE'S BACKGROUND

**Family of Origin**

Mr. Fleming was born on April 1, 1962 to Ervin and Arlene Fleming in Kent, Washington. He was the middle child of five, with two older sisters, one younger brother and one younger sister. While growing up he recalled his father being honest, rational, confident, and calm, but also mis-using alcohol and not being around the house. He mostly remembers his mother being the parent who was "around the house."

As a child he remembered himself as feeling anxious, guilty, and aloof. He saw himself as reliable, and at times he was thoughtful though at other times he felt he was inconsiderate. Mr. Fleming felt he had a very good relationship with pets and other animals, though he was very unsatisfied with his peer relationships, self-esteem, and general happiness with his life. Growing up he had chores around the house, such as feeding the animals and other assorted household chores. He also had a paper route and sold seeds door to door. In 1970, when Mr. Fleming was around eight years old, his parents got a divorce, which he recalled being one of the most unpleasant events in his life.

Mr. Fleming attended school in Kent, Washington throughout grade school. He played soccer as a child and participated in the scouts until 1979. In 1980 he graduated from high school. The following year Mr. Fleming went on his LDS mission for two years in Chicago and Indiana. After completing his LDS mission he moved to Utah where he attended Utah Technical College for two years and Court Reporting school for one year, although he did not receive a degree from either of these programs. In 1986 Mr. Fleming moved to Maple Valley and then remained in Washington.

In 1988 Mr. Fleming's grandmother, Rachel George passed away, and in 1993 his grandfather, Roy George died. Mr. Fleming had a good relationship with both of his grandparents and their deaths were significant to him. In November of 1998 Mr. Fleming met his current partner, Scott, and they started living together three months later.

Mr. Fleming reported many substance use problems in his family in the past. He indicated that his father, his sister Diana, and his brother Danny misused alcohol but have been sober for many years. He also said his brother Michael mis-used drugs, however he went to treatment and to his knowledge is not currently using non-legal drugs. Mr. Fleming stated he first tried alcohol when he was 36 years old. He reported he has never had a problem with alcohol and his alcohol use was limited to 1998, being intoxicated once during that time. During that same year Mr. Fleming reported using marijuana, which he tried only once. Mr. Fleming reported no concerns around his own anger. However he did indicate that he had experienced childhood abuse, has access to a weapon, and has had thoughts or plans to injure himself.

To: Mr. Pfau and Mr. Kosnoff
Re: Mr. Kenneth Fleming
September 7, 2005

CONFIDENTIAL
For Professional Use Only
Page 29 of 32

---

Mr. Fleming felt afraid when he learned he was back. Mr. Fleming notified several of the other boys from his scout troop in the past year of the abuse.

Mr. Fleming stated that the abuse made him feel guilty. He also felt he didn't trust people because Mr. Loholt told him he loved him and yet he abused him. He felt it was hard to get close to other people or make relationships. He didn't know how to control it and felt lost, but he was afraid to leave the church. He also felt embarrassed about what had happened and didn't want other people to know.

Mr. Fleming made a claim for lost earning capacity. He explained that he used to own and run a successful bar and grill, however he sold the business because "I was starting to lose myself..I was feeling like I was falling apart." He added, "I couldn't concentrate..didn't feel like I was functioning properly. I was emotional." He sold some of his property because he didn't feel he could manage it. Mr. Fleming began seeing Ms. Herman again in 2003 and started talking about the abuse.

Mr. Fleming stated his relationship with his mother has never been what he wanted it to be. He explained that he couldn't allow himself to be close to her, but that he is closer to her now. Mr. Fleming said that he was not sexually or physically abused by anyone other than Mr. Loholt, nor has he ever been involved in a law suit before. When asked about his previous employment he described several jobs he felt the need to leave because he felt like he was an "imposter," or "overwhelmed," and felt the need to move on. He reported that he has never been fired from a job and that he left all of his positions voluntarily. Mr. Fleming currently lives with his partner in a home that he owns.

## SUMMARY AND OPINION

Prior to the sexual abuse, Mr. Fleming had been experiencing a moderate to significant degree stress in his home environment. As a child his father abused alcohol, there was at time severe conflict between his parents, Mr. Fleming was exposed to his mother's extra-marital relationship, and Mr. Fleming witnessed his father be severely physically abusive to his mother. Mr. Fleming's parents were divorced when he was around eight years old and his mother subsequently remarried several times, though his father remained in his life. Despite this early history, Mr. Fleming does not, overall, remember his home as being abusive and he remembers, with help from his siblings, it being a generally positive home and time in his life. Particularly, he does not think of himself as having grown up in an "abusive home." He recalls being a good student early on, however at some point he began to withdraw, barely graduating from high school. Overall, Mr. Fleming had difficulty recalling details or his

