**Fleming, et al. v. COP, et al.**
No. CV04-2338 RSM

**DECLARATION OF MARCUS B. NASH**
**IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT H

Dockets.Justia.com

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

KENNETH FLEMING and JOHN DOE,   )
                                    )  Case No. C04-2338 RSM

        Plaintiffs,        )

                                      )

        vs.                    )  Videotaped Deposition
                                      )  of:

THE CORPORATION OF THE PRESIDENT)  RICHARD PETTIT

OF THE CHURCH OF JESUS CHRIST OF)

LATTER-DAY SAINTS, a Utah     )

corporation sole, a/d/a "MORMON )

CHURCH"; LDS SOCIAL SERVICES,   )

a/d/a LDS FAMILY SERVICES, a    )

Utah corporation,              )

                                      )

        Defendants.        )

December 13, 2005

9:24 a.m.

Kirton & McConkie

1800 Eagle Gate Tower

60 East South Temple

Salt Lake City, UT  84145-0120

EXHIBIT __H__

Sharon Morgan, CSR, RPR, CRR

Notary Public in and for the State of Utah

FLEMING v. THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS
December 13, 2005
RICHARD PETTIT

---

Page 30

1    Q.  What did the boy tell you about Jack LaHolt?
2    A.  He had been touched inappropriately.
3    Q.  Did he say where it had taken place?
4    A.  No.  Oh, where -- where in the area?
5    Q.  What location had it occurred at?
6    A.  On a scout outing.
7    Q.  And what was your understanding of where that
8  scout outing was?
9    A.  Somewhere in the Snoqualmie Pass area of
10  Washington.
11   Q.  And did the boy tell you specifically what
12  Jack LaHolt had done?
13   A.  No.
14   Q.  What did he say, to the best of your
15  recollection?
16   A.  My recollection is he was touched
17  inappropriately.
18   Q.  Do you remember where he was touched
19  inappropriately?
20   A.  No.
21   Q.  Did you ask him any further details about how
22  Jack LaHolt had touched him?
23   A.  No.
24   Q.  At the time that you received this
25  information, were you serving as either a first or

---

Page 31

1  second counselor?
2    A.  Second.  I'm sorry, now, I was not -- in 1971
3  I was not a counselor.
4    Q.  Okay.  What were the circumstances under
5  which you received this information from this boy?
6    A.  It was voluntary.
7    Q.  Where did he tell you this?
8    A.  In my home.
9    Q.  Was the boy a friend of your son?
10   A.  No.
11   Q.  Was it one of your sons?
12   A.  Yes.
13   Q.  Was it Scott?
14   A.  Yes.
15   Q.  When your son Scott told you this
16  information, did you believe it?
17   A.  Yes.
18   Q.  Did you do anything with this information?
19   A.  Yes.
20   Q.  What was that?
21   A.  I went to Bishop Borland.
22   Q.  And did you tell Bishop Borland what your son
23  Scott had told you?
24   A.  Yes.
25   Q.  And what did Bishop Borland say?

---

Page 32

1    A.  He was shocked.
2        MR. FREY:  At this point -- did you expect
3  your conversation -- let me interpose an objection and
4  ask a question.  Do you expect your conversation with
5  Bishop Borland to be confidential?
6        THE WITNESS:  Yes.
7        MR. FREY:  Are you willing to waive that
8  confidentiality and testify about it today, about what
9  you spoke to about with Bishop Borland?
10       THE WITNESS:  Yes.
11       MR. FREY:  Okay.  Go ahead, Counsel.
12   Q.  (By Mr. Kosnoff)  When you went to Bishop
13  Borland, you were not going to him for purposes of
14  confessing your sin, were you?
15   A.  No.
16   Q.  And you would hope that he would -- that --
17  strike that.  What was your reason for going to Bishop
18  Borland?
19   A.  To inform him of the situation.
20   Q.  And was it your hope or intention that Bishop
21  Borland would use this information and take some kind
22  of concrete action with respect to Jack LaHolt?
23   A.  Yes.
24   Q.  And what was your -- what did you hope that
25  he would do?

