The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, et al., <br><br> Defendants. | NO. 04-2338 RSM <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** <br><br> **Note on Motion Calendar:** <br> Friday, January 13, 2006 |

## I. INTRODUCTION

Plaintiffs' motion to compel was initially denied because plaintiffs failed to comply with Fed.R.Civ.P. 37 before filing it. Although the original motion addressed many issues, the current motion is limited to essentially one: can two LDS bishops maintain confidentiality with regard to penitential communications between themselves and Jack LoHolt, a member of the LDS Church.

Plaintiffs assert that the LDS Church has invoked the clergy privilege too broadly, but plaintiffs are asking this Court to read the privilege so narrowly that it would rarely, if ever, apply. Even though an LDS Church bishop has testified that the communications at issue were penitential in nature and intended to be confidential, plaintiffs are seeking the "substance" of the privileged communications. Plaintiffs cite no legal authority that would justify this implied abrogation of the privilege. To the contrary, Washington law regarding the clergy privilege provides broad protection for private communications between clergy and

OPPOSITION TO MOTION TO COMPEL - 1
7566-023128 31A48494

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Dockets.Justia.com

members of his congregation which clearly protects the communications at issue here. Accordingly, plaintiffs' motion lacks merit and should be denied.

## II. STATEMENT OF RELEVANT FACTS

1. Plaintiffs are seeking to compel testimony from two LDS Church Bishops, namely Bishop Randall Borland and Bishop Philip J. Coleman.

2. At the local level, bishops preside over LDS Church congregations. They are the ecclesiastical leaders for these local congregations, which are referred to as wards.[1] Exhibit 2 to the Declaration of Marcus B. Nash.

3. The bishop is the presiding clergyman of his ward and has ecclesiastical authority over its members.[2] Id. Bishops must be "ordained" by a laying-on-of-hands ceremony by those with priesthood authority before they can serve in their respective callings. Id.

4. Church doctrine, policies and ecclesiastical practice require a bishop to hold all private communications made by members in the strictest confidence. Exhibit 3 to Declaration of Marcus Nash ("Nash Decl."), Church Handbook of Instructions ("Church Handbook") at 22, 93. Maintaining the confidentiality of bishop-member communications is essential to the ability of all bishops to fulfill their ecclesiastical responsibilities. Without the expectation of confidentiality, penitents/parishioners and others would be discouraged from baring their souls and participating in the repentance and redemptive process of the LDS religion for fear of the public dissemination of personal information. In short, Bishops would not be able to provide effective spiritual guidance to members of their ward, an essential aspect of the office of bishop. Exhibit 2 to the Declaration of Marcus B. Nash.

### A. Bishop Coleman Did Not Invoke the Clergy Privilege As Asserted by Plaintiffs.

---

[1] A ward consists of approximately 300-600 members living within specific geographical boundaries. Members attend the ward in which they reside. FACTUAL CITATION.
[2] Bishops are laymen, not professional churchmen: they are doctors, lawyers, businessmen, plumbers, etc. who perform their heavy clerical responsibilities after work hours and on weekends. FACTUAL CITATION.

OPPOSITION TO MOTION TO COMPEL - 2
7566-023128 31A48494

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

5. Bishop Coleman testified regarding his communication with a member of his congregation about sexual molestation allegations against Jack LoHolt.

6. Counsel for the Church initially instructed the bishop not to divulge any confidential communications made to him while acting as clergy:

> Q: Did you receive any information of any kind from any person that Jack LoHolt was allegedly engaging in sexually inappropriate activity?
> A: Yes.
> Q: From who whom did you learn that?
> MR. FREY: I am going to object at this point in time. Let me tell you the basis for the objection. He was a bishop at the time, and we treat those communications as confidential, and in trying to help you with this answer, I'm not trying to present a roadblock.
>
> As an accommodation and because of the fact that the individuals involved have not authorized this information to be given, I think they have a right to privacy in that regard and a right to have it protected.

Exhibit 4 to Nash Decl., Dep. of Bishop Coleman ("Coleman Dep.") at 45:18-46:9.

