# CONDENSED TRANSCRIPT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING and JOHN DOE, | No. C04-2338 RSM |
| | (Judge Ricardo Martinez) |
| Plaintiffs, | |
| -v- | |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/k/a LDS FAMILY SERVICES, a Utah corporation, | Videotaped Deposition of: **RANDALL BORLAND** |
| Defendants. | |

**September 20, 2005 - 9:08 a.m.**

Location: Kirton & McConkie
60 East South Temple, Suite 1800
Salt Lake City, Utah

Diane W. Flanagan, RPR
Notary Public in and for the State of Utah



EXHIBIT 5

GARCIA & LOVE
COURT REPORTING AND VIDEOGRAPHY

36 South State Street • Suite 1220 • Salt Lake City, UT 84111 • 801.538.2333 • Fax 801.538.2334

Case 2:04-cv-02338-RSM    Document 70-6    Filed 01/09/2006    Page 2 of 3

FLEMING v. THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS
September 20, 2005                                                                RANDALL BORLAND

**Page 57**

1  A  Okay.
2  Q  So again my question is: Was this something that
3  you learned in connection with pastoral counseling within
4  the Church?
5  A  Yes.
6  Q  Was the information that you received something
7  that you are required to keep confidential under the
8  doctrines and teachings of your church?
9  A  Yes.
10 Q  Was the communication that you received something
11 that you in fact kept confidential, that is, that you did
12 not disclose to any other person?
13 A  Let me make sure I understand that. A
14 communication not disclosed to anybody else?
15 Q  Correct.
16 A  The answer to that question, if I've heard the
17 question correct, is yes or -- let me rephrase it, and then
18 tell you what I thought you said.
19 Q  Go ahead.
20 A  I did not disclose what was said confidentially to
21 me to others.
22 Q  Just so that I'm clear on this, you did not
23 disclose the content of what was said to you by that person
24 to any other person?
25 A  The content of that conversation, that meeting, I

**Page 58**

1  did not.
2  Q  Okay.
3  A  The best of my recollection.
4  Q  Okay. Did you ever make a referral to LDS Social
5  Services for counseling Jack Loholt?
6  A  I don't remember. I do not remember that.
7  Q  Did you do anything or say anything to anyone else
8  following the communication that you received from this
9  person?
10 A  Regarding specifics?
11 Q  Anything.
12 A  Yes.
13 Q  What did you do or say?
14 A  I talked --
15    MR. FREY: Again I'm going to caution you that if
16 you took any steps in your capacity as a clergyman and
17 ecclesiastical in accordance with the teachings and beliefs
18 of the LDS religion that you are not obligated to break that
19 confidentiality if in fact you learned that in those
20 circumstances.
21    And for the record, Counsel, what I'm trying to do
22 here is allow you to ask questions without reaching what I
23 believe is a privilege that he has as a bishop to receive
24 information, treat it with confidentiality, and act on it in
25 an ecclesiastical fashion.

**Page 59**

1     MR. KOSNOFF: Could you identify the source of
2  that privilege.
3     MR. FREY: State v. Martin and the statute, the
4  First Amendment.
5     MR. KOSNOFF: So are you relying on the clergy
6  penitent privilege?
7     MR. FREY: And his First Amendment rights.
8     MR. KOSNOFF: What First Amendment rights are you
9  referring to?
10    MR. FREY: Free exercise rights.
11    MR. KOSNOFF: Specifically what in the free
12 exercise clause are you basing this privilege?
13    MR. FREY: That he has the right to free exercise
14 of religion to be free from the restraint of having a civil
15 court interfere and make him disclose confidential
16 communications. We've been through this. We've briefed it.
17 We've already argued it in the Court of Appeals and won it.
18    MR. KOSNOFF: No. We've --
19    MR. FREY: And that's what I'm doing here.
20    MR. KOSNOFF: No. That was a completely different
21 issue and very different narrow issue than --
22    MR. FREY: And there's a third item involved here
23 that we haven't gotten to yet, but that is the privacy
24 rights of individuals who may be involved, if any. But I'm
25 trying not to interfere with your legitimate discovery area,

**Page 60**

1  and so I'm trying to be very careful here. And I want you
2  to understand that it's not my purpose here to frustrate
3  your discovery, but I do want him to be careful that he
4  doesn't breach any of the confidentiality that is imposed
5  upon him by his position as a clergyman.
6     So if you can read back the question. Sorry about
7  the speech --
8     MR. KOSNOFF: Well, I -- we have gone through the
9  criteria for the appropriate assertion of the clergy
10 penitent privilege, and that shields him from disclosing the
11 content of privileged communications based upon that
12 statute. My questions now are not directed at the content
13 of that communication. My questions are directed at what he
14 did or said to others following that communication.
15    MR. FREY: But that may very well involve his
16 working in an ecclesiastical capacity and involve
17 conversations with other people that are privileged, and
18 that's my point.
19    MR. KOSNOFF: That -- it's our position that that
20 would not be privileged and that he is required to answer
21 those questions.
22    MR. FREY: Just a second.
23    (Defense counsel confer)
24    MR. FREY: I -- I've made my objection. We
25 disagree. Okay?

