1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D.,<br><br>             Plaintiffs,<br><br>        v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation,<br><br>             Defendants. | NO. C04-2338 RSM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL**<br><br>**NOTE ON MOTION CALENDAR:**<br>**JANUARY 13, 2006** |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL  - i
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## I.    INTRODUCTION

Plaintiffs request that the Court enter an Order compelling witnesses Randall Borland and Philip Coleman to respond to specific deposition questions, at defendants' expense, where the witnesses failed to provide testimony about their confrontations with Church Boy Scout leader Jack LoHolt, and Coleman's receipt of a report of sexual molestation by LoHolt. Defendants' opposition brief is notable for what it concedes – defendants concede that Borland must now appear for deposition to answer all but one of the deposition questions that are the subject of pending motion because the clergy-penitent privilege is not applicable.

As to remaining deposition questions at issue, the clergy-penitent privilege does not apply. Furthermore, there is no "First Amendment" testimonial privilege. Accordingly, plaintiffs' motion to compel should be granted.

## II.    ADDITIONAL FACTS

The following deposition inquiry remains at issue.

| DEPONENT | INQUIRY | CLAIMED PRIVILEGE |
|---|---|---|
| Bishop Borland | What was said in Borland's confrontation with LoHolt, prompted by Borland's receipt of a complaint of sexual molestation by LoHolt.[1] | "any privilege you have as a clergyman".[2] |
| Bishop Coleman | From *whom* Coleman learned that LoHolt was engaging in sexually inappropriate activity.[3] | "He was bishop at that time and we treat those communications as confidential";[4] "a constitutional objection in the Free Exercise Clause".[5] "I'm not prepared to reveal the names of anybody or have my client reveal the names of anybody who has been molested."[6] |

---

[1]  Borland Dep., 61: 14-21, Pfau Supplemental Decl., Ex. 2, Pfau Decl., Ex. 3.

[2]  *Id.*, 61: 19-20.

[3]  Coleman Dep., 45: 18-46: 13, Pfau Decl., Ex. 4.

[4]  *Id.*, 46: 1-2.

[5]  *Id.,* 47: 7-8.

[6]  *Id.,* 47: 12-14.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL - 1 of 6
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

| Bishop Coleman | Conversation that Coleman initiated with LoHolt after Coleman received a report of LoHolt exposing himself to young boys[7] | "In those conversations where you're acting with your bishop's hat on and you're speaking to one of your people and it involves what could be classified as a transgression within the church, you do have the right not to disclose that information."[8] |

Defendants have agreed that Bishop Borland can be deposed concerning the remaining deposition questions for which this motion was filed, stating that Richard Pettit testified about his discussions with Bishop Borland, and, thus, the communications are not privileged.[9]

On January 12, 2006, the parties filed a Stipulation and proposed Order. That Stipulation reflects an agreement that defense will disclose the names of non-party victims of LoHolt that Bishop Coleman became aware of while he was bishop, excluding information learned from counsel, and those names will not be revealed in court filings. Contrary to defendants' intimation, the Stipulation does not address from *whom* Bishop Coleman learned that LoHolt was abusing children. This report to Coleman was not made by a victim. *Id.*[10]

### III.    LEGAL ARGUMENT

No statutory testimonial privileges apply to the communications at issue. The Washington courts have repeatedly held that privileges claimed to prevent examination of witnesses should be strictly construed. *State v. Martin*, at 785; *CJC v. Corp. Of Catholic Bishop*, 138 Wn.2d 699, 717, 985 P.2d 262 (1999) ("legislative grants of testimonial privilege conflict with the inherent power of the Courts to compel the production of relevant evidence and are, therefore, strictly construed.")

---

[7] *Id.*, 53: 14-55:8.

[8] *Id.,* 55: 4-8.

[9] Plaintiffs maintain that the clergy penitent privilege never applied to these communications. *See* Plaintiffs' Motion to Compel, pp. 7-12.

[10] Coleman Dep., 53: 3-9.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL  - 2 of 6
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 -  FACSIMILE (206) 676-7575

The *CJC* case involved the issue of client psychologist privilege with regard to sexual misconduct with a child. In discussing the issue of privilege in general, our Court emphasized:

> Even were we inclined to recognize a unity of interest between a cleric and his or her church and protect communications made in furtherance of that interest against compulsory disclosure, this is not the case in which to do so. **Where childhood sexual abuse is at issue, even long established privileges do not apply.** *See, e.g., State v. Fagalde,* **85 Wn.2d 730, 735-37, 539 P.2d 86 (1975)** (client-psychologist privilege does not apply to any judicial proceeding regarding a child's injury, neglect, or sexual abuse); *Dike v. Dike,* 75 Wn.2d 1, 11, 448 P.2d 490 (1968) (attorney-client privilege is not absolute and exceptions to the privilege may result from a balancing of the privilege against the public interest in full disclosure of all the facts). *See also State v. Waleczek,* 90 Wn.2d 746, 751, 585 P.2d 797 (1978) (husband-wife privilege may be "subordinated to the overriding and paramount legislative intent to protect children from physical and sexual abuse").[11] *Emphasis added.*

**A.    The Clergy-Penitent Privilege Does Not Apply to Borland's and Coleman's Discussions with Pedophile LoHolt Concerning Reports of Sexual Abuse Made to Borland and Coleman.**

This case is not about "confessions" by LoHolt to his bishops. Instead, bishops Borland and Coleman confronted LoHolt about reports of LoHolt's sexual abuse of children. The statutory clergy-penitent privilege, RCW 5.60.060(3), does not apply. The privilege will only apply if following elements must be present: (a) a **communication** must be heard by a member of the clergy; (b) the clergy must have a religious duty to keep the communication secret and the **penitent must have a reasonable expectation that it will remain private**; (c) the communication must be **penitential in nature** and the clergy receiving the communication must be required by the tenets of his religion to receive penitential communications and to provide spiritual instruction and guidance in return; and (d) the

---

[11] *See also JF v. DSHS,* 109 Wn. App. 718, 728, 731-32, 37 P.2d 1227 (2001) (involving claim of counselor-patient privilege: "In cases involving child abuse or neglect, courts are particularly reluctant to keep relevant information from the trier of fact); *State v. Ackerman,* 19 Wn. App. 477, 486, 953 P.2d 816 (1998) ("The legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of perpetrators than the counseling and treatment of persons whose mental or emotional problems caused them to inflict such abuse").

