knowledge that he or she was molested and the fact that the victim "may even know that some injury resulted" does *not* mean that the victim understood the full extent of the psychological injuries caused by the abuse. The undisputed evidence establishes that each one of these plaintiffs was unaware of his most *serious* psychological injuries.

## E. WASHINGTON DOES NOT IMPOSE AN OUTSIDE TIME LIMIT ON WHEN CLAIMS FOR CHILDHOOD SEXUAL ABUSE MAY BE PURSUED.

The Washington legislature is well aware of its abilities to enact legislation that will limit the time period in which a claim can be brought. For example, in construction defect litigation, where the discovery rule does apply, the maximum time limit for a claim is twelve-years, regardless of the date the plaintiff first knew, or should have known, of the existence of the defects. RCW 4.16.326(g). In the case of child sexual abuse, the Legislature has not established a term limit.

The out-of-state cases cited by COP and LDSSS to support its assertion that an outside time limit should be imposed are inapposite. First, in *Evans v. Eckleman,* 216 Cal.App.3d 1609 (Cal. Ct. App. 1990), the Court adopted a delayed discovery rule for claims related to childhood sexual abuse and determined that the plaintiffs claim **could** proceed. There is no discussion in the opinion about an "outside time limit" for the claim." [28]

The other case on which COP relies is *Cassidy v. Smith,* 817 P.2d 555 (Colo. App. 1991). In *Cassidy* the Colorado appellate court determined that only some of plaintiffs' claims could proceed based on its determination the plaintiffs had adequate notice of the claims at the time they reached the age of majority and, thus, that the statute of limitations had passed. However, the *Cassidy* case was decided **before** Colorado adopted a discovery rule for

---

[28] Interestingly, while COP points to this decision as the basis for imposing the "outside time limit," it fails to note that the California Legislature has, in fact, imposed an outside time limit. *See,* Cal. Code of Civ. Procedure, 340.1 (limiting the time in which a plaintiff may bring a claim to no later than the plaintiff's 26th birthday). In *Mark R. v. Roman Catholic Archbishop of Los Angeles,* 67 Cal.App.4[th] 603, 610, n. 4 (Cal. App. 1998) the appellate court specifically noted this change in California's statute of limitations relating to claims of childhood sexual abuse.

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 13
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Dockets.Justia.com

claims of childhood sexual abuse. In fact, in *Sailsbery v. Parks,* 983 P.2d 137 (Colo. App. 1999) the Colorado appellate court specifically noted that the *Cassidy* decision **"preceded and apparently prompted"** the Colorado's adoption of the Colorado statute on the tolling of the statute of limitations for sexual abuse in certain circumstances, C.R.S. § 13-80-103 (emphasis added).[29]

As demonstrated by the very existence of the California and Colorado statutes, it is clear that if a legislature deems to impose an outside time limit, the legislature can do so. However, unlike California or Colorado, the Washington legislature has not done so despite the existence of the multiple cases concerning the issue of childhood sexual abuse and despite the 14 legislative sessions held since Washington first enacted RCW 4.16.340 (in 1991). Washington law is clear on the issue of when such claims can be pursued. In the absence of any further guidance from the Legislature, defendants' request that this Court impose an "outside time limit" should be rejected.

## F. DUE PROCESS CONSIDERATIONS.

Ironically COP claims that due process considerations require this Court to find that Plaintiffs' claims are time-barred by referencing two cases that determined that due process did **not** apply to a statute of limitations question. In *U.S. v. Marion*, 404 U.S. 307 (1971), the U.S. Supreme Court examined whether due process considerations protected a criminal defendant from an indictment brought nearly three years after the alleged crime occurred. The Court held that "the applicable statute of limitations is the primary guarantee against bringing overly stale criminal charges." *Id.* at 322 (citations omitted). The Court observed that while the passage of time may impact a criminal defendant's ability to defend himself, "it may also

---

[29] Additionally, as with California, the Colorado legislature has imposed an outside time limit for claims of childhood sexual. In Colorado, if a plaintiff is bringing a claim more than fifteen (15) years after attaining the age of 18, the plaintiff may "only recover damages for medical and counseling treating and expenses, plus costs and attorney fees." C.R.S. 13-80-103.7(3.5)(c).

