1

2

3                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
4                              AT SEATTLE

5
KENNETH FLEMING, JOHN DOE, R.K., and
6  T.D.,

7                        Plaintiffs,                    CASE NO. C04-2338RSM

8              v.                                       ORDER GRANTING IN PART
                                                        PLAINTIFFS' MOTION TO COMPEL
9  THE CORPORATION OF THE PRESIDENT
   OF THE CHURCH OF JESUS CHRIST OF
10 LATTER-DAY SAINTS, *et al.*,

11                       Defendants.

12

13                          **I. INTRODUCTION**

14         This matter is now before the Court for consideration of plaintiffs' motion to compel. (Dkt # 61).

15 Plaintiffs argue that Bishops Borland and Coleman cannot assert the clergy-penitent privilege with regard

16 to their conversations with Jack LoHolt. Plaintiffs argue that because the Bishops each confronted

17 LoHolt with accusations of sexual misconduct, their act of confrontation negates the "confessional"

18 nature of LoHolt's statements, thereby placing the conversation outside of the clergy-penitent privilege.

19 Plaintiffs also argue that because the Bishops do not know whether LoHolt kept the conversations

20 confidential, that necessarily means that those conversations are *not* confidential. Lastly, plaintiffs argue

21 that because LoHolt denied to Bishop Coleman on at least one occasion that he had committed acts of

22 sexual misconduct, his statements cannot be considered "confessions" and therefore the clergy-penitent

23 privilege does not apply.

24         Defendant argues that the communications between Bishops Borland and Coleman and Jack

25 LoHolt are subject to the clergy-penitent privilege because the Bishops are clergy members, LoHolt made

26 statements amounting to a "confession" under the statute, and these communications were confidential,

27 ORDER GRANTING DEFENDANT'S
   MOTION TO DISMISS FOR LACK OF
28 JURISDICTION - 1

as required by LDS Church doctrine. Defendant further argues that the only party able to waive the privilege is LoHolt, and he has not done so. The conversations between the Bishops and LoHolt therefore remain subject to the clergy-penitent privilege.

For the reasons set forth below, the Court agrees with defendants in part, and GRANTS plaintiffs' motion IN PART and DENIES plaintiffs' motion IN PART.

## II. DISCUSSION

### A. Background

Plaintiffs bring this action against defendant, Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ("LDS Church"), claiming sexual abuse at the hands of an LDS Church Boy Scout Leader, Jack LoHolt. In litigating these claims, plaintiffs have attempted to take depositions of LDS Church Bishops Randall Borland and Philip Coleman, who have knowledge about LoHolt's alleged abuse. At the Bishops' depositions, defense counsel instructed the Bishops not to answer questions that might violate the clergy-penitent privilege between the Bishops and those who confided in them. The Bishops invoked the clergy-penitent privilege with regard to several questions. Plaintiffs brought this motion to compel Bishops Borland and Coleman to reappear at deposition, at defendant's expense, and to respond to specific and enumerated deposition questions.

### B. Disputed Questions at Depositions

At his deposition, Bishop Borland claimed the clergy-penitent privilege and refused to answer the following questions:

(1) Whether he had received a complaint or report from anybody that Scout Master Jack LoHolt had engaged in sexually inappropriate activity during the time he was Bishop;

(2) What he did upon receiving a complaint; and what he said to LoHolt concerning the complaint;

(3) Whether he had ever investigated a report of child sexual abuse;

(4) Why he released LoHolt from service in the LDS Church;

(5) Whether he had ever spoken to his stake president (his superior) regarding a concern about a scoutmaster; and

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 2

(6) Whether he would be concerned if LoHolt returned to a position in the Church ward working with youth?

At his deposition, Bishop Coleman claimed the clergy-penitent privilege and refused to answer the following questions:

(1) From whom did he learn that LoHolt was allegedly engaging in sexually inappropriate activity; and

(2) Various questions regarding a conversation between himself and LoHolt.

As a threshold matter, the Court notes that several of the issues initially in dispute appear to have subsequently been resolved by the parties. Since Bishop Borland's deposition, Richard Pettit, one person who spoke to Borland regarding Jack LoHolt's sexual abuse, has affirmatively waived the clergy-penitent privilege and released Borland to testify about that conversation. Further, the parties have agreed to release the names of Jack LoHolt's sexual abuse victims under the terms of a confidentiality agreement.

