1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, et al., | NO. 04-2338 RSM |
| Plaintiffs, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR GENERAL MOTIONS FOR SUMMARY JUDGMENT** |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, et al., | |
| Defendants. | **Note on Motion Calendar: Friday, February 3, 2006** |

Defendants submit the following reply brief in support of their general motions for summary judgment.

**1.    Dismissal of Claims for Negligent Infliction of Emotional Distress**

Plaintiffs did not oppose defendants' motion to dismiss plaintiffs' claims for negligent infliction of emotional distress.  Thus, these claims are properly dismissed.

**2.    Dismissal of Claims Based on Violation of RCW 26.44**

Plaintiffs argue that they have a civil cause of action for defendants' failure to report sexual abuse under RCW 26.44.030, or alternatively, that failure to report under RCW 26.44.030 constitutes the breach of duty in a common law negligence claim.  Plaintiffs' argument, under either scenario, is the same – that the Legislature intended a civil cause of action based upon an alleged violation of the reporting statute.  Contrary to plaintiffs' argument, a civil cause of action

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 1

04-2338 RSM
7566-025226  66036

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Dockets.Justia.com

based on an alleged violation of RCW 26.44.030 has never been endorsed by the Washington courts. Instead, in <u>C.J.C. v. Corporation of the Catholic Bishop of Yakima</u>, 138 Wn.2d 699, 985 P.2d 262 (1999), the court identified the particular duty that churches have when sued for the sexual abuse of one their agents. After an extensive review of the relevant statutes, case law, and legislative history, <u>CJC</u> established the following elements that give rise to a duty by the church: (a) plaintiffs had a special relationship with the defendant church; (b) the alleged abuser was an agent of the defendant church' (c) the defendant church knew or should have known of a risk posed by the alleged abuser; and (d) the defendant church placed the alleged abuser in association with plaintiffs. 139 Wn. 2d at 724.[1]

<u>C.J.C.</u> only discussed the reporting statute, RCW 26.44.030, as support for its position that defendant churches possessed the duty set forth above. The Court stated:

> Our decision not to foreclose the imposition of a duty as a matter of law under these facts is supported by the strong public policy in favor of protecting children against acts of sexual abuse. Current law makes it a criminal offense for certain professionals to fail to notify the proper authorities when there is reason to suspect childhood sexual abuse. *See* RCW 26.44.030 (medical practitioners . . . are required to report sexual abuse to the proper authorities); *see also*, RCW 26.44.080 (failure to report is a gross misdemeanor).

In sum, <u>CJC</u> cited RCW 26.44.030 as a basis for imposing a duty on churches when the above-identified elements are proven. <u>CJC</u> never expressed or implied that RCW 26.44.030 either created a civil cause of action, or served as a basis for a duty in a common law negligence claim. By delineating the duty that applies to church defendants, and citing RCW 26.44.030 as imposing only criminal liability, <u>CJC</u> effectively rejected plaintiffs' argument in this case.

The importance of <u>CJC</u> is that it limits the identity of plaintiffs who may sue a defendant

---

[1]  <u>CJC</u> balanced and resolved divergent views and interests as to when a church defendant can be liable for the acts of its agents. Certain defendants had argued that the sexual abuse at issue had occurred off church property, "off the clock," and on the private or personal time of the alleged abuser. <u>CJC</u>, 138 Wn.2d at 722. Other defendants argued, and <u>CJC</u> agreed, that defendants are not liable on the doctrine of respondeat superior for the sexual offenses committed by agents. CJC 138 Wn.2d at 718-19. In considering the competing interests, CJC fashioned an actionable duty, set forth above, that it considered fair to both sides.

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

for acts of sexual abuse. As set forth above, the (a) defendant must have a special relationship to the plaintiff, (b) the defendant must know or have reason to know about the risk posed by the alleged abuser, and (c) the defendant must have placed plaintiff into association with the alleged abuser. What plaintiffs are attempting to do, by arguing that RCW 26.44.030 creates a civil cause of action or an actionable duty, is supplant the CJC test with a test that contains only one element: did defendant know or have reason to know of the risk. If violation of RCW 26.44.030 constitutes either a private right of action or an actionable duty, anyone who suffered sexual abuse after that date that defendant allegedly learned of abuse would be entitled to sue the defendant. In this case, anyone in the world who was sexually abused by Loholt after 1972, when the church is alleged to have first received notice of the risk, could sue the defendant church by asserting a claim based on a violation of RCW 26.44.030. CJC rejected such open-ended liability when it balanced the competing interests and fashioned the test that it did.

