1    The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, et al.,<br><br>                    Plaintiffs,<br>      v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, et al.,<br><br>                    Defendants. | NO.  04-2338 RSM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS**<br><br>**Note on Motion Calendar:<br>Friday, February 3, 2006** |

The following memorandum is submitted in reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Regarding Statute of Limitations.

**PRELIMINARY STATEMENT**

After the filing of the motion at issue here, plaintiff Kenneth Fleming and defendants COP and LDSFS reached a settlement resolving all claims against COP and related Church entities.  Therefore, this Court has no need to resolve the statute of limitations issue with respect to Fleming.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 1

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

## LAW AND ARGUMENT

### A. Plaintiffs Bear the Burden of Proof on the Tolling Issue

At the outset, it is important to reiterate some basic principles of tolling law. "When a delay occurs between an injury and the plaintiff's discovery of it, the court may apply the discovery rule, provided the delay was not caused by the plaintiff sleeping on his rights." *Giraud v. Quincy Farm and Chemical*, 102 Wn.App. 443, 449, 6 P.3d 104, 108 (2000) (citing *Crisman v. Crisman,* 85 Wn.App. 15, 20, 931 P.2d 163 (1997)). However, the plaintiff has the burden of demonstrating that the discovery rule should apply: "*[t]o invoke the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts earlier.*" *Id.* (citing *G.W. Constr. Corp. v. Professional Serv. Indus. Inc.,* 70 Wn.App. 360, 367, 853 P.2d 484 (1993)) (emphasis in original).

Thus, it is up to plaintiffs in this case to put forward evidence that they have met the requirements for tolling under RCW 4.16.340(1)(c).

### B. RCW 4.16.340(1)(c) Does Not Void the Statute of Limitations Nor Permit Plaintiffs Who Had the Ability to Learn of Serious Injuries Resulting From Abuse to Sit on Their Rights

The overarching question in this motion is whether RCW 4.16.340(1)(c) should be interpreted so as to effectively void the limitations period for adults bringing childhood sexual abuse claims. In practical effect, plaintiffs' reading would do just that. However, it is clear that the Legislature never intended that outcome and this Court should not endorse an interpretation that creates it. *Oostra v. Holstine*, 86 Wn.App. 536, 937 P.2d 195 (1997) ("We seek to avoid strained, unlikely, or unrealistic consequences" when interpreting statutes.) (citing *State v. Fjermestad,* 114 Wn.2d. 828, 835, 791 P.2d 897 (1990)). COP's interpretation of RCW 4.16.340(1)(c) protects the interests the Legislature sought to advance without allowing

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 2

04-2338 RSM
7566-025226   67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1 the serious problems plaintiffs' reading would create. COP's interpretation is also most
2 consistent with the approach taken by the Washington courts that have applied the statute.

3 By enacting RCW 4.16.340(1)(c), the Washington Legislature sought to ensure that a
4 victim who discovers "less serious injuries" from abuse is not precluded from bringing claims
5 based on "more serious injuries" that are "discovered many years later." *See* RCW 4.16.340,
6 Finding – Intent – 1991 C 212. The Legislature specifically intended to prevent outcomes like
7 that in *Raymond v. Ingram*, 47 Wn.App. 781 (1987), where the plaintiff was precluded from
8 suing for serious psychological injuries caused by childhood abuse on the ground that she had
9 earlier triggered the statute of limitations by recognizing that the abuse was connected with a
10 minor symptom of emotional distress (stomach aches). However, there is no indication that the
11 Legislature intended to allow adults who know they have been abused, who know the abuse was
12 wrong and injurious, and who have a reasonable person's capacity to understand the effects of
13 their abuse, to wait decades to sue until convinced by a litigation psychologist that the effects of
14 the abuse were actually worse than ever imagined. To qualify for tolling, the plaintiff must
15 demonstrate an actual inability to connect past abuse with serious injuries, not just that he never
16 thought about all the possible connections between the abuse and the innumerable hardships
17 that everyone endures throughout life.

