UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING, *et al.*,

    Plaintiffs,

v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, *et al.*,

    Defendants.

CASE NO. C04-2338RSM

MEMORANDUM ORDER DENYING SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants' Motion for Summary Judgment pertaining to Washington's statute of limitations in abuse cases. (Dkt. #66). Defendants argue that plaintiff R.K.'s claims have long been barred under Washington's three-years statute of limitations because he had the knowledge and capacity to bring this lawsuit decades ago but chose not to do so.[1] Defendants further argue that plaintiff cannot meet his burden of proof to toll the statute of limitations under Washington's discovery rule for abuse victims. Therefore,

---

[1] This action initially involved four plaintiffs – Kenneth Fleming, John Doe, R.K. and T.D. However, Mr. Fleming, John Doe and T.D. have since settled. (Dkt. #95). Accordingly, R.K. is the only remaining plaintiff, and this Court will address the parties' arguments only as they pertain to him. In addition, the Court will limit any factual and procedural background to R.K.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
PAGE - 1

defendants ask the Court to grant summary judgment in their favor, and dismiss plaintiff's claims.

In response, plaintiff argues that he does meet the elements of Washington's discovery rule for abuse victims, and therefore, the statute of limitations should be tolled. Plaintiff further argues that he at least raises a genuine issue of material fact as to whether he meets such elements. Plaintiff has also sought to toll the statute of limitations by asserting the affirmative defenses of equitable estoppel and fraudulent concealment. (Dkt. #79).

For the reasons set forth below, the Court agrees with plaintiff and DENIES defendants' motion for summary judgment.

## II.  DISCUSSION.

### A. Background

This action arises from sexual abuse suffered by plaintiff at the hands of Jack LoHolt in the early to mid-1970s. At that time, Mr. LoHolt was a member of the Mormon church in the Kent 2nd Ward. Mr. LoHolt held several leadership positions within the church at various times throughout the 1970s. Plaintiff asserts several claims against the church and a related social service agency, including Negligence and Breach of Fiduciary Duty, Negligent Infliction of Emotional Distress, Estoppel and Fraudulent Concealment, and Civil Conspiracy. Plaintiff has not named Mr. LoHolt as a defendant in this action.

In 1971, church member, and later Bishop, Richard Pettit informed the then-Bishop of the Kent 2nd Ward, Randall Borland, that Mr. LoHolt had abused his son while on a Boy Scout campout, at which Mr. LoHolt was the Scout leader. In late 1972 or early 1973, Bishop Borland received another complaint that Mr. LoHolt had sexually molested children in the church's Boy Scout program. Bishop Borland apparently confronted Mr. LoHolt, who denied the accusations, but admitted that he had been abusing three boys from the Allenbach family. During this time period, Mr. LoHolt had been residing in an apartment on the Allenbach

property.

Shortly after Mr. LoHolt's admission to Bishop Borland, Dr. Allenbach apparently learned of the abuse and asked Mr. LoHolt to vacate the premises. The record shows no evidence that anyone reported Mr. LoHolt to the authorities at that time. However, Bishop Borland temporarily removed Mr. LoHolt from the Boy Scout program and referred him for sexual deviancy therapy at LDS Social Services. Mr. LoHolt apparently remained in therapy at LDS Social Services for one year, where, he asserts, he was truthful about his actions and behavior. There is nothing in the record to indicate that LDS Social Services ever reported Mr. LoHolt to the authorities.

After Mr. LoHolt's treatment ended, the Kent 2nd Ward allowed him to return to assisting with the Boy Scout program. Mr. LoHolt would supply transportation and would go on hikes and campouts with the boys. In October 1973, he was appointed as the Wards' Assistant Venturer Leader working with Scouts age 14-16. In February 1974, Mr. LoHolt became the lead Scoutmaster of the Kent 2nd Ward. Mr. LoHolt admits that he continued to molest boys throughout this time period.

In 1973, Phillip Coleman had become the Bishop of the Kent 2nd Ward. Bishop Borland did not advise him of the previous complaints about Mr. LoHolt. However, in 1974, Bishop Coleman learned that Mr. LoHolt was abusing children. The record shows no evidence that Bishop Coleman reported the allegations to the authorities, or removed Mr. LoHolt from his duties within the church.

