UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING, *et al.*,

    Plaintiffs,

v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, *et al.*,

    Defendants.

CASE NO.  C04-2338RSM

MEMORANDUM ORDER GRANTING IN PART SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendants' Motion for Summary Judgment pertaining to the merits of plaintiff R.K.'s claims.[1]  (Dkt. #65).  Defendants request summary judgment in their favor on: (1) plaintiff's claim based on a failure to report sexual abuse pursuant to RCW 26.44; (2) plaintiff's negligence/special relationship claim for lack of duty; (3) plaintiff's claim for equitable estoppel and fraudulent concealment; (4) plaintiff's claim for negligent infliction of emotional distress; (5) plaintiff's civil conspiracy claim; (6) plaintiff's claim for sexual abuse that occurred prior to first notice to defendant Corporation of the President of the Church of Jesus Christ

---

[1] This action initially involved four plaintiffs – Kenneth Fleming, John Doe, R.K. and T.D.  However, Mr. Fleming, John Doe and T.D. have since settled.  (Dkt. #95).  Accordingly, R.K. is the only remaining plaintiff, and this Court will address the parties' arguments only as they pertain to him.  In addition, the Court will limit any factual and procedural background to R.K.

ORDER
PAGE - 1

of Latter Day Saints ("COP") in 1972; and (7) plaintiff's claim for failure to prove proximate cause of damages caused by defendants' conduct. Defendants also seek a legal ruling on the issue of segregation of damages between intentional tortfeasors and negligent tortfeasors.

In response, plaintiff argues that an implied right of action exists for violation of the mandatory reporting statute, a special relationship between COP and plaintiff did exist, defendant LDS Social Services owed a common law duty of care to plaintiff, plaintiff has raised genuine issues of material fact with regard to the civil conspiracy claim, COP can be held liable for pre-1972 sexual abuse, and there is no requirement for segregation of damages between the intentional tortfeasor and negligent tortfeasors in this case.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

## II. DISCUSSION.

### A. Background

This action arises from sexual abuse suffered by plaintiff at the hands of Jack LoHolt in the early to mid-1970s. The background and procedural history have been set forth in the Court's Order on defendants' Motion for Summary Judgment pertaining to the statute of limitations. Accordingly, the Court does not find it necessary to repeat them here. To the extent that any other facts are relevant to the instant motion, the Court will raise those facts within the discussion below.

### B. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has

the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**C. Failure to Report Sexual Abuse Pursuant to RCW 26.44**

Defendants first argue that plaintiff's First Cause of Action, a negligence claim based on defendants' breach of their statutory duty to report sexual abuse pursuant to RCW 26.44, should be dismissed because that statute does not create a private right of action for an alleged failure to report. (Dkt. #65 at 7-8). In support of their argument, defendants cite to numerous cases holding that there is no such private right of action; however, this Court notes that none of those cases come from Washington state courts. (*See* Dkt. #65 at 7 n. 4). Defendants also argue that the sole legal recourse provided under that statute is criminal punishment, as provided for in RCW 26.44.080, and therefore, the legislature specifically chose not to include a civil remedy.

Plaintiff admits that the statute does not explicitly authorize a private cause of action, but

ORDER
PAGE - 3

responds that Washington courts have already held that the mandatory reporting statute may form the basis of a negligence claim, and therefore, his claim should not be dismissed.[2] (Dkt. #80 at 8-13). Alternatively, plaintiff argues that the statute provides for an implied cause of action. For the reasons discussed herein, the Court agrees that the statute provides an implied cause of action.

In *CJC*, *supra*, the Supreme Court of Washington examined the "difficult" question of whether the harm sought to be prevented fell within the scope of any duty. *CJC*, 138 Wn.2d at 722. The plaintiffs in that case had asserted that, even though the alleged molestation did not occur on the church premises or during church activities, the church "had a duty to protect the children of its congregation against foreseeable harms perpetrated by a Church official whom the Church 'had placed in authority and in close relationship to church children, knowing of the danger.'" *Id.* (citation omitted). The court held that the church owed plaintiffs a duty of reasonable care, based on the specific facts of the case, and based on the "conjunction" of the following four factors: (1) the special relationship between the church and the alleged abuser; (2) the special relationship between the church and the plaintiffs; (3) the alleged knowledge of the risk of harm possessed by the church; and (4) the alleged causal connection between the alleged abuser's position in the church and the resulting harm. *Id.* at 724.

While the court did cite to RCW 26.44.030 in support of its conclusion, the court did not find that the statute provided a private cause of action. Rather, the court explained that the strong public policy in favor of protecting children against acts of sexual abuse supported its decision not to foreclose the imposition of a duty as a matter of law. *Id.* at 726-27. The court then cited to the statute, "find[ing] merely that the statute reflects [such] a strong public policy. . . ." *Id.* at 727 n. 16.

---

[2] Original plaintiffs, John Doe and T.D. appeared to have been pursuing common law negligence claims not based on breach of statutory duty. (*See* Dkt. #80 at 8 n. 32). However, it is not clear from the Complaint whether plaintiff R.K. also pursues a common law negligence claim based on anything other than breach of statutory duty. In any event, because defendants have only raised an argument that the statute in question does not provide for a private cause of action, the Court limits its discussion to that issue.

ORDER
PAGE - 4

The court ultimately concluded that the church owed a duty of reasonable care to affirmatively act to prevent the harm "*in view of their relationship to the plaintiffs, the relationship to [the alleged abuser], and given the knowledge they allegedly possessed.*" *Id.* at 727 (emphasis added). Thus, the Court is not persuaded by plaintiff's argument that Washington courts have already held that the mandatory reporting statute may form the basis of a negligence claim.

However, this Court is persuaded by plaintiff's argument that the statute provides an implied cause of action for other reasons. In *Bennett v. Hardy*, 113 Wn.2d 912 (1990), the Supreme Court of Washington reiterated the general rule "'that a legislative enactment may be the foundation of a right of action.'" *Bennett*, 113 Wn.2d at 919 (quoting *McNeal v. Allen*, 95 Wn.2d 265, 274 (1980) (Brachtenbach, J., dissenting)). The court then outlined when a cause of action would be implied from a statute, utilizing a test that had been borrowed from the federal courts and the Restatement (Second) of Torts. *Id.* at 920. The *Bennett* court determined that a three-part test applied, stating:

> we must resolve the following issues: first, whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation.

*Id.* at 920-21.

In the instant case, the plaintiff, a victim of childhood sexual abuse, certainly falls within the class of persons the statute is designed to protect. Washington courts have clearly stated that the mandatory reporting statute is designed "to secure prompt protection and/or treatment for the victims of child abuse." *State v. Warner*, 125 Wn.2d 876, 891 (1995). Thus, plaintiff meets the first prong of the *Bennett* test.

Second, this Court finds that the legislative intent behind the statute supports the creation of a civil remedy. It is true that RCW 26.44.030 provides a penal remedy, but not a civil remedy. Defendants assert that such a penal remedy indicates that the Washington legislature did not intend to imply a civil remedy also. However, this Court recognizes, just as Washington state courts have

recognized, that when a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned therein. *McNeal v. Allen*, 95 Wn.2d 265, 274-75 (1980) (citing *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154, 160 (1979); *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971); *King Resources Co. v. Environmental Improvement Comm'n*, 270 A.2d 863 (Me. 1970); *Brinkmann v. Urban Realty Co.*, 10 N.J. 113, 89 A.2d 394 (1952)).

In *Tyner v. DSHS*, 141 Wn.2d 68 (2000), the court recognized an implied cause of action by parents against the state government for negligent investigation of child abuse claims. The court explained that "by recognizing the deep importance of the parent/child relationship, the Legislature intends a remedy for both the parent and the child if that interest is invaded." *Tyner*, 141 Wn.2d at 80. Although the court distinguished the statutory reporting duty provision from the duty to investigate child abuse provision, the court did so because the case upon which the government had relied, *Warner*, *supra*, did not involve a person who was a member of the class that the statute intended to protect. *Tyner*, 141 Wn.2d at 60. Indeed, in *Warner*, the court explained:

> Warner cannot establish negligence solely on the basis of a violation of the mandatory reporting provisions of RCW 26.44.030. The doctrine of negligence per se has been largely abolished in Washington by statute. The statutory violation can only be used as evidence of negligence. This violation does not provide very strong evidence of negligence, however. Even under the old negligence per se doctrine, a person can only borrow a statutory duty of care to show negligence if the harm that occurs is *the type of harm that statute is designed to prevent and the person claiming it is in the class of persons the statute is designed to protect. That is not the case here.* The reporting statute is designed to secure prompt protection and/or treatment for the victims of child abuse. The class of persons it is designed to protect is the victims, not the abusers. Thus, Warner cannot use the statute to establish negligence on the part of the State.

*Warner*, 125 Wn.2d at 890-91 (emphasis added). By extension, the logical conclusion is that the legislative intent supports the creation of a civil remedy for victims of child sexual abuse when those mandated to report the abuse fail to do so.

Likewise, the Court finds that implying a civil remedy is consistent with the underlying

ORDER
PAGE - 6

purpose of the statute. The declared intent of the statute is "to prevent further abuses, and to safeguard the general welfare of such children." RCW 26.44.010. Implying a civil cause of action against those who are mandated to report child abuse, but fail to do so, will motivate those required to report to take action, and furthers the goals of the statute itself. Accordingly, the Court finds that there is an implied private cause of action stemming from the statutory requirement to report child abuse.

This is not to say that the failure to report constitutes negligence *per se*. As the court stated in *Warner*, *supra*, that statutory violation can be used only as evidence of negligence. Plaintiff will still need to prove all of the elements of a common law negligence claim in order to succeed. Thus, the Court merely finds that violation of the statutory duty to report may provide the basis of a negligence claim, as violation of that duty may be evidence of negligence.

Finally, the Court finds unpersuasive defendants' argument that such a decision will completely supplant the *CJC* test with one that requires only one element. The test set forth in *CJC* was limited to the specific facts of that case. Indeed, the Supreme Court of Washington emphasized that its holding was based on the facts before it several times. For example, the Court stated:

> We find the rationale adopted in *Marquay* persuasive *when analogized to the circumstances presented here*. In particular, we find the conjunction of *four factors present in the case before us decisive* to finding the existence of a duty is not foreclosed as a matter of law . . . *Under these circumstances*, we simply do not agree with the Church that its duty to take protective action was arbitrarily relieved at the church door. . . . *Under these facts*, the focus is not on where or when the harm occurred, but on whether the Church or its individual officials negligently caused the harm by placing its agent into association with the plaintiffs when the risk was, or should have been, known.

*CJC*, 138 Wn.2d at 724 (emphasis added). Nothing in the Court's language suggests that the four factors cited provide the only "test" for finding the existence of a duty to protect, nor does the language suggest that all four factors must exist before a court can find such a duty. Rather, the court found support for its decision that a duty existed, even though the harm did not occur on church property, because the four factors were present in that case.

ORDER
PAGE - 7

1    With this in mind, the Court finds that summary judgment in favor of defendants is not appropriate, and will allow plaintiff to maintain his claim for negligence based on violations of the reporting statute.

**D. Negligence/Special Relationship Claim for Lack of Duty**

Defendants next argue that plaintiff had no duty to plaintiff because no "special relationship" existed between them, and therefore, his claims should be dismissed as a matter of law. Defendants rely on *CJC*, *supra*, arguing that the Supreme Court of Washington has ruled that each of the four *CJC* factors is necessary to establish a duty of care. (Dkt. #65 at 8-9). As noted above in part C., the Court finds defendants' argument erroneous.

In *CJC*, the court did not hold that each of four factors was "necessary" to establish a duty of care. Indeed, the court merely found that because each of the four factors existed, they were persuasive to the court's finding a duty of care. The court then explicitly recognized their previous decisions finding a duty to prevent intentionally inflicted harm where the defendant is in a special relationship with "either" the tortfeasor or the victim, and where the defendant is or should be aware of the risk, noting that its approach was consistent with those cases. *CJC*, 138 Wn.2d at 724.

Nothing in the court's language indicates that the four factors examined in *CJC* were meant to create an absolute test for establishing a duty of care. In fact, the court cautioned that its holding was limited, clarifying that "where a specific protective relationship exists a principal may not turn a blind eye to a known or reasonably foreseeable risk of harm posed by its agents toward those it would otherwise be required to protect simply because the injury is arbitrarily perpetrated off premises or after hours." *Id.* at 727. Notably, the court did not find that such "specific protective relationship" could only be established when all four factors were present. Thus, the court left open the many ways to establish protective relationships, in particular, those to which it had cited within its reasoning. *See CJC*, 138 Wn.2d at 724-25 (noting the various types of relationships giving rise to a "protective" relationship).

ORDER
PAGE - 8

In the instant case, defendants do not dispute that there was a special relationship between them and Mr. LoHolt. Nor is there any dispute that they were aware of the allegations of sexual assault by Mr. LoHolt. Yet they continued to allow him access to children by placing him in supervisory roles in the Boy Scout program. Furthermore, defendants were aware or should have been aware that Mr. LoHolt, while living at the Allenbach compound, would come in contact with numerous children, both the Allenbach children and their friends or fellow church members who came to the property for church-sponsored events. The fact that the abuse occurred off church-premises is of no import. *CJC*, 138 Wn.2d at 724 (finding that the church's "duty to take protective action" was not relieved at the church door).

Likewise, the fact that plaintiff was not a card-carrying member of the church at the time of the abuse is not an automatic exclusion from protection. Indeed, the Supreme Court of Washington has previously held that "[t]he vulnerability of children to sexual abuse by adults who are placed in positions of responsibility and authority over their well-being, whether of a spiritual or temporal nature, does not vary depending upon whether the children are members of the church or simply attend on a regular basis." *Funhouser v. Wilson*, 89 Wn. App. 644, 659 (1998), *aff'd*, *CJC*, *supra*. There is no dispute that plaintiff attended numerous church-sponsored activities with the Allenbach family, and that they actively recruited him to become a member of their church.

Finally, the Court is not persuaded that defendant LDS Social Services does not have a duty to plaintiff. By the nature of its relationship to Jack LoHolt, a duty was created as a matter of law. *Petersen v. State*, 100 Wn.2d 421 (1983) (holding that a therapist or social service counselor has a duty to protect persons from the dangerous propensities of their patients). During the time that Jack LoHolt received sexual deviancy therapy from LDS Social Services, he also began abusing plaintiff. Mr. LoHolt testified in deposition that he was truthful with his counselors about his actions and behaviors. Therefore, it is logical to assume that his LDS Social Services counselors were aware of his propensities to abuse, and would continue to abuse children if he had access to them.

ORDER
PAGE - 9

Accordingly, there arises, at a minimum, a genuine issue of material fact as to whether LDS Social Services owed a duty to protect plaintiff.

For all of these reasons, the Court rejects defendants' argument that they had no duty to plaintiff as a matter of law because they lacked a special relationship with him. The Court will not dismiss plaintiff's claims on that basis.

### E. Equitable Estoppel and Fraudulent Concealment

Defendants argue that plaintiff's claims for equitable estoppel and fraudulent concealment should be dismissed because neither one of those theories is a "claim" under Washington law for which plaintiff can seek damages. (Dkt. #65 at 13-15). As plaintiff himself asserts in his response to the instant motion, and as this Court understood in its previous Order on defendants' motion for summary judgment pertaining to the statute of limitations, plaintiff has asserted those theories only insofar as he sought to toll the statute of limitations.[3] Accordingly, the Court holds plaintiff at his word that he is not asserting, and will not attempt to assert, any affirmative claims based on the theories of equitable estoppel or fraudulent concealment, despite the fact that plaintiff has raised the claims under the "Third Cause of Action" in his Amended Complaint. (Dkt. #29 at 11). On that basis, the Court finds that defendants' arguments on this issue are now MOOT.

### F. Negligent Infliction of Emotional Distress

Defendants argue that plaintiff's claim for negligent infliction of emotional distress is superfluous, given plaintiff's claim for negligence, and should be dismissed. Plaintiff has completely failed to respond to that argument; thus, the Court presumes that plaintiff does not oppose dismissal of that claim. *See* Local Rule CR 7(b)(2) (stating that "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). Accordingly, the Court will grant summary judgment in favor of defendants, and dismiss this claim.

---

[3] The Court declined to address plaintiff's arguments regarding these two theories, having found that his lawsuit was filed within the applicable statute if limitations period, and therefore, no such tolling defenses were necessary. (*See* Dkt. #99 at 9).

ORDER
PAGE - 10

### G. Civil Conspiracy

Plaintiff alleges that "members of the COP conspired to avoid having one of their own, Jack LoHolt, charged and convicted of child abuse. They did so not only to protect LoHolt, but to protect their public image." (Dkt. #80 at 21). To establish a civil conspiracy, plaintiff

> must prove by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy. Mere suspicion or commonality of interests is insufficient to prove a conspiracy.

*Wilson v. State*, 84 Wn. App. 332, 350-51 (1996). Plaintiff has failed to show any evidence, or that he can produce any evidence, that such conspiracy exists.

Indeed, plaintiff has provided no details as to which of defendants' agents were allegedly involved in this conspiracy, when the conspiratorial agreement was made, or who made the agreement. Nor does plaintiff cite to any evidence in the record that supports a finding of conspiracy. To the extent that plaintiff's reference to Bishop Borland's alleged instruction to D.F. to refrain from speaking with others about the abuse of his son is intended to support plaintiff's claim, the Court notes that nothing about that statement suggests there was a conspiratorial agreement to accomplish an unlawful purpose. Furthermore, while plaintiff argues that he has not been able to discover any evidence because defendants are improperly instructing witnesses to claim the penitent-clergy privilege, the Court has ruled that such instruction has not been improper.

Finally, the Court notes that as a matter of law, agreements between agents of the same corporation who are acting on behalf of that corporation cannot qualify as a civil conspiracy under the intracorporate conspiracy doctrine. *See, e.g., Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991). Thus, it does not appear that plaintiff has even asserted a valid claim.

For all of these reasons, the Court will grant defendants' motion for summary judgment and dismiss this claim.

ORDER
PAGE - 11

**H.  Pre-1972 Sexual Abuse Claims**

Defendants next argue that they cannot be held liable for any pre-1972 abuse because it is undisputed that they had no notice of any abuse prior to that year.  For reasons that are not clear to the Court, plaintiff has failed to address a glaring factual discrepancy with that argument.  Namely, Richard Pettit testified, as plaintiff notes in his statement of facts, that he reported the abuse of his son by Jack LoHolt to Bishop Borland in 1971.  (Dkt. #81, Ex. B at 28-33).  Thus, it appears that the church did have notice of Mr. LoHolt's abuse prior to 1972.  For this reason, the Court will not address the parties' legal arguments, and finds that summary judgment on this issue is not appropriate.

**I.  Segregation of Damages Between Intentional and Negligent Tortfeasors**

Defendants have asked for "legal rulings" on the issue of segregation of damages between intentional tortfeasors and negligent tortfeasors; however, defendants' arguments and authority pertain specifically to John Doe and Kenneth Fleming, who are no longer plaintiffs in this case.  Accordingly, it is not clear to this Court what defendants' arguments are on this issue with respect to the instant, and only remaining, plaintiff.  Therefore, the Court declines to make any rulings on the issue at this point in time.

However, nothing in this Order prevents either party from filing a supplemental motion for summary judgment on the sole issue of whether segregation of damages will be required in this case as it now stands.  Should a party decide to file such a motion, it shall be filed no later than July 21, 2006.  Furthermore, no other dispositive motions will be permitted, as the dispositive motion deadline has now passed.

### III. CONCLUSION

Having reviewed defendants' motion for summary judgment (Dkt. #65), plaintiff's response (Dkt. #80), defendants' reply (Dkt. #90), the declarations and evidence in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

1     (1) Defendants' Motion for Summary Judgment pertaining to the merits of plaintiff's claims (Dkt. #65) is GRANTED IN PART and DENIED IN PART as follows:

    a. The Court declines to dismiss plaintiff's negligence claim on the basis that RCW 26.44 does not provide for a private cause of action.

    b. The Court declines to dismiss plaintiff's negligence claim on the basis that defendants do not have a special relationship with plaintiff.

    c. The Court DISMISSES plaintiff's Equitable Estoppel and Fraudulent Concealment claims as MOOT.

    d. The Court DISMISSES plaintiff's Negligent Infliction of Emotional Distress claim.

    e. The Court DISMISSES plaintiff's Civil Conspiracy Claim.

    f. The Court declines to dismiss any of plaintiff's pre-1972 negligence claims on the basis that defendants had no notice of the abuse prior to 1972.

    (2) The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 21 day of March 2006.

*[signature]*

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE