UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, *et al.*, <br><br> Defendants. | CASE NO. C04-2338RSM <br><br> REPORT OF LITIGATION GUARDIAN AD LITEM |

APPLICABLE ORDER

By order dated May 3, 2006, this court appointed the undersigned as Litigation Guardian ad Litem and required that a report be submitted to the court within 21 days of appointment expressing an opinion as to whether guardianship proceedings should be commenced in the Superior Court of Washington to manage the settlement funds of this litigation for Plaintiff John Doe.

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 1 of 11

ANDREW L. BENJAMIN, PLLC
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

ORIGINAL

## SUMMARY OF RECOMMENDATIONS

No referral for the institution of a state court guardianship or limited guardianship action is required, <u>provided</u> that plaintiff John Doe executes a trust governing the net proceeds of settlement, so that his recovery is managed satisfactorily for his benefit. If the plaintiff has not executed same, it is recommended that this court direct the plaintiff's counsel to file a petition for limited guardianship be instituted in the King County Superior Court to protect the estate of John Doe.

## SUMMARY OF INVESTIGATION TAKEN

I spoke with counsel for the plaintiff, Michael Pfau. I reviewed the order appointing the undersigned as litigation guardian ad litem and answers to interrogatories on behalf of the plaintiff. I spoke separately with the wife of the plaintiff, Sharon Allenbach, and Brent Allenbach (brother of John Doe) on May 9, 2006. I met for approximately one hour with John Doe in a private visiting room at the Shelton Corrections Center on May 10, 2006.

## INVESTIGATION

(1) <u>Conversation with Sharon Allenbach</u>: She indicates that she has been married to the plaintiff for 23 years. The couple has three children, ages 20, 19 and 17. They also enjoy two grandchildren, one 3 years old and one 5 months old. Sharon's husband is in prison at Shelton until October of 2006, assuming good behavior. He was sentenced for 13 months in prison for drug (methamphetamine) possession. This was the third time he was arrested for that substance. He was previously arrested once for driving

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 2 of 11

**ANDREW L. BENJAMIN, PLLC**
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

with a suspended license (on account of unpaid traffic tickets and/or lack of insurance). She has visited her husband every weekend, since visitation was approved. He is doing well in prison and getting along with others and with the prison guards, who seem supportive. His spirits are good and he works to maintain other inmates' spirits.

By way of history, she reports that the couple was living last year in Clark County, Washington, in Salmon Creek, near Vancouver. In September of 2005, Sharon had a job offer to work in the Seattle area. As she had not been working full-time and earning much, as there was a shortage of good full-time work, she asked her husband to join her and their youngest child in the move to Seattle. As her husband did not earn much money, she felt like she needed to relocate in order to support herself and the family. Her husband decided to stay behind in Clark County.

Sharon has historically worked in the offices of oral surgeons. She is now employed in Seattle in such an office as a front-desk attendant, and she also helps as an assistant. After her husband refused to move to Seattle, his drug problem worsened and he became homeless. With the wife gone, his drug use was no longer restrained.

During the physical separation, her husband had an affair with a young woman who was also living on the streets, a fellow drug user. Despite this knowledge, Sharon did not file for divorce. Her husband had various drug problems throughout the marriage. She described the challenges of living with someone who was under the influence. She states that her husband has been clean since his confinement began on February 7, 2006. They have been awaiting her husband's primary prison location. He had been scheduled to go to

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 3 of 11

ANDREW L. BENJAMIN, PLLC
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

Coyote Ridge, a minimum security prison in Eastern Washington, but the wife objected, as it would be too far for her to visit. He is scheduled to start work release shortly, so Sharon wrote the prison authorities to try to find a closer location for him. The plaintiff will soon be in work release, looking after some rental properties as a handyman.

Apparently the civil suit in this case was scheduled for trial in April, and the settlement occurred just before then. The wife does not know how much was recovered.

When I asked for her opinion regarding her husband's ability to manage the funds, she stated: "He needs to have the funds in a safe spot." She is concerned that former associates in the Vancouver area and people he met in prison could come looking for her husband, to hit him up for money and/or to offer him drugs. This fear was heightened when the young woman with whom her husband had an affair contacted Sharon and plaintiff John Doe's daughter to try and find out where they all resided. Concerned that the former girlfriend was looking to kidnap their granddaughter, Sharon obtained a restraining order against the woman. She is not too concerned about her husband's future drug use, because she feels like she and his brother can help him keep him clean and sober. Their main goal is to get him far away from the Vancouver area.

Sharon reports that her husband's brother, Brent, is a stable professional who would be very good in helping to manage the money. She would be available to help manage the funds as well, as she has historically paid the family bills. Assuming they get the approval of parole authorities, she wants the couple to relocate outside of the state of Washington to start a new life with their families and grandchildren. Her husband has indicated a desire

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 4 of 11

**ANDREW L. BENJAMIN, PLLC**
**Law Offices**
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

1  to get back to the church, to get into an inpatient rehab program (even though he is now

2  clean), and to have a counselor to talk to and to look into his chemical imbalances.

3        Sharon reports that she does not use drugs, but due the stress just before and after

4  the brief marital separation, she would have one drink each night as a way to cope.

5        (2)   <u>Conversation with Brent Allenbach</u>: The plaintiff's brother indicated to me

6  that he spoke with Sharon and with the plaintiff's attorney regarding the question of funds

7  being distributed to his brother. He felt that logic dictates that it is not wise to "send a kid

8  into a candy store and then wonder why he ate himself sick." He spoke in a low-key way

9  with his brother before the settlement was reached and indicated that he would be willing

10 to assist him in arranging a stable investment that would produce monthly or quarterly

11 income.

12       Brent reports that in addition to the abuse alleged in the complaint, the plaintiff had

13 a rough childhood in other respects. He says that his brother is extraordinarily capable at

14 carpentry, construction and furniture refinishing, but he has limited math and English

15 skills, which might be as low as the fourth-grade level. He says that the plaintiff spent

16 most of life working for their father, who was an oral surgeon by trade, but who had dozens

17 of projects and investments going at any one time. Brent says his brother became a master

18 craftsman and very adept at running heavy equipment. In this respect, he was very capable,

19 but his confidence was low, in part because of failures to pass the exam required to have a

20 contractor's license.

21

22

23 REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 5 of 11

**ANDREW L. BENJAMIN, PLLC**
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

Brent states that his brother is "trusting, naïve, has a big heart and is susceptible to leeches." Brent thinks his brother needs to get as far away as possible, because he is very susceptible to giving money away. Brent reports that he supported his brother a great deal. He is concerned, because intended for his brother's own care and own business ventures money went instead to "friends" who needed the money. For example, Brent sent $2,500 to his brother for first and last month's rent and to fix a car to make it useable. Instead, the money went to third parties or to drugs.

I asked Brent if he had ever served as a fiduciary, and he reports that he is now taking care of their mother's estate, after the father died. He has served as a father figure to his younger brother (he is 48 while his brother is 42). He states that he has no criminal history and holds a Master's Degree in Public Administration. He works in Salt Lake City as an assistant general manager at the Delta Center.

When I asked Brent about the advisability of Sharon serving in a trust capacity, he indicated that most of the family members sympathize with the wife. They believe that Sharon took a lot more grief than most people would have accepted. Even though his younger brother believes that his wife left him when he needed her most, Brent remembers how his younger brother was very abusive during the worst phase of his drug use. Last Christmas, Brent was uncomfortable that his younger brother was living on the streets during the holiday season, so he secured for him a hotel room. Instead of being grateful, his brother called to complain about the need for more money. Brent could not send more money, because his Western Union limit had been exhausted. His brother was angry at

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 6 of 11

**ANDREW L. BENJAMIN, PLLC**
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

this, and he indicated that he would instead punch a hole in the wall, and Brent would then be forced to pay extra that way, as the room was put on his credit card.

Brent is concerned that if his brother was to blow through all of his settlement money, Brent would end up supporting his brother, as there might be no one else to do so. He does not want the money to go to drugs, to his "druggy friends," or to anything wasteful. He is concerned that his brother may also be talking up his settlement to jail friends, and that those people would also be looking to mooch off of his brother.

Brent is willing to serve as a trustee or limited guardian to help manage the funds and make sure the money is available to his brother for the remainder of his life, or for as long as possible, without any waste.

(3) <u>Conversation With John Doe</u>: I went to Shelton Corrections Center to meet with the plaintiff, whom I found to be a charming man. I started off by identifying myself, explaining in detail the order appointing the undersigned and providing him with a copy of my notice of appointment.

I asked him the extent of the settlement, and I asked him why the attorneys or court should be concerned in this situation. He replied that given his drug problems, there was concern that he might relapse into drug use and further deterioration. He described having a 12th grade education from Kent Meridian High School, but that his reading and math is more at a 9th or 10th grade level, due to dyslexia. He describes the reason for his incarceration as possession of methamphetamine. He reports that this was not the first time he had been arrested for this.

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 7 of 11

When asked his work history, he said he worked for his father until he passed away four years ago. He described his father's work activities as vending machines, fitness club, construction, excavating, building cabins in Montana, two oral surgery practices – one in Burien and one in Kent. He said that he thereafter worked for Centrum Corporation building apartment stairs, for Home Depot for a couple years, and also for HomeBase.

I asked the plaintiff for the names of the people that he trusts, to which he identified his wife, his brother, and the rest of the family, including his children.

I asked him if there were people who had hit him up for money over the years, and he confirms that there were drug users in the Vancouver, Washington, area, who had hit him up for money for rent, car payments or other compelling needs. With one of these people, Virginia Falcon, he had a short relationship while the two of them lived on the streets in the fall of 2005.

He described a plan to do a 30-day rehabilitation stint at his next prison facility, saying that he only has Alcoholics Anonymous available at the Shelton facility. On release, he plans to go into a 60-day drug rehabilitation. He plans to live with his wife and eventually move out of state with her.

He has described discussed his federal civil suit with fellow prisoners whom he knew from Vancouver, Washington. Rather than state that the settlement had been achieved, he instead said vaguely that the case was still pending. When asked for the best way to make sure that he got the full benefit of the settlement and did not give the money away to other people or for drugs, he answered, "with a trust."

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 8 of 11

ANDREW L. BENJAMIN, PLLC
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

He describes that he got married in 1983, shortly after the completion of his Mormon mission. He began using cocaine in 1987, went into drug rehab in Tacoma and eventually relapsed. After his father died four years ago, he began recreationally using methamphetamine.

His tentative release date for his conviction for possession of methamphetamine is October 24, 2006. In addition, he has seven or eight traffic tickets for driving without insurance. After his wife left, he had a conviction in March of 2006 for identity theft and forgery, which he is trying to get reversed on appeal. If he gets convicted for this other matter, the plaintiff could be in prison for an additional one to four years.

The plaintiff summed up his situation by saying: "I never thought I'd end up in prison." The psychological testing at depositions in connection with this civil suit trudged up a lot of buried feelings. When asked what his goals were for the work I was doing in this case, he stated he wanted the interest money payable by his brother and wife as co-trustees with most all of the interest payable to him on a monthly basis. In this way, he can maintain his independence, could afford to eventually relocate out of state with the permission of the State of Washington, and he would have full benefit of his funds for as long as possible.

## CONCLUSION / RECOMMENDATION

One of the questions that any guardian ad litem charged with reviewing a potential guardianship case brought in the Superior Court of the State of Washington would have to consider under the guardianship statute is the legislative mandate for approving alternative,

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 9 of 11

**ANDREW L. BENJAMIN, PLLC**
**Law Offices**
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

1 less-restrictive arrangements that could be used in lieu of guardianship. See

2 RCW 11.88.090(5)(f)(iv).

3     If the plaintiff were to execute a trust in favor of his brother and wife as trustees,

4 enabling them to take control over the net settlement corpus, invest the funds wisely and

5 deliver to him sufficient funds to pay off existing debts, pay off court fines, pay off

6 criminal defense counsel and invest the balance with most of the interest thereon payable

7 on a monthly basis, such an alternative program would obviate the need for a guardianship

8 of any sort.

9     Thus, if plaintiff Doe executes such a trust, it is my recommendation that this court

10 not direct the undersigned or plaintiff's counsel, or anyone else for that matter, to institute a

11 petition for limited guardianship, as such would be a largely ineffectual exercise.

12     If, on the other hand, the plaintiff does not execute such a trust, it is my considered

13 opinion that he suffers from several functional problems that justify the protection of his

14 estate through the format of a legal limited guardianship of his estate.

15     First of all, Plaintiff is presently incarcerated and, given the other conviction, that

16 incarceration could potentially last for years. Certainly, someone in prison is unable to

17 manage and dispense funds on the scale of the settlement reached in this case.

18     Second, there is the very real concern that the plaintiff could relapse, if he were to

19 have a seemingly unlimited amount of funds available to buy drugs. It should be under-

20 stood, however, that any program that puts money into this man's hand has a potential of

21 leading him back to drug use. I believe, however, that the benefits of autonomy can

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 10 of 11

**ANDREW L. BENJAMIN, PLLC**
Law Offices
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

1  outweigh the risk of harm if the money is dispensed on a monthly basis, and with the
2  oversight of the wife and brother.
3      Third, there is a real concern that certain groups of people, namely former "friends"
4  who are illegal drug users and/or fellow inmates, could successfully appeal to this
5  plaintiff's generous nature and succeed in milking his estate such that he ends up without
6  any fund to support him for the balance of his life. In this respect, the brother's concern
7  that he could end up eventually being the sole source available to sustain the plaintiff is a
8  very real and scary possibility.
9      Concurrently with filing this report, the undersigned is also filing his fee declaration
10 corresponding to the time employed on this matter. The fee and costs of the undersigned
11 should be paid out of Plaintiff Doe's settlement funds.
12     DATED at Seattle, WA, this 22nd day of May, 2006.

ANDREW L. BENJAMIN, PLLC

_____
ANDREW L. BENJAMIN, WSBA #15223
*Litigation Guardian ad Litem for*
*Plaintiff John Doe*

alb pllc\clients\allenbach\report.doc

REPORT OF LITIGATION GAL
(C04-2338RSM)
Page 11 of 11

**ANDREW L. BENJAMIN, PLLC**
**Law Offices**
720 Third Avenue, Suite 1400
Seattle, Washington 98104-1825
(206) 622-8953

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on May 23, 2006, I electronically filed the foregoing: Notice of Appearance of Litigation Guardian Ad Litem; Fee Declaration of Litigation Guardian Ad Litem; and Report of Guardian Ad Litem with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Charles C. Gordon<br>Jeffrey I. Tilden<br>Gordon Murray Tilden, LLP<br>1001 Fourth Avenue, Ste. 4000<br>Seattle, WA 98154 | |

DATED this 23rd day of May, 2006.

/s/Tanya Garbell
Tanya Garbell
Assistant to Michael T. Pfau,