THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K. and T.D., <br><br>          Plaintiffs, <br><br> vs. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDS, a Utah corporation, <br><br>          Defendants. | NO. 04-2338 RSM <br><br> DECLARATION OF MICHAEL T. PFAU RE: PLAINTIFF R.K.'S OPPOSITION TO DEFENDANT'S MOTION TO TAKE DEPOSITIONS AFTER DISCOVERY CUTOFF <br><br> HEARING DATE: July 14, 2006 |

MICHAEL T. PFAU, being first duly sworn on oath, deposes and states:

1.     I am one of the counsel for plaintiff R.K. in this matter; I make this declaration based on my own personal knowledge.

2.     Attached hereto as **Exhibit A** is a true and correct copy of plaintiff R.K.'s Answers, Responses and Objections to Defendant COP's First Interrogatories and Requests for Production.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

3.  Attached hereto as **Exhibit B** is a true and correct of each of the Declaration of Record Custodians which were received along with R.K.'s medical records from ACT&T.

4.  Depositions of R.K.'s family members and psychologists were not requested until May 2006.

5.  While I agree with Marcus Nash's statement that throughout this case the parties have worked cooperatively in conducting discovery, Marcus Nash also insisted that only limited discovery take place after the discovery cut-off.

6.  Almost one year ago, at that time that former defense counsel and I were working out our agreements relating to continuing discovery in this case, I specifically asked to extend discovery until after completion of the *Doe v. COP* trial. A true and correct copy of my September 27, 2005, letter to Marcus Nash is attached hereto as **Exhibit C.**

7.  Despite my request, defendant declined to extend discovery with the exception of a limited number of depositions. A true and correct copy of Marcus Nash's September 30, 2005, letter to me is attached hereto as **Exhibit D.**

8.  I reiterated my request for an extension of discovery in my October 3, 2005 to Marcus Nash, a true and correct copy of which is attached hereto as **Exhibit E.**

9.  Defendant again denied the request. A true and correct copy of Marcus Nash's letter of October 7, 2005, is attached hereto as **Exhibit F.**

10.  Following the exchange of letters, counsel for the parties participated in multiple e-mail communications and telephone conversations in which agreement on a finite list of depositions which were to occur after discovery cut-off was reached. The bulk of those deposition have already occurred. Only five additional depositions remain to be taken: Three fact witnesses, Ken Keller, Brad Keller, and Richard Dilly, and two expert witnesses,

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Frederick Wise, Ph.D., and Eli Newberger, M.D. A true and correct of my May 10, 2006, letter to Jeff Tilden setting out this list of witnesses is attached hereto as **Exhibit G.**

11.    Attached hereto as **Exhibit H** is a true and correct copy of the declaration of Jon Conte (filed in opposition to defendant's Motions for Summary Judgment).

11.    I am scheduled to begin trial in the case of *P.C. v. Salvation Army,* in King County Superior Court (Cause No. 05-2-02400-3) on July 31, 2006, with Tim Kosnoff, also my co-counsel in the present case. The P.C. case is another case involving damages as a result of childhood sexual abuse. I expect the trial will last four weeks.

12.    Throughout the pendency of this case, COP has refused to mediate plaintiff R.K.'s claims.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


DATED at Seattle, Washington, this 10th day of July, 2006.


/s/ Michael T. Pfau
Michael T. Pfau


PFAU DECL. RE: OPP. TO MTN TO TAKE ADD'L DEPOS. - 3 of 4
(04-2338RSM)
[166904 v4.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

1

2
<u>CERTIFICATE OF SERVICE</u>

3
I, hereby certify that on July 10, 2006, I electronically filed the foregoing

4
DECLARATION OF MICHAEL T. PFAU with the Clerk of the Court using the CM/ECF

5
system which will send notification of such filing to the following:

6

7
| Thomas D. Frey and | |
| Marcus Nash | |
| STAFFORD FREY COOPER | |
| 601 Union Street, Suite 3100 | |
| Seattle, WA 98101-1374 | |

8

9

10

11
    /s/ Michelle A. Menely

Attorney for Plaintiffs, WSBA #728353

12
**GORDON, THOMAS, HONEYWELL,**

13
**MALANCA, PETERSON & DAHEIM, LLP**

600 University, Ste. 2100

14
Seattle, WA 98101

Phone: (206) 676-7500

15
Fax: (206) 676-7575

E-Mail Address: mmenely@gth-law.com

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

# EXHIBIT A

Exhibit A page 5

RETURN COPY

THE HONORABLE RICARDO MARTINEZ

RECEIVED
MAY 0 9 2005
STAFFORD FREY COOPER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING and JOHN DOE,

Plaintiffs,

v.

THE CORPORATION OF THE
PRESIDENT OF THE CHURCH OF JESUS
CHRIST OF LATTER-DAY SAINTS,
a Utah corporation sole, a/k/a "MORMON
CHURCH"; LDS SOCIAL SERVICES
a/k/a LDA FAMILY SERVICES,
a Utah corporation,

Defendants.

NO. C04-2338 RSM

DEFENDANT COP'S FIRST
INTERROGATORIES AND
REQUESTS FOR PRODUCTION
TO PLAINTIFF R.K.

**AND ANSWERS, RESPONSES AND
OBJECTIONS THERETO**

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

INTERROGATORY NO. 1:  Identify your current address and Social Security
Number.

ANSWER:

Robert P. Kelly
15016 S.E. 260th Street
Kent, WA  98042

Social Security No.: 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

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Exhibit A page 6

**INTERROGATORY NO. 2:** Identify your residence addresses since 1962 to date, including the dates that you resided there.

ANSWER:

1962-1998 Address:
15016 S.E. 260th Street
Kent, WA 98042

1998-2001 Address:
4828 East Lake Sammamish Pkwy.
Bellevue, WA 98001

2001-present Address:
15016 S.E. 260th Street
Kent, WA 98042

**INTERROGATORY NO. 3:** State the name and current or last known address all persons (men and women) with whom you have had a romantic, sexual, or dating relationship since the age of twelve (12), including the dates of the relationship.

ANSWER:

Objection on the basis that this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. In addition, this request, which seeks the identity of all persons with whom the plaintiff has had a romantic, sexual or dating relationship from the age of 12, is abusive and is an attempt to harass the plaintiff who is a victim of sexual abuse. Without waiving said objection, I had "significant" romantic relationships with:

Jannette Marburry
Date of Relationship: 1988-1990

Evalyn de Guzman
Date of Relationship: 1990-1991

Jovine Umali
Date of Relationship: 1991-1995

DEF'S 1ST DISCOVERY TO PTF R.K. - 2 of 14
**(C04-2338RSM)**
[139272 v12.doc]

Exhibit A page 7

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Julie Garasi
Date of Relationship:  1995-2001

Michelle Gallagher
Date of Relationship:  2003

Dara Plunkett
Date of Relationship:  2003

Rachelle Cope
Date of Relationship:  2003 to present

INTERROGATORY NO. 4:   Identify all doctors, physicians, osteopaths or other health care providers who have treated or evaluated you.  For each, state the nature of the treatment and approximate date(s) thereof.

ANSWER:

Group Health Cooperative
Redmond, Washington
Treated for excision of cyst in 1990

INTERROGATORY NO. 5:  Identify all psychologists, psychiatrists, counselors or other mental health care providers who have treated or evaluated you.  For each, state the nature of the treatment and approximate date(s) thereof.

ANSWER:

Anger Control Treatment and Therapies, Inc.
Renton, WA
 2001-2002

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

INTERROGATORY NO. 6: Identify all employers (including periods of self-employment) for whom you have worked, and the dates of such employment.

ANSWER:

Todd Beamer High School – Certificated Teaching Position – Biology and Chemistry; 2004-2005 academic school year.

Kent-Meridian High School– Certificated Teaching Position:  Chemistry, Biology & Astronomy [4 preps over 6 periods at 1.2 FTE]-- 2003 & 2004

Pacific Lutheran University – Certificated Teaching Position:  Summer Scholars Program – Chemistry Instructor for Chemistry 101 & Chemistry 201; Summer Sessions 2002 and 2003

Muckelshoot Tribal School –   Substitute Teaching Position::  High School Science/Chemistry/Biology Teacher,   Science Teacher and Director and Administrator of the Enhanced Mentoring Program; 2002-2003 academic year.

Auburn School District – Student Teaching / Certificated Teaching Position: Chemistry/Science Teacher, Political Consultant:  Bond Election, 2002-2003 academic year.

John F. Kennedy Memorial High School; Substitute Teaching Position: Chemistry/Science Teacher; 2001-2002

University of Washington Medical Center – Administrative Specialist, Central Administration, Planning and Capital Projects Department; January 2000 to June 2001

University of Washington Law School –Senior Secretary; September 1997 to January 2000

University of Washington Department of Medicine –Senior Secretary -- Cardiovascular Research Department;  April 1993 to September 1997

The NBBJ Group, Inc. --   Healthcare Management Consultant; Planning Department; January 1992 to April 1992

Children's Hospital and Regional Medical Center: Administrative Fellow, Planning and Marketing Department;  January 1991 to January 1992

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Fred Hutchinson Cancer Research Center:  Administrative Intern; Outpatient Department, September 1989 to January 1991

Analytical Technologies – Chemist; June 1987 to September 1989

REQUEST FOR PRODUCTION NO. 1:  Please produce, for inspection and copying, all employment records in your possession for the employers identified in response to Interrogatory NO. 6.

RESPONSE:

I do not have employment records in my possession.


INTERROGATORY NO. 7:  With respect to the occurrences of inappropriate sexual contact that you attribute to Jack Loholt/Onefrey, please identify the date of such alleged occurrence of sexual contact (to the best of your ability), the place in which the alleged inappropriate sexual contact occurred, and describe the acts of inappropriate sexual contact by Jack Loholt/Onefrey that allegedly took place during this occurrence.

ANSWER:

I first met Jack LoHolt in the early 1970s, after he moved into Herman Allenbach's home in Kent, Washington.  The sexual abuse occurred in the early to mid 1970s when I was in grade school.  I am unaware of the precise dates of abuse, but believe it occurred between the ages of 10-12 years old.  The sexual abuse became more intense and was progressively worse each time Mr. Loholt sexually abused me.

**First Incident of Abuse.**

The first incident occurred in a field near the Allenbach home.  Mr. Loholt lured Jimmy Allenbach, my brother (Tom Kelly) and I to a field near our house.  Mr. Loholt masturbated in front of us.  Jimmy, Tom and I ran down to my house and told my mom.

**Second Incident of Abuse.**

DEF'S 1ST DISCOVERY TO PTF R.K. - 5 of 14
**(C04-2338RSM)**
[139272 v12.doc]

Exhibit A page 10

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

The second incident also occurred in Mr. Loholt's apartment. Just prior to this abuse, I heard that Mr. Loholt was making home-made ice cream and making root beer floats for Jimmy and Ricky Allenbach for about 1-2 weeks. Mr. Loholt approached us as we were playing and talked about making ice cream and asked us if we wanted to have some ice cream. Of course I wanted to make home-made ice cream and make root beer floats.

Jimmy, Ricky, my brother Tom and I went into Mr. Loholt's apartment. Once inside, it seemed like a playful atmosphere. Mr. Loholt encouraged us to play and have fun on his bed. He told us to jump on his bed and I remember Ricky, Jimmy, my brother and I were jumping on his bed. Mr. Loholt then asked us to take our pants off and that it would be more fun. I didn't want to but I saw Jimmy and then Ricky take off their pants. So my brother and I both took our pants off as well. As we were all jumping on his bed with our pants off, Mr. Loholt was helping us so we wouldn't fall off his bed. He touched my crotch area and legs.

Mr. Loholt then started fondling me and taking turns touching our genital areas. Mr. Loholt touched and fondled my penis while I was on his bed. I remember that Mr. Loholt removed Jimmy privately for a time during this sexual assault and they went into another room. After they came back, we again were all jumping on Mr. Loholt's bed. This incident ended with Mr. Loholt taking us into his kitchen area and he showed us his ice cream machine so we could make ice cream in the future. The sexual abuse I suffered from Mr. Loholt always involved deliberate humiliation and intimidation.

**Third Incident of Abuse.**

The third incident also occurred in Mr. Loholt's apartment. Mr. Loholt began playing with us in the recreational room downstairs and asked us if we would like to make some ice cream in his apartment. Jimmy and I then went to into Mr. Loholt's apartment where he was showing us how to stir the ingredients. He began to show us from behind and started touching my penis. Mr. Loholt then went sat down on the end of his bed and asked Jimmy to come over to him. By this time, Mr. Loholt had his pants off and he asked Jimmy and me to touch his penis. We both did.

I didn't want to touch his penis and I told him that I didn't want to. Mr. Loholt was very persistent and kept pushing until we did what he wanted. This incident in Mr. Loholt's apartment seemed to go on forever. He asked Jimmy to touch his penis and to stroke it and Jimmy did. Mr. Loholt then asked me to do the same thing as Jimmy and I did it. Mr. Loholt then asked Jimmy to put his penis into his mouth and Jimmy did it. And then he asked me to do the same thing as Jimmy and I did it. When I tried to refuse, Loholt told me I was "afraid and scared." I felt so lost and I began to cry.

DEF'S 1ST DISCOVERY TO PTF R.K. - 6 of 14
**(C04-2338RSM)**
[139272 v12.doc]

Exhibit A page 11

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

### Fourth Incident of Abuse.

The fourth incident also occurred in Mr. Loholt's apartment. This incident of sexual abuse was similar to the previous incident, except the abuse was more intense. Jimmy and I wanted firecrackers and ice cream and Mr. Loholt offered us some. Once inside his apartment, Mr. Loholt immediately sat down on the end of his bed with his pants off. The firecrackers were on the shelf next to the window in this little box. Mr. Loholt made Jimmy start first. He told Jimmy to lick his penis and to put it into his mouth. Then he told me to do the same thing if I wanted any firecrackers. I felt very humiliated by what Mr. Loholt was saying to me and I began to cry again. This was the first time I can remember that I cried so intense and hard. I was very scared. I put my head in my hands and couldn't take my hands from over my eyes. Eventually, Mr. Loholt wore me down and he got his way. He made me put his penis in my mouth and he grabbed my head and pushed it up and down on his penis. I remember that I couldn't breathe and began to choke and gag. Once I recovered, Mr. Loholt made me do it again and again.

### Fifth Incident of Abuse.

The fifth incident occurred in Mr. Loholt's apartment. On this occasion, Mr. Loholt again lured me into his bedroom but this time I was alone with him. Earlier, I was playing with Jimmy and Ricky in the Allenbach house. I became separated from Jimmy and Ricky and Mr. Loholt drew me into his apartment with the promise of making ice cream and firecrackers. I loved firecrackers and I desperately want some. So I followed Mr. Loholt into his apartment.

Once there, Mr. Loholt did not show me the firecrackers right away. First, he wanted me to take my pants off. I began to cry out of frustration and humiliation. Mr. Loholt began to taunt, tease and make fun of me. He made me feel weak. Eventually, Mr. Loholt wore me down and he asked me to take my pants off and I did. He told me to put his penis into my mouth and so I did. He told me to lick his penis and so I did. This kept going on and on until I saw white stuff come out of his penis.

### Sixth Incident of Abuse.

The sixth incident occurred in Mr. Loholt's apartment. Ricky and I were playing in the Allenbach's back yard. Ricky's mom called him up to the house to have lunch and I began to go home. I heard Mr. Loholt's voice as I passed by his apartment on the way. He asked me if I wanted any more firecrackers. I went into his apartment and he closed the door. Once inside, Mr. Loholt told me that if I wanted any firecrackers, I had to take my pants off. I remember feeling very scared; but he kept talking to me and it seemed to go on forever. Eventually, he made me

DEF'S 1ST DISCOVERY TO PTF R.K. - 7 of 14
**(C04-2338RSM)**
[139272 v12.doc]

Exhibit A page 12

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

lick his penis and put it into my mouth. This time, Mr. Loholt was more rough and violent with me sexually. This seemed to go on forever. I don't even remember if I got any firecrackers this time. I was very scared and confused.

After Mr. Loholt sexually abused me this time, he did something very different. Before I left his apartment, he grabbed me and looked into my eyes and was very intense and angry and said to me, "if you ever tell anyone about this, I will kill you, do you understand me?"  I was petrified and felt frozen inside. I ran home and did not tell anyone.

REQUEST FOR PRODUCTION NO. 2:  Please produce, for inspection and copying, any document that explains, addresses, or concerns any alleged occurrence of inappropriate sexual contact that you attribute to Jack Loholt /Onefrey.

RESPONSE:

Objection on the basis that this request for production, as drafted, calls for the production of documents protected by the attorney-client privilege and/or work product doctrine.  Pursuant to FRCP 26(b)(5), the only responsive document is a privileged correspondence to my attorneys in this matter. Based on this objection, no such non-privileged documents exist.

REQUEST FOR PRODUCTION NO. 3:  Please produce, for inspection and copying, any document that explains, addresses, or concerns any alleged occurrence of inappropriate sexual contact that you attribute to anyone other than Jack Loholt /Onefrey.

RESPONSE:

I do not have any such document.

INTERROGATORY NO. 8:  Identify each person that you informed that you were the victim of inappropriate sexual contact and, to the best of your ability, the date that you informed such person.

ANSWER:

DEF'S 1ST DISCOVERY TO PTF R.K. - 8 of 14
**(C04-2338RSM)**
[139272 v12.doc]

Exhibit A page 13

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Dorothy L. Kelly (mother)    early to mid 1970s

Jerry P. Kelly (father)    early to mid 1970s

My sisters    early to mid 1970s

Evalyn DeGuzman    1990-91

Jovine Umali    1991-95

Julie Garasi    1995-2001

Rachelle Cope    2003

REQUEST FOR PRODUCTION NO. 4:  Please produce, for inspection and copying, any document that you created, sent, or received that communicates to a third person any alleged occurrence of inappropriate sexual contact that you attribute to anyone, including Jack Loholt /Onefrey.

RESPONSE:

Objection on the basis that this request for production, as drafted, calls for the production of documents protected by the attorney-client privilege and/or work product doctrine.  Pursuant to FRCP 26(b)(5), the only document that might be responsive is a privileged correspondence from to my attorneys in this matter.  Based on this objection, no such non-privileged documents exist.

INTERROGATORY NO. 9:  Identify every police officer, detective, prosecutor, or any other person associated with law enforcement that you told you had been the victim of inappropriate sexual contact and, to the best of your ability, the date that you informed such person(s).

ANSWER:

None.

DEF'S 1ST DISCOVERY TO PTF R.K.  - 9 of 14
**(C04-2338RSM)**
[139272 v12.doc]

Exhibit A page 14

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

REQUEST FOR PRODUCTION NO. 5:  Please produce, for inspection and copying, any document that you created, sent, or received that communicates to any police officer, detective, prosecutor or any other person associated with law enforcement that you have been the victim of inappropriate sexual contact.

RESPONSE:

None in my possession.


INTERROGATORY NO. 10:  If you are making a claim for lost wages, please state the amount of such claim.

ANSWER:

I am not making a claim for lost wages.


INTERROGATORY NO. 11:  If you are making a claim for lost earning capacity please state the amount of such claim.

ANSWER:

In order to calculate my lost earning capacity, I need to hire a professional skilled in that area to work with and evaluate the earning capacity I have lost and then render an opinion.  I have not done that to date.  After I obtain such a professional I will release that information.

REQUEST FOR PRODUCTION NO. 6:  If you answered yes to either Interrogatory Nos. 10 or 11 and are making a claim for lost wages or lost earning capacity, please produce, for inspection and copying, all W-2's, check stubs, and federal income tax returns prepared and/or filed by you for the last fifteen (15) years.

RESPONSE:

Objection.  Request for Production No. 6 is overly burdensome.  I will agree to sign a stipulation to have defendants obtain all tax records, along with my attorneys of record.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

**INTERROGATORY NO. 12:** If you are making a claim for expenses incurred for medical or psychological treatment please state the amount of such claim.

ANSWER:

I do not have my medical treatment billing records at this time. I am willing to sign a Stipulation allowing defendants to obtain said records, along with my attorneys of record.

**REQUEST FOR PRODUCTION NO. 7:** Please produce, for inspection and copying, all billing records related to your medical care or psychological care in the period following the first act of alleged inappropriate sexual contact by Jack Loholt /Onefrey.

RESPONSE:

I do not have my mental health treatment billing records at this time. I am willing to sign a Stipulation allowing defendants to obtain said records, along with my attorneys of record.

**INTERROGATORY NO. 13:** For each person intend to use as an expert witness to testify at trial, identify and supply the information required by FRCP 26(2)(A)(B).

ANSWER:

I have not yet determined my expert witnesses, but will disclose experts in accordance with the court's case management schedule or when the expert has completed his opinions.

**REQUEST FOR PRODUCTION NO .8:** Please produce, for inspection and copying, any letters, notes, reports, or other written correspondence generated by all

DEF'S 1ST DISCOVERY TO PTF R.K. - 11 of 14
**(C04-2338RSM)**
[139272 v12.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

experts identified in response to Interrogatory No. 13 relating to the work done or opinions generated.

RESPONSE:

See answer to Interrogatory No. 13.

REQUEST FOR PRODUCTION NO. 9:  Please produce, for inspection and copying, all journals, diaries, or other similar written or recorded recollection of events during your lifetime, concerning Jack Loholt /Onefrey, your family and/or the LDS Church.

RESPONSE:

I have no such records.

REQUEST FOR PRODUCTION NO. 10:  Please produce for inspection and copying any photographs or videos depicting you and Jack Loholt /Onefrey taken by you and/or Jack Loholt/Onefrey.

RESPONSE:

I have no photographs or videos.

DEF'S 1ST DISCOVERY TO PTF R.K.  - 12 of 14
(C04-2338RSM)
[139272 v12.doc]

Exhibit A page 17

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

## VERIFICATION

STATE OF _____)
                              ) ss.
COUNTY OF _____)

    Robert Kelly, being first duly sworn on oath, deposes and states:

    I am the plaintiff herein, have read the foregoing Interrogatories and Requests for Production, and answers and responses thereto, and believe the same to be true and correct.

_____

    SUBSCRIBED AND SWORN to before me this _____ day of _____, 2005.

_____
Signature
Print Name: _____
NOTARY PUBLIC in and for the State of
_____, residing at _____
My Commission Expires: _____

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

## ATTORNEY CERTIFICATION

ANSWERS DATED: _____5/5/_____, 2005.

The undersigned attorney has read and/or reviewed the foregoing answers to interrogatories, responses and objections to requests for production and certifies that they comply with FRCP 26, 33, and 34.

GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

By_____
Michael T. Pfau, WSBA No. 24649
mpfau@gth-law.com
Attorneys for Plaintiffs

DEF'S 1ST DISCOVERY TO PTF R.K. - 14 of 14
(C04-2338RSM)
[139272 v12.doc]

Exhibit A page 19

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

*honoit* *Discovery Notebook to Plaintiff RK*

LAW OFFICES

GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

SEATTLE OFFICE
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500
FACSIMILE (206) 676-7575
REPLY TO SEATTLE OFFICE

TACOMA OFFICE
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500
FACSIMILE (253) 620-6565

**Johnnie Dano**
Direct: (206) 676-7512
E-mail: jdano@gth-law.com

May 26, 2005

Mr. Thomas Frey
Mr. Marcus Nash
Stafford Frey Cooper
601 Union Street, Suite 3100
Seattle, WA 98101-1374

RE:    Fleming v. LDS

Dear Messrs. Frey and Nash:

Enclosed please find Verification pages from Todd Denny and Robert Kelly relative to the first set of discovery from your clients.

Sincerely,

Johnnie Dano
Paralegal

JD/s
Enclosures

Exhibit A page 20

[143746 v01.doc]

1

## VERIFICATION

STATE OF *Washington* )
                                        ) ss.
COUNTY OF *King* )

3

4

5   Robert Kelly, being first duly sworn on oath, deposes and states:

6   I am the plaintiff herein, have read the foregoing Interrogatories and Requests
for Production, and answers and responses thereto, and believe the same to be true
7   and correct.

8   _____ *(signature)* _____

9

10   SUBSCRIBED AND SWORN to before me this *13* day of *May*,

11   2005.

12   _____ *(signature)* _____
Signature
13   Print Name: *Linda Marie Holden*
14   NOTARY PUBLIC in and for the State of
*Washington*, residing at *Covington*
16   My Commission Expires: *June 7, 2008*

[Notary stamp:]
Notary Public
State of Washington
LINDA MARIE HOLDEN
My Appointment Expires Jun 7, 2008

17

18

19

20

21

22

23

24

25

26

DEF'S 1ST DISCOVERY TO PTF R.K. - 13 of 14
**(C04-2338RSM)**
[139272 v12.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

# EXHIBIT B

## DECLARATION OF CUSTODIAN OF RECORDS

RECORDS ON (Patient Name): _Robert Kelly_

D.O.B. _06/26/1962_ S.S.N. _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_ Facility: _Anger Control Treatment & Therapies_

I, the duly authorized custodian of records, having the authority to certify the records, declare the following:

**1. DESCRIPTION OF RECORDS PRODUCED: (Must select at least one)**
___Medical  ___Billing  ___X-ray Film  ___Police  ___Claims History
___Other_____
The records contain_____(number of) pages / films / slides / videos (circle one).
The records are for the following dates of service:_____
_X_The records were prepared by the personnel of the business in the ordinary course of business at or near the time of the act, condition, or event.

**2. THE RECORDS INDICTED BELOW WERE REQUESTED BUT DO NOT EXIST: (Select all that apply)**
___Medical  ___Billing  ___X-ray Film  ___Police  ___Claims History
_X_Other/Explanation _Domestic Violence report dated 4/7/07 pg 2 of 2_

**3. CERTIFICATION OF RECORDS COPIED OR OBTAINED: (Must select at least one)**
___The produced records are a true copy of all the records described in the Authorization.
___The following records were omitted or could not be produced at this time for the following reason:
_does not exist in file_

**4. CERTIFICATION OF NO RECORDS: (Must select at least one)**
_X_A thorough search of our files, carried out under my direction, revealed no documents, records or other material called for in the Authorization.
___Existing records are not within the time limitation set forth in the request.
___All records have been destroyed in accordance with our document retention policy.
___Other explanation:_____

I, the undersigned custodian of the records, do hereby certify that the attached Medical Record of the above-referenced patient is a duplicate of any and all documents or other recorded form of information kept by the above-referenced facility or physician concerning that patient. Such documents or other information: (1) record regularly conducted activity of above-referenced facility or physician, (2) were made, at or near the time of the occurrence of the matters set forth, by, (or from information transmitted by) a person with knowledge of those matters;, and/or are kept in the course of the regularly conducted activity, and (3) were made by the regularly conducted activity as a regular practice. Also included herewith are records or other information that may have been generated from other sources or other healthcare providers but which are kept in the file of the above-referenced patient as a matter of regularly conducted activity of the above-referenced facility or physician. This declaration is made under oath subject to the penalty of perjury.

Executed at: _651 Strander Blvd #120 Tukwila, WA 98188_
            Street Address      City      State      Zip Code

Print Name _Amelia Ates_ Signed _Amelia Ates_ Date _8/18/05_

CERTIFICATION OF PROFESSIONAL PHOTOCOPIER

I, the undersigned, declare that I made true copies of all of the original records that were given to me by the Custodian of Records at the above named location. I declare under penalty of perjury that the foregoing is true and correct.

Executed at:_____
            Street Address      City      State      Zip Code

Print Name_____Signed_____Date_____

Exhibit B page 23

or **TRACKING #W325-100059**

## DECLARATION OF CUSTODIAN OF RECORDS

RECORDS ON (Patient Name): ROBERT P. KELLY

D.O.B.: 6/26/1962 S.S.N.: 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 Facility: ACT₅T-SOUTH

I, the duly authorized custodian of records, having the authority to certify the records, declare the following:

**1. DESCRIPTION OF RECORDS PRODUCED:** (Must select at least one)
___Medical ___Billing ___X-ray Film ___Police ___Claims History
X_Other All DOMESTIC VIOLENCE PERPETRATOR FILE
The records contain 305 (number of pages) films / slides / videos (circle one)
The records are for the following dates of service: 4/26/01 → 7/11/02
The records were prepared by the personnel of the business in the ordinary course of business at or near the time of the act, condition, or event.

Please note (

**2. THE RECORDS INDICTED BELOW WERE REQUESTED BUT DO NOT EXIST:** (Select all that apply)
___Medical X_Billing ___X-ray Film ___Police ___Claims History
___Other/Explanation X each based business - can take attendence weekly free$50 per grup/monthly 60 per month - )

**3. CERTIFICATION OF RECORDS COPIED OR OBTAINED:** (Must select at least one)
X_The produced records are a true copy of all the records described in the Authorization.
X_The following records were omitted or could not be produced at this time for the following reason:
Progress notes

**4. CERTIFICATION OF NO RECORDS:** (Must select at least one)
X_A thorough search of our files, carried out under my direction, revealed no documents, records or other material called for in the Authorization.
___Existing records are not within the time limitation set forth in the request.
___All records have been destroyed in accordance with our document retention policy.
___Other explanation:

I, the undersigned custodian of the records, do hereby certify that the attached Medical Record of the above-referenced patient is a duplicate of any and all documents or other recorded form of information kept by the above-referenced facility or physician concerning that patient. Such documents or other information: (1) record regularly conducted activity of above-referenced facility or physician, (2) were made, at or near the time of occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;, and/or are kept in the course of the regularly conducted activity, and (3) were made by the regularly conducted activity as a regular practice. Also included herewith are records or other information that may have been generated from other sources or other healthcare providers but which are kept in the file of the above-referenced patient as a matter of regularly conducted activity of the above-referenced facility or physician. This declaration is made under oath subject to the penalty of perjury.

Executed at: 651 STRANDER BLVD. #120, TUKWILA, WA, 98188
    Street Address       City       State      Zip Code
Print Name KEITH D. Waterland    Signed _____ Date 6/15/05

### CERTIFICATION OF PROFESSIONAL PHOTOCOPIER

I, the undersigned, declare that I made true copies of all of the original records that were given to me by the Custodian of Records at the above named location. I declare under penalty of perjury that the foregoing is true and correct.

Executed at: _____
    Street Address       City       State      Zip Code
Print Name_____ Signed_____ Date_____

Exhibit B page 24

# EXHIBIT C

Exhibit C page 25

EXHIBIT C

LAW OFFICES

# GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

SEATTLE OFFICE
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500
FACSIMILE (206) 676-7575
REPLY TO SEATTLE OFFICE

TACOMA OFFICE
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500
FACSIMILE (253) 620-6565

**Michael T. Pfau**
Direct: (206) 676-7533
E-mail: mpfau@gth-law.com

September 27, 2005

*VIA HAND DELIVERY AND FACSIMILE*

Mr. Marcus B. Nash Esq.
Stafford Frey Cooper
601 Union Street, Ste 4400
Seattle, WA  98101-1374

      **RE:**   *LoHolt, et.al. adv. Fleming, et.al.*

Dear Marcus:

      I want to follow up on a number of conversations I have had with Tom Frey and also address a number of the outstanding issues regarding discovery.

      We are awaiting dates from Dr. Conte and Dr. Greenberg for their depositions.  When we have those dates secured, we will contact your office.

      With regard to Bishop Pettit, it is my understanding that he is in Australia and that you are willing to present him for deposition when he returns to the United States in November or December of this year.  We would like to take both a short discovery deposition and also videotape his trial testimony when he returns.  Please provide some assurance that he will be returning or assurance that you will not object if we initiate the process of taking his deposition in Australia if he does not return by year's end.

      With regard to your expert disclosures, you have disclosed Drs. Hegyvary, Dreiblatt and then provided a "rebuttal" disclosure of Dr. Frederick Weiss.  None of those experts provided reports per the court's case schedule.  You have requested that you be allowed to conduct DMEs and depositions of your experts after the discovery cutoff.  Furthermore, Dr. Weiss is not truly a rebuttal expert, but is your defense medical examiner for two of our clients.  That being said, I am willing to work with you and extend the discovery cutoff to the extent your client is mutually

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

September 27, 2005
Page 2

willing to extend the discovery cutoff so that both parties are allowed to engage in meaningful discovery they need to assess and try their case. This would include Loholt's deposition, to the extent that we were unable to secure it before the discovery cutoff, and any secondary depositions we deem we need following the wave of depositions we have noted this month. I do not anticipate any secondary depositions, but I do not want to be foreclosed from this. I will also need to depose your experts. Please provide dates for the depositions.

Also, we intend to serve you with notice of a rebuttal witness in response to Dr. Dreiblatt's opinion. While I realize the rules allow us to list rebuttal witnesses at any time, the expert deposition may need to be conducted following the discovery cutoff.

I would like to discuss these global issues with you and obtain some agreement with regard to finishing discovery, given the fact that the Cavalieri case will be tried during the last week of October.

Very truly yours,

Michael T. Pfau

MTP:tg

Exhibit C page 27

[151346 v05.doc]

# EXHIBIT D

# STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100   Seattle WA 98101.1374   TEL 206.623.9900   FAX 206.624.6885

September 30, 2005

*Via Fax & Mail*

Mr. Michael T. Pfau
Gordon Thomas Honeywell
600 University Street, Suite 2100
Seattle, WA  98101-4185

Re:   *Fleming, et al. v. COP, et al.*

Dear Mike:

I am in receipt of your letter dated September 27, 2005, as well as your letter of September 26, 2005.

As we recently discussed, defendants are not willing to agree to an across-the-board extension of the discovery cutoff date.  We are, however, willing to work cooperatively in facilitating the depositions of the following individuals even after the discovery cutoff date of October 31, 2005:  Bishop Pettit and Doctors Greenberg, Conte, Hegyvary, Dreiblatt and Wise.  We just learned that Bishop Pettit will return from Australia at the end of October, but have not yet confirmed what dates he will be available for deposition upon his return.  We surmise that he will be available for deposition either at the end of October (an inopportune time, given that we will be in trial), or as soon after the Cavalieri trial as possible.

As explained, the reason why Doctors Hegyvary and Wise did not provide reports is because Doctors Greenberg and Conte had not yet completed their evaluations of at least some of the plaintiffs, which makes it impossible for them to complete their work.  We will forward available deposition dates for our experts once they have had an opportunity to evaluate the plaintiffs and prepare their reports.

This will also confirm that you informed me that you intend to identify an expert witness to rebut Dr. Dreiblatt's opinions.

Please do not hesitate to give me a call if you have any questions or concerns or if this correspondence is unclear in any way.

Very truly yours,

Marcus B. Nash

Exhibit J page 29

# EXHIBIT E

LAW OFFICES

# GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

SEATTLE OFFICE
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500
FACSIMILE (206) 676-7575
REPLY TO SEATTLE OFFICE

TACOMA OFFICE
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500
FACSIMILE (253) 620-6565

Michael T. Pfau
Direct: (206) 676-7533
E-mail: mpfau@gth-law.com

October 3, 2005

***VIA EMAIL AND FIRST CLASS MAIL***

Mr. Marcus B. Nash Esq.
Stafford Frey Cooper
601 Union Street, Ste 4400
Seattle, WA 98101-1374

**RE:**   *LoHolt, et.al. adv. Fleming, et.al.*

Dear Marcus:

Thank you for your correspondence of September 30, 2005. This solves some, but not all of the discovery issues that I have raised in my previous conversations with you and letters to you.

First and foremost, thank you for confirmation that Bishop Pettit will return from Australia at the end of October and your willingness to make him available for deposition following the Cavalieri trial. In reliance on this confirmation, we will not move the court for resolution of this issue.

I also acknowledge your willingness to conduct expert discovery after the discovery cutoff date. The problem with this extension of discovery is it is only the defendant, not the plaintiffs, who benefits by extending the discovery cutoff.

I understand the defendant's position with regard to why you did not file expert opinions or reports. Indeed, I had a conversation with Tom Frey of your office about Dr. Hegyvary and indicated that we were willing to be flexible with regard to his opinion. I also acknowledge that Dr. Greenberg had not finished his examination of Jim Allenbach due to extenuating circumstances, i.e., the fact that Jim was extremely distraught and potentially suicidal on the day that Dr. Greenberg saw him. However, there is no valid reason why the defendants have failed

[151850 v05.doc]    Exhibit E page 31

FILE COPY

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

October 3, 2005
Page 2

to adhere to the clear dictates of the federal rules with regard to the date and procedure for serving expert reports altogether. The rules do not contemplate that experts retained by the defendants are necessarily "rebuttal experts" whose opinions cannot be completed until after plaintiff's experts have performed all their work. That is an advantage the rule does not contemplate and which you impermissibly read into the rule. While it may assist your doctors in formulating their opinions to wait until the plaintiff's experts have issued reports, nothing barred you from setting up DMEs of our clients in a timely fashion and having them evaluated by your experts prior to the date the expert reports were due.

I have signaled a willingness, to both you and Mr. Frey, to cooperate in discovery and that is indeed my intent, but that cooperation cannot be one-sided. Toward that end, we will make our clients available to be evaluated by your doctors even though you have failed to provide expert reports by the date they were due and even though it does not allow us time to depose them within the discovery period. Likewise, I seek your cooperation and agreement in the areas I have stated, namely deposing Loholt after the discovery cutoff, if so necessary, and your willingness to allow any additional discovery that arises from the present depositions, within reason.

Both sides agree that discovery in this case has been complicated by the fact that all lawyers involved in this case will also be trying a different case in King County Superior Court in October. Accordingly, we will continue to cooperate with you, but intend to move to strike your expert opinions as untimely if the cooperation is not reciprocal.

Very truly yours,

Michael T. Pfau

MTP:tg
Cc:    Tim Kosnoff

Exhibit E page 32

[151850 v05.doc]

# EXHIBIT F

Exhibit F page 33

GORDON, THOMAS, HONEYWELL
MALANCA, PETERSON & DAHEIM L.L.P

OCT 1 ? 2005
LOHOLT
COOP

# STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100, Seattle, WA  98101-1374  TEL  (206) 623-9900  FAX  (206) 624-6885

October 7, 2005

**Via U.S. Mail & Fax: (206) 676-7575**

Michael T. Pfau
Gordon Thomas Honeywell Malanca Peterson & Daheim
600 University Street, Suite 2100
Seattle, WA  98101-4185

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
600 University Street, Suite 2100
Seattle, WA  98101-4185

> Re:    Fleming, et al. v. COP, et al.
>         Our File:  7566-025226

Gentlemen:

This letter will confirm our CR 37(a)(2)(A) conference relating to deposition discovery in this case.  To date, we have been able to work cooperatively in completing the discovery that needs to be done.  Following the deposition of Mr. Jensen, we met and agreed as follows: (1) that you will continue to attempt to schedule the deposition of Mr. LoHolt prior to the discovery deadline if possible; and (2) that you would give me a list of the witnesses you would like to depose after the discovery cut-off.

You indicated that if we continue to cooperate in discovery, you would not move the Court for an order striking our expert witnesses.  While I maintain that the parties have already agreed that COP may use their identified experts, I have nonetheless indicated to you that we do intend to continue to work cooperatively within reason, in the conduct of discovery in this case.  However, I cautioned that we are not agreeable to a carte blanche extension of the discovery cut-off, and that any extension of discovery would have to be done on a witness-by-witness basis so that the decisions are made with some specificity as opposed to just a general discussion.  Again, we wish to cooperate in the conduct of discovery in this case, but on a witness-specific basis.  Thus, I ask that you give me a list of the witnesses, and I will do likewise.

The list of post-deadline discovery to be completed within a reasonable amount of time may include: (1) selected fact witnesses to which we mutually agree; (2) depending on the circumstances, Jack LoHolt's deposition may need to be taken after the discovery cut-off, depending on how quickly his deposition can be arranged; (3) if necessary, depositions of Richard Pettit and Don Boren may be taken before or after discovery cut-off – assuming that we cannot find open dates prior to the Cavalieri trial;

Exhibit F page 34

**FILE COPY**

Marcus B. Nash  Dir Tel: (206) 667-8241 Dir Fax: (206) 748-9032 mnash@staffordfrey.com  www.staffordfrey.com
ADMITTED IN Washington

Michael T. Pfau
Timothy D. Kosnoff
Re: Fleming, et al. vs COP, et al.
October 7, 2005
Page 2

(4) in addition to those fact witnesses you have identified (which I ask be confirmed in writing), we hereby inform you that we intend to depose Arlene Land, Linda Herman, and Tony Asworth; and (5) we intend to depose your experts, including your rebuttal expert. If you will cooperate in calendaring the depositions of these individuals, our office will work with your office in arranging our respective schedules; otherwise, because of the impending deadline, we will be forced to simply note the depositions.

You stated your intent to move the Court to compel Bishop Borland to respond to certain questions regarding conversations which were asserted in his deposition to be privileged and/or confidential under both the First Amendment and the Priest-Penitent privilege statute. I suggested that you supply me with a list of questions which you wish to ask him, and frankly do not recall whether you agreed to supply the list or not. We disagreed as to the scope of the protection afforded by the Priest-Penitent privilege statue, as well as under the First Amendment for clergy-parishioner spiritual counseling in the religious context.

Lastly, given the recent spate of cancellations and re-schedulings of depositions, I suggest that your assistant, Johnnie, call Mary Ann and that a new, updated discovery schedule be provided so that each of us is aware of what discovery remains to be completed.

Please do not hesitate to give me a call or to reply in writing if you feel that my letter is inaccurate or incomplete in any way.

Very truly yours,

STAFFORD FREY COOPER

Marcus B. Nash
Attorney at Law

MBN/as
cc: Thomas D. Frey

Exhibit F page 35

# EXHIBIT G

LAW OFFICES

# GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

SEATTLE OFFICE
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500
FACSIMILE (206) 676-7575
REPLY TO SEATTLE OFFICE

TACOMA OFFICE
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500
FACSIMILE (253) 620-6565

**Michael T. Pfau**
Direct: (206) 676-7533
E-mail: mpfau@gth-law.com

May 10, 2006

*VIA FACSIMILE AND FIRST CLASS MAIL*

Jeffrey I. Tilden
Gordon Murray Tilden, LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007

  RE: Fleming v. LDS

Dear Mr. Tilden:

  We are in receipt of your letter regarding additional depositions.  We have gone back through our file to determine what, if any, additional discovery had been agreed on by the parties prior to briefing and hearing on Defendant' Motion for Summary Judgment.  It appears that we agreed to continue the following depositions:  Frederick Wise, Ph.D., Ken Keller, Brad Keller, Richard Dilley, and Eli Newberger, M.D.  I am happy to set dates for those.  The additional depositions that you requested had not been agreed to.  Accordingly, I cannot agree to set them.

  Please feel free to call if you have any questions.

    Very truly yours,

    Michael T. Pfau

MTP:tg

[163163 v04.doc]   Exhibit 6 page 37

# EXHIBIT H

THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING, JOHN DOE, R.K. and
T.D.,

               Plaintiffs,

      v.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole, a/d/a "MORMON CHURCH"; LDS
SOCIAL SERVICES a/d/a LDA FAMILY
SERVICES, a Utah corporation,

               Defendants.

NO. C04-2338 RSM

**DECLARATION OF JON CONTE
REGARDING R.K.**

I, Jon R. Conte, Ph.D., under penalty of perjury under the laws of the State of
Washington, hereby declare as follows:

    1.    I am a Professor at the School of Social Work, University of Washington,
Seattle, Washington, am over the age of 18, and am competent to testify as follows:

    2.    I have been on the faculty at the University of Washington since 1990. In that
capacity, I teach courses on social work practice, child abuse and trauma, and psychotherapy.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

3.      I am currently on the Editorial Board of Child Abuse and Neglect.  I am the Editor of the <u>Journal of Interpersonal Violence</u> and the Editor of <u>Trauma, Violence, and Abuse:  A Review Journal</u>.

4.      I am the Immediate Past President and was the first President of the American Professional Society on the Abuse of Children.  I am on the Board of Councilors of the International Society for the Prevention of Child Abuse and Neglect.

5.      I am the author of approximately 50 scientific and academic publications in peer-reviewed journals or book chapters.  Over my career, I have lectured frequently at national or international professional and scientific meetings before multidisciplinary audiences of psychologists, physicians, attorneys, social workers and other professionals.

6.      I have been qualified to testify as an expert on various aspects of childhood sexual abuse, trauma and other forensic issues.  I have testified as an expert in the following states and countries:  Washington, Oregon, California, Illinois, Wisconsin, Florida, Virginia, New Hampshire, Colorado and Canada.

7.      I maintained a small private practice on Mercer Island, Washington where I specialized in psychotherapy with individual youth and adults; most of whom have been sexually abused in childhood.  I currently am engaged in the practice of forensic mental health.  In this capacity, I have evaluated over 4,000 individual children, teens and adults who allege psychological damages from sexual abuse in childhood.

8.      Psychotherapy of traumatized individuals inherently involves assisting the traumatized individual to understand the connection between the trauma and the various harms which result from the trauma.  This is a complex process which is central to therapy.

DECLARATION OF JON CONTE. - 2 of 7
(C04-2338 RSM)
[157819 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

9.    I provide this declaration in response to defendants' Motion for Summary Judgment.  In conducting my evaluation I interviewed Mr. Kelly for about six hours on August 31, 2005.    I also had Mr. Kelly complete certain measures of psychological functioning and I reviewed his deposition testimony and reviewed other documents.

10.    Mr. Kelly is extremely symptomatic.    At age 42, he lives at home with his parents because that is where he feels safe.  It should be noted that Mr. Kelly is unpracticed in telling his life story.  He does not appear to be particularly psychologically minded.  He has never had counseling for the sexual abuse he suffered.  He told me that one of the reasons he was looking forward to the evaluation is that he did not understand how the abuse has impacted his life.  It is my opinion that he has limited understanding of how the sexual abuse in his life has impacted him.

11.    Mr. Kelly is a man with limited understanding of his own behavior, its origins or why he behaves as he does.  He reports engaging in adolescent-like conflicts with the students he presently teaches and has no appreciation that because of the abuse he acts and feels emotionally like an adolescent himself at times.  This behavior illustrates the extent to which he has no insight into his own behavior, is not psychologically minded, and does not make the connection between this behavior, the abuse, and the other events in his life which are associated with the behavior.  The mental health term for the mental condition when a behavior is seen as normal, does not cause the person to wonder why he engages in it, and has no sense that it should be changed is "egosyntonic".

12.    The capacity to make a connection between an event such as abuse and its harms requires a complex mental process.  It is a process which is particularly difficult for

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

adults abused in childhood because of the very nature of child development. The developmental imperative is to move forward with growth. Children typically put painful experiences out of mind or awareness. Children are extremely adept at defending against painful experiences by denial and suppression. A fifteen year old boy who has pushed thoughts about abuse out of his mind that happened when he was ten has spent one-third of his life not thinking about an experience. A person must regard the behavior as not normal, must wonder why he engages in it, and must have some negative emotion attached to the behavior before he wants to change it and before he can be said to appreciate the connection between the behavior (harm) and some event. The mental health term for this is that the behavior must be "ego dystonic".

13.    Much of Mr. Kellys' early adult life was filled with marginal employment, relationship difficulties and interpersonal conflicts. He has been focused on real world problems (such as divorce, employment) and has a significant number of other symptoms which also tend to preoccupy his mental awareness and energy.

14.    As I reported in my September 2005 evaluation report, this is a man with significant symptoms. To evaluate those symptoms I conducted certain tests. I had Mr. Kelly complete a Symptom Assessment - 45 Questionnaire which is a brief symptom checklist providing a rapid assessment of an individual's functioning in comparison to a non-patient sample on typical mental health symptoms. Mr. Kelly reports "extremely atypical" symptom functioning on anxiety, depression, obsessive-compulsive, phobic anxiety, hostility, interpersonal sensitivity, paranoid ideation, and psychoticism. He reports "moderately atypical" levels of somatization.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

15.    I also had Mr. Kelly complete a Trauma Symptom Inventory (TSI) which is a well respected measure of the effects of trauma; especially sexual trauma. The resulting profile indicates significant levels of anxious arousal, depression, anger/irritability, intrusive experiences, defensive avoidance, sexual concerns, dysfunctional sexual behavior, impaired self-reference, and tension reduction behavior.

17.    I also had Mr. Kelly complete a Detailed Assessment of Posttraumatic Stress (DAPS) which provides a more complete assessment of post traumatic stress symptoms. The results indicate that he is not trying to present himself in an overly positive or especially negative or pathological manner. Results indicate that he is reporting significant levels of post traumatic response with significant levels of impairment. A diagnosis of post traumatic stress disorder, chronic is appropriate based on his self report and on the DAPS results. Results point to the fact that he experienced significant levels of dissociation at the time of the abuse and that he currently reports significant levels of post traumatic stress including re-experiencing, avoidance, and hyper-arousal symptoms. I believe he suffers from these symptoms as the result of the childhood sexual abuse.

18.    This is a man who had an overwhelming negative experience in the sexual abuse during his youth. He was threatened not to report it. He has had a symptomatic, distressed, and conflict-ridden life since and lacks the psychological mindedness or capacity to understand that these symptoms are, at least in large part, the result of sexual abuse during his youth. Knowing the fact that one was abused is not the same thing as understanding how that experience has harmed you. Knowing that the abuse was wrong is also not the same as knowing one has been harmed. Mr. Kelly has limited understanding of these connections. As

DECLARATION OF JON CONTE. - 5 of 7
(C04-2338 RSM)
[157819 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

of the date I evaluated him he was not able to appreciate the connections. He likely will not

be able to appreciate the connections until he has years of therapy.

I certify under penalty of perjury, under the laws of the State of Washington and the

United States, that the foregoing is true and correct

DATED this 30th day of January, 2006 at _Mercer Island_, Washington


_____

JON CONTE

DECLARATION OF JON CONTE. - 6 of 7
(C04-2338 RSM)
[157819 v11.doc]

Exhibit H page 44

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575