1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., | NO.  04-2338 RSM |
| Plaintiffs, | DECLARATION OF MICHAEL ROSENBERGER IN SUPPORT OF DEFENDANT'S MOTION TO AMEND ANSWER TO ADD AT-FAULT ENTITY |
| v. | |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDS, a Utah corporation, | |
| Defendants. | |

Michael Rosenberger, being duly sworn on oath, deposes and says:

1.      I am one of the counsel for the Defendants in this matter.

2.      Attached as Exhibit A is a true and accurate copy of the excerpts from the Deposition of Robert Kelly.

3.      Attached as Exhibit B is a true and accurate copy of excerpts from the Deposition of Dorothy Kelly.

DECLARATION OF MICHAEL ROSENBERGER IN
SUPPORT OF DEFENDANT'S MOTION TO AMEND
ANSWER TO ADD AT-FAULT ENTITY - 1
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

1
2    **I declare under the laws of the State of Washington and of the United States that the**
3    **foregoing is true and correct.**
4
5        DATED this _17th_ day of July, 2006.
6
7
8
9                                    _____
10                                   Michael Rosenberger
11
12

DECLARATION OF MICHAEL ROSENBERGER IN
SUPPORT OF DEFENDANT'S MOTION TO AMEND
ANSWER TO ADD AT-FAULT ENTITY - 2
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on _July 17_, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following. The parties will additionally be served in the manner indicated.

| | |
|---|---|
| Michael T. Pfau<br>Gordon, Thomas, Honeywell, Malanca,<br>Peterson & Daheim LLP<br>P.O. Box 1157<br>Tacoma, WA 98401-1157<br>Telephone:   (206) 676-7500<br>Facsimile:   (206) 676-7575<br>E-Mail:   mpfau@gth-law.com<br><br>( ) Mail        ( ) Hand Delivery<br>( ) Fax         ( ) Federal Express | Timothy D. Kosnoff<br>Law Offices of Timothy D. Kosnoff, P.C.<br>600 University Street, Suite 2101<br>Seattle, WA 98101<br>Telephone:   (206) 676-7610<br>Facsimile:   (425) 837-9692<br>E-Mail:   timkosnoff@comcast.net<br><br>( ) Mail        ( ) Hand Delivery<br>( ) Fax         ( ) Federal Express |

**GORDON MURRAY TILDEN** LLP


By _[signature]_
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the
President of the Church of Jesus Christ of
Latter-Day Saints
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: jtilden@gmtlaw.com

DECLARATION OF MICHAEL ROSENBERGER IN
SUPPORT OF DEFENDANT'S MOTION TO AMEND
ANSWER TO ADD AT-FAULT ENTITY - 3
No. 04-2338 RSM

**GORDON MURRAY TILDEN** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING and JOHN DOE,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>THE CORPORATION OF THE PRESIDENT OF THE<br>CHURCH OF JESUS CHRIST OF LATTER-DAY<br>SAINTS, a Utah corporation sole, a/k/a<br>"MORMON CHURCH"; LDS SOCIAL SERVICES<br>a/k/a LDS FAMILY SERVICES, a Utah<br>corporation,<br><br>                    Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) NO. 04-2338 RSM<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

DEPOSITION UPON ORAL EXAMINATION OF

ROBERT KELLY

VIDEOTAPED PROCEEDING

1:10 o'clock p.m.

August 29, 2005

601 Union Street

Suite 3100

Seattle, Washington

REPORTED BY:
ALISON LOTT, CCR#2337

Exhibit A  Page 4

bd84b9e1-33a5-4271-9e07-e718630ca143

Page 22

1                    MR. KOSNOFF:  Objection, form of the

2        question.

3    Q    (By Mr. Frey)  You may answer.

4    A    Can you state it again, please.

5                              (The pending question was read by

6                               the reporter.)

7    A    That's correct.

8    Q    If, in fact, you had gone through the abuse which you've

9        listed in the second, third, fourth, and fifth, and sixth

10       incidents, are you telling me that you wouldn't have been

11       sufficiently scared to go tell her?

12   A    The abuse was progressive, and it got -- meaning to say the

13       humiliation that Jack did to me and other boys, my brother,

14       and Jimmy and Ricky, it got worse.  And so at first, I

15       grew -- I just grew to be more and more scared and

16       terrified.

17   Q    The incident in the field, according to what your

18       description is, was much less intrusive or severe than the

19       other instances that followed in the basement of the

20       apartment; isn't that correct?

21   A    That's correct.

22   Q    After the incident which occurred in the field, you went

23       and told your mother; is that correct?

24   A    That's correct.

25   Q    Did you also tell your father?

Exhibit A  Page 5

Page 23

1    A    We were sitting at the dinner table, and -- well, actually,

2         we told -- after the abuse in the field where Jack

3         masturbated in front of us, we ran down to tell my mom, and

4         then my dad came home from work, and then we all sat down

5         for dinner, and then my mom brought it up that -- you know,

6         and then they started asking us questions about, well, what

7         happened, and how long has this been going on, and then

8         they went over and my mother and father met with

9         Dr. Allenbach and Mrs. Allenbach that night.

10   Q    How long did you tell them it had been going on?

11   A    Several months, I -- it's -- there's a lot that -- you

12        know, that has happened in the downstairs apartment with

13        Jack.

14   Q    Did you go over to the Allenbach home when your parents

15        went over there?

16   A    No, I didn't.

17   Q    By the way, did both your mother and your father go to the

18        Allenbach home, as far as you know?

19   A    They did.

20   Q    Do you know about how long they were gone?

21   A    I don't recall the exact time, but it was at least an hour

22        or two.

23   Q    When they came back home, did you discuss with them

24        anything about their meeting with Dr. Allenbach?

25   A    No.

Exhibit _A_ Page _6_

Page 53

1          Kennydale area, one of the highest respected leaders in

2          that area.

3     Q    When you say he was a bishop, who told you he was a bishop?

4     A    I think Ricky, growing up, Ricky and Jimmy.

5     Q    And do you believe it's in his position as a bishop that he

6          should have done something to stop the abuse towards you?

7     A    Absolutely.

8     Q    Did your mother ever go and report the abuse that you

9          described to her to anyone?

10    A    To Dr. Allenbach, and Mrs. Allenbach.

11    Q    Anyone besides them?

12    A    Not to my knowledge.

13    Q    Did your mother take any steps to ensure that you would not

14         be the victim of abuse again?

15    A    Yes.

16    Q    What did she do?

17    A    Speak to Dr. and Mrs. Allenbach.

18    Q    Did she do anything beyond that?

19    A    I'm not sure.

20    Q    Did she go to the police?

21    A    Not that I'm aware of.

22    Q    Did she go to any school officials?

23    A    Not that I'm aware of.

24    Q    Did she go to the Child Protective Services?

25    A    I don't know.

Exhibit A  Page 7

Page 55

1     plaintiffs in this lawsuit?

2  A   No.

3  Q   Do you know whether your father ever reported your abuse to

4     either C.P.S., the police, school authorities, or anyone

5     else?

6  A   I don't know.

7  Q   Do you think that they should have -- that he should have,

8     I should say?

9  A   I don't know.  It's similar to what you said about my mom.

10    I thought Dr. Allenbach would have taken care of the

11    problem.

12  Q   Do you think Dr. Allenbach had a greater responsibility to

13    rid the community of Mr. Loholt and his type of actions

14    than your parents did?

15  A   I think my parents did everything they can to protect me by

16    going over there and seeing Dr. Allenbach, and I thought

17    that it was going to be -- the problem was going to be

18    fixed.

19           MR. FREY:  I'm going to go ahead and move to

20    strike the answer as not responsive.  Would you read back

21    the question to him, please.

22               (The pending question was read by

23               the reporter.)

24  A   Yes.

25  Q   Why?

Exhibit A  Page 8

### Byers & Anderson, Inc.
### Court Reporters & Video

Page 1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING and JOHN DOE,                          )
                                                       )
                            Plaintiffs,                )
                                                       ) No.
              vs.                                      ) C04-2338RSM
                                                       )
THE CORPORATION OF THE PRESIDENT OF THE CHURCH         )
OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah           )
corporation sole, a/k/a the "MORMON CHURCH," LDS       )
SOCIAL SERVICES a/k/a LDS FAMILY SERVICES, a Utah      )
corporation,                                           )
                                                       )
                            Defendants.                )


VIDEOTAPED DEPOSITION OF DOROTHY L. KELLY
March 2, 2005
Seattle, Washington


BYERS & ANDERSON, INC. - COURT REPORTERS & VIDEO
2208 North 30th Street                One Union Square
    Suite 202                     600 University Street
Tacoma, WA  98403-3360                 Suite 2300
    (253) 627-6401               Seattle, WA  98101-4128
  Fax: (253) 383-4884                 (206) 340-1316
                    (800) 649-2034
              scheduling@byersanderson.com


Dorothy L. Kelly
3/2/05



96259d00-8faa-11d9-a1fc-8450c3937918

Byers & Anderson, Inc.
Court Reporters & Video

Page 34

1       would -- I took him at his word that he would take care of
2       it.
3    Q  Now, you don't know --
4    A  You didn't go --
5    Q  Excuse me.  Go ahead.  I'm sorry.
6    A  You didn't go to police with things like that in those days.
7    Q  Okay.  And you didn't expect Dr. Allenbach to go to the
8       police either, did you?
9    A  I didn't know what he would do.  I had no idea.
10   Q  Right.  But you didn't think you had to go to the police or
11      should go to the police --
12   A  No.
13   Q  -- correct?
14   A  Never entered my mind.  I didn't know what the police could
15      do.
16   Q  Okay.  Now, let me ask you this:  Do you know at this time
17      when this incident occurred, were you aware as to whether or
18      not Jack LaHolt was living in the Allenbach house?
19   A  Yes.  He lived in the mother-in-law apartment.
20   Q  Okay.  Was that physically attached to the main home?
21   A  It was underneath the -- they had a two-story and a partial
22      attic.  And he lived -- well, his was situated right below
23      Herman and Veloy's bedroom.
24   Q  Okay.  And the -- some of the boys slept down there, didn't
25      they, with him?

Dorothy L. Kelly
3/2/05


Exhibit B Page 10

96259d00-8faa-11d9-a1fc-8450c3937918