1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/k/a LDS, a Utah corporation, <br><br> Defendants. | NO. 04-2338 RSM <br><br> DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION <br><br> NOTE ON MOTION CALENDAR: SEPTEMBER 1, 2006 <br><br> ORAL ARGUMENT REQUESTED |

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

## I. INTRODUCTION

Defendant Corporation of the President of The Church of Jesus Christ of Latter-Day Saints ("COP") hereby moves to exclude evidence of a confidential 1972 disclosure by Richard Pettit, a Church member, to his Bishop. In a prior ruling in this case, the Court strongly implied this confidential counseling session was privileged. That is true, and thus evidence of the disclosure must be excluded.

More than 34 years ago, Mr. Pettit told Bishop Randall Borland that Jack Loholt had inappropriately touched Mr. Pettit's son. Mr. Pettit made this disclosure in the context of spiritual counseling. Plaintiff contends (and COP denies) that Loholt's sexual abuse of Plaintiff followed this confidential disclosure and that the abuse would have been preventable if Bishop Borland had followed a short-lived Washington statute requiring clergy to report knowledge of sexual abuse of children.[1]

The counseling session between Mr. Pettit and Bishop Borland should be excluded because it is irrelevant and unduly prejudicial under FRE 401 and 403. Two independent reasons precluded Bishop Borland from reporting Mr. Pettit's confidential disclosure to the police, and thus it is irrelevant that Bishop Borland received the report.

- The Clergy-Penitent Privilege: The clergy-penitent privilege embodied in RCW 5.60.060(3) barred Bishop Borland from repeating the sensitive discussion he had with his congregant. Mr. Pettit sought pastoral counseling from his Bishop and both Mr. Pettit and Bishop Borland believed the conversation was confidential, thus bringing it within the privilege. The privilege was held by Mr. Pettit, the person making the communication, and only he could waive it. Although Mr. Pettit waived the privilege in his deposition—nearly 34 years after the events in question—that has no significance here because the question is whether the

---

[1] The mandatory reporting statute came into effect in 1971, at which time it applied to doctors, clergy, social workers and a few other classes of individuals. The statute exists to this day, but the Legislature amended it in 1975 to remove clergy from the groups covered by the reporting obligation.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 1
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

statement was privileged in 1972 and, thus, whether Bishop Borland was required to maintain its confidentiality.

- <u>Constitutionally Protected Religious Beliefs</u>: Bishop Borland could not comply with the reporting statute without violating his religious beliefs and ecclesiastical duties as a bishop of The Church of Jesus Christ of Latter-Day Saints ("the Church"), which required him to maintain the confidentiality of the counseling session. The Free Exercise Clause of the First Amendment shielded Bishop Borland from the alleged legal duty to violate the confidentiality of Mr. Pettit's spiritual communication.

If the Court finds, as COP believes it must, that one or both of these reasons required Bishop Borland to maintain the confidentiality of Mr. Pettit's disclosure, then the conversation is irrelevant. To COP's knowledge, the only potential relevance of Mr. Pettit's statement to Bishop Borland is that it enables plaintiff to argue that Bishop Borland, and hence COP, was negligent in not making a report to law enforcement in accordance with the reporting statute. But since Bishop Borland could not disclose to the police information learned in a confidential, pastoral counseling session, Mr. Pettit's disclosure has no such relevance.

The history of the reporting statute itself supports the conclusion that Mr. Pettit's disclosure was privileged. In 1971, the Legislature changed the word "may" in the statute to "shall," and thus converted the statute from one that *permitted* clergy, doctors and select others to report abuse to one that *required* such reports. In 1975, the Legislature repealed the application of the still-new reporting statute to clergy, implicitly recognizing that it could not be applied to confidential counseling without violating the clergy privilege and the First Amendment. For the past 31 years, clergy have had no statutory duty to report information they learn about sexual abuse. This Court may thus be guided by the Legislature's judgment and

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 2
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

action. Mr. Pettit's confidential communication, privileged when made, could not be disclosed to the police and thus is irrelevant.[2]

## II. FACTS

A. **Brief Statement of Facts and Procedural History.**

1. **Facts**

Plaintiff grew up in Kent near the home of Dr. Herman Allenbach and his family. As a child, Plaintiff played with the Allenbach children. The Allenbachs were members of the Church; Plaintiff was not. Deposition of Robert Kelly at 28: 6-8.[3] Loholt rented a room from the Allenbachs. Deposition of Jack Onefrey (aka Loholt) at 87: 12-18.[4] At some point during his stay at the Allenbach residence, Loholt sexually abused the Plaintiff. Five instances of abuse occurred in the Allenbach basement; a sixth occurred in a nearby field. Kelly Dep. at 19: 4-15.

2. **Contentions**

Plaintiff contends that COP was negligent because Bishop Borland did not report Loholt to the police after receiving Mr. Pettit's confidential disclosure in early 1972. Plaintiff also alleges, and COP denies, that Dr. Allenbach was an agent of COP. Plaintiff contends that Dr. Allenbach should have reported Loholt to the police after Plaintiff's parents told Dr. Allenbach that Loholt had masturbated in Plaintiff's presence.

---

[2] In its Motion in Limine to Exclude Reporting Statute, filed contemporaneously, COP argues that even if the Pettit communication is not privileged, the reporting statute should be excluded because it was repealed 31 years ago and therefore noncompliance with the statute cannot be deemed evidence of negligence. We recommend that the Court consider the instant motion first because if this motion is granted, the motion to exclude the reporting statute is moot.
[3] Deposition excerpts are attached to the Declaration of Michael Rosenberger.
[4] At all relevant times, the abuser went by the name Jack Loholt. He now goes by the name Jack Onefrey. Onefrey dep. at 6-7. To avoid confusion, COP uses only the name Loholt.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 3
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### 3. Prior Rulings in this Case

This Court previously denied COP's motion for summary judgment in which COP argued that it owed no duty to Plaintiff. This Court's Order held in part that Bishop Borland's non-compliance with the reporting statute could be considered by the jury as evidence of negligence. Dkt No. 101. However, the Order did not address the issue now presented, which is whether Bishop Borland was obligated to maintain the confidentiality of Mr. Pettit's communication and thus whether it is admissible at all.

Significantly, Plaintiff previously filed a motion to compel regarding Bishop Borland's invocation in his deposition of the clergy-penitent privilege in regard to his conversation with Mr. Pettit. The Court ruled that Bishop Borland had to answer such questions because Mr. Pettit had waived the privilege in his deposition, which occurred after Bishop Borland's deposition. In doing so, however, the Court suggested that it concurred with COP's current position that Mr. Pettit's disclosure was privileged when made:

> Because Mr. Pettit's communications are no longer subject to the clergy-penitent privilege, Bishop Borland must answer any of the deposition questions that he initially refused to answer solely on the basis of *Mr. Pettit's formerly privileged communications.*

Order Granting in Part Plaintiffs' Motion to Compel at 3:14-16, Dkt. No. 88 (emphasis added).

### B. Background Regarding the Position of Bishop.

Bishops in the Church are clergy under the privilege statute.[5] A Bishop presides over a "ward," a local congregation that usually has 300-600 members. With few exceptions, the position of Bishop is held by an observant, male member of the local congregation. Bishops are called to serve for a period of four to six years, while continuing to work in their regular

---

[5] COP believes this background is undisputed, but support for it can be found at *Doe v. The Corporation of the Bishop of the Church of Jesus Christ of Latter-Day Saints*, 122 Wn. App. 556, 559, n. 3, 90 P.3d 1147 (2004).

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 4
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

vocation. Bishops serve on a part-time basis voluntarily and without pay. They have no professional ecclesiastical training; the Church relies on a lay ministry.

### C. Mr. Pettit Sought Spiritual Guidance from His Bishop When Making the Report of Loholt's Inappropriate Touching.

Jack Loholt was a member of the Church who had no authority over the administration of the ward but was a volunteer Assistant Scoutmaster. In approximately February 1972, Richard Pettit's son informed his father that he had been inappropriately touched by Loholt. Seeking pastoral guidance, Mr. Pettit then went to Bishop Borland with this information:

> Bishop Borland, as my Bishop, was my spiritual advisor. I sought him out for the purposes of spiritual counseling and guidance. I was not sure how to respond to my son's report of Loholt's actions. I also hoped the Bishop might do something regarding Loholt's involvement in Scouting, which the Bishop did.

Declaration of Richard E. Pettit, ¶ 5.

As a result of this conversation, Bishop Borland released Loholt from his position as Assistant Scoutmaster. This occurred within a week of the conversation between Mr. Pettit and Bishop Borland. Pettit Decl. ¶ 4.

### D. Church Doctrine Required Bishop Borland to Maintain the Confidentiality of the Counseling.

The parties to the counseling session, Mr. Pettit and Bishop Borland, both believed it was confidential.

#### 1. Mr. Pettit Believed the Counseling Was Confidential.

Mr. Pettit himself became the Bishop of the Kent 2nd Ward at a later date. He states:

> When I talked to Bishop Borland I expected that my conversation with him would be confidential. I believed that Bishop Borland was bound by the clergy privilege, and that he could not share what I told him with anyone else without my permission.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 5
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> I did not expect Bishop Borland to call Child Protective Services or the police department to report what Jack Loholt had done. If I thought that was necessary or appropriate, I would have done it myself.

Pettit Decl. ¶¶ 6, 7

### 2. Bishop Borland Believed the Counseling Was Confidential—a Belief Supported by Church Doctrine.

Bishop Borland agrees that his conversation with Mr. Pettit involved "pastoral counseling" and that he was required under Church doctrine to keep it confidential. Borland Dep. 54:24-57:21. When questioned by Plaintiff's attorney concerning the counseling, Bishop Borland testified as follows:

> Q: So again my question is: was this something you learned in connection with pastoral counseling within the Church?
>
> A: Yes.
>
> Q: Was the information that you received something that you are required to keep confidential under the doctrines and teaching of your Church?
>
> A: Yes.
>
> Q: Was the communication that you received something that you in fact kept confidential, that is, that you did not disclose to any other person?
>
> A: I did not disclose what was said confidentially to others.

Borland Dep. at 57:2-21.[6]

Bishop Borland's understanding of the confidentiality of the counseling was grounded in Church doctrine. Church members believe that bishops, through their ordination, receive

---

[6] Bishop Borland's deposition testimony did not mention Mr. Pettit by name because the Bishop was respecting the privilege. In Mr. Pettit's subsequent deposition, he waived the privilege and described the conversation with Bishop Borland. Bishop Borland confirms that his deposition testimony did indeed relate to Mr. Pettit's disclosure. Declaration of Randall Borland, ¶ 6.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 6
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

spiritual gifts that help them provide spiritual guidance to members of their flock. A Church counseling guide that governed Bishop Borland's response to Mr. Pettit's disclosure stated:

> By virtue of his calling, ordination, and setting apart, a bishop receives the mantle of authority and becomes a "judge in Israel." One of the great spiritual gifts is the gift of discernment.

Declaration of Randall Borland, Ex. 2 at 1. This guide emphasizes that in carrying out counseling, one of the Bishop's "prime responsibilities," he must be sure to maintain confidentiality.

> Bishops are to be ever conscious of the necessity of keeping confidences on private matters. *A breach of confidence can destroy testimonies and faith.* Such private matters should not be discussed with others, including counselors and wife, unless the consent of the person involved is received. . . . The calling of a bishop imposes trust and confidence that must not be violated.

*Id.* at 5-6 (emphasis in original).

### III.   ARGUMENT

#### A.   Summary of Argument.

Plaintiff argues that Bishop Borland negligently failed to inform law enforcement about Loholt's inappropriate touching of Mr. Pettit's son. However, Bishop Borland was precluded by both the clergy-penitent privilege and the ecclesiastical canons of his spiritual office from disclosing the facts to the police. Since he could not disclose the substance of the counseling session, Mr. Pettit's statement is irrelevant—it simply does not further any of Plaintiff's negligence theories. Even if Plaintiff contends the disclosure has other relevance, which COP denies, admission of the statement would be unfairly prejudicial under FRE 403 because it would suggest Bishop Borland should have done something he was precluded from doing and had a legal right not to do.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 7
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

B. **The Confidentiality of the Counseling Was Protected by the Statutory Clergy-Penitent Privilege.**

1. **RCW 5.60.060(3).**

The clergy-penitent privilege is embodied in a Washington statute, which provides:

> A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any confession made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs.

RCW 5.60.060(3).

2. *State v. Martin.*

The leading Washington Supreme Court case interpreting this statutory privilege held that it must be given a "broad interpretation." *State v. Martin*, 137 Wn.2d 774, 789, 975 P.2d 1020 (1999). *Martin* identifies two elements that must be satisfied for the privilege to apply.

> One element of the privilege requires the clergy member to act in a professional capacity, and another element requires the church to which the clergy member belongs to recognize confession *or spiritual counseling* in the course of discipline enjoined by the Church.

*Martin*, 137 Wn. 2d at 785 (emphasis added). *Martin* also noted that the communication must be "confidential," in that the presence of third persons at the time of the communication may vitiate the privilege. *Id.* at 787.

*Martin* held that the term "confession" is *"defined by the religion of the clergy member receiving the communication."* *Id.* at 789 (emphasis added). As a result, this necessarily means that "confession" is not limited to formal confessions as practiced by some faiths.

> Although testimonial privileges are usually strictly construed, the word "confession" in RCW 5.60.060(3) should not be. A broad interpretation of "confession" would "minimize the risk that [RCW 5.60.060(3)] might be discriminatorily applied because of different

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 8
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> judicial perceptions of a given church's practices or religious doctrine..." *The Court of Appeals in this case properly defined "confession" as a confidential communication between a clergy member* and a penitent and correctly held that only confidential communications are privileged, that the penitent is the holder of the privilege, and that only the penitent can waive the privilege.

*Id.*, quoting, *State v. MacKinnon*, 957 P.2d 23, 28 (Mont. 1998) (emphasis added).

The broad interpretation of the privilege is consistent with *Scott v. Hammock*, 870 P.2d 947 (Utah 1994), a case relied upon by *Martin*. In *Scott*, the Utah Supreme Court held that non-penitential communications to a Bishop of the Mormon Church were within the clergy-penitent privilege. The court interpreted Utah's privilege statute, which is "more precise" yet has "substantially the same words" as Washington's statute. *Martin*, 137 Wn.2d at 786. In a scholarly opinion, *Scott* noted that a broad interpretation of the privilege was necessary because "a constricted interpretation of the privilege does not take into account the essential role that clergy in most churches perform in providing confidential counsel and advice to their communicants in helping them to abandon wrongful or harmful conduct, adopt higher standards of conduct, and reconcile themselves with others and God." *Id.* at 952. *Scott* further noted that a broad interpretation was also "consistent with case law of other states . . . [and] its secular analogue, the psychotherapist-patient privilege." *Id.* at 953-54. Finally, "the free exercise of religion strongly suggests that the privilege should be recognized when clergy perform the functions required of them." *Id.* at 954.

Moreover, *Martin* explained that the statutory phrase "in the course of discipline" refers not to penance but merely the practices of the clergy member's faith.

> We agree with the Court of Appeals that the language "in the course of discipline enjoined by the church to which he or she belongs" in RCW 5.60.060(3), the clergy penitent privilege statute, requires that the "clergy member...*be enjoined by the practices or*

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 9
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> *rules of the clergy members' religion to receive the confidential communication and to provide spiritual counsel.*" The privilege belongs to the penitent, but the obligation of confidentiality rests upon the clergy.

*Id* at 789 (emphasis added) (citations omitted).

Hence, to summarize the relevant aspects of the *Martin* decision, the Court held that: (1) the privilege extends to confidential, non-confessional communications for the purpose of seeking spiritual guidance; and (2) the "discipline enjoined by the Church" refers to the practice within the clergy member's religion of receiving confidential communications and providing guidance.

### 3. Bishop Borland's Spiritual Counseling with Mr. Pettit Satisfies *Martin* and is Therefore Privileged under RCW 5.60.060(3).

Under *Martin*, the conversation between Mr. Pettit and Bishop Borland in 1972 satisfies the elements of the privilege granted in RCW 5.60.060(3). First, Bishop Borland received the communication while acting in his professional capacity as Bishop of the Kent 2nd Ward. Second, it was confidential—Mr. Pettit intended it to be, Bishop Borland understood it and maintained it as confidential, and no third parties were present. Third, both Mr. Pettit and Bishop Borland confirm that Mr. Pettit sought spiritual guidance regarding the handling of his son's revelation. Pettit Decl. ¶ 6; Borland Dep. at 57 (the communication "occurred in connection with pastoral counseling").

As an ordained Bishop of the Church, Bishop Borland was enjoined by the Church's ecclesiastical canons and practices to hear Mr. Pettit's concerns, provide spiritual counseling and strictly maintain the confidentiality of the discussion. As stated in the Church's tenets for ecclesiastical counseling, "Bishops are to be ever conscious of the necessity of keeping

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 10
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

confidences on private matters. . . .The calling of a bishop imposes trust and confidence that must not be violated." Borland Decl., Ex. 2 at 5-6.

Accordingly, Mr. Pettit's disclosure meets all of the requirements of *Martin*, and the statutory clergy-penitent privilege applies. This privilege, held by Mr. Pettit and waivable only by Mr. Pettit, required Bishop Borland to maintain the confidentiality of Mr. Pettit's communication. To abide by his obligation, Bishop Borland could not possibly have reported Mr. Pettit's confidential disclosure to law enforcement authorities. The fact that Bishop Borland did not report the abuse cannot be evidence of negligence. Hence, the communication is simply irrelevant and should be excluded.

C. **Mr. Pettit's Disclosure is Irrelevant Because the Free Exercise Clause of the First Amendment Barred the Application of the Reporting Statute to Bishop Borland.**

A second, independent ground exists under FRE 401 and FRE 403 for excluding Mr. Pettit's disclosure. Even if this Court were to find the statutory privilege did not apply to Mr. Pettit's disclosure, Church doctrine and tenets required Bishop Borland to maintain the confidentiality of the counseling session. Compliance with the reporting statute would have required Bishop Borland to violate his religious beliefs. Hence, the reporting statute could not constitutionally be applied to Bishop Borland. Plaintiff cannot argue that Bishop Borland was required to do something that the state could not constitutionally command. Bishop Borland's alleged non-compliance with the reporting statute is thus irrelevant.

The First Amendment to the United States Constitution bars government from enacting laws "prohibiting the free exercise" of religion. During the time frame at issue here, all free exercise claims were subject to the exacting compelling interest test articulated in *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963). "Under this test, government

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 11
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

actions that substantially burden a religious practice must be justified by a compelling state interest and must be narrowly tailored to achieve that interest." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994).[7]

To show a free exercise violation, a religious adherent must demonstrate that the challenged law imposes a substantial burden on his or her free exercise of religion. A substantial burden exists where government "put[s] substantial pressure on an adherent to modify his behavior and to violate his [religious] beliefs." *Vernon*, 27 F.3d at 1393, quoting *Thomas v. Review Board, Indiana Employment Security Division*, 450 U.S. 707, 717-18, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981). If one assumes the reporting statute applied even to privileged communications, as Plaintiff apparently contends, the statute specifically targeted clergy and, as applied to this case, imposed just such a burden. Bishop Borland was in an unenviable position: comply with the law and violate his faith, or comply with his faith and risk prosecution. The reporting statute thus constituted a "substantial burden" on the free exercise of Bishop Borland's religion.

Accordingly, the reporting statute could be constitutionally applied to Bishop Borland only if the state had a compelling interest in singling out clergy for this special burden. The Washington Legislature has already answered that question in the negative—the state had no compelling interest in applying the statute to clergy. In 1975, only four years after it took effect, the Legislature amended the statute to delete clergy from the categories of persons with an

---

[7] In 1990, the Supreme Court held that strict scrutiny does not apply in certain free exercise cases, namely, those where the law at issue is religiously neutral and generally applicable. *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). However, the holding in *Smith* is inapplicable here because (1) the compelling interest standard in *Sherbert* governed free exercise claims in 1973 and, (2) in any event, a statute specifically singling out clergy and a small handful of others for reporting duties is not "generally applicable" and thus, even under *Smith*, is still subject to the compelling interest test. *Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 546, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) ("A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny.").

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 12
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

obligation to report. 1975 Washington Laws, 1st Extraordinary Sess., Ch. 217 § 3(1). For the last 31 years, the public policy of the State of Washington has been that clergy are not subject to the reporting statute. The state could not have had a *compelling* interest in applying the reporting statute to clergy in 1971-75, but then no such interest in 1976 or in any year since.

Indeed, the state's interests here are less substantial than the interests found lacking in *Mockaitis v. Harcleroad*, 104 F.3d 1522 (9th Cir. 1997). In *Mockaitis*, an Oregon prosecutor obtained a search warrant for a jailhouse recording of a confession by an inmate to a Catholic priest. When this was revealed, the priest sued, alleging statutory and constitutional violations. Finding that the district attorney violated the Religious Freedom Restoration Act (RFRA), which incorporates *Sherbert's* compelling interest standard, the Ninth Circuit stated:

> No question exists that [Harcleroad, the district attorney] substantially burdened Father Mockaitis's exercise of religion as understood in the First Amendment. Father Mockaitis was exercising his religion in priestly function. . . .
>
> Harcleroad is provided with a statutory defense if he can prove that his actions were "in furtherance of a compelling governmental interest" and that he used "the least restrictive means" of furthering that interest. RFRA, 42 U.S.C. § 2000bb-1(b) . . . [Harcleroad] offers no defense when RFRA is applied to the taping itself.

*Id.* at 1530.[8] The court also vigorously approved the clergy-penitent privilege as a basis for holding that Father Mockaitis had a reasonable expectation of privacy and, thus, the district attorney's actions violated his Fourth Amendment rights.[9]

---

[8] The Supreme Court subsequently held RFRA inapplicable to states. *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct 2157, 138 L. Ed. 2d 624 (1997). RFRA still applies in cases involving federal action, and the Ninth Circuit's application of the compelling interest test derived from *Sherbert* remains noteworthy.

[9] The Ninth Circuit explained that "the history of the nation has shown a uniform respect for the character of sacramental confession as inviolable by government agents interested in securing evidence of crime from the lips of criminals." *Id.* at 1532. The court found it significant that a unanimous Supreme Court had stated over 120 years ago "that 'suits cannot be maintained which would require a disclosure of the confidences of the confessional.' " *Id.* (quoting *Totten v. United States*, 92 U.S. 105, 107 (1875)) (emphasis added). A century later, the Supreme Court again unanimously affirmed "that the priest-penitent privilege, like the privileges between attorney and client and between physician and patient, was 'rooted in the imperative need for confidence and trust.' " *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 51, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980)). Given such unwavering

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 13
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

In sum, given the substantial burden on Bishop Borland's religious exercise, and given the absence of any compelling interest on the part of the state, the reporting statute could not have been constitutionally applied to him. Bound by a religious duty of confidentiality, Bishop Borland could not have reported the communication. Hence, the communication is irrelevant.

### D. The Privileged Status of the Communication is Further Supported by The Legislature's Repeal of the Statute's Application to Clergy.

The Washington Legislature's repeal of the application of the reporting statute to clergy supports COP's motion. This repeal shows the Legislature recognized that privileged communications to clergy were just that—privileged—and were not properly subject to the reporting statute.

#### 1. 1965: The Statute is Created as a Shield

The reporting statute began in 1965 as a statute that merely *permitted* reports. The statute was limited to "practitioners of the healing arts" and stated that when such medical providers have "cause to believe that a child . . . is suffering from physical neglect, or sexual abuse, he *may* report such incident or cause a report to be made to the proper law enforcement agency." 1965 Washington Laws, Ch. 13 § 3 (emphasis added).[10] The statute also provided that persons making such reports "shall in doing so be immune from civil liability." *Id.*, § 6. In 1969, the Legislature extended this shield to reports of abuse made by a "professional school personnel, registered

---

support for confessional confidentiality, the court held that the First and Fourth Amendments protect against governmental seizure of confidential communications:
> It would be strange if a privilege so generally recognized could be readily subverted by the governmental recording of the privileged communication and the introduction of the recording into evidence.

*Id.* at 1533; *see also Griffin v. Coughlin*, 743 F. Supp. 1006, 1028 (N.D. N.Y. 1990) ("[I]t is this court's conclusion that the free exercise clause [of the First Amendment] recognizes the need for privacy in confidential communications between inmate and spiritual advisor.").

[10] For the Court's convenience, copies of Washington Laws cited in this section are attached to the Rosenberger declaration.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 14
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

nurse, social worker, psychologist, pharmacist, clergyman or employee of the department of public assistance." 1969 Washington Laws, 1st Extraordinary Sess., Ch. 35 § 3.

### 2. 1971: The Shield is Converted to a Sword

In 1971, however, the Legislature converted the statute from a permissive reporting statute that shielded doctors, nurses, psychologists, clergy and the other specified professionals from liability to a mandatory reporting statute, the violation of which was a misdemeanor. 1971 Washington Laws, First Extraordinary Sess., Ch. 167 §§ 1, 3. The Legislature accomplished this dramatic change merely by replacing the phrase "may report" with "shall report" and adding the penalty provision. By this change, all of the aforementioned classes of formerly shielded reporters became mandatory reporters.

### 3. 1975: The Sword is Repealed as to Clergy

Just four years later, in 1975, the Legislature reversed itself and repealed the obligation of clergy—*and only clergy*—to report. 1975 Washington Laws, Ch. 217, 1st Extraordinary Sess., § 3(1). Given the Legislature's turnaround, one can reasonably conclude that the Legislature in 1971 gave little or no consideration to the clergy privilege and the First Amendment implications of requiring clergy to report. The repeal strongly suggests the Legislature never actually intended clergy to be required to report allegations of sexual abuse.[11] Whatever the Legislature's

---

[11] An alternative interpretation of the legislative history is that the Legislature intended the reporting statute to preserve the privilege and to apply only to communications *not* subject to the clergy privilege. Indeed, nothing in the statute purported to abrogate the existing statutory privilege for clergy-penitent communications, and courts have a duty to harmonize statutes that appear to be in tension. "It is a cardinal rule that two statutes dealing with the same subject matter will, if possible, be so construed as to preserve the integrity of both." *State v. Fairbanks*, 25 Wn.2d 686, 690, 171 P.2d 845, 848 (1946). A final possible interpretation, albeit highly unlikely, is that the Legislature intended the reporting statute to require clergy to report even privileged communications. This is highly unlikely because: (1) it is implausible in light of the 1975 repeal, which is more probably a legislative correction to clergy-specific issues not considered in 1971 than a complete reversal of public policy; (2) if the Legislature intended to waive the clergy privilege in 1971, they would have said so—as they did with the physician-patient privilege (1965 Washington Laws, Ch. 13 § 6); and (3) the Court would have to hold the reporting statute implicitly repealed the

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 15
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

mindset in 1971, the 1975 repeal clearly represented a reaffirmation of the privilege applicable to confidential disclosures to clergy.

Hence, for the past 31 years, the state has not required reporting by clergy in Bishop Borland's position. *State v. Motherwell*, 114 Wn.2d 353, 359, 788 P.2d 1066 (1990) ("members of the clergy counseling their parishioners in the religious context are not subject to the reporting requirement under former RCW 26.44.030.") The Legislature recognized that clergy cannot be required to disclose that which they, by reason of the statutory privilege and the tenets of their faith, are duty-bound to maintain as confidential. This Court is thus on solid footing, and consistent with public policy of the State of Washington for the past 31 years, in holding that Bishop Borland was precluded from disclosing Mr. Pettit's confidential communication. A communication that could not be disclosed is irrelevant.

E.   **Any Purported Relevance Would be Outweighed by the Unfair Prejudice of Admitting Statements Made During Spiritual Counseling.**

Plaintiff may oppose the motion by claiming the conversation between Mr. Pettit and his Bishop has purported relevance apart from allegedly triggering the reporting statute. If so, it still should be excluded under FRE 403, since admitting evidence of the counseling would be unfairly prejudicial to COP. Admitting the conversation into evidence would allow plaintiff to suggest, or the jurors to speculate, that Bishop Borland should have "done something" when, in fact, he was constrained to keep the Mr. Pettit's disclosure confidential. Bishop Borland had no ability to warn others or inform the police without violating the privilege and his faith.

---

privilege despite the absence of any basis for that conclusion and despite *Fairbanks'* admonition to harmonize conflicting statutes.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 16
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## IV. CONCLUSION

For the reasons stated above, COP respectfully requests that under FRE 401 and 403, this Court exclude from evidence the communication in 1972 by Mr. Pettit to Bishop Borland concerning Jack Loholt's inappropriate touching of Mr. Pettit's son.

DATED this 17th day of August, 2006.

GORDON MURRAY TILDEN LLP

By /s/ Michael R.
Charles C. Gordon, WSBA #1773
Jeffrey I. Tilden, WSBA #12219
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the President of the Church of Jesus Christ of Latter-Day Saints

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 17
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following. The parties will additionally be served in the manner indicated.

| Michael T. Pfau<br>Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP<br>P.O. Box 1157<br>Tacoma, WA 98401-1157<br>Telephone: (206) 676-7500<br>Facsimile: (206) 676-7575<br>E-Mail: mpfau@gth-law.com<br><br>( ) Mail    ( ) Hand Delivery<br>( ) Fax     ( ) Federal Express | Timothy D. Kosnoff<br>Law Offices of Timothy D. Kosnoff, P.C.<br>600 University Street, Suite 2101<br>Seattle, WA 98101<br>Telephone: (206) 676-7610<br>Facsimile: (425) 837-9692<br>E-Mail: timkosnoff@comcast.net<br><br>( ) Mail    ( ) Hand Delivery<br>( ) Fax     ( ) Federal Express |
|---|---|

**GORDON MURRAY TILDEN LLP**

By _/s/ Michael Rosenberger_
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the
  President of the Church of Jesus Christ of
  Latter-Day Saints
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mrosenbergrer@gmtlaw.com

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CLERGY-
PENITENT COMMUNICATION - 18
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292