THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING, JOHN DOE, R.K. and T.D.,

    Plaintiffs,

v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH,"; LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation,

    Defendants.

NO. C04-2338RSM

**PLAINTIFF R.K.'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE MANDATORY REPORTING STATUTE**

NOTE ON MOTION CALENDAR:
SEPTEMBER 8, 2006

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Dockets.Justia.com

## I. INTRODUCTION

Plaintiff R.K. submits this opposition to defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints' ("COP") "motion in limine" to exclude evidence of the mandatory reporting statute. COP's motion should be denied because (a) COP's "motions in limine" are thinly-disguised motions for summary judgment, and the deadline for filing dispositive motions passed almost nine months ago; (b) Washington's Supreme Court has stated that the former mandatory reporting statute is reflective of the state's public policy; (c) COP's motion contradicts well-settled principles of statutory construction; (d) even after the exclusion of clergy members as mandatory reporters, clergy members remained permissive reporters; and (e) COP's brief ignores the fact that defendant LDS Social Services was at all relevant times a mandatory reporter.

## II. BRIEF STATEMENT OF RELEVANT FACTS[1]

The actions giving rise to this lawsuit occurred between 1971 and 1975. Moreover, at all times relevant to this action, the mandatory reporting statute applied to members of the clergy and social service counselors. Defendant LDS Social Services provides counseling to its members. The evidence suggests that Jack LoHolt counseled with defendant LDS Social Services in the 1970s likely following the complaint of abuse to Bishop Borland.[2] He testified he was honest and truthful with his counselors.[3] The mandatory reporting statute, as it currently exists, and as it existed in 1972, required social service counselors to report to appropriate law enforcement agencies known (or even reasonably suspected) instances of

---

[1] This Court has resolved multiple motions by the parties, including motions for summary judgment. A detailed statement of facts was contained in plaintiffs' opposition to defendants' two motions for summary judgment (Dkt. Nos. 79 and 80). Additionally, plaintiff is submitting his opposition to defendants' motion in limine to exclude clergy-penitent communication concurrently with this motion. Plaintiff hereby incorporates the statement of facts set out in that motion.

[2] LoHolt Dep., pgs. 138-139, 146-47 (attached as **Exhibit A** to the Declaration of Michael T. Pfau).

[3] *Id.* at pg. 138.

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 1 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

child abuse. There is no evidence LDS Social Services reported LoHolt's abuse of children to anyone.[4]

### III. LEGAL ARGUMENT

**A. DEFENDANTS' "MOTIONS IN LIMINE" ARE THINLY-DISGUISED MOTIONS FOR SUMMARY JUDGMENT AND SHOULD BE STRICKEN AS SUCH.[5]**

Both the instant motion and the companion motion to exclude clergy-penitent communications are, in actuality, thinly-disguised motions for summary judgment. One of plaintiff's primary bases for defendants' liability is grounded in the fact that COP and LDS Social Services breached a duty by failing to comply with their statutorily-prescribed duties of reporting known (or even suspected) instances of child abuse.[6] In January 2006, COP moved to dismiss plaintiffs' claims asserting that the mandatory reporting statute did not create an implied right of action.[7] In denying COP's motion, this Court explicitly held that the statute created a private cause of action and that a violation of the statute is evidence of negligence.[8]

COP, represented by different counsel, now seeks to take a second bite at the proverbial apple, by attempting to exclude evidence of COP's negligence.[9] COP readily invokes "summary judgment" language to support it assertion. COP admits that the

---

[4] Letter from Department of Social and Health Services confirming absence of records (attached as **Exhibit B** to the Declaration of Michael T. Pfau).

[5] This Court has already held, after extensive briefing, that an implied right of action exists for the violation of the mandatory reporting statute. COP cannot now obtain a reversal of that ruling by excluding evidence of the mandatory reporting statute.

[6] Plaintiffs' Amended Complaint at law (Dkt. No. 29).

[7] Defendants' Motion for Summary Judgment (Dkt. Nos. 65, 66).

[8] Memorandum Order Granting in part Summary Judgment (Dkt. No. 101), pg. 7, ll. 4-8.

[9] COP's companion Motion to Exclude Clergy-Penitent communications is equally inappropriate. COP seeks to exclude evidence of COP's negligence in that motion by arguing that allowing evidence of the alleged clergy-penitent communications would violate Constitutional principles and, therefore, the factual basis underlying the claim for violation of the mandatory reporting statute should be excluded from this case and, *ipso facto*, the mandatory reporting statute should be excluded. The determination of whether Constitutional principles are offended is a question of law to be determined by the Court. *See CJC v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 728-29, 985 P.2d 262 (1999) (holding that neither the First Amendment nor the State Constitution prevented the court from imposing a duty on the church). Consequently, any motion seeking such determination is tantamount to a motion for summary judgment.

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 2 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

determination to be made is whether Bishop Borland's conduct was "reasonable" as a "matter of law."[10] In other words, by bringing these motions in limine COP is moving for summary judgment on plaintiff's statutorily-based negligence claim by seeking a determination that Bishop Borland acted "reasonable" under the circumstances.

If COP successfully excludes evidence of its obligations under the mandatory reporting statute, plaintiff's cause of action based on the violation of the mandatory reporting statute – one that this Court has already ruled can proceed – will be defeated. Such a result is not within the contemplation of a "motion in limine."[11] Furthermore, it contradicts this Court's previously ruling that the issue should be decided by a jury.

Because COP's "motion in limine" is, in actuality, a motion for summary judgment, the deadline for filing the motion passed nine months ago. The time for filing dispositive motions was January 6, 2006.[12] Dispositive motions were filed and this Court ruled on those motions in March 2006.[13] In ruling on defendants' "segregation of damages" motion, this Court specifically stated that "no other dispositive motions will be permitted, as the dispositive motion deadline has now passed."[14]

**B.  THE WASHINGTON SUPREME COURT HAS STATED THAT THE FORMER MANDATORY REPORTING STATUTE REFLECTS THE STRONG PUBLIC POLICY OF PROTECTING CHILDREN FROM CHILD ABUSE.**

Washington's Supreme Court has expressly stated that the former mandatory reporting statute is reflective of the strong public policy of protecting children from child abuse:

---

[10] Motion in Limine to Exclude Reporting Statute (Dkt. 140) pg. 9, ll. 40-44.

[11] As was recently pointed out by the Honorable James L. Robart, "a motion in limine is a '[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial.'". In *Kimball v. R.J. Reynolds Tobacco Co.*, 2006 U.S. dist. LEXIS 27138 (April 26, 2006), the Court reminded counsel of the differences between dispositive motions and motions in limine.

[12] *See* Case Schedule on file herein.

[13] *See* Court file herein.

[14] *Memorandum Order Granting in Part Summary Judgment* (Dkt. No. 101), pg. 12, ll. 20-21.

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 3 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

> Our decision not to foreclose the imposition of a duty as a matter of law under these facts is supported by the strong public policy in favor of protecting children against acts of sexual abuse. Current law makes it a criminal offense for certain professionals to fail to notify the proper authorities when there is reason to suspect childhood sexual abuse. See RCW 26.44.030 (medical practitioners, law enforcement personnel, school personnel, nurses, social service workers, licensed child care providers and their employees, among others, are required to report suspected child sexual abuse to the proper authorities); see also RCW 26.44.080 (failure to report is a gross misdemeanor). **We note that at the time of the alleged abuse in this case, certain church officials were also required by law to report suspected abuse.** See former RCW 26.44.030 (1969) (requiring any "clergyman," as defined, to report suspected child sexual abuse). While the reporting requirement is permissive as to "other persons" not specifically defined, see RCW 26.44.030(3), the Legislature has made clear that the prevention of child abuse is of "the highest priority, and all instances of child abuse must be reported to the proper authorities who should diligently and expeditiously take appropriate action ...." Laws of 1985, ch. 259 (legislative findings appended to RCW 26.44.030). Any person who makes a good faith report of suspected abuse is absolutely immune from civil or criminal liability arising from the reporting. RCW 26.44.060(1)(a). n16.

*CJC v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 726-27, 985 P.2d 262 (1999). As the language above makes clear, in 1999 the Supreme Court of Washington affirmed its commitment that the reporting statutes, both past and present, reflect the state's strong public policy of protecting children from sexual abuse regardless of whether the defendant is a mandatory reporter or permissive reporter. The Supreme Court's strong language refutes COP's argument that the legislature "never intended clergy to be duty bound to report abuse." In fact, in a footnote the Supreme Court specifically addresses this issue:

> In 1975, the requirement as to clergymen was repealed. The laws of 1975, 1st Extraordinary Sess., Ch. 217, § 3. Never the less, the reporting requirement continues to apply to those church officials who are engaged in "encouraging in promoting the health, welfare, support or education of children, or

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 4 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

> providing social services to adults or families, whether in an individual capacity, or as an employee or agent of any public or private organization or institution." *State v. Motherwell*, 114 Wn.2d 353, 357, 788 P.2d 1066 (1990 (citing former RCW 26.44.020(8)). Thus, the newly implied exemption is triggered only when the official is acting *in the capacity* of a regular licensed or ordained minister, priest or rabbi. *Motherwell*, 114 Wn.2d 359.

*Id.* at 726, n. 15.

The Supreme Court in the *CJC* case held that even after 1975 clergy could be required to report, depending on the capacity in which they are serving. Regardless, it is clear that the Supreme Court in *CJC* readily considered the importance of the present and former mandatory reporting laws. COP's efforts to minimize the importance of those laws and its self serving interpretation of the legislative intent should be considered in light of the Supreme Court's clear mandate to protect children.

C. **STATUTORY CONSTRUCTION ANALYSIS SHOULD NOT BE UNDERTAKEN WHEN A STATUTE IS UNAMBIGUOUS.**

"Clear and unambiguous statutory language is not subject to judicial construction." *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 143, 787 P.2d 8 (1990); *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995) (quoting *Krystad v. Lau*, 65 Wn.2d 827, 844, 400 P.2d 72 (1965)). Instead, the plain language of the statute will control. *Id.* Furthermore, "extrinsic evidence of legislative intent or resort to canons of statutory construction" is only permitted if a statute is ambiguous in the first place. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005); *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005). When the statutory language is plain and unambiguous, the court's inquiry must end because the statute's meaning is derived from the wording of the statute itself. *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005). Statutory language is unambiguous when it is not susceptible to two or more interpretations. *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792 (2003).

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 5 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

COP should not be allowed to impose its unsupported "interpretation" of the legislative history as a verity. COP's entire "motion in limine" ignores the well-established rules of statutory construction, as evidenced by the fact that COP's brief lacks any credible support for its theories and arguments about what COP purports to be "legislative history." Washington courts are in accord that a court will give effect to unambiguous statutory language because it presumes the legislature says what it means. *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001). Here, defendants have offered no evidence or authority to overcome this presumption.

The plain language of the statute demonstrates that clergy members were mandatory reporters between 1971 and 1975. The statute required clergy who had "cause to believe that a child …[was] suffering from physical neglect, or sexual abuse" to report the incident to the "proper law enforcement agency." 1975, Washington Laws, Ch. 217, 1st Extraordinary Sess., § 3(1). Clergy who violated the statute were liable for committing a misdemeanor. COP's attempt to engage in statutory interpretation is improper and should not be allowed because it not only violates the well-settled rules of statutory construction, it also asks this court to ignore clear legislative intent to protect children by requiring clergy, at the time of the incidents giving rise to this lawsuit, to report the abuse to the proper law enforcement agencies.

The repeal of the statute is irrelevant to the determination of whether COP acted reasonably during relevant times. It is the law in effect at the time that the acts occurred – here 1972 – that is controlling in this case.[15] COP submits that because clergy were only **required** to report from 1971 to 1975, the statute does not evidence "reasonable" conduct. The statute that was in effect from 1971 to 1975 required clergy to report. Violation of a statute is evidence of negligence under Washington law.[16] Here, it is for the jury to determine

---

[15] *See State v. Humphrey*, 139 Wn.2d 53, 57, 983 P.2d 1118 (1999).
[16] *Mathis v. Ammons*, 84 Wn. App. 411, 418, 928 P.2d 431 (1996).

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 6 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

whether Bishop Borland acted reasonably in 1972. Accordingly, the law in effect in 1972 – the mandatory reporting statute – is certainly applicable evidence for the jury to consider. The standard is whether Bishop Borland acted reasonably in 1972, and in 1972 he was a mandatory reporter. The jury should hear this evidence and give it the weight they deem appropriate.

**D.   EVEN AFTER EXCLUSION OF CLERGY MEMBERS AS "MANDATORY" REPORTERS, CLERGY MEMBERS REMAINED PERMISSIVE REPORTERS.**

In 1969, the Washington Legislature extended the reporting statute by adding the permissive right to clergy members (among others), who have "cause to believe that a child … is suffering from physical neglect or sexual abuse" to report the abuse to the proper law enforcement agency. 1969 Washington Laws, 1st Extraordinary Sess., Ch. 35 § 3. By 1972 – the time when the defendants learned they had a child molester in their midst – clergy members were **mandatory** reporters. 1971 Washington Laws, First Extraordinary Sess., Ch. 167 §§ 1, 3.

For over three decades, clergy have been permissive reporters of child sexual abuse. In 1975, the Legislature exempted clergy members from being **mandatory** reporters only. 1975 Washington Laws, Ch. 217, 1st Extraordinary Sess., § 3(1). However, in providing the exemption, the Legislature did not prohibit clergy members from reporting known or suspected instances of child abuse. *See State v. Motherwell,* 114 Wn.2d 353, 359, 788 P.2d 1066 (1990). Instead, as noted by the *Motherwell* court, "concluding that the *mandatory* reporting statute does not apply in this instance does not itself prevent *voluntary* reporting of suspected or actual abuse to secular authorities." *Id.* Furthermore, as pointed out in *C.J.C.*, while clergy members may no longer be mandatory reporters, "the reporting requirement is permissive as to 'other persons' not specifically defined" in the statute. *C.J.C.* at 728. To suggest, as COP does, that the legislature "never intended clergy to be duty bound to report sexual abuse" or that the repeal of the statute renders the statute irrelevant ignores the history

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 7 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

of the mandatory reporting statutes and our state's public policy regarding the protection of children. Moreover, whether Bishop Borland acted reasonably under the circumstances is a question for the jury. Throughout its brief, COP asks this Court to determine what is "reasonable". These questions should be answered by the jury.

E. **THE MANDATORY REPORTING STATUTE IS ADMISSIBLE EVIDENCE OF LDS SOCIAL SERVICES' NEGLIGENCE.**

In addition to COP's liability under the mandatory reporting statute, counselors at LDS Social Services, also a defendant in this case, were mandatory reporters. Both before and after 1972, "social service counselors," have been mandatory reporters. In fact, the statute specifically provides:

> When any practitioner, county coroner or medical examiner, law enforcement officer, professional school personnel, registered or licensed nurse, *social service counselor*, psychologist, pharmacist, licensed or certified child care providers or their employees, employee of the department, juvenile probation officer, placement and liaison specialist, responsible living skills program staff, HOPE center staff, or state family and children's ombudsman or any volunteer in the ombudsman's office has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040.

RCW 26.44.030(3) (emphasis added).[17]

Here, there can be no real contention that LDS Social Services did not qualify as a "social service counselor" in 1972. Any person who qualifies as a "social service counselor" that has reasonable cause to believe a child has been abused, must report the abuse to the proper authorities. This statute was enacted for the significant purpose of protecting the safety, health, and welfare of children by creating a statutory mechanism for the reporting of child abuse. *See* RCW 26.44.010. By imposing upon certain classes of persons criminal

---

[17] The definitions in 1975 were slightly different but encompassed counselors, psychologists, and social workers. *See* attached as **Exhibit C** to the Declaration of Michael T. Pfau, Washington laws, 1st Ex. Sess. (list of definitions).

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 8 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

penalties for the failure to report known child abuse, the legislature clearly intended to strongly encourage the reporting of child abuse by those persons in a position to know of child abuse. Consequently, by statute, representatives of LDS Social Services were mandatory reporters and needed to report child abuse.

The evidence suggests Jack LoHolt treated at LDS Social Services for his sexual deviancy during the time period he abused plaintiff. LoHolt went to LDS Social Services for sexual deviancy treatment for about a year.[18] He had no idea whether LDS Social Services ever reported him to the police or Child Protective Services.[19] LoHolt was never contacted by the police or CPS following the period of time that he was counseling at LDS Social Services.[20] After he went to LDS Social Services, he returned and participated in the Kent 2nd Ward Scouting program as volunteer, working with Scouts during the time period of Bishop Colman, who immediately followed Bishop Borland as Bishop of the Ward.[21] LoHolt testified that the first person he molested after he went to LDS Social Services was Ricky Allenbach.[22] Ricky Allenbach is approximately the same age as the plaintiff, and lived in the exact location where the plaintiff was abused. LoHolt testified that he was "honest with his counselors."[23] There is no evidence LDS Social Services ever reported LoHolt's case under the present set of facts.[24] Evidence of the mandatory reporting statute, as it existed in 1972, is admissible to prove plaintiff's claim against LDS Social Services.

---

[18] Exhibit A to Declaration of Michael T. Pfau, LoHolt Dep., p. 139-140.
[19] Exhibit A to Declaration of Michael T. Pfau, LoHolt Dep. at 140.
[20] Exhibit A to Declaration of Michael T. Pfau, LoHolt Dep. at 141.
[21] Exhibit A to Declaration of Michael T. Pfau, LoHolt Dep. at 142.
[22] Exhibit A to Declaration of Michael T. Pfau, LoHolt Dep. at 147.
[23] Exhibit A to Declaration of Michael T. Pfau, LoHolt Dep., at 138.
[24] See Declaration of Michael T. Pfau, **Ex. B**.

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 9 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

RESPECTFULLY SUBMITTED this ___1___ day of September, 2006.

>GORDON, THOMAS, HONEYWELL,
>MALANCA, PETERSON & DAHEIM LLP
>
>By ___/S/___
>Michael T. Pfau, WSBA No. 24649
>mpfau@gth-law.com
>Michelle A. Menely, WSBA No. 28353
>mmenely@gth-law.com
>Co-Counsel for Plaintiff
>
>LAW OFFICES OF TIMOTHY D. KOSNOFF
>
>By ___/S/___
>Timothy D. Kosnoff, WSBA No. 16586
>timkosnoff@comcast.net
>Co-Counsel for Plaintiff

PTF'S OPP. TO MTN TO EXCL. MANDATORY REPORTING – 10 of 10
(C04-2338RSM)
[169374 v17.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575