The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., | NO. 04-2338 RSM |
| Plaintiffs, | |
| v. | **DEFENDANT'S MOTIONS IN LIMINE** |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDS FAMILY SERVICES, a Utah corporation, | **NOTE ON MOTION CALENDAR: SEPTEMBER 15, 2006** **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Defendant The Corporation of the President of The Church of Jesus Christ of Latter-Day Saints ("COP") respectfully moves this Court for an order instructing the Plaintiff and his counsel not to directly or indirectly mention, refer to, interrogate regarding, or convey to jurors in any manner any evidence of the items indicated below, without first obtaining the permission of the Court outside the presence and the hearing of the jury. Defendant COP further requests the Court to instruct Plaintiff's attorneys to caution their clients and each of his witnesses to follow the order entered by the Court in connection with these motions in limine.

DEFENDANT'S MOTIONS IN LIMINE - 1
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

# I.    RELIEF SOUGHT

Defendant COP seeks the following relief:

## A.    Evidence Regarding Loholt

1.    An order excluding all evidence regarding Loholt after January 1973, including his criminal convictions and his counseling at LDSSS.

## B.    Experts

2.    An order precluding Plaintiff from offering the testimony of his rebuttal expert, Dr. Newberger.

3.    An order precluding reference to experts retained but not called as a witness.

## C.    Subsequent Remedial Measures

4.    An order precluding evidence regarding changes in policies of The Church of Jesus Christ of Latter-Day Saints ("the Church") regarding the handling, investigation or reporting of sexual abuse allegations.

## D.    Settlement Negotiations and Attorneys' Fees

5.    An order excluding any settlement demands, offers, or other exchanges of information/documentation regarding resolution of the case.

6.    An order excluding reference to the fact that any jury award will be shared with Plaintiff's attorneys.

## E.    Church Finances and Insured Status

7.    An order excluding any testimony or documentation regarding the Church's assets, finances, or the Church's policies and practices regarding tithing.

8.    An order excluding testimony or documentation regarding insurance coverage or lack thereof.

## F.    The Allenbach "Compound"

9.    An order precluding witnesses and counsel from referring to the Allenbach home as a "compound."

DEFENDANT'S MOTIONS IN LIMINE - 2
No. 04-2338 RSM

**G.    Church Doctrine**

10.    An order precluding Plaintiff from offering evidence to contradict the Church's interpretation of its own doctrine, including but not limited to the meaning of "high priest."

11.    An order excluding the Encyclopedia of Mormonism or reference thereto.

12.    An order excluding Mrs. Kelly's testimony that Dr. Allenbach was a "bishop."

**H.    Other Litigation**

13.    An order excluding any reference to and/or introduction into evidence of any documentation regarding other lawsuits or claims made against COP or the Church.

14.    An order excluding any reference to and/or introduction into evidence of any documentation regarding other lawsuits or claims for sexual abuse of children made against other religious denominations.

**I.    Deposition Testimony From Other Case**

15.    An order excluding the admission of deposition testimony of Dwayne Liddell and Harold Brown from a prior suit.

**J.    Fact Witnesses Giving Expert Opinions**

16.    An order excluding the medical or psychological testimony of any witness who is not qualified to express such opinions.

17.    An order excluding lay witnesses from testifying regarding their interpretation of RCW 26.44, or their lay opinions regarding legal obligations to report childhood sexual abuse.

**K.    Presentation of Case**

18.    An order precluding Plaintiff's counsel from asking the jury to place themselves in the position of Plaintiff.

19.    An order barring Plaintiff from presenting evidence on or seeking relief on any theory of liability or damages not set forth in his Complaint.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**L.    Trial Attendance and Witnesses**

Defendant COP requests implementation of the following procedures throughout the duration of the trial:

A.    All non-party witnesses should be excluded from the courtroom during trial.

B.    Any exhibits should not be displayed before the jury until each exhibit is admitted by this Court into evidence, or until permission has been obtained from the Court.

C.    The parties should have 24-hour notice before any non-party witness is called, or before any deposition is offered.

D.    There should be no mention that any motions in limine were filed and/or argued before this Court.

## II.    LEGAL ARGUMENT

**A.    Evidence Regarding Loholt**

### 1.    Motion to Exclude all Evidence Regarding Loholt after January 1973.

It is undisputed that Loholt abused Plaintiff at some point prior to January 1973. In his deposition, Plaintiff testified that Loholt abused him *during the time that Loholt was living in the basement apartment in the Allenbach residence.* R.K. Dep. at 19:4-9, 75:11-17.[1] Loholt lived at the Allenbach residence for three and a half years, until such time as Loholt bought a house. Loholt Dep. at 92:20-91:3. According to the real estate contract recorded with the assessor's office, Loholt bought that house in January 1973. Ex. 1. Hence, Loholt's abuse of Plaintiff preceded January 1973.

Loholt's activities after January 1973, and the Church's alleged knowledge of or response to such activities, are not relevant. They are not relevant to COP's knowledge or notice of

---

[1] All deposition excerpts and exhibits are attached to the Declaration of Michael Rosenberger.

DEFENDANT'S MOTIONS IN LIMINE - 4
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Loholt's abuse of other boys, since post-January 1973 actions followed both the report to COP

regarding Scott Pettit and the abuse of Plaintiff. This is consistent with the Court's recent Order

granting COP's motion in limine to exclude evidence of Loholt's other acts of abuse. The Court

held:

> [T]he court finds that evidence of Mr. Loholt's abuse of other
> victims is not relevant or necessary to the notice issue in this case.
> Defendants admit that the Corporation of the President of the
> Church of Jesus Christ of Latter Day Saints ("COP") received a
> report of Mr. Loholt's abuse of Scott Pettit, and has specifically
> stated that this motion to exclude does not apply to that report.
> Although Plaintiff argues that there was a second report to COP of
> Mr. Loholt's abuse, Plaintiff has produced no evidence of such
> second report and cites to nothing in the record in support of that
> assertion. Accordingly, the Court agrees with Defendants that
> evidence of Mr. Loholt's abuse of other victims is not relevant to
> the notice issue.

Dkt. #152 at 2. The instant motion is fundamentally identical, but just seeks broader relief.

While the Court's prior order was limited to Loholt's act of abuse, this motion addresses all other

evidence regarding Loholt following January 1973, including counseling by Defendant LDS

Social Services ("LDSSS") and his criminal convictions.

### a.    Referral to LDS Social Services.

Loholt was not referred to LDS Social Services for counseling until sometime after

Plaintiff was abused.

Bishop Borland was Bishop of the Kent Second Ward from May 1971 through August

1973. Borland Decl., Docket No. 143, at ¶1. Thus, he was the Bishop of the Kent Second Ward

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

from the date COP received notice in February 1972[2] of Loholt's potential abuse of Scott Pettit

through the last possible date of Loholt's abuse of Plaintiff, January 1973. In his deposition,

Bishop Borland expressly denied any recollection of having referred Mr. Loholt to LDS Social

Services. Borland Decl. at 74:4-75:2. There is no documentary or any other evidence to support

Plaintiff's assertion that Bishop Borland referred Loholt to LDS Social Services, or that Loholt

himself sought out such services.[3] Given the absence of any evidence that LDSSS provided

counseling to Loholt prior to January 1973, the Court should exclude all reference to his

attendance at LDS Social Services.

### b.   Loholt's Criminal Record.

This component of the motion merely elaborates on the Court's prior ruling that Loholt's

other acts of abuse will not be admitted into evidence. If such other acts of abuse are

inadmissible, it necessarily follows that his criminal convictions for such abuse are likewise

inadmissible.

---

[2] This Court noted in its Order Granting COP's Motion in Limine that the communication to Bishop Borland concerning Scott Pettit was COP's only notice of Loholt's inappropriate conduct. Dkt. # 152, at 2; *see also*, Declaration of Bishop Borland, Dkt. # 143 at ¶ 3. This communication came to Bishop Borland in late January or early February 1972. Borland Decl., Dkt. # 143 at ¶¶3-6.

[3] In opposition to COP's Motion for Summary Judgment, Plaintiff argued that Bishop Borland had "apparently" referred Loholt for sexual deviancy therapy at LDS Social Services. Dkt. # 80-1 at 3:6-7. This statement was not supported by the deposition excerpts cited in support. Plaintiff cited the Loholt deposition at pages 138-39, but Loholt merely testified that he went to LDS Social Services sometime "in the 1970s." Loholt Dep. at 138:12-15. Even if Loholt was counseled by LDSS "in the 1970s," that does not constitute evidence that such counseling occurred prior to 1973.

DEFENDANT'S MOTIONS IN LIMINE - 6
No. 04-2338 RSM

**B.**    **Experts**

   **2.**    **Motion to Exclude Testimony of Plaintiff's Rebuttal Expert, Dr. Eli Newberger.**

COP moves to exclude the testimony of Dr. Newberger, who Plaintiff disclosed solely as a rebuttal witness. The expert he is rebutting will not be called by Defendants. Since there is nothing to rebut, Dr. Newberger's testimony is irrelevant.

Pursuant to this Court's February 17, 2005 Order Setting Trial Date and Related Dates, reports from expert witnesses were due on September 7, 2005. Dr. Newberger was not disclosed at that time. COP disclosed the expert report of Irwin Dreiblatt, Ph.D. in accordance with the schedule. Ex. 2. Plaintiff responded one month later, October 5, 2005, with the rebuttal report of Dr. Newberger. This report clearly indicates it is intended to offer opinions solely as a rebuttal expert witness.

> In anticipation of my service as a rebuttal witness in the above-captioned matter, I write to express my views of the document entitled "Report of Findings and Opinions Rendered In the Case of Fleming, et al. v. Church of Jesus Christ of Latter-Days Saints," dated September 2, 2005, by Irwin S. Dreiblatt, Ph.D.

Ex. 3.

Mr. Dreiblatt offered opinions concerning the "state of knowledge" regarding sexual abuse in the 1960s and 1970s. COP has decided not to offer such evidence and thus Dr. Newberger's rebuttal evidence on the same topic is irrelevant.

Moreover, absent Mr. Dreiblatt's expert testimony, Dr. Newberger essentially becomes an expert in Plaintiff's case in chief, but one who was not disclosed in accordance with the case schedule. The trial court may properly exclude from evidence opinions from a rebuttal expert that do not actually constitute rebuttal. *Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160,

DEFENDANT'S MOTIONS IN LIMINE - 7
No. 04-2338 RSM

1168 (10th Cir. 2000) (affirming trial court's exclusion of opinions from rebuttal expert that did

not rebut expert for other side).

### 3.    The Court Should Exclude Reference to Mr. Dreiblatt.

As noted above, Mr. Dreiblatt will not testify at trial on behalf of COP. Without

conceding that Plaintiff has a right to offer Mr. Dreiblatt's opinions, it is obvious Plaintiff will

not seek to do so. Indeed, Plaintiff's pretrial statement does not list Mr. Dreiblatt as a witness.

Since Mr. Dreiblatt will not be a trial witness, Plaintiff's counsel should be prohibited

from mentioning his preliminary role in the case. The testimony of witnesses not called at trial is

irrelevant.

## C.    Subsequent Remedial Measures

### 4.    The Court Should Exclude Evidence Concerning Subsequent Policy Changes Regarding the Handling, Investigation or Reporting of Sexual Abuse Allegations.

Federal Rule of Evidence 407 specifically provides that evidence of subsequent remedial

measures is inadmissible to prove negligence of culpable conduct on the part of a party. The

Court should therefore exclude as inadmissible all evidence or documents referring to the

changes or improvements in the Church's policies or practices regarding handling, investigation

or reporting of sexual abuse.

Bishop Borland will testify at trial. He was not only the bishop of Kent Second Ward

during the relevant period 34 years ago, he was a bishop at a ward in Utah in recent years.

Borland Dep. at 20:22–21:24. COP requests that Plaintiff be precluded from asking Bishop

Borland to testify about changes in Church policy relating to preventing, investigating or

reporting sexual abuse, as such questions may suggest the Church's earlier practices were

somehow deficient.

DEFENDANT'S MOTIONS IN LIMINE - 8
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**D.    Settlement Negotiations and Attorneys' Fees**

### 5.    All References to Settlement Discussions are Properly Excluded.

The parties have engaged in settlement negotiations during the course of the case, including mediation. Pursuant to FRE 408, Defendant COP requests that Plaintiff's counsel be precluded from introducing testimony or other evidence: (a) regarding any offers, demands, or other attempts at compromise and resolution; or (b) the absence of COP's settlement offers.

### 6.    The Court Should Exclude Reference to the Fact that the Proceeds of the Suit Will be Shared with Plaintiff's Attorneys.

Reference to the fact that any monetary recovery by Plaintiff will be shared with his attorney should be prohibited. Such reference is of no probative purpose under FRE 401, but is designed to engender sympathy in the jury. Such evidence is irrelevant under FRE 401-402 and unduly prejudicial and confusing under FRE 403.

**E.    Church Finances and Insured Status**

### 7.    The Court Should Exclude Evidence or Reference to the Church's Assets, Finances and the Practice of Tithing.

Evidence of the Church's assets or financial position is a factor in assessing punitive damages. *TXO Production Corp. v. Alliance Resource Corp.*, 509 U.S. 443, 465 (1993); *Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001). Plaintiff, however, does not have a claim for punitive damages. Compensation for plaintiffs' damages is the sole measure of recovery. *Olwell v. Nye & Nissen Co.*, 26 Wn. 2d 282, 286, 173 P.2d 652 (1947).

Evidence of the Church's assets or financial position is properly excluded for two reasons. First, such evidence is immaterial in assessing plaintiffs' damages, and is properly excluded under FRE 401. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (widely held by courts that financial statement of defendant in admissible in case where only

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

compensatory damages are to be awarded); *Stanard v. Bolin*, 88 Wn.2d 614, 620, 565 P.2d 94

(1977). Second, such evidence is properly excluded under FRE 403 as confusing to the jury and

unduly prejudicial because such evidence tends to misdirect the jury's attention away from

assessing the plaintiff's damages based on plaintiff's injuries. *Stanard*, 88 Wn.2d at 620;

*Geddes*, 559 F.2d at 560. For these reasons, Defendant COP seeks exclusion of testimony and

all other evidence regarding Defendant's assets, finances, or tithing practices.

### 8.    COP's Insurance Coverage.

Defendant COP is self-insured on Plaintiff's claims. Any reference to Defendant COP's

insurance coverage, or lack thereof, is properly excluded under FRE 411. *Williams v. Hofer*, 30

Wn.2d 253, 265, 191 P.2d 306 (1948) ("It is undoubtedly the general rule in this state, in

personal injury cases, that the fact that the defendant carries liability insurance is entirely

immaterial on the main issue of liability."); *Church v. West*, 75 Wn.2d 502, 452 P.2d 265 (1969)

(admission of evidence regarding defendant's insurance coverage may be grounds for mistrial).

## F.    The Allenbach Compound

### 9.    Motion to Exclude Reference to the Allenbach "Compound."

Throughout this suit, Plaintiff has referred to Dr. Allenbach's home, where Mr. Loholt

rented a room, as the "Allenbach compound." Under FRE 403, this Court should exclude any

reference to the Allenbach home as a "compound" as it is not only inaccurate, but highly

prejudicial. The term "compound" is a loaded word designed to conjure in the minds of the

jurors a fortress behind which cult-like activity takes place. To many jurors, the term will

conjure images of paramilitary fanatics, neo-Nazis and their ilk. The word "compound" has no

place in this trial.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

First, it is inaccurate. A compound is "a fenced or walled-in area containing a group of buildings and esp. residents." *Merriam-Webster's Collegiate Dictionary*, 10th Ed. (1997) (for the Court's convenience, a copy is provided as Ex. 4). The Oxford English Dictionary also provides definitions that embody the concept of a walled or fenced enclosure.

1.  The enclosure within which a residence or factory (of Europeans) stands, in India China and the East generally.

2.  In South Africa, an enclosure within which the workmen in diamond or gold mines live and remain during their term of employment, having no communication with the outside.

3.  A large fenced-in space in a prison, concentration camp, or the like.

*The Oxford English Dictionary*, Vol. III at 629 (J.A. Simpson and E.S.C. Wiener eds., Clarendon Press 2d ed. 1989) (for the Court's convenience, the relevant excerpt is attached as Ex. 5).

There is no evidence that the Allenbach property was fenced or walled in, or that it contained multiple residences. In fact, Mr. Loholt expressly refuted this notion:

> Q.   What were the circumstances that led you to moving to-to the Allenbach compound?
> A.   Compound?
> Q.   You were-was Dr. Allenbach living on a house on a property on-
> A.   Yeah, it's his home.
> Q.   It's his home?
> A.   Yeah.
> Q.   Okay. This was an acreage?
> A.   Yes.
> Q.   Okay. And there were other buildings besides his home on the property?
> A.   Not at that time.
> Q.   Not at that time. There was just his home?
> A.   Yeah.

Loholt Dep. at 86:15-87:8.

DEFENDANT'S MOTIONS IN LIMINE - 11
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Second, the use of the term compound is highly prejudicial—which is exactly why Plaintiff is using it. There can be little doubt that in the last 10 to 15 years, the term "compound" has come to be associated with fringe groups in society, oftentimes armed and dangerous, who are viewed with disdain by substantial portions of the populace. For example, the on-line encyclopedia, *Wikipedia*, has an entry regarding the neo-Nazi group, Aryan Nations, that says, "From the 1970s until 2001, the headquarters of the AN was a 20-acre *compound* at Hayden Lake, Idaho." (emphasis added). Ex. 6.

Dr. Allenbach was a member of the Church and a successful dentist. Befitting his professional status, he had a large house. However, there is no basis in fact to call it a compound, and to do so is a transparent effort by Plaintiff to link COP to disreputable groups in society. Plaintiff has the burden of proof in this case. He should not get a head start toward meeting that burden by analogizing followers of the Church to paramilitary wackos and purveyors of hate.

## G.    Church Doctrine

### 10.    References to or Interpretation of Church Doctrine.

#### a.    COP Seeks to Preclude Plaintiff from Offering Evidence to Contradict the Church's Interpretation of its Own Doctrine

One of Plaintiff's negligence theories is that Dr. Allenbach was the Church's agent and that COP is liable for Dr. Allenbach's failure to report Loholt's abuse to the police.[4] Dr. Allenbach was told by Plaintiff's parents that Loholt had abused Plaintiff and Allenbach's son. Dep. of Dorothy Kelly at 13: 8-20. Dr. Allenbach was a member of the Church and a high priest,

---

[4] As a doctor, Dr. Allenbach arguably had a duty to report under former RCW 26.44.030. Plaintiff also claims he had such a duty as a member of the clergy.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

a title held by more than a million observant Mormon men who are not clergy and who hold no authority within the Church.

Plaintiff seeks to convince the jury that high priest means "high official," and therefore he is an agent of the Church.[5] However, the First Amendment, and decades of case law applying it, hold that Plaintiff cannot contest the Church's interpretation of its own doctrine, including the meaning of offices and titles within the Church. No one but the Church gets to say who is clergy and who is not, who is cloaked with Church authority and who is not. This Court has no jurisdiction to resolve disputes concerning Church doctrine. Hence, COP moves to exclude all evidence relating to Church doctrine that does not come from a witness, such as Bishop Borland, with authority to speak to the issue.

Specifically, Defendant COP seeks to exclude the following evidence, to the extent it is not offered by one with authority to speak to that issue on behalf of the Church:

A.    Evidence characterizing the polity (e.g., structure, organization, lines of ecclesiastical authority, ecclesiastical duties, etc.) of the Church.

B.    Evidence characterizing the duties, role, significance and/or meaning of offices, callings, positions, or titles within the Church or its priesthood, including those of the General Authority, bishop, high priest, priest, and member.

C.    Evidence purporting to establish who may act as an agent on behalf of the Church in religious or ecclesiastical matters.

D.    Evidence characterizing the religious, ecclesiastical, and/or spiritual relationship between members of the Church and those holding offices, callings, positions, or titles within the Church.

---

[5] Although the Church is not a party, this brief refers to policies and agents of the Church, rather than agents of COP. This is done for technical accuracy. A bishop is not the agent of COP, he is the agent of the Church, and the bishop follows ecclesiastical policies of the Church, not COP. COP is the defendant here because it is the corporation established to answer on behalf of the Church, and thus for purposes of this suit it stands in the shoes of the Church. The Church established COP to carry out secular activities such as suing and being sued, buying, selling and holding property, etc.

DEFENDANT'S MOTIONS IN LIMINE - 13
No. 04-2338 RSM

E.    Evidence of the Church's policies, guidelines, and/or publications governing how matters of child abuse are to be handled by Defendant Church's leaders.

F.    Evidence of the teachings of the Church regarding accountability and personal worthiness.

G.    Evidence of the doctrines, teachings, instructions, canons, or contents of the Church's General Handbook of Instructions.

The fact that Defendant Dr. Allenbach had the membership designation of "high priest" did not make him either a clergyman or a leader in the church. The designation "high priest" is attained by observant men in the Church either (1) when they are called to positions of leadership, or (2) when they reach approximately 45 years of age and most of their contemporaries are also high priests. Bishop Borland will testify that he was the clergy in the Kent Second Ward from May 1971 through August 1973, and the ward historical record does not show Dr. Allenbach having even volunteer responsibilities in 1972.[6] Dr. Allenbach is deceased, but it is clear he was not in a leadership position during the period of Plaintiff's abuse. It thus appears he attained high priest status as a function of his age. Plaintiff cannot argue, or offer evidence, that Dr. Allenbach's title of high priest made him clergy, a Church leader or an agent of the Church when the Church itself did not afford him that stature.

### b.    Plaintiff Cannot Offer Evidence of Church Doctrine Because This Court Lacks Authority to Resolve Disputes Concerning Doctrine.

It is a fundamental principle of First Amendment law that churches have the exclusive right and authority to articulate and interpret their respective religious doctrines, polities, ecclesiologist, canons, policies, and practices. A "long line of Supreme Court cases [has]

---

[6] *See*, Borland Decl. Dkt. # 143; and Ex. 7 (in 1972-73 Renton Stake Directory, which encompasses the Kent Second Ward, Dr. Allenbach is not listed in any volunteer leadership position). For Plaintiff to prevail, he must persuade the jury he was abused sometime in 1972—that is, between the February 1972 conversation between Richard Pettit and Bishop Borland concerning Loholt's touching of Scott Pettit and Loholt's departure from the Allenbach residence in January 1973.

DEFENDANT'S MOTIONS IN LIMINE - 14
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

affirm[ed] the fundamental right of churches to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *EEOC v. Catholic Univ. of America*, 83 F.3d 455, 462 (D.C. Cir. 1996) (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952)). The separation of church and state requires that civil courts not "engage in the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church v. Mary Elizabeth Blue Hull Church*, 393 U.S. 440, 451 (1969). Indeed, that process "can play no role in any . . . judicial proceedings" because it unconstitutionally "inject[s] the civil courts into substantive ecclesiastical matters." *Id.* at 450-51. The United States Supreme Court in *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976), held that under the First Amendment: "Civil courts exercise 'no jurisdiction' over a matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard or morals required of them. *Id.* at 713-14 (quoting *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 733-34 (1871)).

It follows from the foregoing that civil courts cannot adjudicate lawsuits "turning on matters of 'religious doctrine or practice.'" *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 336 (5th Cir. 1998) (citation omitted). Civil liability cannot be based, in whole or in part, on such matters. Therefore, the First Amendment bars Plaintiff from establishing or supporting their tort claims with evidence supporting their skewed view of Defendant COP's doctrines, teachings, beliefs, ecclesiastical policies, etc. since by definition and necessity, to do so would require this Court and the jury to "engage in the forbidden process" of interpreting religious doctrines, teachings, and so on. *Presbyterian Church*, 393 U.S. at 451; *see also, Schmidt v. Bishop*, 779 F.

DEFENDANT'S MOTIONS IN LIMINE - 15
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Supp. 321, 324 (S.D.N.Y. 1991); *Dausch v. Ryske*, 52 F.3d 1425 (7th Cir. 1994). Such evidence is inadmissible at trial.

Washington state courts have interpreted the First Amendment in a similar fashion. In *Germain v. Pullman Baptist Church*, 96 Wn. App. 826, 980 P.2d 809 (1999), *review denied*, 139 Wn.2d 1026, 494 P.2d 844 (2000), three plaintiffs sued their church for negligent supervision after they had sexual relationships with the pastor who was counseling them. The superior court dismissed the claim against defendant church, holding that adjudication of the negligent supervision claim would necessitate interpreting the church's constitution as to whether the church board or the general congregation had the authority to supervise the pastor. The Court of Appeals affirmed, stating:

> The facts here do not require us to decide whether the First Amendment forecloses *all* negligent supervision claims against churches based on the conduct of their ministers. In this case, the authority, as the pastor's employer, belongs to all of the Church's members, who must act by majority rule if they are to discharge him or otherwise control his conduct. The determination of whether to impose liability where the authority is so diffused would require the court to consider and interpret the church's laws and constitution. To do so would violate the First Amendment by entangling the judiciary with religion.

96 Wn. App. at 836-37 (emphasis in original) (citations omitted).

Thus, liability in this action cannot be based on the resolution, by court or jury, of interpretation of Church doctrines, teachings, polity, ecclesiology, ecclesiastical policies, or religious practices. Hence, any such evidence must be excluded to the extent that it is offered to contradict the Church's own interpretation of its structure, the titles accorded to its members, and other doctrinal issues, as offered through Church officials authorized to speak to such issues. Thus, Plaintiff cannot offer evidence seeking to establish that Dr. Allenbach was a member of the clergy or a "church leader," and hence agent, where he plainly was not one in the eyes of the

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Church. Nor can Plaintiff seek to establish a special relationship between himself and the Church giving rise to a civil duty of care, or breach of such a purported duty, by presenting evidence of the Church's doctrines, policies, and so on.

Religious communities exist within a doctrinal and social narrative whose meaning is constantly unfolding. *See, United States v. Ballard*, 322 U.S. 78, 86-87 (1944). This is perhaps uniquely true with the Church, which teaches that each President of the Church is a prophet who receives ongoing revelation from God for the guidance of the Church. Church titles and positions which a century ago held great significance in the Church may, in current times, have little stature; the opposite may also be true. For example, the ecclesiastical and practical import of being a "high priest" or one of the "Seventy" has changed dramatically over the last century and a half. Statements from Brigham Young on the function and duties of these positions may or may not have any relevance to what actually occurs in a congregation today. It is the Church alone that has the right to explicate and interpret its doctrine and to explain the nature of its polity and ecclesiastical policies at any given point and time.

To the extent that there is any disagreement, the Church's description of its own doctrines, teachings, polity, ecclesiology, ecclesiastical policies, or religious practices must govern. Neither this court nor the jury, much less plaintiff's attorneys, have any authority to contradict the Church in this regard; the Church has exclusive jurisdiction over the subject matter of its doctrine, polity, and the like. This has been the consistent teaching of the United States Supreme Court for well over a century. *See, Watson v. Jones*, 80 U.S. (13 Wall) 679 (1871).

### 11.    The Court Should Exclude the Encyclopedia of Mormonism

Plaintiff has listed on his pretrial statement a proposed exhibit, the Encyclopedia of Mormonism (the "Encyclopedia"). The Encyclopedia is not an official church publication, and it

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

explains that the statements and opinions are those of the individual authors. Therefore, the

Encyclopedia must be excluded because: (1) it offers explanations of Church doctrine that are

not those of the Church; (2) it lacks foundation; and (3) it is hearsay.

### 12. The Court Should Exclude Mrs. Kelly's Statements that Dr. Allenbach was a "Bishop" and "Very High in the Church."

Mrs. Kelly, Plaintiff's mother, testified in her deposition that she thought Dr. Allenbach

was a "bishop" and "very high in the church." Dep. of Dorothy Kelly at 13:4; 33:23. COP

moves to exclude such statements, and any other statement attributing to Dr. Allenbach the status

of bishop or leader in the Church.

Mrs. Kelly's testimony statement is plainly inaccurate, although that is not the reason it is

inadmissibile. It is inadmissible because, first, it lacks foundation. The Kelly family are

Catholics with little or no knowledge of the LDS Church. Dorothy Kelly Dep. at 15:15; 42:14

("I wasn't involved in their church.") Second, Plaintiff seeks to offer such testimony to prove

Dr. Allenbach was clergy, thereby attempting to contradict the Church's position that Dr.

Allenbach was not a member of the clergy. For the reasons discussed above, the First

Amendment precludes this Court from engaging in a fact inquiry regarding who is clergy in the

Church. Hence, this testimony is irrelevant and must be excluded.

### H. Other Litigation

### 13. Other Lawsuits or Claims Against Defendant COP.

Plaintiff's counsel and other attorneys have sued Defendant COP related to the alleged

sexual abuse of others. Such cases do not involve the same ward, stake, or clergy involved in the

above-captioned case. Defendant COP seeks an order prohibiting Plaintiffs from mentioning

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

other claims or litigation against the church on grounds of relevancy (FRE 401), undue prejudice (FRE 403), and improper "character" evidence (FRE 404(a)).

Here, suits involving other alleged incidents of child abuse are not probative of any material issue in the case. Evidence of other incidents (including other lawsuits, claims and demands), and records of the Church's disciplinary proceedings of other individuals, do not bear upon Plaintiff's claim that COP had notice of Loholt's risk to children and was therefore required to act. Other claims against the church also do not relate to determining the reasonableness of Bishop Borland's actions in this case.

"Evidence which is not relevant is not admissible." FRE 402. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401. It is not sufficient that evidence permits merely speculative conclusions and specifically, where notice to the defendant is material issue in the case, circumstantial evidence is not sufficient to show that the defendant should have known unless "it may be fairly and reasonably inferred from other facts proved." *H.E. Butt Grocery v. Pena*, 592 S.W.2d 956, 959 (Tex. Ct. App. 1980)

The prior matters plaintiffs may seek to introduce involve entirely different conduct, entirely different people, and entirely different jurisdictions imposing entirely different requirements for the reporting of suspected child abuse. *State v. Johns*, 301 Or. 535, 555, 725 P.2d 312 (1986) ("The greater the degree of similarity of the prior acts, the greater the relevancy; the less similarity, the less probative value."); *U.S. Football League v. National Football League*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986) (excluding in limine evidence of 18 prior antitrust

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

lawsuits against NFL as irrelevant under FRE 402 because plaintiff had not shown a factual or legal connection between the prior suits, which turned on only interleague conduct, and its own case involving a competing league). Consequently, evidence of these dissimilar other claims, cases, and demands cannot be relevant to establish any liability of Defendant COP in this case.

To introduce other litigation would accomplish at least one of two improper goals: confusing the jury by introducing evidence that is not properly considered by them, or prejudicing the jury by introducing irrelevant evidence that is intended to emotionally incite them.

FRE 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. Plaintiff cannot identify any legitimate purpose for offering evidence of other incidents or claims of abuse by Defendant COP's members as a basis for liability in this case. Evidence of opportunity, preparation, identity, mistake or any other conceivable purpose is not material, as a matter of law, to prove the elements of the claims Plaintiff asserts against Defendant in this case. If offered by Plaintiff, such evidence would be nothing more than a thinly disguised attempt to tarnish Defendant COP's reputation and impugn its character to the jury; the very aim that FRE 404 forbids.

In *Gibson v. Tzantarmas*, 108 Or. App. 270, 815 P.2d 221 (1991), the court reversed the trial court's admission of evidence of prior lawsuits involving the defendant. Plaintiff claimed the evidence of the lawsuits was relevant for punitive damages; however, the court disagreed:

> We conclude . . . that the other lawsuits had no relevance to this case and could only serve to suggest that defendant is a person of bad character. [The prior lawsuits] are not proper grounds upon which the jury could base its conclusions.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

*Id.* at 276. In *Gibson*, plaintiff had a stronger argument for admission of this evidence, since the existence of other lawsuits are at least conceivably relevant, in the minds of jurors, to whether punitive damages are warranted. Yet, the court held that the prior lawsuits were not admissible under even those circumstances. Since only compensatory damages are possible here, the irrelevance of other lawsuits or claims is all the more manifest.

The admission of other litigation against Defendant COP is one step removed from FRE 404(a), because in most character evidence situations it is the "prior bad acts" of the particular witness that opposing counsel seeks to introduce. In this case, it is the alleged "prior bad acts" of other clergy members in other wards or stakes that Plaintiffs seek to introduce to impeach the testimony of the clergy members involved in this case. Such information is even more irrelevant, attenuated, and prejudicial, and is properly excluded.

Evidence of other claims is also inadmissible under ER 403 as unduly prejudicial. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Unfair prejudice results from evidence which is 'dragged in' for its prejudicial effect or is likely to evoke an emotional response rather than a rational decision." *Erickson v. Kerr*, 125 Wn.2d 183, 190, 883 P.2d 313 (1994)(citing *Carson v. Fine*, 123 Wn.2d 206, 223, 867 P.2d 610 (1994)(quoting *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985)).

This Court simply cannot permit Plaintiffs to catalog prior claims against Defendants or other incidents involving abuse by church members and recount the lurid details underlying those claims. Such evidence would inflame the jury and encourage blame against Defendants

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

merely because of the nature of the underlying wrongs, not for any alleged misconduct of the

Defendants in this case. Limiting instructions cannot alter the prejudice or mitigate the "aura of

guilt" that presentation of this evidence would necessarily create. *USFL*, 634 F. Supp. at 1173.

Evidence of other claims of this sort "cannot help but have a great emotive impact on a jury of

laymen." *Id.*

Plaintiffs may argue that evidence of abuse lawsuits or abuse by church members is

admissible under FRE 406 to show the "habit" or "routine practice" of the Church. The focus

under ER 406 is the routine practice of the Defendant, not on the fact that some members of a

12-million member organization have sexually abused others. More significant is that evidence

regarding other claims or suits cannot qualify as a "routine practice" of Defendant. This case

arises from a purely local matter being dealt with by local clergy, Bishop Borland. Finally, there

can be no habit or routine practice under the facts of this or other abuse cases because there are

50 state laws which potentially impact the nature of the Defendants' response. *See generally,*

*Norris v. State*, 46 Wn. App. 822, 733 P.2d 231 (1987) (evidence that the plaintiff regularly

visited and imbibed at taverns not admissible in light of the necessary caution in considering

habit evidence because it "verges on inadmissible evidence of character"); *Jones v. Southern*

*Pacific R.R.*, 962 F.2d 447 (5th Cir. 1992) (evidence in personal injury action arising out of a

collision between defendant train and plaintiff's truck, of train engineer's history of nine prior

citations for safety violations not admissible because the prior violations "had little to do with

what actually happened on the day of the wreck"); *United States v. Angelilli*, 660 F.2d 23 (2d

Cir. 1981) (evidence of an organization's practice of engaging in illegal conduct, to prove illegal

conduct by an individual member, deemed not admissible.)

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

FRE 406 cannot be used to make an "end run" around the prohibition of "other acts"
evidence in FRE 404. The fact that Plaintiff could proffer evidence that the Defendant COP
responded in a certain way when presented with different abuse allegations under different
circumstances does not satisfy the specific requirements of ER 406. *See, e.g., Folsom v.
Woodburn*, 683 P.2d 9 (Nev. 1984) (firm's practice of settling with terminating partners could
not be a routine practice); *Showalter v. Barilari, Inc.*, 712 A.2d 244, 253 (N.J. 1998) (22
instances of serving alcohol to minors not sufficient to establish routine practice); *State v. Serna*,
787 P.2d 1056, 1062 (As. 1990) (practice of giving immunity to prisoners who inform on others
not "routine practice" because conduct not "semi-automatic and regular"). Indeed, admission of
such evidence would be highly improper since it is virtually impossible for Defendant COP to
introduce counter-evidence of the many times it handled abuse allegations very well in light of
individuals' clergy-penitent and privacy rights.

Finally, FRE 406 is still subject to the balancing requirement of FRE 403. As
demonstrated above, the danger of unfair prejudice with other acts of sex abuse is great and
substantially outweighs the probative value of such evidence.

### 14.    Other Lawsuits or Claims Against Other Religious Denominations.

Plaintiff's counsel and other attorneys have sued other religious organizations, such as
the Roman Catholic Church, on claims of sexual abuse. Defendant COP seeks an order
prohibiting Plaintiff from mentioning other claims or litigation against any other church on
grounds of relevancy (ER 401), undue prejudice (ER 403), and improper "character" evidence
(ER 404(a)).

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

For this motion in limine, not even the ER 404 analogy seems apt. In the previous motion in limine, Defendant COP sought to prevent Plaintiff from using evidence of Mormon clergy's alleged "prior bad acts." In this motion in limine, Defendant COP seeks to prevent Plaintiffs from using evidence of the alleged "prior bad acts" of any other religious denomination.

The current and past litigation against the Roman Catholic Church has revealed some troubling facts and issues as to the practices of certain dioceses. However, none of this is relevant to the resolution of this case. Any reference by plaintiff to the ongoing litigation against the Roman Catholic or other churches is simply a ploy to prejudice the jury against Defendant COP by tarnishing the character of religious organizations generally. Such references are properly excluded under ER 401, 403, and 404(a).

**I.    Live or Deposition Testimony of Witnesses**

**15.    Prior Deposition Testimony of Liddell and Brown.**

Plaintiff's pretrial statement states that Plaintiff may seek to introduce into evidence the depositions of Dwayne Liddell and Harold Brown from a suit commenced eight years ago against COP in Oregon (*Scott v. Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints, et al.*). Neither Mr. Liddell nor Mr. Brown had their depositions taken in this case, and as of the date of the writing of this motion Plaintiff's counsel has yet to supply defense counsel with the deposition transcripts or to designate the portions of the depositions they seek to admit. Whatever the purported relevance of the deposition testimony,

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Plaintiff cannot establish the threshold requirement for use of depositions from prior litigation: substantially similar issues.[7]

"The decision whether to admit a deposition from a prior lawsuit is vested in the district court's sound discretion." *Hub v. Sun Valley Co.*, 682 F.2d 776, 777 (9th Cir. 1982). Federal Rule 32(a)(4) "requires that the prior and present lawsuits involve the 'same subject matter' and 'the same parties or their representatives or successors in interest.'" *Id.* at 778. In applying the phrase "same subject matter," courts have required a "substantial similarity of issues." *Id.*

Plaintiff in *Hub* brought a claim against his former employer for discrimination based on national origin. The Ninth Circuit affirmed the district court's exclusion of a deposition taken in prior litigation between Hub and the defendant's predecessor in interest.

> The shortcoming here is that Hub failed to show that the deposition
> relates to issues common to both lawsuits. Hub offered the deposition
> below to show that Sun Valley decided not to rehire him in retaliation for
> his filing a complaint with the EEOC. The prior lawsuit, however, was
> brought in state court by Sun Valley's predecessor against Hub, and
> concerned events that occurred subsequent to the decision not to rehire
> him. Hub has not shown that retaliation for his filing the EEOC complaint
> was at issue there, or that Sun Valley's predecessor had any reason to
> cross-examine the deponent about the alleged retaliation. If Hub had
> taken the deposition for the present lawsuit, of course Sun Valley would
> have carefully questioned the deponent about any comment suggesting
> retaliation. It would be unfair to bind Sun Valley by the prior cross-
> examination which did not cover the issue of retaliation.

*Id.* at 778.

Plaintiff cannot establish the "substantial similarity of issues" that is the threshold requirement for introduction of depositions from prior litigation. The *Scott* case involved COP, and an allegation of sexual abuse, but there the similarity ends:

---

[7] Given that Plaintiff has yet to identify the portions of the depositions it seeks to admits, COP also reserves the right to make evidentiary objections if this motion is denied.

DEFENDANT'S MOTIONS IN LIMINE - 25
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1. *Scott* did not involve abuse by Jack Loholt;

2. *Scott* did not involve activity in the Kent Second Ward circa 1971-73;

3. *Scott* did not involve actions by Bishop Borland;

4. *Scott* did not present the same notice issue, that is, whether the Church received notice of Loholt's abuse of a child before or after he abused Plaintiff;

5. *Scott* did not involve the question of whether Dr. Allenbach was an agent of the Church; and

6. *Scott* did not involve claims for damages by Plaintiff.

In sum, there is no overlap in the key factual issues involved in *Scott* and the instant case. The Court should thus exclude these depositions from evidence.

## J.   Fact Witnesses Giving Expert Opinions

### 16.   Medical or Psychological Testimony of Lay Witnesses.

Plaintiff intends to offer expert testimony on psychological conditions from which he allegedly suffers and the cause of such conditions. In this and other cases, plaintiff's counsel also asked lay witnesses questions on these issues, eliciting their lay opinions as to how the plaintiff was causally impacted by the alleged conduct of defendants. Diagnosis and prognosis are medical/psychological matters that require expert medical/psychological testimony and cannot be evaluated by the observations of lay witnesses. As one District Court held:

> This Court agrees with the foregoing authority and concludes that Ferris will not be permitted to testify regarding any specific medical diagnosis of his mental ailments as the conditions from which he allegedly suffers--depression and anxiety disorder--are complex injuries beyond the knowledge of the average layperson. In addition, Ferris's beliefs as to how his injuries were caused may not be presented to the jury in the absence of expert testimony regarding causation, and, as stated supra, all such evidence has been excluded.

DEFENDANT'S MOTIONS IN LIMINE - 26
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

*Guarnieri v. Pa. Federation Bhd. of Maintenance of Way Employees*, 153 F. Supp. 2d 736, 746

(E.D. Pa. 2001). Defendants request an order excluding all testimony of lay witnesses on the

subjects of medical/psychological diagnosis or causation.

### 17.    Lay Interpretations of RCW 26.44.

Plaintiff asserts that Bishop Borland had a duty to report the incident involving Scott

Pettit to law enforcement or the Department of Health and Social Services pursuant to

RCW 26.44.030. Whether Bishop Borland had "reasonable cause to believe" that Plaintiff Scott

Pettit had been sexually abused is a factual issue for the jury to be decided based on law given

them by the Court.

Under Washington law, neither expert nor lay witnesses can testify regarding the proper

interpretation of a statute. *Karl V. Tegland*, 5B *Washington Practice and Procedure: Evidence*,

§702.46 at p. 137 (1999) ("[N]o witness, lay or expert, is permitted to express an opinion on a

question of law"). The interpretation of a statute, including whether it applies to a particular

class of persons in a particular set of circumstances, is a legal opinion. Because no witness,

whether lay or expert, is qualified to give a legal opinion, they should not be allowed to testify

regarding their interpretation of the meaning of RCW 26.44.030.

### K.    Presentation of Case

### 18.    Golden Rule Testimony.

Defendant COP seeks an order precluding Plaintiff from asking the jury to put

themselves in the shoes of Plaintiffs, or similar arguments and requests. Generally, reference by

counsel to the "golden rule" *per se*, or allusions to the rule such as "urging the jurors to place

themselves in the position of one of the parties to the litigation, or to grant a party the recovery

they would wish themselves if they were in the same position" constitutes an improper "golden

DEFENDANT'S MOTIONS IN LIMINE - 27
No. 04-2338 RSM

rule" argument. Such an argument is "improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Adkins v. Aluminum Co. of America*, 110 Wn.2d 128, 139, 750 P.2d 1257 (1988).

### 19. New Theories of Liability or Damages.

In his Complaint, Plaintiff seeks emotional distress damages against Defendants on theories of negligence (mandatory reporting and special relationship). This Court dismissed the other theories (civil conspiracy and fraudulent concealment) on COP's motion for summary judgment. Defendant COP seeks an order that precludes Plaintiff from introducing new theories of liability or damages at this time, or in presenting evidence on these new theories. *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456-57 (2nd Cir. 1975) (error to allow evidence on a theory first disclosed during trial).

DATED this 5th day of September, 2006.

**GORDON MURRAY TILDEN LLP**

By _____
    Charles C. Gordon, WSBA #1773
    Jeffrey I. Tilden, WSBA #12219
    Michael Rosenberger, WSBA #17730
    Attorneys for Defendant The Corporation of the
    President of The Church of Jesus Christ of
    Latter-Day Saints

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following. The parties will additionally be served in the manner indicated.

| | |
|---|---|
| Michael T. Pfau<br>Gordon, Thomas, Honeywell, Malanca,<br>Peterson & Daheim LLP<br>P.O. Box 1157<br>Tacoma, WA 98401-1157<br>Telephone:    (206) 676-7500<br>Facsimile:    (206) 676-7575<br>E-Mail:        mpfau@gth-law.com<br><br>( ) Mail        ( ) Hand Delivery<br>( ) Fax         ( ) Federal Express | Timothy D. Kosnoff<br>Law Offices of Timothy D. Kosnoff, P.C.<br>600 University Street, Suite 2101<br>Seattle, WA 98101<br>Telephone:    (206) 676-7610<br>Facsimile:    (425) 837-9692<br>E-Mail:        timkosnoff@comcast.net<br><br>( ) Mail        ( ) Hand Delivery<br>( ) Fax         ( ) Federal Express |

### GORDON MURRAY TILDEN LLP

By _____
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the
President of The Church of Jesus Christ of
Latter-Day Saints
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mrosenberger@gmtlaw.com

DEFENDANT'S MOTIONS IN LIMINE - 29
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292