THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K. and T.D., | NO. C04-2338RSM |
| Plaintiffs, | **PLAINTIFF'S MOTIONS IN LIMINE** |
| vs. | **NOTE ON MOTION CALENDAR: SEPTEMBER 15, 2006** |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH,"; LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation, | **ORAL ARGUMENT REQUESTED**[1] |
| Defendants. | |

## I.  RELIEF REQUESTED

Plaintiff, R.K., moves this Court, before trial and before selection of the jury, for an Order instructing defendants and their attorneys not to interrogate or attempt to convey to the jury in any manner any of the facts stated below without first obtaining the permission of the Court, outside the presence and hearing of the jury.

---

[1] Plaintiff is "noting" these motions in limine in accordance with the local rules.  However, in the event this Court grants the request for oral argument (both parties have requested oral argument), plaintiff requests that the argument not occur on the "noting date" because plaintiff's counsel is not available for a hearing on that date.

PLTFS MTNS IN LIMINE - 1 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Plaintiff further requests that the Court instruct defendants' attorney to warn and caution its witnesses to strictly follow the Order entered by the Court in connection with plaintiffs' Motions in Limine. Specifically, plaintiff requests that the Court prohibit the defendants and the defendants' representatives, their attorneys and witnesses from mentioning or commenting, in any manner whatsoever, upon the issues delineated below.

## II.     **Argument**

Pretrial motions to exclude evidence are designed to simplify the trial and to avoid the prejudice which often occurs when a party is forced to object in front of a jury to the introduction of evidence. *Fenimore v. Donald M. Drake Const.*, 87 Wn.2d 85, 89, 549 P.2d 43 (1976). When a trial court is able to determine the admissibility of the questioned testimony prior to its introduction at trial, it is appropriate to grant the Motion in Limine and thereby avoid prejudice before the jury. *State v. Kelly*, 102 Wn.2d 188, 192, 685 P.2d 564 (1984).

The standards for granting a Motion in Limine are set forth in *Fenimore* as follows:

> The trial court should grant such a motion if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn which may develop during the trial and if the evidence is so prejudicial in its nature, that the moving party should be spared the necessity of calling attention to it by objecting when it offered during trial.

*Fenimore*, 87 Wn.2d at 91.

FRE 402 provides, in pertinent part, that "evidence which is not relevant is not admissible." Relevant evidence is defined by FRE 401 as "evidence have any tendency to make the existence of any fact that is of consequence to the determination the action more probable or less probable than it would be without the evidence." FRE 403 states that "relevant evidence may be excluded if its probative value is substantially outweighed by the

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Court is permitted to enter an Order in Limine prohibiting trial counsel from presenting evidence on matters properly excludable. In *Osborne v. Lake Washington School District*, 1 Wn.App. 534, 538, 462 P.2d 966 (1969), the Court recognized that a Motion in Limine made prior to the impaneling of a jury is a proper method to exclude such evidence.

### 1. NO REFERENCE TO SETTLEMENT OFFERS, DEMANDS, NEGOTIATIONS OR DISCUSSIONS.

Evidence of compromise, offers to compromise, or discussions relating to compromise are excluded from evidence. Fed. R. Evid. 408; *see also Discargar v. Seattle*, 30 Wn.2d 461, 468, 191 P.2d 870 (1948) (reference to settlement negotiations resulted in an order granting a new trial); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 675 (2000) (confidential settlement communications are inadmissible). Furthermore, an offer to compromise is irrelevant as it may be offered to buy peace and not to acknowledge responsibility. Fed. R. Evid. 408 Notes of Advisory Committee on Rules; *see also* 5A *K. Tegland*, Wash. Prac. § 408.1, p. 48 (offers of compromise are irrelevant "because an offer to settle may be motivated solely by a desire to buy peace . . . ."). Exclusion of this evidence furthers the public policy of encouraging compromise and settlement of disputes. Fed. R. Evid. 408 Notes of Advisory Committee on Rules; *see also In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir. 1979). Furthermore, complete candor during settlement negotiations would not be possible if the substance of compromise negotiations were admissible. Fed. R. Evid. 408 Notes of Advisory Committee on Rules; *see also United States v Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982). Because of this policy rationale, compromise offers are inadmissible and the parties are not allowed to imply that settlement discussions have occurred. Fed. R. Evid. 408. Furthermore,

PLTFS MTNS IN LIMINE - 3 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

both parties must be allowed to interact with one another in confidence and without fear that settlement efforts can be used at trial. Fed. R. Evid. 408 Notes of Advisory Committee (the rule allows for freedom of communication with respect to compromise).

## 2. THERE SHOULD BE NO DISPLAY OF EXHIBITS BEFORE THE JURY, UNTIL THE EXHIBIT IS ADMITTED BY THE COURT INTO EVIDENCE, OR UNTIL PERMISSION HAS BEEN OBTAINED FROM THE COURT.

This motion involves a matter of fundamental fairness. If an exhibit is used in opening statement or closing argument and such exhibit is not admissible into evidence or is not a fair summary of admissible evidence, the opposing party is unfairly prejudiced.

## 3. NO REFERENCE TO THE NATURE OF THE PLAINTIFFS' ATTORNEYS' PRACTICE AND NO MENTION OF THE ASSOCIATION OF COUNSEL.

Any reference to plaintiffs' attorneys association on this matter or that a large percentage of plaintiffs' attorneys' practice is the prosecution of claims of childhood sexual abuse against churches is not relevant and is inadmissible under FRE 402.

## 4. EXCLUSION OF WITNESSES FROM THE COURTROOM.

The trial court has discretion to exclude witnesses from the courtroom. *Egede-Nissen v. Crystal Mountain, Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980). Plaintiff anticipates that there may be witnesses called by the parties who have not been deposed. Plaintiff further anticipates that the testimony may be disparate and/or cumulative in some respects. Accordingly, in an effort to maintain fairness and impartiality, plaintiff asks that the defense witnesses be excluded from the courtroom until such time as their testimony is needed.

If defendant seeks a corporate representative to be present at trial, plaintiff requests that the representative be identified prior to trial and that defendants be limited to one representative.

PLTFS MTNS IN LIMINE - 4 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

**5. DEFENDANTS SHOULD BE PROHIBITED FROM INTRODUCING TESTIMONY OF "ANGER MANAGEMENT" ISSUES AND/OR UNSUPPORTED AND UNSUBSTANTIATED ALLEGATIONS THAT R.K. ENGAGED IN SEXUAL ABUSE OF A MINOR.**

Plaintiff R.K. and Evalyn deGuzman are the parents of a child, Cameron "Muk" Timoteo de Guzman.[2] Since 1993 plaintiff has attempted to obtain increased visitation with his son. In documents filed in opposition to R.K.'s requests, Ms. deGuzman accused the plaintiff of domestic violence.[3] She also accused him of molesting her son. As a result plaintiff was referred to anger management therapy. That therapy was conducted at Anger Control Treatment and Therapies, Inc. (ACT&T). As a result of the anger management sessions, the counselors at ACT&T prepared reports related to R.K.'s participation the program; additionally, the counselors referred R.K. to Souhir Ben Hamida for psychological testing. Defense counsel has indicated an intent to utilize the ACT&T records in this case. For the reasons discussed below, defendant should be prohibited from (a) cross-examining the plaintiff and/or collateral witnesses on the issue of R.K.'s alleged "anger management," on the grounds that such information is unduly prejudicial to plaintiff, (b) should be prohibited from utilizing documents obtained from ACT&T on the grounds that the documents contain hearsay and (c) should be prohibited from introducing the reports prepared by counselors at ACT&T, and Dr. Souhir Ben Hamida, as the reports will be cumulative of live witness testimony.

In this same vein, the reports of forensic expert Dr. Frederick Wise, Ph.D., should be excluded as this witness will testify live.

---

[2] Muk is now 14 years old.

[3] Despite the domestic violence allegations, plaintiff has never been arrested (or even charged) with crimes of that nature (or with any crimes for that matter). The accusations arise from a contentious custody/visitation dispute regarding Muk.

PLTFS MTNS IN LIMINE - 5 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

### (a) EVIDENCE OF ANY ANGER MANAGEMENT PROBLEM R.K. MAY HAVE HAD IS UNDULY PREJUDICIAL.

Plaintiff is a victim of childhood sexual abuse. The introduction of evidence demonstrating that R.K. may have had "anger management" issues manifested in relationships as an adult is of limited relevance to any aspect of this case and defendants' motive in submitting the evidence of R.K.'s "anger management" can be nothing more than an attack on his character and is unduly prejudicial to plaintiff.

Evidence is "unfairly prejudicial" when it has an "undue tendency to suggest a decision on an improper basis or if the evidence appeals to the jury's sympathies, arouses it sense of horror or otherwise might cause the jury to base its decision on something other than the legal propositions relevant to the case." *Carter v. Hewitt,* 617 F.2d 961, 972 (1980)( 3rd Cir. 1980).

Here, the only basis for introducing any evidence that R.K. allegedly engaged in and/or displayed domestic violence tendencies could only be to portray R.K. in a negative light or to provoke an emotional response in the jury. Testimony which is submitted to provoke an emotional response should be not be admitted because such evidence tends to confuse the jury and tends to focus the jury's attention away from the issues at bar. *See, e.g., State v. Rice,* 48 Wn.App. 7, 13, 737 P.2d 726 (19876) (in a prosecution for burglary, the court properly excluded evidence relating to victim's alleged assault of perpetrator even though evidence was contradicted by victim's in-court statement because evidence would have confused the issues by drawing the jury's attention to the assault away from the burglary); *see, also, Garcia v. Providence Medical Center,* 60 Wn.App. 635, 644, 806 P.2d 766 (1991) *rev. denied,* 117 Wn.2d 1015 (1991) (in medical malpractice action relating to the death of an infant, evidence that the mother had three prior abortions should have been excluded).

PLTFS MTNS IN LIMINE - 6 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

### (b) THE EVIDENCE IS INADMISSIBLE UNDER FRE 404(b).

In addition to the FRE 403 analysis, FRE 404(b) prohibits the introduction of evidence of "other crimes, wrongs or acts" for the purpose of attacking an opposing party's "character . . . to show action in conformity therewith." In fact, generally, evidence of other "crimes, wrongs or acts" is only admissible to demonstrate "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*  None of these bases are applicable in this case. Plaintiff R.K. is not the party accused of any engaging in any bad act in this case; instead, he was the victim of childhood sexual abuse. Consequently, there is no reason to introduce evidence of any prior alleged "bad acts" relating to R.K. Instead, such information would be provided to the jury solely to impugn R.K.'s character and credibility and, again, to evoke an emotional response from the jury. The evidence should be excluded.

The evidence should also be excluded because the evidence does not reflect on R.K.'s character for truthfulness and because R.K. has not been criminally charged (or convicted) of domestic violence or sexual abuse. *See, U.S. v. Leonardi,* 623 F.2d 746, 756 (2nd Cir 1980) where the court correctly precluded evidence of witness' prior criminal act which did not result in conviction and which did not, by their nature, tend to impugn the witness' credibility); *see, also, Gordon v. U.S.,* 383 F.2d 936, 940 (D.C. Cir. 1967) (acts of violence which may result from a short temper, a combative nature, extreme provocation or other causes generally have little or no direct bearing on honesty and veracity).

### (c) HEARSAY STATEMENTS CONTAINED WITHIN THE RECORDS ARE INADMISSIBLE.

It is anticipated that defendant will attempt to introduce documents containing hearsay statements made by third persons as a method of demonstrating that R.K. is not credible or that he committed "bad acts." However, while defendant may, in certain circumstances (and

PLTFS MTNS IN LIMINE - 7 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

subject to other motions before this Court), cross-examine plaintiff and his witnesses, defendant should not be able to submit documents into evidence when the documents contain hearsay statements relating to plaintiff's alleged prior "bad acts." FRE802 (hearsay is not admissible unless an exception applies). No exception applies here.

First, assuming (without conceding) that the records from ACT&T are "medical records," ER803(a)(4) allows inclusion of statements in medical records only if the statements are "reasonably pertinent to diagnosis or treatment" of a certain condition. *See, e.g., State v. Woods,* 143 Wn.2d 561, 602, 23 P.3d 1046, *cert. denied,* 534 U.S. 965 (2001) (statements such as "'the victim said she was hit on the legs with a bat' would be admissible, but 'the victim said her husband hit her in the face' would not be admissible).

Here, the only "condition" for which R.K. seeks damages is the psychological harm that he suffered as a result of defendants' failure to protect him. The counselors at ACT&T have no personal knowledge of that harm. It cannot be reasonably argued that statements contained in the ACT&T records pertaining to other persons description of plaintiff's alleged prior acts of "domestic violence," were for the purposes of medical diagnosis or treatment of the psychological harm he suffered from the sexual abuse. The statements are not admissible under FRE803(a)(4).

### (d) THE REPORTS OF COUNSELORS AT ACT&T SHOULD BE EXCLUDED AS HEARSAY AND AS CUMULATIVE EVIDENCE.

Finally, if this Court determines that Dr. Ben Hamida and/or the counselors at ACT&T should be permitted to testify, their reports should nevertheless be excluded. The reports are (1) hearsay and (2) will be cumulative of the live witness testimony. There is no hearsay exception that applies to an expert report, especially when the expert witness testifies as trial, and the report should not be admitted into evidence. *See, e.g., DeYong v. Cenex, Ltd.,* 100 Wn.App. 885, 890, 1 P.3d 587 (2000) (the trial court excluded all but two pages of an expert's investigative report on the grounds that the expert testified to the rest).

PLTFS MTNS IN LIMINE - 8 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

**(e) THE REPORT OF SOUHIR BEN HAMIDA SHOULD BE EXCLUDED AS HEARSAY, AS CUMULATIVE EVIDENCE AND AS UNDULY PREJUDICIAL.**

For the reasons discussed above in section (c) above, the report of Souhir Ben Hamida should be excluded. Dr. Ben Hamida's report, and testimony, should also be excluded on the grounds that the testimony (and report) are unduly prejudicial and lack the proper foundation.

As discussed above, during R.K.'s anger management therapy he presented to Souhir Ben Hamida, Ph.D., for psychological testing only. Dr. Ben Hamida did not "treat" plaintiff R.K. In fact, in her recent perpetuation deposition, Dr. Ben Hamida admitted that she did not perform a "full examination"[4] of R.K., stating, instead, that she "performed a brief psychological testing report" only.[5] Dr. Ben Hamida additionally agreed that "testing alone" was not "meaningful without an appropriate interview and collateral contact" and that she did not engage in "collateral contacts" nor did she have the "appropriate data to offer any recommendations" regarding plaintiff.[6]

Introducing Dr. Ben Hamida's "opinions" about the plaintiff will confuse the jury. Defendants will, undoubtedly, portray Dr. Ben Hamida as the equivalent of an unbiased "treating" physician with no bias towards (or against) the plaintiff. However, such a portrayal is not reality. First, Dr. Ben Hamida provided a "snap shot" of R.K.'s **potential** personality traits which is not based on a full psychological examination. Furthermore, even the limited interview she conducted of R.K. was done at a time when plaintiff was under the duress of fighting a child custody / visitation battle. Dr. Ben Hamida did not treat plaintiff and she did not diagnose him. Consequently, her report, the underlying data she relied upon in formulating her opinion and report, should be excluded for this reason alone.

---

[4] Deposition of Souhir Ben Hamida, pg. 33 (attached as **Exhibit A** to Declaration of Michael T. Pfau, filed herewith).
[5] Ben Hamida deposition, pg. 33.
[6] Ben Hamida deposition, pg. 34.

PLTFS MTNS IN LIMINE - 9 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

In summary, if defendants are permitted to introduce evidence of R.K.'s "anger management" problem and alleged reports of domestic violence, such evidence would be submitted only be for the purpose of drawing attention away from the issues at bar and attempting to confuse the jury. Defendant should not be permitted or allowed to do so. In contrast, as discussed herein, the prejudice that plaintiff will face if this information is presented to the jury will be profound. Furthermore, if the evidence is admitted, plaintiff will be faced with having to demonstrate that the prior allegations were false or misleading. This will result in a mini-trial on the validity of the prior allegations and will result in a substantial waste of time and, very likely, the jury will likely be confused by the introduction of such evidence. All evidence of R.K.'s alleged prior "anger management" problems should be excluded.

### (f) DEFENDANT SHOULD BE PROHIBITED FROM INTRODUCING ANY TESTIMONY RELATING TO PLAINTIFF'S ALLEGED ABUSE OF HIS OWN CHILD AND THE ALLEGED SEXUAL ABUSE OF HIS STEP-CHILD SHOULD BE PROHIBITED.

In addition to "anger management" issues, the records from R.K.'s divorce (and from ACT&T) contain references to allegations that R.K. was accused of sexual abusing both his own son, and his step son, Kimo. The allegations were completely unfounded and unsubstantiated and R.K. was never charged, arrested, tried, or convicted of sexual improprieties relating to his children (or any other child). Common sense demonstrates that any evidence relating to the unsubstantiated allegations of R.K.'s alleges sexual misconduct with minors would be extremely prejudicial to R.K. Evidence of any such allegations, and any references to any such allegations, must be excluded.

### 6. DEFENDANT SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE THAT THE ABUSE OCCURRED WHEN PLAINTIFF WAS "6 YEARS OLD."

At the time plaintiff R.K. received therapy from Anger Control Treatment & Therapies, R.K. advised the counselors of various events in his life – including his abuse at

PLTFS MTNS IN LIMINE - 10 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

the hands of Jack Loholt.  In discussing the sexual abuse, R.K. estimated for the ACT&T personnel that the abuse occurred when he was six years old (which would have been in 1968).  Defendant will attempt to utilize this "fact" to try to demonstrate that R.K.'s abuse occurred prior to the time COP (and/or LDS Social Services) first gained knowledge that Loholt was a pedophile.  However, COP should not be permitted to gain such an advantage and, instead, the evidence of R.K.'s prior statement should be excluded.  Alternatively, if the evidence is admitted, R.K. should be able to corroborate his own testimony with the testimony of other victims who were abused simultaneously with him and/or during the same time period.

FRE 608(b) provides, in pertinent part,

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may **not** be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of the truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . .  (Emphasis added.)

Here, R.K.'s prior statement to the anger management counselors is not demonstrative of his character for truthfulness or untruthfulness.  Instead, it was a single statement made at a time when R.K. was under the stress of a child custody/visitation dispute.  The fact that R.K. previously stated that the abuse occurred when he was six years old (as opposed to 12 years old) does not demonstrate any character for truthfulness or untruthfulness.  Instead, it simply demonstrates that, on a single occasion, R.K. may have misstated the general date he was abused.  The prior statement should be excluded.

Furthermore, R.K.'s statement to the counselors at ACT&T is simply not supported by the other evidence in this case.  First, R.K. testified, in his deposition, that the abuse occurred when he was between 9 and 12 years old (between 1971 and 1974).[7]  Second, COP's own

---

[7] R.K. depo., pg. 15, ll. 20 (attached to Declaration of Michael T. Pfau, as **Exhibit B**).

PLTFS MTNS IN LIMINE - 11 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

submission demonstrates that the abuse could not have occurred in 1968.  Instead, COP admits that Loholt moved into the Allenbach compound (where the abuse occurred) in mid-1969, at the earliest.[8]

Additionally, this Court has previously ruled that the testimony of other victims of Loholt is inadmissible.  Consequently, if R.K.'s prior statement is admitted, R.K. will be placed in the untenable position of having to explain his prior statement to the jury, while being prohibited from producing testimony from other witnesses (e.g., other victims of Loholt) who can corroborate the timing of his abuse.[9]  Consequently, if this Court determines that R.K.'s earlier statement relating to the timing of the abuse is admissible, R.K. should be permitted to present the testimony of other victims to corroborate when the abuse occurred.

Finally, the fact that R.K.'s statement may be admissible under FRE 801(d)(2) (providing for admissibility of statement of a party opponent) should not overcome the undue prejudice that R.K. will face if this evidence is presented to the jury.  As with most admissibility issues, a district court is authorized to exclude even prior statements of a party opponent if the probative value is substantially outweighed by the danger of unfair prejudice – including "undue delay, waste of time or needless presentation of cumulative evidence." *See, e.g., McAlinney v. Marion Merrell Dow, Inc.*, 992 F.2d 839 (8th Cir. 1993).

## 7.  THERE SHOULD BE NO ARGUMENT BY EITHER COUNSEL REQUESTING THE JURORS TO PLACE THEMSELVES IN THE POSITION OR "SHOES" OF EITHER PARTY.

It is anticipated that defendants' counsel may request that jurors place themselves "in the shoes" of the defendant or its representatives.  This is clearly improper in that a juror's duty is to act disinterestedly and impartially.  WPI 1.01.  Support for this proposition was also

---

[8] *See* COP's Motions in Limine, pg. 4, ll. 30-33.

[9] As indicated in other filings before this Court, R.K. was abused while he was alone with Loholt and along with other children.  In fact, part of plaintiff's damage claim is that he suffered additional damage because he was forced to observe Loholt's abuse of other children.

PLTFS MTNS IN LIMINE - 12 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

stated in *Meabon v. State*, 1 Wn. App. 824, 463 P.2d 789 (1970), *see also* 70 A.L.R. 2d 935, 75 Am. Jur. Second Trials § 282.

### 8. PERSONAL BELIEF REGARDING CREDIBILITY.

Defense counsel and/or defense witnesses should not be permitted to express, in any way, their opinion or personal belief concerning plaintiff R.K.'s credibility. Such statement or expression is not permitted. FRE 608; RPC 3.4(f).

### 9. DEFENDANTS' RESPONSE TO ALLEGATIONS OF SEXUAL ABUSE.

It is anticipated that defendants will attempt to introduce evidence indicating that it "does more" than other churches in attempting to address instances of childhood sexual abuse. Even if it were generally true that the Mormon Church "does more" than other churches in attempting to respond to allegations of child abuse, such evidence would have to be supported by submitting evidence of what other churches actually do when their officials are notified of instances of child abuse. Such evidence would, in effect, create a "trial within a trial" on the issue of which of the various entities does "more" or whether the various attempts at rectifying child sexual abuse are effective, etc. Such information is wholly irrelevant and should be excluded under FRE 402 for that reason alone.

Furthermore, this matter is not about whether the Mormons are better than other churches in taking appropriate action in dealing with notifications of childhood sexual abuse. This case is about whether COP, and LDS Social Services, took appropriate actions when they were notified that Jack Loholt was a pedophile. Thus, any evidence relating to whether COP and/or LDS Social Services "does more" than other churches is not relevant and, again, would be submitted solely to draw the jury's attention away from the issues at bar and to prejudice the jury in favor of COP and LDS Social Services. Such evidence is irrelevant and, therefore, inadmissible. FRE 402; FRE 403.

PLTFS MTNS IN LIMINE - 13 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## 10. FIRST AMENDMENT ISSUES.

It is anticipated that COP and/or LDS Social Services will assert that First Amendment principles prohibit inquiry into certain matters. It is further anticipated that defendants will attempt to elicit testimony from their witnesses relating to their interpretation of the First Amendment. Such testimony should not be permitted because it is the judiciary's province to interpret the law. *See Griffith v. City of Bellevue*, 130 Wn.2d 189, 196, 922 P.2d 83 (1996).[10] Defendants should be prohibited from introducing evidence or testimony pertaining to their interpretation and/or meaning of the First Amendment/Freedom of Religion issues.

## 11. PLAINTIFF SHOULD BE ALLOWED TO CALL RECORDS CUSTODIANS WHERE NECESSARY.

To the extent defendants object to the authenticity of certain documents, plaintiff should be permitted to call records custodians at the time of trial.

## 12. DEFENDANT SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE OF "ALTRUISTIC ACTS" ON THE PART OF THE MORMON CHURCH.

It is anticipated that Defendant or Defendants will seek to introduce testimony regarding altruistic acts, charity, and good will performed by the Mormon Church. Like most organized religions, the Mormon Church is involved in certain altruistic acts, charity, and good will. While laudatory, such acts and/or actions have nothing to do with the case at hand and the two corporate defendants' liability for the sexual abuse of R.K. Such testimony could prejudice and confuse the jury and is not relevant.

## 13. PROHIBITION REGARDING AFFECT OF A VERDICT ON THE MORMON CHURCH

It is anticipated that representatives of the Mormon Church may suggest that an adverse verdict in this case could affect the COP's ability to operate or function locally. While plaintiffs doubt a verdict would have any affect on the ability of the local or national

---

[10] *See, also,* Plaintiff's Opposition to Plaintiff's Motion in Limine to Exclude Evidence of Clergy-Penitent Privilege, on file herein.

PLTFS MTNS IN LIMINE - 14 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Church to function such testimony would be unfairly prejudicial and would not be relevant to the facts at hand. Accordingly, defense counsel and defense witnesses should be prohibited from offering any such evidence or making any such statements.

### 14. PRIOR INCONSISTENT STATEMENTS BY PLAINTIFF

It is anticipated that COP will attempt to cross-examine plaintiff will evidence of his prior inconsistent statements regarding the date of his abuse, the effects of the abuse, and whether and to what extent he admitted having been sexually abused in the past. The attempt to introduce and/or impeach the plaintiff regarding these statements is meant to attack the plaintiff's credibility and suggest to the jury that the abuse either did not occur, or was not as severe as the plaintiff has testified. As this Court knows from its previous rulings in this case and from related claims, LoHolt abused multiple teenage boys in the Renton and Kent Stake during the same time period that plaintiff was abused. Indeed, LoHolt abused boys in the same location and at the same time as plaintiff was abused. Loholt has denied the abuse.

In a previous ruling this Court ruled that evidence of other victims' abuse will not be admitted in this case. Plaintiffs will be prejudiced if the defendants can attack plaintiffs' credibility, but plaintiffs are unable to offer testimony from other victims to demonstrate LoHolt was abusing other boys during the same time frame and in same location.

Given this Court's prior ruling, any attempted by defendant to suggest the abuse did not occur, or to attack plaintiff's credibility on the issue of the abuse should be prohibited or limited.

### 15. PLAINTIFF'S MOTION IN LIMINE RE: EXHIBITS SOUGHT TO BE ENTERED AT TRIAL.

As a resulting of working with defendants in drafting the joint pretrial order, plaintiff has learned that defendant intends to object to certain documentary evidence plaintiff seeks to admit at trial. Accordingly, plaintiff feels it may be beneficial for the court to make pre-trial

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

rulings regarding the documents sought to be admitted. Those documents have not been attached but are described in general terms below. Plaintiff will submit the documents along with the pre-trial order. If the Court deems it is unable to rule based on the descriptions provided below, plaintiff requests that the Court reserve ruling until the pre-trial conference, or until trial.

### (a) PLAINTIFFS' PROPOSED EXHIBIT #4 - RENTON AND KENT STAKE DIRECTORIES.

Plaintiff intends to offer Renton and Kent Stake Directories as exhibits. Defendants have indicated they will object to the admission of these documents. The Renton and Kent Stake directories are relevant to show where Loholt was residing during the relevant time periods 1969-1974 and to prove that church officials knew or should have known after they learned of LoHolt's abuse of Scott Petitt that LoHolt was continuing to reside at the Allenbach compound where children including plaintiff were present. The directories establish that LoHolt did not reside at the Allenbach home until the early 1970s and establish that he continued to live at the Allenbach home until at least January 1973 all of which is consistent with plaintiff's recollections of the period of time Loholt abused him at the Allenbach compound. It supports plaintiff's contentions that he continued to be abused by Loholt after Bishop Pettit's disclosure of his son's abuse to Bishop Borland in February 1972. The probative value of this evidence as to knowledge, forseeability and duty outweigh any potential prejudice to defendants.

### (b) PLAINTIFFS' PROPOSED EXHIBIT #5 – CHURCH HISTORICAL RECORD OF CHANGES OF OFFICERS, TEACHERS AND BOARD MEMBERS OF KENT 2ND WARD FOR YEARS 1973-1975.

Plaintiff intends to offer Church historical records of changes of Officers, Teachers and Board Members of the Kent 2nd Ward. Defendants have indicated they will object to the admission of these documents. The plaintiff has testified that his abuse by LoHolt occurred

PLTFS MTNS IN LIMINE - 16 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

during the early to mid-seventies. The evidence will show that COP placed LoHolt in offices and positions working with youth in the Kent 2nd ward throughout the time period 1971-1975. The document shows the precise date Bishop Borland removed Loholt as Assistant Scoutmaster – February 6, 1972 – and sent him for sexual deviancy treatment at LDS Social Services and it shows that church officials continued to put LoHolt in positions working with youth after that date, i.e. Scout Troop Committee Member on February 23, 1972; Assistant Venturer Leader (older scouts) on October 28, 1973; Scoutmaster on May 15, 1974. It also reflects the precise dates it placed LoHolt in these positions but also shows the positions and the precise dates that the relevant church officials, particularly Bishops Borland, Coleman, Pettit and Dr. Herman Allenbach were placed in positions of authority within the church.

### (c) PLAINTIFFS' PROPOSED EXHIBIT #9 – ARTICLES OF INCORPORATION: COP AND LDS SOCIAL SERVICES.

Plaintiff intends to offer Articles of Incorporation of Defendants as an exhibit. Defendant has indicated it will object to the admission of this document. Articles of Incorporation of defendants are relevant to show that the corporate sole of COP and the President of the Mormon Church are the same person. This is necessary to prove that the acts of the President (in creating policy, appointing and removing any member of the church, discipline or removal of members from any positions and anything else he so chooses) are the acts of the corporate sole. Without evidence of who the corporate sole is the jury will not understand why COP is the responsible party in this case. Admission of certified copies of the Articles of Incorporation will not unfairly prejudice the defendants.

### (d) PLAINTIFFS' PROPOSED EXHIBIT #11 – EXCERPTS FROM ENCYCLOPEDIA OF MORMONISM, PRIESTHOOD AND CHURCH ORGANIZATION.

Plaintiff intends to offer excerpts from the Encyclopedia of Mormonism as an exhibit. Defendant has indicated it will object to admission of this document. This is either a publication of the defendant or was published by authority of COP. Excerpts from the Church

PLTFS MTNS IN LIMINE - 17 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

publication Encyclopedia of Mormonism on subject of the President's powers and authority in church affairs, church structure and organization, the role of a bishop in Mormonism, and the functions of a High Priest is relevant to establish a foundation necessary to demonstrate that representatives of the Mormon Church failed to respond to complaints of abuse in the congregation.

### (e) PLAINTIFFS' PROPOSED EXHIBIT #12 – MANDATORY REPORTING STATUTE.

Plaintiff intends to offer the text of the mandatory reporting statute in effect in 1971 as an exhibit. Defendant has indicated it will object to this document's admission. The mandatory reporting statute from 1971 is relevant to show 1) the existence of the reporting statute during the relevant time period and 2) that clergy were mandatory reporters. It is also relevant to show that 3) social service providers such as LDS Social Services were also mandatory reports and is relevant to show that LDS Social Services met the statutory definition of social service provider as it existed in 1971.

RESPECTFULLY SUBMITTED this 5th day of September, 2006.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By _____
    Michael T. Pfau, WSBA No. 24649
    mpfau@gth-law.com
    Michelle A. Menely, WSBA No. 28353
    mmenely@gth-law.com
    Co-Counsel for Plaintiff

LAW OFFICES OF TIMOTHY D. KOSNOFF

By _____
    Timothy D. Kosnoff, WSBA No. 16586
    timkosnoff@comcast.net
    Co-Counsel for Plaintiff

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

CERTIFICATE OF SERVICE

I, hereby certify that on September 5, 2006, I electronically filed the foregoing **PLAINTIFF'S MOTIONS IN LIMINE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| Charles C. Gordon<br>Jeffrey I. Tilden<br>GORDON MURRAY TILDEN LLP<br>1001 Fourth Avenue, Suite 4000<br>Seattle, WA 98154<br>Ph.: 206.467.6477<br>Fx.: 206.467.6292 | |
|---|---|

                                    /s/ Michelle Menely

PLTFS MTNS IN LIMINE - 19 -
(C04-2338RSM)
[169500 v10.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575