```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10                                                    The Honorable Ricardo S. Martinez
11
12                    UNITED STATES DISTRICT COURT
13                WESTERN DISTRICT OF WASHINGTON AT SEATTLE
14
```

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., | NO. 04-2338 RSM |
| Plaintiffs, | SECOND DECLARATION OF MICHAEL ROSENBERGER |
| v. | |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDS, a Utah corporation, | |
| Defendants. | |

Michael Rosenberger, being duly sworn on oath, deposes and says:

1. I am one of the attorneys representing Defendants in this matter. I make this Declaration based upon personal knowledge.

2. Attached to this Declaration are true and accurate copies of excerpts from the depositions of Jack Onefrey (aka Loholt), Richard Pettit and Randall Borland.

SECOND DECLARATION OF MICHAEL ROSENBERG - 1
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

1
2      I declare under the laws of the State of Washington and of the United States that the
3  foregoing is true and correct.
4
5      DATED this 8th day of September, 2006.
6
7
8
9                                                    _____
10                                                    Michael Rosenberger
11

SECOND DECLARATION OF MICHAEL ROSENBERG - 2
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following. The parties will additionally be served in the manner indicated.

| Michael T. Pfau<br>Gordon, Thomas, Honeywell, Malanca,<br>Peterson & Daheim LLP<br>P.O. Box 1157<br>Tacoma, WA 98401-1157<br>Telephone:  (206) 676-7500<br>Facsimile:  (206) 676-7575<br>E-Mail:  mpfau@gth-law.com<br><br>( ) Mail    ( ) Hand Delivery<br>( ) Fax     ( ) Federal Express | Timothy D. Kosnoff<br>Law Offices of Timothy D. Kosnoff, P.C.<br>600 University Street, Suite 2101<br>Seattle, WA 98101<br>Telephone:  (206) 676-7610<br>Facsimile:  (425) 837-9692<br>E-Mail:  timkosnoff@comcast.net<br><br>( ) Mail    ( ) Hand Delivery<br>( ) Fax     ( ) Federal Express |

**GORDON MURRAY TILDEN LLP**

By _____/s/ Michael Rosenberger_____
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the
President of The Church of Jesus Christ of
Latter-Day Saints
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mrosenberger@gmtlaw.com

SECOND DECLARATION OF MICHAEL ROSENBERG - 3
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Byers & Anderson
Court Reporters & Video

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

KENNETH FLEMING and JOHN DOE,    )
                                 )
         Plaintiffs,             )
                                 )
    vs.                          ) No. C04-2338RSM
                                 )
THE CORPORATION OF THE           )
PRESIDENT OF THE CHURCH OF       )
JESUS CHRIST OF LATTER-DAY       )
SAINTS, a Utah corporation       )
sole, a/k/a the "MORMON          )
CHURCH," LDS SOCIAL SERVICES,    )
a/k/a LDS FAMILY SERVICES,       )
a Utah corporation,              )
                                 )
         Defendants.             )

VIDEOTAPED DEPOSITION OF JACK A. ONEFREY

January 27, 2006

Seattle, Washington

Byers & Anderson, Inc.

Court Reporters/Video/Videoconferencing

One Union Square        2208 North 30th Street, Suite 202
600 University St.      Tacoma, WA 98403
Suite 2300              (253) 627-6401
Seattle, WA 98101       (253) 383-4884 Fax
(206) 340-1316          scheduling@byersanderson.com
(800) 649-2034          www.byersanderson.com

Serving Washington's Legal Community Since 1980


Exhibit____ Page 4

Jack A. Onefrey
January 27, 2006

b2cbc3c6-879a-4364-b6a5-9911772d6961

Page 138

1  Q  Did you ever tell Chelsey Wieder that you had had sex
2     with more than 250 children in your life?
3  A  No.
4  Q  Never made that statement?
5  A  No.
6  Q  Never said anything like that to her?
7  A  No.
8  Q  Did you ever go to LDS Social Services for sexual
9     deviancy counseling or treatment?
10 A  Yes.
11 Q  Okay. About what time period?
12 A  Probably -- I'm really not sure on that.
13 Q  But it was while you were in the Kent 2nd Ward in the
14    1970s?
15 A  Yes.
16 Q  Okay. And you were referred there by a bishop?
17           MR. WOLFE: We're going to object,
18    assert privilege.
19 Q  (By Mr. Kosnoff) You were referred to or sent to LDS
20    Social Services by Bishop Borland, isn't that correct?
21           MR. WOLFE: Assert privilege.
22 Q  (By Mr. Kosnoff) When you went to LDS Social Services,
23    you told them about your -- you were truthful about
24    your sexual contact with children, weren't you?
25 A  Yes.

Jack A. Onefrey
January 27, 2006

Exhibit____ Page 5

b2cbc3c6-879a-4364-b6a5-9911772d6961

Page 146

1  we're trying to establish.
2            MR. NASH:  Well, then we'll wait and
3  reserve the issue.
4  Q  (By Mr. Kosnoff)  What was the -- what was the time
5  period that you went to -- the one year that you were
6  going to LDS Social Services?
7  A  I can't remember when that was.
8                   (Mr. Frey enters.)
9
10 Q  (By Mr. Kosnoff)  Was it -- how soon after you were
11 removed as scoutmast- -- assistant scoutmaster in
12 February of 1973?
13 A  I really can't remember the -- the date.
14 Q  But was it soon after that?
15 A  I have two recollections, and I really don't know.
16 Q  Okay.  Let's talk about the first recollection you
17 have.  What is the first recollection you have?
18 A  That I might have gone right after Bishop Borland.
19 Q  And the second recollection?
20 A  It might have been after that sometime somewhere.
21 Q  Do you think there may have been more than two times
22 you went to LDS Social Services, that is, two separate
23 periods of counseling?
24 A  I only went one period, but I don't know where in
25 the...

Jack A. Onefrey
January 27, 2006

Byers & Anderson
Court Reporters & Video

Page 146

1   we're trying to establish.
2              MR. NASH:  Well, then we'll wait and
3   reserve the issue.
4  Q  (By Mr. Kosnoff)  What was the -- what was the time
5   period that you went to -- the one year that you were
6   going to LDS Social Services?
7  A  I can't remember when that was.
8              (Mr. Frey enters.)
9
10 Q  (By Mr. Kosnoff)  Was it -- how soon after you were
11   removed as scoutmast- -- assistant scoutmaster in
12   February of 1973?
13 A  I really can't remember the -- the date.
14 Q  But was it soon after that?
15 A  I have two recollections, and I really don't know.
16 Q  Okay.  Let's talk about the first recollection you
17   have.  What is the first recollection you have?
18 A  That I might have gone right after Bishop Borland.
19 Q  And the second recollection?
20 A  It might have been after that sometime somewhere.
21 Q  Do you think there may have been more than two times
22   you went to LDS Social Services, that is, two separate
23   periods of counseling?
24 A  I only went one period, but I don't know where in
25   the...

Jack A. Onefrey
January 27, 2006

Exhibit____Page 7

b2cbc3c6-879a-4364-b6a5-9911772d6961

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH FLEMING and JOHN DOE,   )
                                )   Case No. C04-2338 RSM
       Plaintiffs,              )
                                )
   vs.                          )   Videotaped Deposition
                                )   of:
THE CORPORATION OF THE PRESIDENT)   RICHARD PETTIT
OF THE CHURCH OF JESUS CHRIST OF)
LATTER-DAY SAINTS, a Utah       )
corporation sole, a/d/a "MORMON )
CHURCH"; LDS SOCIAL SERVICES,   )
a/d/a LDS FAMILY SERVICES, a    )
Utah corporation,               )
                                )
       Defendants.              )

December 13, 2005
9:24 a.m.

Kirton & McConkie

1800 Eagle Gate Tower

60 East South Temple

Salt Lake City, UT   84145-0120

Sharon Morgan, CSR, RPR, CRR

Notary Public in and for the State of Utah

Page 32

1    A.    He was shocked.
2          MR. FREY:  At this point -- did you expect
3    your conversation -- let me interpose an objection and
4    ask a question.  Do you expect your conversation with
5    Bishop Borland to be confidential?
6          THE WITNESS:  Yes.
7          MR. FREY:  Are you willing to waive that
8    confidentiality and testify about it today, about what
9    you spoke to about with Bishop Borland?
10         THE WITNESS:  Yes.
11         MR. FREY:  Okay.  Go ahead, Counsel.
12   Q.    (By Mr. Kosnoff)  When you went to Bishop
13   Borland, you were not going to him for purposes of
14   confessing your sin, were you?
15   A.    No.
16   Q.    And you would hope that he would -- that --
17   strike that.  What was your reason for going to Bishop
18   Borland?
19   A.    To inform him of the situation.
20   Q.    And was it your hope or intention that Bishop
21   Borland would use this information and take some kind
22   of concrete action with respect to Jack LaHolt?
23   A.    Yes.
24   Q.    And what was your -- what did you hope that
25   he would do?

Page 33

1  A.  Correct it.
2  Q.  What did Bishop Borland say to you?
3  A.  I don't remember.
4  Q.  Did he tell you that he would do something
5  about Jack?
6  A.  I don't remember.
7  Q.  Did he give you any kind of assurances that
8  the matter would be handled?
9  A.  Yes.
10 Q.  And did you trust that the matter would be
11 handled?
12 A.  Yes.
13 Q.  Was it handled?
14 A.  Yes.
15 Q.  To your knowledge, what happened with respect
16 to Jack LaHolt?
17 A.  Within one week he was released.
18 Q.  How did you become aware that he had been
19 released?
20 A.  At the church service the following week.
21 Q.  Did somebody communicate that to you?
22 A.  Yes.
23 Q.  Bishop Borland?
24 A.  Yes.
25 Q.  And he told you that he released Jack?

```
                UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
                         AT SEATTLE

KENNETH FLEMING and JOHN DOE,:  No. C04-2338 RSM
                             :  (Judge Ricardo Martinez)
                             :
            Plaintiffs,      :
                             :
        -v-                  :
                             :
THE CORPORATION OF THE       :
PRESIDENT OF THE CHURCH OF   :
JESUS CHRIST OF LATTER-DAY   :
SAINTS, a Utah corporation   :
sole, a/k/a "MORMON CHURCH"; :
LDS SOCIAL SERVICES a/k/a    :
LDS FAMILY SERVICES, a Utah  :  Videotaped Deposition of:
corporation,                 :  RANDALL BORLAND
                             :
            Defendants.:
```

September 20, 2005 - 9:08 a.m.

Location:   Kirton & McConkie
60 East South Temple, Suite 1800
Salt Lake City, Utah

Diane W. Flanagan, RPR
Notary Public in and for the State of Utah

Page 32

1   A.   He was shocked.
2   MR. FREY:  At this point -- did you expect
3   your conversation -- let me interpose an objection and
4   ask a question.  Do you expect your conversation with
5   Bishop Borland to be confidential?
6   THE WITNESS:  Yes.
7   MR. FREY:  Are you willing to waive that
8   confidentiality and testify about it today, about what
9   you spoke to about with Bishop Borland?
10  THE WITNESS:  Yes.
11  MR. FREY:  Okay.  Go ahead, Counsel.
12  Q.   (By Mr. Kosnoff)  When you went to Bishop
13  Borland, you were not going to him for purposes of
14  confessing your sin, were you?
15  A.   No.
16  Q.   And you would hope that he would -- that --
17  strike that.  What was your reason for going to Bishop
18  Borland?
19  A.   To inform him of the situation.
20  Q.   And was it your hope or intention that Bishop
21  Borland would use this information and take some kind
22  of concrete action with respect to Jack LaHolt?
23  A.   Yes.
24  Q.   And what was your -- what did you hope that
25  he would do?

Page 57

1   A   Okay.
2   Q   So again my question is: Was this something that
3   you learned in connection with pastoral counseling within
4   the Church?
5   A   Yes.
6   Q   Was the information that you received something
7   that you are required to keep confidential under the
8   doctrines and teachings of your church?
9   A   Yes.
10  Q   Was the communication that you received something
11  that you in fact kept confidential, that is, that you did
12  not disclose to any other person?
13  A   Let me make sure I understand that. A
14  communication not disclosed to anybody else?
15  Q   Correct.
16  A   The answer to that question, if I've heard the
17  question correct, is yes or -- let me rephrase it, and then
18  tell you what I thought you said.
19  Q   Go ahead.
20  A   I did not disclose what was said confidentially to
21  me to others.
22  Q   Just so that I'm clear on this, you did not
23  disclose the content of what was said to you by that person
24  to any other person?
25  A   The content of that conversation, that meeting, I

Page 58

1  did not.
2      Q    Okay.
3      A    The best of my recollection.
4      Q    Okay. Did you ever make a referral to LDS Social
5  Services for counseling Jack Loholt?
6      A    I don't remember. I do not remember that.
7      Q    Did you do anything or say anything to anyone else
8  following the communication that you received from this
9  person?
10     A    Regarding specifics?
11     Q    Anything.
12     A    Yes.
13     Q    What did you do or say?
14     A    I talked --
15         MR. FREY: Again I'm going to caution you that if
16 you took any steps in your capacity as a clergyman and
17 ecclesiastical in accordance with the teachings and beliefs
18 of the LDS religion that you are not obligated to break that
19 confidentiality if in fact you learned that in those
20 circumstances.
21         And for the record, Counsel, what I'm trying to do
22 here is allow you to ask questions without reaching what I
23 believe is a privilege that he has as a bishop to receive
24 information, treat it with confidentiality, and act on it in
25 an ecclesiastical fashion.