To:    Mr. Pfau and Mr. Kosnoff  
Re:    Mr. Kenneth Fleming  
      September 7, 2005

CONFIDENTIAL  
For Professional Use Only  
Page 30 of 32

emotional reactions around his early childhood. At the same time, and despite his generally favorable memories, it must be acknowledged that many of the things he experienced before the alleged abuse such as his father's misuse of alcohol, the domestic violence, and his parents' divorce are all capable of leading to significant problems for a child then and later in life. By the same token, these traumatic and distressing events, would also have left him vulnerable to and much more damaged by a later trauma such as child sexual abuse. All other things being equal, resilient and effective children are likely to suffer fewer long term effects of childhood sexual abuse and vulnerable and anxious children are likely to suffer more long term damaging effects of childhood sexual abuse.

Mr. Fleming reported the abuse by Mr. Loholt starting shortly after he joined the Scouts with the LDS church when he was around twelve years old. The abuse occurred over the course of approximately five years until Mr. Loholt moved to Canada. The abuse started with Mr. Loholt fondling Mr. Fleming, but progressed to more aggressive acts and became more frequent. He described the worst period of abuse as occurring when he was employed by Mr. Loholt from age sixteen to seventeen when the abuse occurred "daily." This included Mr. Loholt telling Mr. Fleming he loved him like a son, oral sex, inserting a stick into Mr. Fleming's anus, and attempting to penetrate Mr. Fleming anally. Mr. Fleming reported Mr. Loholt also had him ejaculate into vials Mr. Loholt saved, showed him pornography, took nude photographs of him, and made a plaster mold of Mr. Fleming's private areas. On one occasion Mr. Fleming asked Mr. Loholt to stop, and although Mr. Loholt said he would stop, the abuse continued.

During the abuse Mr. Fleming felt scared and recalled being an unhappy child. He stated, "I didn't like life," and indicated that he attempted to kill himself at one point. During this time he described not going to school, isolating himself from friends, and pulling away from activities with his peers. Mr. Fleming said he did not disclose the abuse at first because he felt trapped and did not know how to get away from it. He felt both afraid of Mr. Loholt and guilty about the abuse. Mr. Fleming indicated he also felt embarrassed and did not want others to know. When Mr. Loholt offered him a job, he did not feel he could say "no" without providing his mother with a reason.

Mr. Fleming first disclosed the abuse around 1979 to Bishop Pettit after the abuse had ended. Mr. Fleming reported Bishop Pettit indicated that he knew of past problems with Mr. Loholt and thought they had been "taken care of." Mr. Fleming reported the abuse made him feel guilty. He felt angry and frustrated when he learned that the church knew Mr. Loholt had abused other boys. Mr. Fleming received brief counseling through the church sometime in the early 1980's and felt he resolved his issues with the guilt he felt and "went on the best he could." Mr. Fleming was prompted to begin seeing Linda Herman for individual counseling in 2003 from intense feelings over insecurity and feeling overwhelmed. He disclosed the abuse in these sessions with Ms. Herman and then disclosed the abuse to his family and friends finally in 2004.

To: Mr. Pfau and Mr. Kosnoff
Re: Mr. Kenneth Fleming
September 7, 2005

CONFIDENTIAL
For Professional Use Only
Page 32 of 32

---

abusive acts themselves were varied and severe; occurring over a long duration of around five years, with photographs and Mr. Fleming's semen taken as "souvenirs" of the acts. Based upon the nature of the abuse and Mr. Fleming's psychological presentation, it is my opinion that Mr. Fleming has been profoundly impacted and harmed by the abuse and that the abuse exacerbated the problems that pre-existed it.

### Recommendations

Mr. Fleming is currently seeking treatment in individual therapy sessions with Linda Herman and feels he has been making progress. It is this examiner's recommendation that Mr. Fleming continue to receive intensive therapy with the therapist of Mr. Fleming's choice. Mr. Fleming should attend therapy weekly until the therapist feels Mr. Fleming is no longer in need. This therapy will probably take several years and may also need to include his relationship partner and other family members. Additional support may also be needed in times of crisis—such as if he becomes suicidal—as well as with relationship issues and gender identity issues.

Thank you for this referral. I hope this information is helpful in understanding the psycho-legal issues in this matter. I will supplement this report as more information becomes available.

I affirm that the foregoing is true and correct to the best of my knowledge and belief. Sworn and signed on this date, September 7, 2005, in Seattle, King County, Washington.

*Sent via email to avoid delay. A separate signature page is being faxed and an original signed copy is being sent this date via US Mail.*

Stuart A. Greenberg, PhD, ABFP/ABPP
Diplomate in Forensic Psychology
Past-President, American Board of Forensic Psychology

E:\Cases\Fleming v Mormon Church\Ken Fleming Final Report.wpd