---

Page 33

1    A.  Correct it.
2    Q.  What did Bishop Borland say to you?
3    A.  I don't remember.
4    Q.  Did he tell you that he would do something
5  about Jack?
6    A.  I don't remember.
7    Q.  Did he give you any kind of assurances that
8  the matter would be handled?
9    A.  Yes.
10   Q.  And did you trust that the matter would be
11  handled?
12   A.  Yes.
13   Q.  Was it handled?
14   A.  Yes.
15   Q.  To your knowledge, what happened with respect
16  to Jack LaHolt?
17   A.  Within one week he was released.
18   Q.  How did you become aware that he had been
19  released?
20   A.  At the church service the following week.
21   Q.  Did somebody communicate that to you?
22   A.  Yes.
23   Q.  Bishop Borland?
24   A.  Yes.
25   Q.  And he told you that he released Jack?

---

9 (Pages 30 to 33)

FLEMING v. THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS
RICHARD PETTIT
December 13, 2005

Page 78

```
 1   with that.
 2           FURTHER EXAMINATION
 3   BY MR. KOSNOFF:
 4       Q.  Did you succeed Bishop Coleman?  In other
 5   words, were you the immediate bishop after he was
 6   released?
 7       A.  Yes.
 8       Q.  And would you have been sustained as bishop
 9   the same day that he was released as bishop?
10       A.  Yes.
11       Q.  Okay.  So if we know the date that Bishop
12   Coleman was released, that would be the date that you
13   were sustained as bishop?
14       A.  Yes.
15       MR. KOSNOFF:  That's all the questions I
16   have.
17       MR. FEY:  I have nothing further.
18       THE VIDEOGRAPHER:  We're going off the record
19   at 11:12.
20       (The deposition concluded at 11:12 a.m.)
21
22               *   *   *
23
24
25
```

Page 79

Case: Fleming vs. Corporation of the President
Case No.: C04-2338 RSM
Reporter: Sharon Morgan
Date Taken: 12/13/05

WITNESS CERTIFICATE

STATE OF UTAH        :
                    : ss.
COUNTY OF_____:

   I HEREBY CERTIFY that I have read the
foregoing testimony consisting of 76 pages, numbered
from 3 to 78 inclusive, and the same is a true and
correct transcription of said testimony, with the
exception of the following corrections listed below,
giving my reasons therefor.
Page  Line   Change/Correction     Reason

____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____
____  ____  _____  _____

                RICHARD PETTIT
Subscribed and sworn to at _____.
Utah, this _____ day of _____, 2005.

My commission expires:
                NOTARY PUBLIC

     SHARON MORGAN, CSR, RPR, CRR
     GARCIA & LOVE

Page 80

        CERTIFICATE
STATE OF UTAH        )
                    :ss
COUNTY OF SALT LAKE  )
     THIS IS TO CERTIFY that the deposition of
RICHARD PETTIT, the witness in the foregoing
deposition named, was taken before me, Sharon Morgan,
Certified Shorthand Reporter and Notary Public in and
for the State of Utah, residing in Salt Lake City.
     That the said witness was by me, before
examination duly sworn to testify the truth, the whole
truth, and nothing but the truth in said cause.
     That the testimony of said witness was by me
reported in Stenotype, and thereafter caused to be
transcribed into typewriting, and that a full, true,
and correct transcription of said testimony so taken
and transcribed is set forth in the foregoing pages,
numbered from 3 to 78, inclusive, and said witness
deposed and said as in the foregoing annexed
deposition.

     I further certify that the reading copy of
the same was delivered to Mr. Fey for reading and
signature, signing before a Notary Public, and to be
returned within 30 days of the date hereon.
     I further certify that I am not of kin or
otherwise associated with any of the parties to said
cause of action, and that I am not interested in the
event thereof.

     WITNESS MY HAND and official seal at Salt
Lake City, Utah, this 15th day of December, 2005.

     _____
     Sharon Morgan, CSR, RPR, CRR

My Commission Expires:
6-16-2007

     SHARON MORGAN, CSR, RPR, CRR
     GARCIA & LOVE

GARCIA & LOVE
801.538.2333