7. Bishop Coleman decided during the deposition that the responsive communication with the member of his congregation regarding Jack LoHolt was likely not covered by the clergy privilege:

> Q: Was the person who communicated this to you a member of the Mormon church?
> A: Yes.
> Q: Was this communication made to you in your capacity as bishop?
> A: I think so.
> Q: Okay. Did it occur at, for example, the ward building or your office?
> A: I don't remember that.
> Q: Okay. Was the person who communicated this to you, in your view, making a statement of confession or penitential contrition?
> A: No.
> Q: Under the doctrines and tenants of your faith, do you believe that you are absolutely required to keep what that person said to you confidential, and I mean that you cannot repeat it to anyone?
> A: No.

Coleman Dep. at 50:6-23.

OPPOSITION TO MOTION TO COMPEL - 3
7566-023128 31A48494

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

8. Bishop Coleman revealed the contents of his discussion regarding sexual molestation by Jack LoHolt. Coleman Dep. at 53:5-25.

9. However, Counsel for the Church instructed Bishop Coleman not to reveal the names of the victims because he was concerned about the privacy rights of third parties who are not involved in this litigation. Coleman Dep. at 53:5-25.

10. As plaintiff has indicated, counsel for the Church is willing to turn over the names of the victims if Plaintiffs are willing to enter into an agreement keeping the identities of the victims confidential. Defendants believe this issue was resolved during the discovery conference, and are surprised to see it surface in the motion to compel. (Declaration of Marcus B. Nash.)

11. Bishop Coleman did invoke the clergy privilege in regard to privileged communications with Jack LoHolt. Coleman Dep. at 54:15-56:3. Defendants maintain that these communications are properly covered by the privilege.

**B. Bishop Borland Invoked the Clergy Privilege in Regard to Confidential Communications Between Him and Members of His Congregation.**

12. Bishop Borland did invoke the clergy-communicant privilege as to confidential communications he had with an unidentified member of his congregation or ward, testifying that this was a confidential communication revealed to him during spiritual counseling that he was required to keep confidential under the discipline of his church:

> Q: So again my question is: Was this something that you learned in connection with pastoral counseling within the Church?
> A: Yes.
> Q: Was the information that you received something that you are required to keep confidential under the doctrines and teachings of your church?
> A: Yes.
> Q: Was the communication that you received something that you in fact kept confidential, that is, that you did not disclose to any other person?
> A: Let me make sure I understand that. A communication not disclosed to anybody else?
> Q: Correct.

OPPOSITION TO MOTION TO COMPEL - 4
7566-023128 31A48494

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

| | | |
|---|---|---|
| 1 | A: | The answer to that question, if I've heard the question correct, is yes or -- let me rephrase it, and then tell you what I thought you said. |
| 2 | Q: | Go ahead. |
| 3 | A: | I did not disclose what was said confidentially to me to others. |
| 4 | Q: | Just so that I'm clear on this, you did not disclose the content of what was said to you by that person to any other person? |
| 5 | A: | The content of that conversation, that meeting, I did not. |

Exhibit 5 to Nash. Decl., Dep. of Bishop Borland ("Borland Dep.") at 57:2-58:1.

13. Since Bishop Borland's deposition was taken, Richard Pettit, the person who spoke with Bishop Borland, has affirmatively waived the privilege and released Bishop Borland to testify about it. Mr. Pettit testified at his deposition about his communications with Bishop Borland. Given the waiver of the privilege by the person who held it, Bishop Borland is now free to testify about his communications with Mr. Pettit.

14. Bishop Borland also claimed the clergy privilege in regard to certain confidential communications with Jack LoHolt. Borland Dep. at 71:17-72:7. Bishop Borland likewise testified that these communications were penitential communications that he was required to keep confidential under the teachings of the Church. Borland Dep. at 71:17-72:7. Unlike Mr. Pettit, Jack LoHolt has never waived the privilege or indicated his consent to any bishop revealing the substance of penitential discussions with him.

### III.  ARGUMENT

**A.  Issues That Have Been Resolved.**

**1. Bishop Coleman will reveal the names of other victims of LoHolt with a confidentiality agreement.**

Bishop Coleman testified regarding the discussion he had with a member of his congregation about sexual molestation allegations made against Jack LoHolt. *See* Facts at ¶¶ 10-11. Counsel for the Church allowed Bishop Coleman to testify on this point, objecting only to revealing the names of the victims. Bishop Coleman should not be required to turn over these names without a confidentiality agreement. The victims are third parties to this litigation, who have certain privacy rights and they have not

OPPOSITION TO MOTION TO COMPEL - 5
7566-023128 31A48494

**STAFFORD FREY COOPER**



PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

given Bishop Coleman consent to make public the fact that they are victims of sexual abuse. *See Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir. 1976) (balancing the invasion of minor's privacy rights against the court's need for ward files); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992), *cert. den.*, 507 U.S. 910, 122 L. Ed. 2d 654, 113 S. Ct. 1255 (1993) (denying discovery of names of participants in a medical study due to privacy interests of the individual participants); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal. 1990) (balancing targeted individual's right of privacy against public's need for discovery in employment discrimination case). These privacy rights should be respected even if no clergy privilege applies.

Since the initial motion was filed, counsel for defendants and plaintiffs have agreed to release the names with a confidentiality agreement. As mentioned above, defendants believe that the parties have reached a resolution on this issue. (Declaration of Marcus B. Nash.) Plaintiffs admit as much in their moving papers. Defendants are surprised that has re-surfaced in plaintiffs' revised motion. To the extent that plaintiffs include this issue in their motion to compel because they no longer agree to a confidentiality agreement, defendants object and seek an order from the court that a confidentiality agreement is necessary to protect the privacy interests of the third parties.

### 2. Bishop Borland has been released to speak of communications with Mr. Pettit due to Mr. Pettit's waiver of the privilege.

At the time of his deposition, Bishop Borland refused to testify about confidential communications with an unidentified ward member because he believed a privilege protected that communication. Since his deposition was taken, Richard Pettit, the unidentified ward

OPPOSITION TO MOTION TO COMPEL - 6
7566-023128 31A48494

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

member, waived the privilege,[3] and testified in this case regarding his communications with Bishop Borland. Thus, Bishop Borland is free to testify about his communications with Mr. Pettit. Defendants have no objection to resuming the deposition of Bishop Borland so he may now testify on that discreet issue, clear of conscience that he might be revealing privileged matters.

In their motion to compel, plaintiffs seek testimony from Bishop Borland on six issues, including whether he ever received a complaint about Jack LoHolt, what he did in response, whether he ever investigated a report of child sexual abuse, why Bishop Borland released LoHolt, conversations with his superior regarding LoHolt, and whether he had concerns about returning LoHolt to a position involving youth. Motion to Compel at 4-5. Plaintiffs believe the bishop should have been able to do answer these questions without revealing privileged information. Bishop Borland did not agree. See Borland Dep. at 73:7-19. Knowing that the answer to all of these questions would require revealing information provided him by Mr. Pettit during a privileged communication, Bishop Borland believed that he could not answer these questions without violating the privilege. See id. The bishop cannot be required to answer questions that would force him to risk inadvertently breaching the privilege.[4] Now that Mr. Pettit has released Bishop Borland from the privilege, he can testify about what Mr. Pettit told him when answering the above questions. However, for reasons explained herein and at the depositions, he cannot divulge any information or

---

[3] Clergy are entitled to invoke the privilege on the communicant's behalf. See, e.g., Harris v. Drake, 65 P.3d 350, 362-63 (Wash. App. 2003) (citing Martin for the proposition that clergy may claim privilege on behalf of communicant); In re Grand Jury Investigation, 918 F.2d 374, 379-80 (3d Cir. 1990) (citing Proposed Fed. R. Evid. 506 for proposition that "[t]he clergyman may claim the privilege on behalf of the person. His authority is presumed in the absence of evidence to the contrary.").

[4] In addition, the Free Exercise Clause church autonomy doctrine may prohibit discovery into ecclesiastical decision-making. See, e.g., Hadnot v. Shaw, 826 P.2d 978, 989 (Okl. 1992) ("The Free Exercise Clause prohibits civil courts from inquiring into any phase of ecclesiastical decisionmaking – its merits as well as procedure."); Gonzalez v. Roman Catholic Archbishop of Manila, 280 U.S. 1 (1929); Nally v. Grace Community Church of the Valley, 763 P.2d 948 (Cal. 1988), cert. denied 490 U.S. 1007 (1989)

OPPOSITION TO MOTION TO COMPEL - 7
7566-023128 31A48494

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

thought processes that would reveal anything concerning the content of Mr. LoHolt's communications with him or any Bishop of the church.

**B.   Issues Still Pending.**

Bishop Coleman and Bishop Borland refused to testify regarding communications between themselves and Jack LoHolt on the basis that these communications were confidential and penitential in nature. These communications were clearly privileged despite plaintiffs' assertions to the contrary.

Washington law provides broad protection for such confidential communications between clergy and the communicant:

> A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any confession made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs.

Wash. Rev. Code § 5.60.060. Washington courts have consistently held that communications between clergy and penitent are privileged when they are: (1) made to an ordained member of the clergy;[5] (2) a '"confession"'... '"in the course of discipline enjoined by the church"'; and (3) confidential. *State v. Martin*, 137 Wn.2d 774, 791, 975 P.2d 1020 (1999); *Doe v. Corp. of the President of the Church of Christ of Latter-Day Saints*, 122 Wn. App. 556, 563 (Wash. Ct. App. 2004).

  1.   **The Communications at Issue Clearly Qualify as Confessions Made in the Course of Discipline Enjoined by the LDS Church.**

In *State v. Martin*, 137 Wash.2d 774, 975 P.2d 1020 (1999), the Supreme Court of Washington held that "the religious entity, and not the courts, should decide what types of communications constitute confessions within the meaning of a particular religion." *Id.* at 787. It is important to note that the term "confession" does not refer solely to the disclosure of sins but also includes "spiritual counseling." *Id.* at 785. The court in *Martin* relied heavily on the Utah Supreme Court's decision in *Scott v. Hammock*, 870 P.2d 947 (Utah 1994); indeed,

---

[5] Plaintiffs have not disputed that the bishops were clergy for the LDS Church at all relevant times. Accordingly, it is not necessary to address this issue as the bishops clearly were ordained clergy at the time of their communications with the communicants.

OPPOSITION TO MOTION TO COMPEL - 8
7566-023128 31A48494

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

*Martin* cites *Scott* on how to define "confession." 137 Wn.2d at 787 n. 73. The *Scott* court determined that the term confession includes not only formal, penitential communications such as occur in the Catholic Sacrament of Penance, but also a disclosure or acknowledgment of something personal (*see* 870 P.2d at 951) or the "providing [of] confidential counsel and advice to . . . communicants in helping them to abandon wrongful or harmful conduct, adopt higher standards of conduct, and reconcile themselves with others and God." *Id.* at 952.

Bishop Borland unequivocally testified that the communications plaintiffs seek to discover involved the disclosure of deeply personal matters, that these communications were part of spiritual counseling and that he is required to keep these communications confidential under Church policy. *See* Facts at ¶¶ 15-16.[6] Bishop Coleman similarly testified that his communications with Jack LoHolt were in his role as bishop and concerned the issue of transgressions against Church law. Facts at ¶ 14. In other words, these were communications that the Bishops were duty bound to receive as LDS clergy in the "course of discipline enjoined" by the LDS Church. *Martin*, 975 P.2d at 787 ("Determination of the definition of 'confession' [under the statute] is to be made by the church of the clergy member," and "'not the courts.'").

2.  **The Communications at Issue Are Confidential.**

Likewise, LDS Church doctrine and policy explicitly mandate that bishops keep confidential these private communications. Church Handbook at 93 (requiring "[b]ishops" to "keep confidential all information that members give them in confessions and interviews.") This duty of confidentiality is so significant that Church clergy are required to maintain this confidentiality both "[d]uring and after their term of service in a calling … [since] a breach of confidence can damage trust, testimonies, and faith." *Id.* at 22.

---

[6] The Church Policy itself makes clear that Bishop Borland and Bishop Coleman are required to keep these communications confidential. Church Handbook at p. 22.

OPPOSITION TO MOTION TO COMPEL - 9
7566-023128 31A48494

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

Plaintiffs argue that the communications between Bishop Coleman and Jack LoHolt were not confidential because they occurred in the bishop's office. Motion to Compel at 11 n. 26. The Bishop's office, however, is precisely where one would expect a confidential communication to occur. Plaintiffs also argue that Bishop Coleman told the victim's parents after speaking to Jack LoHolt. Motion to Compel at 11 n. 27. This is factually inaccurate. Bishop Coleman testified that he spoke to Jack LoHolt's parents, not the victim's parents, about the complaint about their son. This is consistent with Bishop Coleman's characterization of the complaint being received from a non-confidential source. In contrast, Bishop Coleman did not reveal the confidential communications from LoHolt, which is consistent with their being privileged.

Thus the communications that Bishop Borland and Bishop Coleman had with Jack LoHolt are privileged communications—they were made to clergy, they meet the definition of confession as explained in *State v. Martin*, and the bishop is required by Church doctrine and policy to keep the communications confidential.

3. **The Privilege as to the Communications at Issue Has Not Been Waived.**

Under Washington law, only the communicant can waive the privilege. *State v. Martin*, 137 Wn.2d at 789 (Wash. 1999) (stating that only the penitent can waive the privilege). To date, there has been no indication from Jack LoHolt that he waives the privilege as to confidential communications with either Bishop Borland or Bishop Coleman.

4. **Counsel for the Church Properly Cited the First Amendment as a Basis for the Clergy Privilege.**

Plaintiffs correctly note that the Church cited to the First Amendment as a basis for the clergy privilege. But they fail to point out that this was not the only basis for the claims of privilege. Counsel for the Church consistently referred as well to Washington law and *State v. Martin*. There is no reason for the court to address here whether the First Amendment is an additional basis for the clergy privilege as Washington law alone provides an adequate

OPPOSITION TO MOTION TO COMPEL - 10
7566-023128 31A48494

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

basis for the Church's privilege claims. *Sissoko v. Rocha*, 412 F.3d 1021, 1032 (9th Cir. 2005) (holding the court "must avoid reaching constitutional questions where possible").

It is worth noting, however, that several courts, including the U.S. Supreme Court and Ninth Circuit, have cited to the First Amendment as a basis for the clergy privilege in dicta. *See, e.g., Trammel v. United States*, 445 U.S. 40, 51 (1980); *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532-33 (9th Cir. 1997). Thus Plaintiffs misstate the law when they contend that the First Amendment is not grounds for claiming the privilege.[7]

### 5..  Counsel for the Church Correctly Asserted the Clergy Privilege by Way of Objection During the Depositions.

Plaintiffs also assert that counsel for the Church inappropriately made speaking objections when asserting the clergy privilege. Plaintiffs fail to note that the Federal Rules of Civil Procedure specifically call for this. Fed R. Civ. P. 30(d)(1) provides that a witness may be instructed not to answer "when necessary to preserve a privilege" such as the clergy communicant privilege. Thus, the speaking objections made by counsel for the Church are authorized by the Federal Rules and necessary to ensure the privilege is not breached.

## IV.  CONCLUSION

Plaintiffs' Motion to Compel should be denied because the Church and its bishops appropriately invoked the clergy privilege.

Respectfully submitted this 9th day of January, 2006.

STAFFORD FREY COOPER

By: /s/ Marcus B. Nash via ECF
Thomas D. Frey, WSBA # 1908
Marcus B. Nash, WSBA # 14471

---

[7] Plaintiffs also cite the Washington Supreme Court's holding in *State v. Motherwell*, 114 Wn.2d 353 (1990). There, the Court concluded that a child abuse reporting statute that at one time included clergy on the list of mandatory reporters served a compelling state interest and did not run afoul of the First Amendment. *Motherwell* clearly does not address the issue of whether the First Amendment is a basis for the clergy privilege.

OPPOSITION TO MOTION TO COMPEL - 11
7566-023128 60945

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

## CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel using the CM/ECF system which will send notification of such filing to the following persons:

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim
600 University Street, Suite 2100
Seattle, WA  98101-4185
Email:  mpfau@gth-law.com
*Attorneys for Plaintiffs*

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA  98101
Email:  timkosnoff@comcast.net
*Attorneys for Plaintiffs*

DATED this 9th day of January, 2006, at Seattle, Washington.

/s/ Marcus B. Nash via ECF

OPPOSITION TO MOTION TO COMPEL - 12
7566-023128 60945

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885