Case 2:04-cv-02338-RSM   Document 70-6   Filed 01/09/2006   Page 3 of 3

FLEMING v. THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS
RANDALL BORLAND
September 20, 2005

**Page 69**

1  A  I would say that's possibly.
2  Q  Would that include communicating it to the mother
3  of the child that made the complaint?
4  A  If it evolved to that point.
5  Q  If -- I'm sorry. If what evolved?
6  A  Well, this is all an assumption. Everything is an
7  assumption. Did you say that a mother came in and said that
8  a child, not her child? Am I right?
9  Q  Just a woman in the ward, a ward worker, a
10 volunteer hypothetically in the Primary, receives this
11 report from a child and she conveys it to you.
12 A  And so then I would --
13 Q  And my question is: Would you find it appropriate
14 to convey this confidential information to the mother of
15 that child?
16 A  I would have to have more groundwork on it before
17 I did that. I would probably -- if I felt that there was a
18 substantive basis for it, I would talk to the mother.
19 Q  If you felt that there was a substantive basis for
20 the accusation?
21 A  But there's footnote to that. The person that
22 came to me, if they came with the idea that, Bishop, I want
23 to talk with you, this is in confidence, that particular
24 individual's name, circumstance, involvement would not --
25 that would be held confidential.

**Page 70**

1  Q  Would you communicate this information to the
2  police?
3  A  Not necessarily, no.
4  Q  Would you communicate it to the local Child
5  Protective Services agency?
6  A  No.
7  Q  Would you attempt to substantiate the accusation
8  yourself?
9  A  I suspect I would, uh-huh (affirmative).
10 Q  How?
11 A  It would depend on the circumstance. It would
12 depend on the people. It would depend on the emotions. It
13 would depend on a gamut of things, a wide range of things
14 that would all focus in on is this legitimate, is this real,
15 or is it just an accusation, is it somebody that's upset
16 with somebody and angry, whatever it might be.
17 Q  Have you ever actually had to conduct such an
18 investigation?
19 A  I'm sorry?
20 Q  Have you ever actually been presented with a
21 scenario like this?
22 A  I'm going to have a difficulty answering that
23 question --
24    MR. FREY: Again, I'm going to instruct you if
25 that's going to cause you -- or require you, pardon me, to

**Page 71**

1  go ahead and disclose any type of information that you
2  received in your position as a clergy member.
3     For the record, I want to make this clear,
4  Counsel. I'm quoting from State v. Martin so we'll know
5  exactly what we're talking about. And they there say that
6  rather than the statute -- "Rather, the statute only
7  requires the clergy member receiving the confidential
8  communication be enjoined by the practices or rules of the
9  clergy member's religion to receive the confidential
10 communication and to provide spiritual counseling." That's
11 what I'm trying to protect him with.
12    MR. KOSNOFF: That's one of the elements.
13    MR. FREY: Okay. Well --
14    MR. KOSNOFF: They didn't throw out the elements
15 of the statute, and I'm very well-acquainted with State v.
16 Martin.
17 Q  (By MR. KOSNOFF) Let's get back to -- let's get
18 back to Mr. Loholt. You testified earlier that you spoke
19 with Jack Loholt. Are you asserting the privilege with
20 respect to your communication with Jack Loholt regarding any
21 allegations of child sexual abuse?
22 A  As being confidential?
23 Q  Yes.
24 A  Yes.
25 Q  Did you speak with anybody else other than Jack

**Page 72**

1  Loholt regarding information that he may have engaged in
2  sexual misconduct with a child?
3  A  No.
4  Q  So anything that was said between Jack Loholt and
5  yourself was kept strictly to yourself. Is that correct?
6  A  I can't speak for Jack Loholt. It was kept within
7  me.
8  Q  Was that information shared with anyone else on
9  the bishopric, such as your first or second counselor?
10 A  What information?
11 Q  Any information that Jack Loholt may have engaged
12 in sexual misconduct with a child.
13    MR. FREY: Again, these communications between you
14 and your counselors are also privileged, but go ahead.
15 A  So the answer -- I guess my answer would be -- is
16 my discussion with my counselors would be confidential. I
17 don't -- I don't remember discussing that with anybody.
18 Q  So you have no recollection of discussing with
19 anybody else?
20 A  I have no recollection of that.
21 Q  Okay.
22 A  That's correct. I do not.
23 Q  Did you remove Jack Loholt from any positions
24 working with youth in the ward while you were bishop?
25 A  Did I remove him?