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

communication must have been received in the course of discipline enjoined by the church to which he or she belongs. *Martin,* 91 Wn. App. at 630 (*emphasis added*). When communications are made for the purpose of providing a third party with information, there is no confidentiality anticipated or expected. *State v. Warner*, 125 Wn.2d 876, n. 8, 889 P.2d 479 (1995).

> **1.    Borland's Refuses to Answer What was Said in Borland's Confrontation With LoHolt About Receiving a Complaint of Sexual Abuse by LoHolt.**

Borland's discussions with LoHolt about a complaint of sexual molestation are not protected by the clergy-penitent privilege. Borland confronted LoHolt.[12] Neither were penitents. Borland's communications were not penitential in nature, nor do defendants' claim that LoHolt's responses were penitential in nature. Furthermore, Borland testifies that he does not know if LoHolt kept the conversation confidential.[13]

> **2.    Coleman Refuses to Testify About a Conversation He Initiated About His Own Concern of a Report of Sexual Abuse.**

The discussion Coleman initiated with LoHolt after receiving the report that LoHolt exposed himself to young boys is not a clergy-penitent privileged communication. The communication was not penitential in nature. Indeed, LoHolt was far from repentant, denying the accusation.[14] There was no reasonable expectation that it would remain private as LoHolt was hauled into the bishop's office to be confronted with a third party complaint of sexually inappropriate conduct.[15]

---

[12] "I had to talk with him." Coleman Dep., 61: 13.

[13] Q: So anything that was said between Jack LoHolt and yourself was kept strictly to yourself. Is that correct?
A: I can't speak for Jack LoHolt. It was kept within me. *Id.,* 72: 4-7.

[14] Coleman Dep., 54: 23-24.

[15] *Id.,* 54: 17-18.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL - 4 of 6
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

### 3.    Defendant's Reliance on *State v. Martin* is Misplaced.

*State v. Martin,* 137 Wn.2d 774, 969 P.2d 450 (1999), is inapposite. That case was a criminal matter wherein the "penitent" was charged with murder arising out of his abuse of his son. In examining whether his "confessions" to a pastor were privileged, the Court first examined <u>who</u> would be entitled to claim such a privilege. The Court stated: "We adopt the ordinary dictionary meaning "penitent" as one who repents of sin and asks for forgiveness." While that definition fit the confessor in *Martin*, it does not here where the bishops confronted LoHolt and, in at least one instance, LoHolt denied the accusation.

**B.    The Clergy-Penitent Privilege Does Not Apply As To From Whom Coleman Learned LoHolt Was Sexually Molesting Boys. Nor Does a "Free Exercise Clause" Privilege Exist to Prevent Answering Deposition Inquiry as to That Report of Sexual Molestation.**

Coleman refused to answer from *whom* he learned that LoHolt was exposing his genitals to two young boys. However, Coleman later testified that this person was not a victim of the abuse,[16] was not making this statement to him as a confession, and that under his faith he does not believe that he has to keep the communication confidential.[17]

Furthermore, there is no "Free Exercise Clause" testimonial privilege. Indeed, even defendants concede: "there is no reason for the Court to address here whether the First Amendment is an additional basis for the clergy privilege . . . ."[18]

---

[16] *Id.,* 53: 3-9.

[17] *Id.,* 50: 15-23, Supp. Pfau Decl., Ex. 3 (incorrect opening brief page citation), Pfau Decl., Ex. 4.

[18] Defendant's Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 10.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL - 5 of 6
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## IV.    CONCLUSION

Defense counsel's attempt to "muzzle" their Church leader witnesses is unsupported by the clergy-penitent statutory privilege.  Plaintiffs request the Court grant their motion to compel, including ordering defendants to pay for the costs associated with the continued depositions.

DATED this 13th day of January, 2006.

GORDON, THOMAS, HONEYWELL,                LAW OFFICES OF TIMOTHY D. KOSNOFF
MALANCA, PETERSON & DAHEIM LLP


By / s / Michael T. Pfau                  By / s / Timothy D. Kosnoff
Michael T. Pfau, WSBA No. 24649           Timothy D. Kosnoff, WSBA No. 16586
mpfau@gth-law.com                         timkosnoff@comcast.net
Co-Counsel for Plaintiffs                 Co-Counsel for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL  - 6 of 6
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 -  FACSIMILE (206) 676-7575

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on January 13, 2006, I electronically filed the foregoing PLAINTIFFS' REPLY TO IN SUPPORT OF MOTION TO COMPEL with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas D. Frey and
Marcus Nash
STAFFORD FREY COOPER
601 Union Street, Suite 3100
Seattle, WA 98101-1374

DATED this 13th day of January, 2005.

/s/Tanya Garbell
Tanya Garbell
Assistant to Michael T. Pfau,
WSBA No. 24649

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL  - 7 of 6
**(C04-2338 RSM)**
[157115 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575