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 14
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNION STREET, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

weaken the Government's case." *Id.* at 322. The Court declined to apply the Due Process Clause of the Fifth Amendment, stating that "the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." *Id.* at 325.[30]

Here, defendants assert that the due process clause will be violated because "memories have faded, evidence has been lost, and witnesses have become unavailable." Regarding, "lost evidence," defendant makes the assertion without providing any example of what is "lost." The very authorities cited by defendants state that the determination of whether the due process clause is implicated must be made on a case-by-case basis. How can the determination of whether "lost evidence will effect defendant's case, when defendant has not articulated what is "lost." Furthermore, in this case, where virtually every relevant witness in this case is alive, with memories of the event intact, and has so testified, the only "evidence" that could be lost would need to be in a tangible form, e.g., documents. If so, COP's argument relating to lost evidence make little logical sense. The vast majority of documents to be utilized in this case, would be documents in the possession, custody or control of COP (e.g., records of membership, disciplinary court records, etc.). Is COP truly asserting that a defendant can obtain dismissal of a claim by "losing" its own documents?

Defendants also assert they will be prejudiced by plaintiffs' delay because they will be judged by 2006 standards rather than standards of the 1970s, presumably because the jury will disregard any instruction given by the Court on that issue. This defense is based on

---

[30] In *Melanie H. v. Defendant Does 1-1000*, Civil No. 04-1596 (Dec. 21, 2005), the U.S. District Court of Southern California declined to hold that the Due Process Clause prohibited revival of civil claims by retroactively extending a statute of limitations period. Citing *Marion* for the proposition that a court "must evaluate the potential prejudice on a case-by-case basis", *Id.* at 19, the *Melanie H.* court held that revival of sexual abuse claims was not a per se violation of the constitution and that the court would need to examine the circumstances of each case. *Id.* at 20.

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 15
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

speculation and is not evidence. The presumption is to the contrary: jury members will follow the law as given by the judge. *See, State v. Elmore,* 155 Wn.2d 758, 773, 765, 123 P.3d 72 (2005) (juror disqualified for failing to "follow the law"). Moreover, COP has offered expert testimony on the differing standards. It is for the jury to decide, whether COP was negligent, when three of its Bishops learned Loholt was abusing children and did nothing to stop that abuse. To the extent there is expert testimony about whether ignoring reported complaints of child sexual abuse met a standard of care in the 1970's plaintiffs are more than happy to allow the jury to weigh that evidence at trial. COP's attorney's concern about their ability to convince a jury as to the righteousness of their client's actions is not a basis for dismissal of the plaintiffs' claim. Finally, defense counsel's speculation as to the plaintiffs motivations for bringing suit, and the timing of the lawsuit, is not admissible evidence and should not be considered by this Court.

## G. LACHES.

In this section COP makes the same arguments as it makes throughout its Statute of Limitation motion. The arguments have no more basis under the laches theory than under any of the either theories espoused.

## H. THE DOCTRINE OF FRAUDULENT CONCEALMENT PRECLUDES COP FROM ASSERTING THE STATUTE OF LIMITATIONS DEFENSE.

Washington courts recognize fraudulent concealment as an equitable doctrine that tolls the statute of limitations when the defendant has fraudulently concealed a cause of action so that the plaintiff is unable to bring a claim within the relevant time period.[31] *Giraud v. Quincy Farm and Chemical,* 102 Wn. App. 443, 452, 6 P.3d 104 (2000). The underlying purpose of

---

[31] The doctrine of fraudulent concealment has long been recognized by Washington courts and has been applied to a wide variety of claims. *Allyn v. Boe,* 87 Wn. App. 722, 943 P.2d 364 (1997) (timber trespass), *Gunnier v. Yakima Heart Center, Inc.,* 134 Wn.2d 854, 953 P.2d 1162 (1998) (medical malpractice), *Giraud v. Quincy Farm and Chemical,* 102 Wn. App. 443, 6 P.2d 104 (2000) (breach of warranty); *Quinn v. Connelly,* 63 Wn. App. 733, 821 P.2d 1256 (1992) (legal malpractice), *Crisman v. Crisman,* 85 Wn. App. 15, 931 P.2d 163 (1997) (conversion).

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 16
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

the rule is to prevent a defendant from inequitably relying on the statute of limitations as a defense where the defendant has taken some action that has delayed the filing of the claim. *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 443 P.2d 544 (1968); *Wood v. Gibbons*, 38 Wn. App. 343, 685 P.2d 619 (1984); *Stueckle v. Sceva Steel Buildings, Inc.*, 1 Wn. App. 391, 461 P.2d 555 (1970).

To survive summary judgment on their fraudulent concealment claim, plaintiffs must produce evidence sufficient to show *either*: (1) that COP engaged in affirmative conduct designed to prevent plaintiffs from becoming aware that it knew of Loholt's pedophilia before they were abused **or** (2) that COP remained silent in the face of an affirmative duty to disclose its knowledge. *Giraud v. Quincy Farm and Chemical*, 102 Wn. App. 443, 452-53, 6 P.3d 104 (2000). To establish each of the alternative grounds for fraudulent concealment, the plaintiffs also must show that the concealed information was not discoverable by the exercise of due diligence. In the present case, the evidence is sufficient to establish each of these propositions or, at least, to let the jury decide the question.

### 1. COP AFFIRMATIVELY CONCEALED ITS KNOWLEDGE OF LOHOLT'S ABUSE OF CHILDREN PRIOR TO THE TIME PLAINTIFFS WERE ABUSED AND THROUGH THE TIME THEY BROUGHT SUIT.

In order to establish this form of fraudulent concealment, a plaintiff must establish two elements: (1) that the defendant engaged in affirmative conduct which would lead a reasonable person to believe that no claim for relief existed and (2) that the plaintiff exercised due diligence in trying to uncover the factual basis for the cause of action.[32] *Giraud*, 102 Wn.

---

[32] Washington law does not require a plaintiff to plead and prove the nine elements of fraud to establish a fraudulent concealment claim. In *Allyn v. Boe*, 87 Wn. App. 722, 943 P.2d 364 (Div. II 1997), the court tolled the statute of limitations when the defendant concealed his wrongdoing *without* requiring proof of the nine elements of fraud. Similarly, in *Giraud v. Quincy Farm*, 102 Wn. App. 443, 6 P.3d 104 (Div. III 2000), the court held that to establish fraudulent concealment the plaintiff must simply show that "he or she was ignorant of the defect and that the defendant engaged in some conduct of an affirmative nature designed to conceal the defect." *Id.* at 451. *Giraud* did not hold that a plaintiff is required to plead and prove the nine elements of fraud for the doctrine of fraudulent concealment to apply. *See also*, *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 443 P.2d 544 (1968) (discussing fraudulent concealment as tolling the statute of limitations without

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 17
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

App. at 452; *Wood v. Gibbons,* 38 Wn. App. 343, 685 P.2d 619 (1984); *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 443 P.2d 544 (1968).

In *Allyn v. Boe,* 87 Wn. App. 722, 943 P.2d 364 (1997), the court held that the statute of limitations was tolled in a timber trespass action when, prior to expiration of the limitations period, the defendant denied cutting any of the plaintiff's trees when questioned by police. *Id.* at 726. The plaintiff only discovered the defendant's wrongdoing several years later, after the limitations period had expired and after he hired an investigator and expert witness. *Id.* The court held that the statute of limitations should be tolled on the basis that the plaintiff had been unable to learn all elements of his claim because "the defendant concealed his wrongdoings." *Id.* at 737.

Significantly, courts in other jurisdictions have specifically applied the fraudulent concealment doctrine to toll the statute of limitations in sex abuse actions against churches and other entities. *See, Secter v. Roman Catholic Diocese of Covington*, 966 S.W.2d 286 (Ky. App. 1998); *Doe v. Board of Educ. Of Hononegah Community High School District #207*, 833 F. Supp. 1366 (N.D. Ill. 1993); *Miller v. Monongalia County Board of Education*, 556 S.E.2d 427 (W. Va. Ct. of App. 2001). In these cases, the courts have reasoned that the statute of limitations should not act as a bar to a plaintiff's claim when the plaintiff produces evidence that the church or other entity actively concealed its knowledge of the pedophile's abuse, so that the plaintiff was not aware that the employing entity was legally responsible for the plaintiff's injuries.

For example, in *Secter v. Roman Catholic Diocese of Covington*, 966 S.W.2d 286 (Ky. App. 1998), the court held that the doctrine of fraudulent concealment precluded the Diocese

---

mentioning a requirement that the plaintiff plead and prove nine elements of fraud); *Nordham v. Ladish*, 9 F.3d 1402 (9th Cir. 1993) (same).

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 18
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

from asserting a statute of limitations defense to the plaintiff's claims where the Diocese affirmatively concealed its knowledge of an employee's pedophilia for three decades.

While attending the Diocese's parochial school from 1972-1976, the plaintiff was sexually assaulted by the school's guidance counselor, a Diocese employee. *Id*. at 287. Although he never reported the incidents, the plaintiff suffered severe emotional trauma after learning 16 years later that the employee had also assaulted other students. *Id*. Less than a year later, and 17 years after the abuse ended, the plaintiff sued both the Diocese and its employee, alleging the Diocese negligently hired, supervised, and retained the employee. *Id*. During the course of discovery it became clear that the Diocese had long known, but had concealed, the employee's pedophilia. For example, the plaintiff learned the Diocese had first learned of the employee's pedophilia in the early 1960s. *Id*. at 287. The plaintiff also discovered that the Diocese had sent the employee to New Mexico for four years after receiving initial reports of sexual abuse. *Id*. at 287. Although the Bishop stated in correspondence he felt the employee's "pedophilia had not been cured and that he would continue to be a problem," the Bishop placed the employee back in Diocese schools without restricting his access to children. *Id*. Although the Diocese continued receiving reports of the employee's sexual assaults through the late 1960s and early 1970s, it neither imposed discipline nor sanctioned the employee. *Id*. Furthermore, prior to the plaintiff's abuse, the Diocese never informed anyone – including parents, students, or law enforcement – of the employee's pedophilia. *Id*. at 287-88. Instead, the Diocese placed the employee back in its schools. *Id*. at 287.

Prior to trial, the court denied the Diocese's motion for summary judgment on grounds of the statute of limitations, holding that material issues of fact existed regarding whether the plaintiff could have reasonably discovered the Diocese's misconduct and whether the Diocese concealed or otherwise obstructed the plaintiff from obtaining information material to his

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 19
(**C04-2338 RSM**)
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

claim. *Id.* at 288. At trial, the jury awarded damages against the Diocese and the Diocese appealed. *Id.* In affirming the decision below, the Court of Appeals found the Diocese was precluded from raising a statute of limitations defense because it had fraudulently concealed its knowledge of the employee's pedophilia from the plaintiff. The court held that the Diocese, by concealing its knowledge of the employee's pedophilia, had clearly obstructed the prosecution of the plaintiff's action.[33]

This case is remarkably similar to *Sector.* During the course of discovery it became clear that COP knew of – yet concealed – Loholt's pedophilia for many years. For example, plaintiffs learned that COP's knowledge of Loholt's pedophilia began (at the latest) in 1972, when Bishop Pettit learned that his own son had been a victim.[34] After COP gained this initial knowledge, it sent Loholt to LDS Social Services for counseling relating to the abuse. However, COP allowed him to continue working with children in the scouting program and did not restrict his access to children. Nor did COP take any action to warn and protect

---

[33] The *Secter* court specifically stated:

> The Diocese knew prior to the period of time in which [plaintiff] was abused that [the employee] had sexually abused students and would continue to be "a problem" and continued to receive reports of [the employee's] sexually abusing students during at least part of the time period in which [plaintiff] was abused. Nevertheless, the Diocese took no action to discipline or sanction [the employee], to inform other students, parents, or employees, or to report the incidents to state authorities. The information was kept secret and confidential in the Canon 489 file, and [plaintiff] had no clue that the Diocese had prior knowledge of [the employee's] propensities until 1992 [the year before plaintiff filed his claims]. **Until that time, [plaintiff] neither knew nor had reason to know that he had a potential cause of action against the Diocese for causing tortious injury to him due to the Diocese's concealment of its knowledge of [the employee's] actions toward other students.**

> The Diocese clearly obstructed the prosecution of [plaintiff's] cause of action against it by continually concealing the fact that it had knowledge of [the employee's] problem well before the time that [plaintiff] was abused as well as the fact that it continued to receive reports of sexual abuse of other students during part of the time period in which [plaintiff] was abused.

*Id.* at 288 (emphasis added).

[34] *Deposition of Richard Pettit, pg. 28-31 (attached to Declaration of Michael T. Pfau filed in Support of Opposition to COP's General Motions for Summary Judgment)*

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 20
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

families and children.[35]    Furthermore, a year later Loholt was reinstated to a leadership position in the scouting program.[36]

Finally, as indicated in Plaintiffs' Opposition to Defendants General Motions for Summary Judgment, filed herewith, both COP and LDSSS were mandatory reporters at the time of the abuse of these plaintiffs but they failed to report Loholt.  A mandatory reporter's failure to report may be the basis for finding that a person or entity has engaged in fraudulent concealment.  In fact, this very issue arose in *Specter, supra,* and the Court specifically noted that "where the law imposes a duty of disclosure, a failure to disclose may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct." *Id.*

### 2.  THE DOCTRINE OF FRAUDULENT CONCEALMENT PRECLUDES DEFENDANTS FROM ASSERTING THE STATUTE OF LIMITATIONS DEFENSE BECAUSE DEFENDANTS REMAINED SILENT IN THE FACE OF AN AFFIRMATIVE DUTY TO DISCLOSE.

The doctrine of fraudulent concealment also precludes COP's statute of limitations defense based upon the "special relationship" which existed between it and each of the plaintiffs.[37]  Washington courts recognize that "[i]f there is a special relationship between the parties, such that the law imposes an affirmative duty to disclose material information, silence may be sufficient to establish fraudulent concealment." *Giraud,* 102 Wn. App. at 452, *citing Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 625, 393 P.2d 287 (1964).  The special

---

[35] For example, during this time period Loholt was "assisting" the scoutmaster by driving young boys to scouting events, and went on overnight scout campouts.  Loholt also ran the "merit badge" program for the scouts.  In this role, children would go to Loholt's house to be "tested" for their scouting merit badges.  Loholt would fill out the documents necessary for boy to obtain the merit badge and would forward the form to an official at the Kent 2nd Ward who would then, apparently, forward the form to the appropriate entity.  By virtue of the fact that Loholt was forwarding the merit badge "form" to officials, COP was clearly aware that he was continuing to have unrestricted or unsupervised access to children.

[36] See *"Record of Callings" (attached to Declaration of Michael T. Pfau filed in Support of Opposition to COP's General Motions for Summary Judgment).*

[37] COP may take issue with this assertion with respect to plaintiff R.K.  However, as indicated in the Opposition to COP's General Motions for Summary Judgment, there is, at least, a question of fact as to whether COP had a special relationship with R.K.

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 21
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

relationship between defendants and each of the plaintiffs (including R.K.) imposed on COP a duty to disclose its knowledge of Loholt's pedophilia as soon as it gained that knowledge – its failure to do so triggers the doctrine of fraudulent concealment.

### 3. THE PLAINTIFFS EXERCISED DUE DILIGENCE IN ATTEMPTING TO DISCOVER THE FACTUAL BASIS FOR THEIR CLAIMS.

Whether plaintiffs exercised due diligence in attempting to discover the factual bases of their claims is a question for the jury and not a question of law for the Court to resolve on summary judgment. *See Crisman v. Crisman*, 85 Wn. App. 15, 23, 931 P.2d 163 (1997) (holding "[t]he determination of when the plaintiff discovered or through the exercise of due diligence should have discovered the factual basis for a cause of action is a factual question for the jury"). Here, the plaintiffs were young boys who were victims of childhood sexual abuse. Until discovery commenced in this case, they had no idea that the church knew that Loholt was a pedophile, the extent of COP's knowledge, or that COP had concealed that knowledge. In fact, the outward indications were that COP did not know of Loholt's abuse of children, because otherwise why would Loholt not have been subjected to a disciplinary court proceeding, why was he allowed to continuing volunteering as a scout leader even after he have been "officially" removed as the assistant scout master and, more importantly, why was he permitted to resume the role of scoutmaster.

Furthermore, COP actively concealed their knowledge from the plaintiffs – and they continue to do so through this day. D.F. went to Bishop Pettit and advised him of Loholt's abuse of T.D. and John Doe. Bishop Pettit told D.F. he would "take care of it" and "not to tell anyone" about the abuse. [38]

---

[38] Additionally, COP continues to thwart plaintiffs' ability to obtain information about the nature and extent of COP's knowledge of Loholt's abuse of children and what COP did upon receipt of that information. As the Court is aware, a motion to compel is currently pending based on witnesses failure to respond to questions during deposition relating to these issues due to improper assertions of the clergy-penitent privilege. COP's obstructive behavior on this issue continued in the deposition of Jack Loholt (which occurred on January 27, 2006). In that deposition, any questions relating COP's knowledge of Loholt's abuse of children, was objected to, by counsel

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 22
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## I.  THE PLAINTIFFS' CLAIMS ARE NOT STALE.

Defendants assert the plaintiffs' claims are "stale" and that allowing them to proceed is unfair. While defendants make this assertion, they do so by merely citing the "rule of law" pertaining to stale claims but do not explain how the rule applies to these cases. As such, this argument is simply a red herring and should not be considered by this Court.

In determining whether a claim is "stale" the Court must look at a number of factors and determine whether the (1) claims are spurious, (2) memories have faded, (3) whether a minor grievance has grown to an outlandish proportion and (4) whether essential witnesses are unavailable due to death or disappearance. *See, e.g., Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969). As discussed in detail herein, these factors do not apply to this case.

The only witness who is truly "unavailable" is Herman Allenbach. Otherwise, every witness has been deposed, including every critical Mormon Bishop and the perpetrator, Jack Loholt. All witnesses had adequate memory of the events and so testified.

The possibility of faded memories and/or lost evidence was weighed by the legislature when it revised the statute of limitations. The U.S. Supreme Court wrote in *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) that statutes of limitations "represent expedients, rather than principles." "They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay." Their validity "represents a public policy about the privilege to litigate," one formed "not through the judicial process but through legislation." *Id.* at 325 U.S. at 314. Furthermore, as discussed above in the section on "due process," if memories have faded or evidence is lost, such factors tend to weigh against a plaintiff and, thus, should not be a basis to dismiss their action on summary judgment.

---

for Loholt and by counsel for COP, on the basis of clergy-penitent privilege and in all instances, the deponent was instructed not to answer the question. As a result of the assertions of privilege at Loholt's deposition, plaintiffs will be filing an additional motion to compel in the coming weeks.

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 23
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Finally, are COP and LDSSS really asserting that these claims arising out of the repeated and heinous acts of childhood sexual abuse are "spurious" or that they are "minor grievances" which have grown to "outlandish proportions?" For the reasons discussed in this opposition and, in the opposition to COP's General Motions for Summary Judgment, such assertions cannot be taken seriously.

RESPECTFULLY SUBMITTED this 30th day of January, 2006.

GORDON, THOMAS, HONEYWELL,                LAW OFFICES OF TIMOTHY D. KOSNOFF
MALANCA, PETERSON & DAHEIM LLP


By / s / Michael T. Pfau                            By / s / Timothy D. Kosnoff
Michael T. Pfau, WSBA No. 24649         Timothy D. Kosnoff, WSBA No. 16586
mpfau@gth-law.com                                timkosnoff@comcast.net
Co-Counsel for Plaintiffs                          Co-Counsel for Plaintiffs

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 24
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

1

## CERTIFICATE OF ELECTRONIC FILING

2       I hereby certify that on January 30, 2006, I electronically filed the foregoing

3  **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY**

4  **JUDGMENT RE: STATUTE OF LIMITATIONS** with the Clerk of the Court using the

5  CM/ECF system which will send notification of such filing to the following:

6       Thomas D. Frey and
        Marcus Nash
7       STAFFORD FREY COOPER
        601 Union Street, Suite 3100
8       Seattle, WA 98101-1374

9
        DATED this 30th day of January, 2006.
10

11
                                    /s/Teri A. Watson
12                                  Teri A. Watson
                                    Assistant to Michael T. Pfau,
13

14

15

16

17

18

19

20

21

22

23

24

25

26

OPP. TO MTN FOR S.J. RE: STATUTE OF LIMITATIONS - 25
**(C04-2338 RSM)**
[157978 v20.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575