Consequently, the Court finds that certain answers to several of plaintiffs' deposition questions no longer implicate privileged communications. Because Mr. Pettit's communications are no longer subject to the clergy-penitent privilege, Bishop Borland must answer any of the deposition questions that he initially refused to answer solely on the basis of Mr. Pettit's formerly privileged communications. However, as discussed below in section B, the clergy-penitent privilege may continue to apply to any of the questions that touch upon communications with persons other than Mr. Pettit.

Finally, the parties appear to be confused about whether or not Bishop Coleman is still claiming the clergy-penitent privilege with regard to the name of the person from whom he first learned that Jack LoHolt was allegedly engaging in sexually inappropriate activity. Defense counsel believes that the parties' agreement to disclose the names of non-party victims covers this question. Plaintiffs' counsel believes that defense counsel has not agreed to reveal the name. Accordingly, the Court directs the parties to clarify whether or not this deposition question is still an issue.

## C. Clergy-Penitent Privilege

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 3

1    The Court now turns to the remaining issues raised during the depositions. Both Borland and

2    Coleman claimed the clergy-penitent privilege with regard to the contents of their conversations with

3    Jack LoHolt. Succinctly stated, the issue at hand is whether statements made to a clergy member are

4    privileged when they stem from a clergy member's confrontation with another church leader regarding

5    that leader's alleged sexual misconduct.

6        The clergy-penitent privilege, as codified in RCW 5.60.060(3), states:

7

8        A member of the clergy or a priest shall not, without the consent of a
         person making the confession, be examined as to any confession made
9        to him or her in his or her professional character, in the course of
         discipline enjoined by the church to which he or she belongs.

10

11   RCW 5.60.060(3). For the privilege to apply, communications between the penitent and clergy must be:

12   (1) made to an ordained member of the clergy; (2) a confession in the course of discipline enjoined by the

13   church; and (3) confidential. *State v. Martin*, 137 Wn. 2d 774, 791 (1999). The definition of "confession"

14   referred to in RCW 5.60.060(3) is not set forth by statute. Instead, the word "confession" is defined by

15   the church to which the particular clergy member belongs. *Id.* at 787. The courts prefer a broad

16   interpretation of "confession" so as to avoid the discriminatory application of the statute based on

17   differing judicial perceptions of a given church's practices or religious doctrines. *Id.* at 789. The privilege

18   is held by the penitent and only the penitent can waive it. *Id.* at 791. However, the privilege may be

19   vitiated by the presence of a third person during the penitent-clergy communication, unless the third

20   person is necessary for the communication or the third person is another member of the clergy. *Id.* at 787.

21       Plaintiffs do not appear to dispute that both Bishops Borland and Coleman are ordained members

22   of the LDS Church. Nor does there appear to be any dispute as to whether LDS Church clergy can

23   receive confessions in the course of discipline enjoined by the church that are protected by the clergy-

24   penitent privilege. However, the parties do dispute whether the conversations between Jack LoHolt and

25   the Bishops constitute "confessions" within the statutory protection of the clergy-penitent privilege.

26   Thus, the Court must first examine the definition of confession within the LDS Church.

27   ORDER GRANTING DEFENDANT'S
     MOTION TO DISMISS FOR LACK OF
28   JURISDICTION - 4

1    In asserting the clergy-penitent privilege at deposition, the Bishops made clear that the

2  conversations they had with Jack LoHolt are considered to be "confessions" under LDS Church doctrine.

3  Though the LDS Church does not explicitly define the term "confession" in the church's handbook,

4  Washington courts have consistently held that "the determination of the definition of 'confession'... is to

5  be made by the church of the clergy member, and the religious entity, and not the courts, should decide

6  what types of communications constitute confessions within the meaning of a particular religion." *Doe v.*

7  *Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 122 Wn. App. 556, 564

8  (2004) (internal quotations omitted).  Thus, this Court must accept the Bishops' assertions that their

9  conversations with Jack LoHolt amount to "confessions," and therefore fall within the meaning of

10  Washington's clergy-penitent statute.

11    This interpretation of "confession" is consistent with decisions from other courts examining the

12  clergy-penitent privilege. For example, the Utah Supreme Court has held that under LDS Church doctrine

13  the communications between clergy and church members during confidential counseling are protected by

14  the clergy-penitent privilege. *Scott v. Hammock*, 870 P.2d 947, 949 (Utah 1994). The Utah Supreme

15  Court explained, "to fulfill their responsibilities, clergy must be able to counsel and admonish with

16  confidentiality if they are to show the transgressor the error of his way; to teach him the right way; to

17  point the way to faith, hope, and consolation and perchance to lead him to seek atonement." *Id.* at 955

18  (internal quotations and citations omitted).

19    Contrary to plaintiffs' suggestions, it is immaterial that Jack LoHolt did not "seek out" Borland

20  and Coleman to make his confession. Indeed, Washington courts have often determined that

21  "confessions" are privileged even where the clergy member initiated the conversation. *State v. Glenn*, 115

22  Wn. App. 540 (2003) (finding confession was privileged when clergyman sought out and initiated

23  conversation with the defendant regarding misconduct); *Doe*, 122 Wn. App. at 564 (finding that when

24  clergy members confronted defendant in a church-initiated disciplinary hearing, report from hearing was

25

26

27  ORDER GRANTING DEFENDANT'S
    MOTION TO DISMISS FOR LACK OF
28  JURISDICTION - 5

privileged). Therefore, the fact that the Bishops confronted Jack LoHolt with allegations of sexual misconduct is irrelevant.

With regard to the statute's confidentiality requirement, the Bishops clearly assert that the tenets of their faith require them to remain silent regarding their conversations with Jack LoHolt. Further, the LDS Church Handbook explicitly states that "leaders must keep confidences about matters discussed when interviewing and counseling." Indeed, the Bishops have stated that they continue to maintain the confidentiality of those conversations. Accordingly, the Court finds that the conversations between the Bishops and Jack LoHolt were confidential within the meaning of the statute.

Applying the clergy-penitent privilege to the conversations between the Bishops and Jack LoHolt further promotes the overall policy rationale behind the privilege. Courts examining this privilege have noted:

> The clergy-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return....[T]he privilege is a legislative response to the urgent need of people to confide in, without fear of reprisal, those entrusted with the pressing task of offering spiritual guidance so that harmony with one's self and others can be realized. Thus, the privilege exists because of a belief that people should be encouraged to discuss their flawed acts with individuals who, within the spiritual traditions and doctrines of their faith, are qualified and capable of encouraging the communicants to abandon and perhaps make amends for wrongful and destructive behavior.

*Waters v. O'Connor*, 103 P.3d 292, 296 (Ariz. Ct. App. 2005) (internal citations and quotations omitted). When a member of the clergy confronts a parishioner with concerns of transgressions against the church, the ensuing interview provides an opportunity for open dialogue and guidance. The courts' recognition of the clergy-penitent privilege facilitates these relationships. For the above reasons, this Court finds that the conversations between the Bishops and Jack LoHolt are subject to the clergy-penitent privileged.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 6

Finally, the Court notes that the privilege does not appear to have been vitiated by the presence of third parties. There is no evidence in the record that a third party was present during either of the Bishops' conversations with Jack LoHolt. In addition, Jack LoHolt himself has not waived the privilege. Therefore, the privilege remains intact.

Lastly, plaintiffs request that the Court order defendant to bear the cost of reappearing to answer the remaining deposition questions. Defendant has invoked the clergy-penitent privilege in good-faith and the privilege has indeed been applicable to some of the deposition questions at issue. Accordingly, the Court denies plaintiffs' request that defendant bear the cost of reappearing.

### III. CONCLUSION

Based on the foregoing, the Court GRANTS plaintiffs' motion to compel with regard to any conversation with Richard Pettit; the Court DENIES plaintiffs' motion to compel with regard to deposition questions that require answers that will breach the clergy-penitent privilege; the Court DENIES plaintiffs' request that defendant pay the costs associated with the Bishops return appearance to answer further deposition questions; and the Court DIRECTS the parties to conduct further discussions regarding whether or not Bishop Coleman will divulge the name of the party from whom he first learned of Jack LoHolt's alleged sexual misconduct.

DATED this 2nd day of February, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 7