Plaintiffs cite Tyner v. DSHS, 141 Wn.2d 68, 1 P.3d 1148 (2000), a case which recognizes an implied cause of action against the government for negligent investigation of child abuse claims. Tyner is distinguishable on the following grounds. First, Tyner interpreted RCW 26.44.050. When the defendant in Tyner compared RCW 26.44.030 and RCW 26.44.050, the Court summarily rejected the comparison, stating:

> The State's reliance on *Warner* is misplaced. First, *Warner* deals with a different statutory provision, the duty to report child abuse, not the duty to investigate child allegations once they have been reported.

141 Wn.2d at 60 (citing State v. Warner, 125 Wn.2d 876, 889 P.2d 479 (1995)). Second, Tyner dealt with a statute in which the Legislature set forth a duty, but no consequence for violating it. Quoting Bender v. Seattle, 99 Wn.2d 582, 590, 664 P.2d 492 (1983), Tyner stated: "Accountability through tort liability . . . may be the only way of assuring a certain standard of performance from governmental entities." Third, Tyner relied on a line of cases from the Washington appellate courts that had already recognized an implied cause of action for negligent

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 3

04-2338 RSM
7566-025226  66036

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

investigation. <u>Tyner</u>, 141 Wn.2d at 81. It was under these limited circumstances that an implied civil cause of action was recognized to exist.

Here, the Legislature imposed a criminal sanction for violation of RCW 26.44.030 potentially involving the loss of liberty, reputation, and professional credential. See RCW 26.44.080. Unlike in <u>Tyner</u>, where there was a statutory duty but no recourse against anyone who violated it, the Legislature ensured compliance with RCW 26.44.030 by selecting a criminal sanction. While the Legislature could have created by criminal and civil remedies, since it certainly knows how, it created only criminal remedies. There is no basis for this court to conclude that the Legislature intended anything other than what it clearly expressed in enacting the statute at issue.[2]

### 3. **Dismissal of R.K.'s Claims for Lack of Duty**

#### a. **COP Owes No Duty to R.K.**

Defendants do not owe R.K. a duty of care. R.K. claims that he was sexually molested by Jack Loholt on six occasions between ages six and twelve. But R.K.'s connection to defendants is clearly insufficient to create a duty under Washington law. Indeed, it is undisputed that: (1) at the time of the abuse R.K. was not a member of the LDS Church or part of the Church's scout troop (*R.K. Dep. at 13:22-25*); (2) that he met Loholt because they were neighbors and not in connection with any Church activity or function (*R.K. Dep. at 75:11-14, 32:2-10*); (3) that the abuse occurred in a field near Loholt's home and in Loholt's apartment not on Church property (*R.K. Dep. at 18:13-18, 75:15-17*); and (4) that the abuse was in no way connected with a Church function or activity. (*R.K. Dep. at 32:2-10*). Under these facts, R.K.'s claims cannot withstand summary judgment.

---

[2]  Plaintiffs also argue that violation of RCW 26.44.030 can be considered some evidence of negligence. This argument is unavailing because <u>CJC</u> already decided that knowledge of this risk posed by an abuser is a necessary element of the negligence claim against a church. Again, this is an attempt by plaintiff to circumvent <u>CJC</u> by eliminating every element established by the Court other than knowledge of the risk.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 4

04-2338 RSM
7566-025226  66036

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Plaintiffs mistakenly allege that <u>Funkhouser v. Wilson</u>, 89 Wn. App. 644 (1998), provides the standard for determining whether a religious institution owes a duty of care. To the contrary, in <u>CJC v. Corp. of the Catholic Bishop</u>, 138 Wn.2d 699, 985 P.2d 262 (1999), the court specifically reviewed the court of appeals' analysis in <u>Funkhouser</u> regarding duty of care and concluded that <u>Funkhouser</u> reached the right outcome but used the wrong legal analysis in so doing. 138 Wn.2d 699, 723 (Wash. 1999). Accordingly, <u>CJC</u> – not <u>Funkhouser</u> – governs this issue.[3] As set forth above, <u>CJC</u> recognized that the conjunction of the following four factors is necessary for a duty of care to exist: (1) the special relationship between the Church and alleged abuser; (2) the special relationship between the Church and the plaintiff; (3) knowledge of the risk of harm possessed by the Church; and (4) a causal connection between the abuser's position in the Church and the resulting harm. <u>Id.</u> at 724. Making all inferences in Plaintiffs' favor, R.K. cannot satisfy the second and fourth prongs of the C.J.C. test.

### b.    No Special Relationship Existed Between R.K. and Defendants.

No special relationship existed between R.K. and the Church because R.K. was not a Church member and did not come into contact with Loholt through any Church connection. In an attempt to establish a special relationship, plaintiffs once again cite <u>Funkhouser's</u> overruled reasoning to claim that a special relationship exists between nonmembers who attend a congregation and the church.[4] In addition to relying solely on overruled case law, plaintiffs fail to note that for a special relationship to exist under <u>Funkhouser</u> the victim must *not only* "regularly attend services" but also have the tortfeasor placed in a "position of responsibility"

---

[3]  Plaintiffs contend <u>Funkhouser</u> stands for the proposition that if a special relationship exists between either (1) a defendant and a victim or (2) a defendant and the tortfeasor, then a duty of care exists. The amazing breadth of this standard clearly has no acceptance in Washington law and is rejected by <u>C.J.C.</u> <u>Funkhouser</u> embraces no such principle and instead articulates a higher bar for duty than <u>C.J.C.</u> For a duty to exist, <u>Funkhouser</u> required that the abuse be related to the "tasks, premises, or instrumentalities entrusted to an employee" in compliance with RESTATEMENT (SECOND) OF TORTS § 315 and <u>Niece v. Elmview Group Home</u>, 131 Wn.2d 39, 48 (1997). <u>Funkhouser v. Wilson</u>, 89 Wn. App. 644, 653-654 (1998). R.K. has readily admitted that his abuse has no connection to Loholt's tasks in the Church, Church property or Church instrumentalities.
[4]  As noted above, <u>CJC</u> rejected the <u>Funkhouser</u> reasoning on this point. <u>C.J.C.</u>, 138 Wn.2d at 723.

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

over him.  Funkhouser, 89 Wn. App. 644, 659 (Wash. Ct. App. 1998).  It is undisputed that Loholt was not placed in a position of authority over R.K.  Thus there is no legal basis under either CJC or Funkhouser for finding a special relationship between the Church and R.K.  Even assuming, *arguendo*, that regular attendance of church meetings alone, without actually being a member of the congregation can, in some circumstances, create a special relationship, no such relationship was created here.  In his deposition, R.K. testified that the only church he attended during the time period of the abuse was St. Anthony's Catholic Church.  *R.K. Dep. at 28:6-20.* R.K. is now attempting to contradict his deposition by way of a newly-minted declaration listing the alleged LDS Church activities and functions he attended during his childhood and adolescence years.  R.K. failed to mention any of this alleged involvement with the Church in response to direct questions during deposition.  He cannot now contradict his deposition testimony by way of a contrary declaration. *See, e.g.*, Hambleton Bros. Lumber Co. v. Balkin Enters., 397 F.3d 1217, 1225 (9th Cir. 2005) (noting that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (quotations and citation omitted).

Further, the R.K. declaration fails to provide any time frame for R.K.'s alleged involvement in the specified Church activities.  Other than allegedly church-sponsored softball games, R.K. does not claim that any of this involvement occurred around the same time period of his abuse.  The most that can be said for R.K.'s declaration is that it generally alleges that over a period of many years he attended some activities that he believes were church sponsored and had been on church property a few times.[5]  This is a far cry from alleging regular attendance around the time of his abuse.  R.K. has an obligation to provide specific factual evidence to support his

---

[5]  In addition, by R.K.'s own admission, most of these events were Allenbach family activities. R.K. now characterizes these events as church activities because they took place on the Allenbach property, which he claims was often used by the Church and because the Allenbach family often instructed him in church doctrine and encouraged him to become a church member. R.K. clearly lacks personal knowledge in regard to whether the Church directed or controlled these Allenbach family activities.  Such speculative and self serving statements do not create an issue of material fact.  *See, e.g.,* Fed. Trade Commn v. Publg Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997); Salas v. Carpenter, 980 F.2d 304-305 (5th Cir. 1992).

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 6

04-2338 RSM
7566-025226  66036

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

claim of a special relationship.  Fed. R. Civ. P. 56(e).  The general allegations in his declaration are insufficient.

### c. Plaintiffs Cannot Show a Causal Connection.

Further, even assuming, *arguendo*, plaintiffs can show that a special relationship existed between the Church and R.K., R.K.'s claims still must fail because there is no evidence of a causal connection between Loholt's position as a scout leader in the Church and R.K.'s abuse. Plaintiffs allege that by allowing Loholt to serve in scouting, they "held Loholt out to the world as a person of moral worth" and are therefore responsible for his wrongs, regardless of church connection.  *Mem. in Opp. at p.18.*  CJC specifically rejects such a broad standard.  CJC, 138 Wn.2d at 727 ("We caution that our holding is limited. We do not suggest that a principal is an insurer against all harm occasioned by its agents simply because the work situation fortuitously provides an opportunity to perpetrate the harm.")  Instead, CJC holds that a causal connection exists only where the defendant "has brought into contact or association with the [victim] a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct…." Id. at 723.  Restated, "the focus is not on where or when the harm occurred, but on whether the Church or its individual officials negligently caused the harm by placing its agent into association with the plaintiffs when the risk was, or should have been, known." Id. at 724.  R.K. admits that defendants did not place R.K. into association with Loholt.  *R.K. Dep. at 75:11-14, 32:2-10.*  Accordingly, there is no evidence of a causal connection between R.K.'s abuse and Loholt's position in the Church.  Thus, defendants owed no duty of care to R.K. and are entitled to judgment as a matter of law.

### 4. Dismissal of Civil Conspiracy Claims

### a. Plaintiffs have presented no evidence in support of their conspiracy claim.

In their opposition memorandum, plaintiffs allege that "members of COP conspired together to avoid having one of their own, Jack Loholt, charged and convicted of child abuse." *Mem. in Opp. at p.11.*  But plaintiffs present no evidence that any conspiratorial agreement was

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101-1374
TEL 206.623.9900  FAX 206.624.6885

ever entered.[6]  Indeed, plaintiffs fail to even identify the COP agents who allegedly participated in the conspiracy or the terms of alleged agreement.  To preserve their claim, plaintiffs must present evidence that a reasonable jury could find to be clear and convincing in support of each element of conspiracy.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Kaelin v. Globe Communs. Corp., 162 F.3d 1036, 1039 (9th Cir. 1998); Inge v. Rock Fin. Corp., 388 F.3d 930, 938 (6th Cir. 2004).  They have not done so.

> ### b.  Plaintiffs' allegation of an agreement between agents of the same corporation is not sufficient grounds to bring a civil conspiracy claim.

Plaintiffs' vaguely allege that a conspiracy was entered between "members of COP" acting on COP's behalf to protect COP's "public image."  *Mem. in Opp. at p.11.*  As a matter of law, plaintiffs' allegations are not sufficient to state a civil conspiracy claim.  Agreements between agents of the same corporation who are acting on the corporations behalf cannot qualify as a civil conspiracy under the widely accepted intracorporate conspiracy doctrine.  *See, e.g.*, Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 509-510 (6th Cir. 1991) ("It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.") (quoting Nelson Radio & Supply Co., Inc. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1953)).  In short, plaintiffs have not even stated a valid civil conspiracy claim.

---

[6]  Plaintiffs do not cite a single passage from the factual record of this case in support of their conspiracy claim.  In a footnote, plaintiffs vaguely refer to the deposition of D.F. without providing a reference to the deposition passage.  The court is "not required to comb the record to find some reason to deny a motion for summary judgment." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir.2001).  Assuming, arguendo, that plaintiffs' characterization of Bishop Borland's statements is accurate, it is still not sufficient evidence to satisfy the elements of conspiracy.  A mere instruction by one COP agent to a victim of abuse that he not speak with others about the event is not evidence of a conspiracy.  It does not suggest that there was a conspiratorial agreement or that more than one person was involved.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 8

04-2338 RSM
7566-025226  66036

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374

TEL 206.623.9900  FAX 206.624.6885

1

### c. <u>Mere assertion of "Cover Up" is not sufficient to support a conspiracy claim.</u>

2

3       In a final attempt to preserve their civil conspiracy claim, plaintiffs inaccurately allege

4   that COP has prevented meaningful discovery by improperly asserting the privilege on numerous

5   occasions.  As now has been recognized by the Court's Order dated February 2, 2006, COP did

    not improperly claim privilege.  Plaintiff is not entitled to any discovery beyond that which COP

6   had already agreed to – Bishop Borland's testimony regarding his discussion with Richard Pettit

7   about the abuse of Pettit's son and names of certain victims revealed to Bishop Coleman.  Pettit

8   has already testified about his discussion with Borland and the discussion is bereft of any facts

9   that would provide a factual basis for a conspiracy claim.  *Pettit. Dep. at 31:4-34:12.*  Likewise,

    victims' names do nothing to promote plaintiffs' conspiracy theory.

10

### 5.   <u>Application of Tegman to Plaintiff's Claims</u>

11

### a.   <u>Tegman applies to negligent supervision claims</u>

12      Plaintiffs argue that <u>Tegman v. Accident and Medical Investigations</u>, 150 Wn.2d 102, 75

13  P.3d 497 (2003), does not apply when the negligence of the negligent tortfeasor allowed the

    intentional tortfeasor to act.  Plaintiffs support their argument by citing <u>Welch v. Southland</u>

14  <u>Corp.</u>, 134 Wn.2d 629, 626-37, 952 P.2d 162 (1998).  In <u>Welch</u>, the court held that fault is

15  apportioned among negligent tortfeasors only under RCW 4.22.070(1), and is not also

16  apportioned to intentional tortfeasors.  It is true that <u>Tegman</u> did not overrule <u>Welch</u>; instead,

17  <u>Tegman</u> fashioned a new procedure for cases involving both intentional and negligent

18  tortfeasors.  Under <u>Tegman</u>, the trier of fact must first segregate damages caused by intentional

19  tortfeasors from damages caused by the negligent tortfeasors.  After this segregation, the trier of

    fact must then apportion damages attributed to the negligent tortfeasors according to their

20  percentage of fault.  The court stated:

21

22          The damages due to intentional acts must be segregated from damages caused by fault-
            based acts or omissions because RCW 4.22.070(1)(b) addresses only liability for *at fault*
            entities.  The liability of intentional tortfeasors for damages caused by their intentional
23          acts or omissions is not determined under RCW 4.22.070(1).  Once the damages due to

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1
2

intentional acts or omissions are segregated, then, as to all remaining damages, i.e., those damages resulting from fault-based acts or omissions, all the negligent defendants causing those damages are jointly and severally liable.

3  Tegman, 150 Wn.2d at 115.

4
5
6
7
8

Plaintiffs also support their argument by citing Justice Chambers' dissent in Tegman. The Tegman majority makes clear, at numerous points in its decision, that it has a different formulation of the law than the dissent. *See*, e.g., 150 Wn.2d at 115. What plaintiffs' argument lacks is any citation to authority indicating that the Tegman majority opinion has been somehow overruled or undermined by subsequent authority from the State's highest court. No such authority exists.

9
10
11
12
13

Plaintiffs' attempt to create an exception to Tegman for negligent supervision claims is contradicted by the law. No such exception was allowed or even hinted at in Tegman. No such exception appears in RCW 4.22.070 or the case law interpreting it. Instead, the purpose of RCW 4.22.070, and the Court's interpretation of it in Tegman, is to protect defendants from bearing the fault of other tortfeasors, whether intentional and negligent. In Tegman, the Court summarized:

14
15
16
17
18

The legislative scheme also serves to provide some relief to negligent defendants whose conduct is not as egregious as the intentional tortfeasor, nor the cause of the intentionally based damages. This serves the purpose of the tort reform act to achieve "a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance." Laws of 1986, ch. 305, § 100. Specifically, where negligent defendants' liability is for their negligent acts, but not intentional acts, this will tend to reduce costs due to increased exposure to awards, increased costs of insurance coverage and increased costs of professional liability insurance, as designed by the legislature. *See id.*

19
20
21
22
23

150 Wn.2d at 119. While Washington courts have not specifically addressed the matter of negligent supervision claims, other state courts addressing similar issues have rejected an interpretation of their laws that would make the negligent tortfeasor liable for the intentional tortfeasor's acts. Bhinder v. Sun Co., 246 Conn. 223, 717 A.2d 202 (1998) (court requires apportionment between intentional and negligent tortfeasors as a matter of common sense on the ground that the negligent party should not be responsible for the conduct of an intentional actor,

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 10

04-2338 RSM
7566-025226  66036

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

whose deviation from the standard of care is clearly greater); <u>Roman Catholic Diocese of Covington v. Secter</u>, 966 S.W.2d 286 (Ky. Ct. App. 1998) (interpreting an apportionment statute covering tort actions involving fault to allow apportionment between a school that negligently hired an abuser and the intentional tortfeasor); <u>Reichert v. Atler</u>, 117 N.M. 623, 875 P.2d 379 (1994) (holding that a tavern owner's negligent failure to protect patrons must be apportioned from harm caused by intentional tortfeasor).   In <u>Slack v. Farmers Insurance Exchange</u>, 5 P.3d 280, 2000 CJ C.A.R. 3458 (Colo.  2000), the Court rejected joint and several liability between intentional and negligent tortfeasors, explaining its reasoning as follows:

> In our estimation, the public policy rationale for apportioning the loss commensurate with wrongdoing is even more compelling when an intentional tortfeasor contributes to the injury.  Under the terms of the statute, a negligent actor is only responsible for his contribution to an injury, irrespective of whether the other tortfeasor accidentally or purposefully injured the victim.  To hold otherwise would lead to the anomaly that a negligent tortfeasor would bear the full risk of injury if the other tortfeasor purposefully injured the victim, but only his portion of the risk if the other actor were negligent.  If any disproportionate responsibility were to be assessed, it would more logically fall upon the intentional tortfeasor—not the negligent one.

5 P.3d at 287.

### b.   COP is not liable for acts of intentional tortfeasor before 1972

Plaintiffs argue that COP bears the burden to segregate pre-1972 damages, and if such damages are indivisible, COP is liable for all plaintiffs' damages.  This assertion ignores the basic element of causation, which must be established in a negligence claim.  Plaintiffs must allege and prove duty, breach, causation and damages to recover in a negligence tort claim. <u>Bowman v. Two</u>, 104 Wn.2d 181, 186, 704 P.2d 140 (1985).  Causation requires the plaintiffs provide evidence that but for the claimed negligence, plaintiffs' harm would not have occurred. <u>Miles v. Child Protective Services</u>, 102 Wn. App. 142, 160, 6 P.3d 112 (2000) (*citing* <u>Hartley v. State</u>, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)).  Here, it is indisputable that any harm suffered by plaintiffs John Doe and R.K prior to February 1972 would have occurred regardless of COP's actions after that date.  Thus, plaintiffs cannot prove pre-1972 damages were proximately caused by COP's post-1972 alleged negligence, and the pre-1972 claims are properly dismissed.

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

Plaintiffs' attempt to impose liability for Loholt's intentional actions prior to 1972 is contrary to the law in this state after tort reform. In <u>Tegman</u>, the court held that a negligent party is only liable for his or her own proportionate share of fault and no more. <u>Tegman,</u> 150 Wn.2d at 109 n. 4. (*citing* <u>Kottler v. State</u>, 136 Wn.2d 437, 445, 963 P.2d 834 (1998) (*quoting* <u>Washburn v. Beatt Equip. Co.</u>, 120 Wn.2d 246, 294 840 P.2d 860 (1992)). Further, the court in <u>Tegman</u> held negligent and intentional tortfeasors cannot, as a matter of law, be held jointly and severally liable for damages caused by an intentional tort. <u>Id.</u> at 109-110. Plaintiffs contend that they are not seeking to hold COP "jointly and severally" liable with Loholt; but in essence that is what they are doing by arguing that COP is liable for all damages on the grounds of indivisibility. <u>Tegman</u> rejected this concept of shared liability for indivisible damages caused by intentional and negligent tortfeasors when it stated:

> Segregating fault-based damages from those caused by intentional acts or omissions should pose no great difficulty because similar allocations are already part of the statutory scheme. When this State's legislature rejected the absolute bar of contributory negligence to recovery by negligent plaintiffs and adopted comparative negligence principles, Laws of 1973, 1st Ex. Sess., ch. 138, § 1, the "premise that wrongs were inherently indivisible or that responsibility could not rationally be apportioned upon multiple parties fell into disfavor.

150 Wn.2d at 116 (quoting Gregory C. Sisk, The Constitutional Validity of the Modification of Joint and Several Liability in the Washington Tort Reform Act of 1986, 13 U. Puget Sound L. Rev. 433, 437 (1990)).

Plaintiffs assert that <u>Cox v. Spangler</u>, 141 Wn.2d 431, 5 P.3d 1265 (2000), and <u>Phennah v. Whalen</u>, 28 Wn.App. 19, 621 P.2d 1304 (1980) are controlling here. However, plaintiffs fail to address a significant distinguishing fact between <u>Cox</u> and <u>Phennah</u> and this case; namely, those cases involved negligent actors who could be jointly and severally liable under RCW 4.22.070. In both <u>Cox</u> and <u>Phennah</u>, the plaintiff suffered injuries in a car accident that were exacerbated by a second auto accident. In both cases, the actions of all potentially liable tortfeasors were founded in negligence − not intentional torts. Plaintiffs ignore the fact that the alleged sexual abuse at the core of this matter was an <u>intentional action</u> and not negligence.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Cox and Phennah are not controlling here, where, the separate acts that allegedly caused the harm are intentional and negligent, respectively. Here, unlike Cox and Phennah, even if Loholt was a defendant, COP and Loholt could not be held joint and severally liable – because Loholt's actions were intentional. Tegman, 150 Wn.2d at 109; RCW 4.22.070. Consistent with the policy behind the Tort Reform Act of 1986, the Supreme Court has repeatedly acknowledged that RCW 4.22.070 abolishes joint and several liability in favor of proportionate liability, with joint and several liability only applicable in very limited exceptions. Kottler, 136 Wn.2d at 444; Washburn 120 Wn.2d at 294 ("several liability is now intended to be the general rule"). One limited exception is at-fault defendants may be held jointly and severally liable for a plaintiff's property or bodily injuries.[7] RCW 4.22.070(1). However, at-fault defendants do not include intentional tortfeasors. Tegman, 150 Wn.2d at 113. Moreover, the court has consistently recognized that liability for intentional acts does not fall within RCW 4.22.070, therefore, those exceptions to joint and several liability do not apply to intentional acts. Plaintiffs do not argue that any of the explicit exceptions apply here – because there is no basis to apply joint and several liability, regardless of whether Loholt is a party or not. However, without some basis for joint and several liability there is no basis to hold COP liable for pre-1972 harm simply because it is allegedly indivisible from post-1972 harm. Thus, all claims for any sex-abuse-related damages suffered by any of the plaintiffs prior to February 1972 should be dismissed.

### c.   Tegman applies even when intentional tortfeasor is not a named defendant

Plaintiffs' assertion that Tegman does not apply in this matter because Loholt is not a party defendant is inconsistent with the purpose underlying tort reform in this State. Under RCW 4.22.070, an at fault defendant is not liable for the fault attributed to a negligent tortfeasor who plaintiff failed to name as a party defendant. Instead, plaintiff must name the negligent tortfeasor or risk not collecting the damages that this unnamed party caused. Mailloux v. State

---

[7] Although the Court in Cox does not discuss the exceptions where joint and several liability may apply because technically it could not. Presumably this is the exception it would have applied if the first tortfeasor could have been joined in the action.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 13

04-2338 RSM
7566-025226  66036

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

<u>Farm Mut. Auto Ins. Co.</u>, 76 Wn. App. 507, 887 P.2d 449 (1995). <u>Tegman</u> employs a similar scheme between intentional and negligent tortfeasors, only it accomplishes it by requiring segregation of damages in lieu of apportionment of fault. <u>Tegman</u>, 150 Wn.2d at 115. Plaintiffs decided who would be a party defendant. Consistent with Tort Reform, the failure to name Loholt as a defendant does not mean that the negligent tortfeasors are responsible for any damages he caused. <u>Tegman</u>, 150 Wn.2d at 119. Instead, their failure to name Loholt as a defendant means only that any damages he caused are to be segregated and are uncollectible in this action.

### 6. <u>Dismissal of Plaintiff T.D.'s Claims For Lack of Proof of Damage</u>

To recover against defendants, plaintiff T.D. must prove duty, breach, causation, and damages. <u>Ahmann-Yamane</u>, 105 Wn. App. 103, 108, 19 P.3d 436 (2001). Plaintiff T.D. described the abuse incident as follows: he awoke, thought Loholt's conduct was weird, and fell back asleep. He put the incident behind him until a private investigator working for plaintiffs' attorneys visited him at home over twenty years later. Plaintiff T.D. has never seen a treating therapist for any reason. This is not mysterious, given his academic, athletic, professional, and social success. Dr. Conte, plaintiff's expert therapist, evaluated plaintiff T.D. and concluded that plaintiff did not suffer from any psychological conditions as a result of the sexual abuse. He further concluded that he suffered from two psychological symptoms (fear of public speaking and dislike for eating in public), but could not conclude that these were causally related to the abuse. Plaintiff T.D. expressed that he did not know whether or how Loholt's abuse had affected him, and Dr. Conte shared in that sentiment. As pointed out in defendants' motion for summary judgment, Dr. Conte conceded that people who were victims of sexual abuse do escape without suffering any psychological consequences.

In the opposition to defendants' motion for summary judgment, plaintiff T.D. has submitted the Declaration of Dr. Conte in an effort to contradict his evaluation report and deposition testimony. Dr. Conte now claims that he has causally plaintiff T.D. is harmed by his

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

mere status as a victim, and his anger toward the church for allowing it to happen.  Plaintiff T.D. cannot create a question of fact by submitting a declaration that contradicts prior deposition testimony.  Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005).  Dr. Conte had an opportunity to causally relate the abuse to damage, and he did not do so.  Moreover, Dr. Conte and plaintiffs' attorneys cannot create damage where none had existed.  If plaintiff T.D. is impacted by his status as a victim, it is because Dr. Conte is now telling him, contrary to plaintiff's last twenty years of success, that the abuse has negatively impacted him.  If plaintiff T.D. is angry at the Church, he is so because of what plaintiffs' attorneys are telling him.  Dr. Conte claims that plaintiff T.D. is damaged because he is overly protective of his children.  If so, this is not causally connected to the abuse, as Dr. Conte criticized plaintiff T.D. for daring to believe that his children were safe from child molesters. Dr. Conte wrote:

> [Plaintiff T.D.] also reports that abuse is rare and his children are not at particular risk. Although there are no doubt many parents who believe this erroneous idea, putting this information together with his lack of emotion, social anxiety [public speaking and eating issues], need to be active, and his self reported drive to push bad things out of his mind, it is likely that he was more impacted by the experience than he acknowledges.

In addition to not making logical sense, this statement demonstrates that Dr. Conte is attempting to create damage rather than sue for damage that has already been done.

DATED:  February 3, 2006          STAFFORD FREY COOPER


By:  /s/ Thomas D. Frey via ECF
     Thomas D. Frey, WSBA #1908
     Marcus B. Nash, WSBA #14471
     Michael Bolasina, WSBA #19324
     Attorneys for Defendants

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Certificate of Service

I certify that on the date noted below I electronically filed this document entitled SUMMARY JUDGMENT REPLY BRIEF with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA 98101
Fax: (425) 837-9692

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim, LLP
600 University Street, Suite 2100
Seattle, WA 98101-4185
Fax: (206) 676-7575

And I certify that I have caused to be served in the manner noted below a copy of the above-listed document on the following non-CM/ECF participants:

[ ]   Via Facsimile
[ ]            Via First Class Mail
[ ]   Via Messenger

DATED this 3rd day of February, 2006, at Seattle, Washington.

/s/ Thomas D. Frey via ECF
Thomas D. Frey, WSBA #1908

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT- 16

04-2338 RSM
7566-025226  66036

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885