18 The Washington decisions that have allowed RCW 4.16.340(1)(c) to toll the limitations
19 period have emphasized as part of the analysis some sort of material disability that reasonably
20 prevented the plaintiff from discovering that the abuse caused a serious injury. That is not to
21 say that the courts have required mental illness or mental incapacity; that has never been COP's
22 argument. Rather, they have required that the abuse have made the victim unable to understand
23 the connection with the injury. That important aspect of the analysis cannot be ignored if the

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 3

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  tolling reasonably intended by RCW 4.16.340(1)(c) is not to completely swallow the statute of
2  limitations.
3      Thus, in *Hollman v. Corcoran*, 89 Wn. App. 323, 949 P.2d 386 (1997), the court found
4  tolling under RCW 4.16.340(1)(c) where the victim – who abused alcohol, was depressed and
5  suicidal, and suffered from post-traumatic stress disorder – had earlier been unable to
6  understand that he was even a victim. The degree of disability and incapacity that triggered the
7  tolling in *Hollman* is instructive:

- "[The therapist who had examined him earlier] testified Mr. Hollmann [the victim] was *not capable of understanding* the connection between his PTSD and Mr. Corcoran's abuse at the time she counseled him. [The therapist] found it particularly significant that Mr. Hollmann was newly sober at the time she saw him, and thus his brain chemistry was still affected by years of substance abuse. She also noted that his depression contributed to his *inability to gain **any insight** into the causes of his condition*. It is common, she testified, for newly sober patients suffering from depression and PTSD to be *unable* to see the causal connection between their condition and past events." [*Id.* at 328-29 (emphasis added).]

- "During the time he was counseling with [the therapist], Mr. Hollmann continued to regard Mr. Corcoran as his friend, and *he did not see their relationship as one of perpetrator and victim*. He thought he was a 'volunteer' in the relationship. He invited Mr. Corcoran to his wedding in 1990. In 1992, as part of his Alcoholics Anonymous recovery program, Mr. Hollmann apologized to Mr. Corcoran for things he had done to him. Mr. Corcoran accepted the apology, and gave Mr. Hollmann a hug." [*Id.* at 329 (emphasis added).]

- Still later, with a new therapist, "Mr. Hollmann described his relationship with Mr. Corcoran as voluntary; he felt intense shame and guilt due to his perception that he was a willing participant in a homosexual relationship. *He blamed himself, not Mr. Corcoran, and believed he was a bad person because of what he, not Mr. Corcoran, had done*. [The new therapist] thought, with the help of therapy, Mr. Hollmann was *beginning to understand his role as a victim rather than a volunteer*, and he began to see Mr. Corcoran as the person responsible for his emotional and psychological injuries." [*Id.* at 329 (emphasis added).]

The decision in *Cloud v. Summers*, 98 Wn.App. 724, 991 P.2d 1169 (1999), similarly involved a completely dysfunctional abuse victim who did not connect his abuse to his injuries until the day he shot and killed his abuser:

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 4

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

- "Darrell, who once was a good student and talented athlete, flunked out of college and became dysfunctional in virtually every aspect of his life, eventually sliding into psychosis, commencing in 1992--3 years after he turned 18. His psychiatrist attributed Darrell's mental illness to sexual abuse by Summers." [*Id.* at 728.]

- "As discussed above, undisputed evidence in the record reflects that Darrell Cloud did not connect his mental illness to Summers' abuse before January 31, 1994 [the day he killed Summers]." [*Id.* at 735.]

In analyzing the limitations issue under RCW 4.16.340(1)(c), the court in *Cloud* emphasized the importance of some "disability" in applying the discovery rule:

> Washington's statutory discovery rule as applied to claims based on negligent failure to prevent childhood sexual abuse has some attributes of a tolling doctrine as well as an accrual doctrine. That is, the victim may know, as Darrell knew, that he or she was molested, and may even know that some injury resulted, but may not know the full extent of the injury or that the abuse might have been prevented if persons having a special relationship with the child had not breached a duty to protect the child from abuse. Indeed, as our Legislature has found, childhood sexual abuse, by its very nature, may render the victim *unable* to understand or make the connection between the childhood abuse and the full extent of the resulting emotional harm until many years later. *Until that 'disability' is lifted, the cause of action either will not accrue or, if accrued, the running of the statute of limitations will be tolled.*

*Id.* at 734-35 (emphasis added).

In *Oostra v. Holstine*, 86 Wn.App. 536, 937 P.2d 195 (1997), the victim, Oostra, "experienced problems, including alcoholism and attempted suicide" while a minor, but "these problems were not at that time traced to [her] childhood abuse." *Id.* at 542-43. "[U]ntil Oostra began therapy, she did not recognize the connection between her problems and the sexual abuse." *Id.* at 543. After noting these facts, the court then affirmed a jury instruction with an objective ("knew, or should have known") standard for determining under RCW 4.16.340(1)(c) whether the victim had the capacity to discover the causal connection between the sexual abuse and the serious injury. The court stated that such an "instruction comports with the limitations

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 5

04-2338 RSM
7566-025226   67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

set forth in RCW 4.16.340(1)(b) and (c) regarding a claimant's discovery of the nexus between acts of childhood sexual abuse and resulting injuries." *Id.* at 543.

The point of these cases is that Washington courts have required good reasons for why a plaintiff failed to discover an injury allegedly caused by abuse. Under RCW 4.16.340(1)(c), it is not enough for a victim to state that he did not know about his injury. Even if the knowledge that triggers the statute is subjective, there still has to be a good reason – some actual "disability" – why the victim could not discover the connection between the abuse and the injury at issue in the lawsuit.

**C.    Plaintiffs Have Failed to Meet Their Burden of Showing that They Were Unable to Understand the Connection Between the Abuse and Their Alleged Injuries; Plaintiffs Factual Assertions Only Confuse the Issue.**

As explained in COP's memo in support, plaintiffs filed this lawsuit at least two decades after reaching the age of majority. Thus, they must prove their entitlement to application of the discovery rule in RCW 4.16.340(1)(c) if they are to save their claims from being time-barred.

The key factual issue before this Court is determining when plaintiffs discovered (or, given their subjective disability, should have discovered) that their abuse caused their alleged injuries. We know for certain that plaintiffs subjectively had such knowledge at least by the time plaintiffs filed this action against COP. Knowledge sufficient to retain an attorney and initiate a lawsuit based on the sweeping claims plaintiffs have alleged is enough to trigger the statute of limitations in RCW 4.16.340(1)(c). The question then is whether plaintiffs discovered their injuries more than three years before they filed suit. In its memo in support, COP set forth facts strongly suggesting that plaintiffs have long known about the wrongfulness of the abuse and their alleged abuse-related injuries.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 6

04-2338 RSM
7566-025226   67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900   FAX 206.624.6885

1   But again, it is plaintiffs who bear the burden of proof on that issue, not COP. In their opposition memo, plaintiffs fail to meet that burden and only confuse the issue. Nowhere do they put forth evidence from the individual plaintiffs about when each one discovered the connection between the abuse and their injuries. Instead, plaintiffs' opposition is based entirely on their experts' opinions that – to this very day – plaintiffs are subjectively unable to appreciate their injuries. *See Memo in Opposition at 8-12.* Dr. Greenberg opines "that John Doe was unable to recognize the impact of the abuse and will, in all likelihood, be unable to understand the impact until he has years of therapy." *Id.* at 8. "Dr. Conte believes that R.K. does not make the connections between his behavior, the abuse and the other events in his life which are associated with the behavior" (*id.* at 11) and that he will not be able to make such "connections until he has had years of therapy" (*id.* at 10). For his part, T.D. may never understand his injuries, according to plaintiffs: "Dr. Conte opined that the personality of T.D. makes him unlikely and unable to understand the harm which the abuse has caused him." *Id.* at 11.

Such assertions only highlight the infinite malleability and ultimate absurdity of plaintiffs' approach. Tasked with providing evidence proving that they discovered the harm from their abuse within three years of filing their suit, plaintiffs instead supply expert witness testimony that they *still* haven't discovered their injuries – notwithstanding the passage of decades, discussions with their attorneys, and the filing of a lawsuit filled with allegations of injury. Indeed, according to plaintiffs, it will take years of therapy to make the requisite discovery, and in the case of T.D., the discovery may never occur. In other words, under plaintiffs' theory, the statute of limitations might never run. Indeed, that is the precise result of plaintiffs' approach.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 7

04-2338 RSM
7566-025226   67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900   FAX 206.624.6885

The facts related to R.K. illustrate the illogic of plaintiffs' position. As set forth in the memo in support (at 5-6), R.K. is a Harvard-educated Fulbright Scholar who holds bachelors and masters degrees, is in training to become a school principal, and currently teaches high school chemistry, leadership, and math. He has always known about the abuse and for thirty years has spoken of it with close friends, family members and others. And he does not allege any new or more severe injury than what he experienced directly from the abuse while a teenager. There is no allegation that R.K. failed to perceive the wrongfulness or inherently injurious nature of the abuse, something that would surely have become obvious sometime during his successful higher education experience. In short, R.K. is not a confused, debilitated victim struggling to understand his situation. But nevertheless, R.K. is supposedly analogous to the traumatized victim in *Hollman* who for years could not even perceive that his perpetrator had done anything wrong. If someone like R.K. can't discover his injuries sufficiently to trigger the statute, then in all likelihood no one can. There is no indication the Legislature intended such a result.

T.D.'s situation is perhaps more tenuous. His abuse occurred in a single event and consisted of Loholt fondling him and sucking on his toes. T.D. understood at the time that such conduct was wrong and has retained a clear memory of the incident. Yet he went on to lead an athletically, academically, and professionally successful life and maintains good family relationship, apparently hampered only by spending too much time on activities like golf. *See Memo in Support at 7.* The only alleged effects from the abuse are nervousness while public speaking and a dislike of eating in front of others, symptoms that his own expert could not link to the sexual abuse. *See id.* at 8. Ironically, such weak grounds for tolling are no problem under plaintiffs' theory because the lack of evidence – even the fact that T.D. "does not want to

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 8

04-2338 RSM
7566-025226   67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  think that he has been harmed by the abuse" (Memo in Opp. at 11) – is transformed into further
2  evidence that T.D. needs years of therapy in order to "comprehend the full extent of his injuries
3  or their casual connection to the abuse" – assuming that is ever possible. *Id.* at 11.

4  While the evidence indicates that R.K. and T.D. moved on with their lives after the
5  abuse, choosing to let it go, John Doe's situation appears to be just the opposite: it appears that
6  for years Doe's abuse has been a constant source of pain. If the allegations of abuse are true,
7  that is tragic to be sure. But the tragedy of the situation does not demonstrate that Doe lacked
8  understanding or capacity to understand what happened, nor that he failed to connect his severe
9  emotional injuries with the abuse. Doe has always known he was substantially injured by the
10 abuse but made the personal decision not to sue until plaintiffs' investigator located him and
11 provided the necessary encouragement.

12 In sum, plaintiffs have failed to meet their burden of showing that they lacked the
13 capacity to discover whatever serious injuries might have existed from the abuse. Instead, they
14 have put forth psychological theories suggesting that, notwithstanding the filing of this action,
15 the seriousness of such abuse is currently unknown and likely unknowable. That is not enough
16 to support plaintiffs' unprecedented request for tolling the limitations period for over two
17 decades.

18 **D.     <u>The Doctrine of Fraudulent Concealment Does Not Apply.</u>**

19 Plaintiffs spend many pages arguing that the doctrine of fraudulent concealment
20 precludes COP from asserting the statute of limitations. But this argument adds nothing. The
21 issue here is whether plaintiffs discovered their injury. If they did, then no amount of
22 concealment is relevant. A plaintiff cannot claim fraudulent concealment as bar to application
23 of the statute of limitations when he knows of his injury and its cause. Moreover, notions of

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 9

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  fraudulent concealment have no application where the underlying alleged tort consists of failing

2  to warn, report, or protect, otherwise the statute of limitations would never run on such claims.

3  It is well established that "[f]raudulent concealment necessarily requires active conduct by a

4  defendant, *above and beyond the [alleged] wrongdoing upon which the plaintiff's claim is filed*,

5  to prevent the plaintiff from suing in time." *See Johnson v. Henderson*, 314 F.3d 409, 414 (9th

6  Cir. 2002) (citation and quotation marks omitted) (emphasis added).  Thus, for plaintiffs'

7  concealment theory to have any plausibility, at a minimum they needed to allege that the

8  Church affirmatively acted to conceal from plaintiffs their injuries or the identity of the abuser.

9  There are no such allegations. All Plaintiffs allege is that the Church did nothing, which is the

10 principal basis for the claim itself. That does not constitute fraudulent concealment.

11        Here, there is absolutely no evidence that COP did anything to conceal either plaintiffs'

12 injuries, their understanding of those injuries, or Loholt's role in causing them.  Those were all

13 things known to plaintiffs.  Allegations that COP knew of Loholt's tendencies and failed to

14 protect plaintiffs do not translate into a fraudulent concealment that tolls the limitations period.[1]

### **CONCLUSION**

16        The reality is that plaintiffs are mature men who for decades have known of their abuse

17 and its wrongfulness but who, until recently, chose not to sue.  That was a rational and no doubt

18 deeply personal choice, but it also had consequences.  Plaintiffs are not like any of the plaintiffs

19 in the Washington cases that have upheld tolling under RCW 4.16.340(1)(c).  To toll the

---

[1] Plaintiffs' reliance on *Sector v. Roman Catholic Diocese of Covington*, 966 S.W.2d 286 (Ky. App. 1998), is misplaced.  That case involved a defendant's affirmative and long-time attempts to conceal the abusive tendencies and actions of its agent.  Here, there is no evidence of active concealment.  At worst, local Church officials simply failed to understand the seriousness of the situation, something that was not uncommon at the time given the limited knowledge of the intractable nature of pedophilia.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 10

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  limitations period under these facts runs contrary to the purposes of that statute and would
2  effectively render RCW 4.16.340(1)(c) meaningless.

3      For the reasons set forth herein, and those stated in the memorandum in support,
4  plaintiffs' claims are barred by the applicable statute of limitations.

5      DATED this 3rd day of February, 2006.

6                                STAFFORD FREY COOPER

7
                      By:   /s/ Thomas D. Frey via ECF
8                           Thomas D. Frey, WSBA #1908
                          Marcus B. Nash, WSBA #14471
9                           Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS - 11

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Certificate of Service

I certify that on the date noted below I electronically filed this document entitled REPLY RE SOL MSJ with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA  98101
Fax: (425) 837-9692

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim, LLP
600 University Street, Suite 2100
Seattle, WA  98101-4185
Fax: (206) 676-7575

And I certify that I have caused to be served in the manner noted below a copy of the above-listed document on the following non-CM/ECF participants:

[ ]   Via Facsimile
[ ]           Via First Class Mail
[ ]   Via Messenger

DATED this 3rd day of February, 2006, at Seattle, Washington.

/s/ Thomas D. Frey via ECF
Thomas D. Frey, WSBA #1908

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS - 12

04-2338 RSM
7566-025226  67546

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885