Plaintiff R.K. lived next door to the Allenbach property. He was best friends with one of the Allenbach children and spent much of his time playing on the Allenbach property. Although R.K. was a practicing Roman Catholic and attended a Catholic church during that time period, during his visits he was introduced to the Morman faith and encouraged to take part in Mormon-sponsored activities. He also occasionally attended church services with the Allenbachs.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
PAGE - 3

During his time on the Allenbach property, plaintiff was introduced to, and victimized by, Mr. LoHolt. He was apparently abused in a field near the Allenbach house and in Mr. LoHolt's apartment on the Allenbach property. Plaintiff testified in deposition that Mr. LoHolt would lure them to his apartment with ice cream, root beer floats and firecrackers. There, he would subject the boys to horrifying sexual acts. The Court finds it unnecessary to describe those acts in further detail. Plaintiff reported the abuse to his mother, who told her husband and Dr. Allenbach of the allegations. However, she stated that she did nothing further because these matters were handled differently back then.

Plaintiff asserts that the abuse by Mr. LoHolt took place on six different occasions between the ages of nine and twelve. While he did report the abuse to his mother, and has spoken of the abuse with his close friends and family over the years, plaintiff has never sought psychological or psychiatric counseling. He has earned a Bachelor's Degree and Master's Degree from Seattle University, attended Harvard Graduate School of Education, and was honored as a Fullbright Memorial Fund Scholar. He is currently enrolled in Seattle Pacific University's principal program. He teaches chemistry, leadership and math at a local high school. He joined the instant lawsuit after reading a related article in the local newspaper.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or

1  the bald assertion that a genuine issue of material fact exists, no longer precludes the use of

2  summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*

3  *Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

4        Genuine factual issues are those for which the evidence is such that "a reasonable jury

5  could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are

6  those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on

7  summary judgment, a court does not weigh evidence to determine the truth of the matter, but

8  "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d

9  547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore,

10 conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

11 summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345

12 (9th Cir. 1995).  Similarly, hearsay evidence may not be considered in deciding whether material

13 facts are at issue in summary judgment motions.  *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610

14 F. 2d 665, 667 (9th Cir. 1980).

**C.  Statute of Limitations**

In Washington, RCW 4.16.340 governs the statute of limitations in child sexual abuse cases. *C.J.C. v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 712 (1999). That statute reads:

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> (a) Within three years of the act alleged to have caused the injury or condition;
>
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
>
> PROVIDED, That the time limit for commencement of an action under this

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
PAGE - 5

1   section is tolled for a child until the child reaches the age of eighteen years.

2   RCW 4.16.340(1)(a)-(c). Part (c) of the statute was enacted to address situations where the

3   abused person was unable to connect the abuse to serious injury until after the statute of

4   limitations had expired. *See Hollmann v. Corcoran, et al.*, 89 Wn. App. 323, 325 (1997)

5   (determining that section (c) "refers to the discovery of the causal connection between a known

6   act and subsequent injuries, including injuries that develop years later."). That section is at issue

7   in the instant case.

8   Washington courts examining part (c) have determined that the standard to be applied is

9   a subjective one. "[T]he statute of limitations is tolled until the victim of child abuse *in fact*

10  discovers the causal connection between the defendant's acts and the injuries for which the claim

11  is brought." *Hollmann*, 89 Wn. App. at 325 (emphasis added); *see also Cloud ex rel. Cloud v.*

12  *Summers*, 98 Wn. App. 724, 734-35 (1999) (holding that the discovery of less serious injuries

13  does not commence the statute of limitations for more serious injuries discovered later).

14  In the instant case, plaintiff argues that he was unable, until recently, to connect any

15  injuries to the sexual abuse he suffered as a childhood. Like the plaintiff in the *Hollman* case,

16  *supra*, plaintiff does not claim that he suffers or has suffered from repressed memories, and he

17  has testified that the acts committed by Mr. LoHolt have been "in the back of [his] mind"

18  throughout his life. However, plaintiff now asserts that he did not recognize the causal

19  relationship between his past and current problems and Mr. LoHolt's abuse. Plaintiff's

20  testimony is supported by the declaration of Dr. Jon Conte, who tested and evaluated plaintiff

21  after he joined this litigation.

22  Defendants respond that plaintiff has not demonstrated an actual inability to connect his

23  past abuse with serious injuries. They argue that it is not enough that plaintiff just never thought

24  about the possible connections between the abuse and the hardships he has endured in his life.

25  Defendants urge the Court not to adopt plaintiff's broad construction of Washington's discovery

26

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
PAGE - 6

rule, arguing that, in doing so, the Court would effectively void the limitations period for adults bringing childhood sexual abuse claims, an outcome that the State legislature never intended. The Court is not persuaded.

First, both plaintiff and Dr. Conte raise genuine issues of material fact as to when plaintiff actually discovered the causal connection between his injuries and the abuse. Indeed, Dr. Conte states that plaintiff "currently reports significant levels of post traumatic stress, including re-experiencing, avoidance and hyper arousal symptoms." (Dkt. #84). He has diagnosed plaintiff with Post Traumatic Stress Disorder, based on plaintiff's self report and test results. He opines that as of the date plaintiff was evaluated, plaintiff was not able to appreciate the connections between his abuse and his symptoms. (Dkt. #84). Similarly, plaintiff testified during deposition that he is only now discovering the reasons why he has been "so dysfunctional in [his] life, professionally and on a personal level." (Dkt. #68, Ex. A). He explains:

> Ever since I was a teenager, I had thoughts of suicide, and I thought of -- when I began to drive, I thought of, like, crashing into a truck or something. And so even to this day, I have thoughts of suicide and depression, anxiety. I've never been at my -- I mean, we talked about my education. I'm very educated, I've shown that I can do super in school, but I've never -- I think because of my personality, and whatever, I haven't been able to work in the capacity to what I'm educated at. Never have really -- realizing my full potential. Now I'm teaching and I've been teaching under contract for two years, and I love teaching kids, and I love the subject that I teach, but my last evaluation was not a stellar evaluation, based on maybe personality or communicating. I still -- I still live at home, because I've -- I find that a very protective atmosphere, with mom and dad. It's safe. And I have significant anger problems, I think still -- and still -- I just have unresolved psychological conflicts, and I'm not -- I just -- it's been my life, you know, that's just how it has been for me ever since I can remember, since I was abused by Jack.
> . . .
> Significant [depression and anxiety] as an adult. Since – I've had depression and anxiety since I was a kid, *but I thought it was a natural part of growing up. But as an adult I realize that it's a significant problem. But I never really realized it. It was just a part of my life.*

(Dkt. #68, Ex. A) (emphasis added).

Second, defendants' argument that plaintiff must suffer some "disability" that made him unable to discover the causal connection between his injuries and the abuse is misguided. A

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
PAGE - 7

simple examination of the very passage upon which defendants rely in support of their position reveals the flaw in that reasoning. In *Cloud*, *supra*, the Washington State Court of Appeals explained:

> Washington's statutory discovery rule . . . has some attributes of a tolling doctrine as well as an accrual doctrine. That is, the victim may know, as Darrell knew, that he or she was molested, and may even know that some injury resulted, but may not know the full extent of the injury or that the abuse might have been prevented if persons having a special relationship with the child had not breached a duty to protect the child from abuse. Indeed, as our Legislature has found, *childhood sexual abuse, by its very nature, may render the victim unable to understand or make the connection between the childhood abuse and the full extent of the resulting emotional harm until many years later*. Until that 'disability' is lifted, the cause of action either will not accrue or, if accrued, the running of the statute of limitations will be tolled.

*Cloud*, 98 Wn. App. at 734-35 (emphasis added). It is clear that, in this context, Washington courts view the sexual abuse itself, along with its lingering effects, as such a disability. The court was not using the word "disability" to refer to a specific, identifiable physical or mental disability, although such a disability would certainly be encompassed by the term.

Finally, the Court notes that the Washington State legislature is well aware of its ability to enact an outside time limit within which a claim may be brought. In the case of child sexual abuse cases, the legislature has chosen not to set such a limit. This Court does not intend to set that limit either. While defendants argue that this Court's decision will effectively void any limitations for adults bringing childhood sexual abuse cases, the Court reminds defendants of the prior courts' instruction in analyzing these cases. Each plaintiff will need to properly demonstrate how he or she meets the elements necessary for tolling, and each court must evaluate the plaintiff's arguments on their own factual bases. The courts have been able to perform that task thus far, and will continue to be able to perform that task, regardless of whether this Court allows plaintiff's case to move forward at this point in time.

The Court's decision comports with the legislative intent behind its broad discovery rule. As the *Hollman* court aptly highlighted, by adding section (c) to the statute, the legislature

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
PAGE - 8

1  intended to address the fact that childhood sexual abuse causes long-lasting damage which may
2  not be recognized or understood until many years after the abuse occurred. *See Hollmann*, 89
3  Wn. App. at 333. Accordingly, and for all of the reasons set forth above, the Court denies
4  defendants' motion for summary judgment pertaining to the statute of limitations. It is not
5  necessary for the Court to reach plaintiff's equitable estoppel and fraudulent concealment claims.

### III. CONCLUSION

Having reviewed defendants' motion for summary judgment pertaining to the statute of limitations (Dkt. #66), plaintiff's response (Dkt. #79), defendants' reply (Dkt. #91), the declarations and evidence in support of those briefs, and the remainder of the record, the Court hereby DENIES defendants' motion for summary judgment.

The Court will address defendants' summary judgment motion pertaining to the merits of plaintiff's claims (Dkt. #65) in a separate Order.

The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 9th day of March, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE