The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/k/a LDS, a Utah corporation, <br><br> Defendants. | NO. 04-2338 RSM <br><br> DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN
LIMINE TO EXCLUDE CLERGY-PENITENT
COMMUNICATION
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

## I.  INTRODUCTION

Plaintiff claims the statutory clergy privilege does not apply here because a counseling session that also requests action by clergy is not "confidential," and because a person cannot seek spiritual guidance within the meaning of the privilege unless one is admitting wrongdoing. The former notion is unsupported and would vitiate all privileges—people communicate with doctors and lawyers with the expectation of action—and the latter is expressly contrary to *Martin*.

Plaintiff's free exercise analysis rests on his compelling interest argument, which fails because it is illogical. Plaintiff claims the state had a compelling interest in protecting children. That may be so, but the state does not require all people to report information regarding possible sexual abuse. It is not enough to say the state has a compelling interest in protecting children; the state must have had a compelling interest in requiring *clergy* to report. In 1975, the Legislature repealed the duty of clergy to report. A more express disavowal of compelling interest could not be found.

## II.  ARGUMENT

### A.  Mr. Pettit's Declaration Does Not "Contradict" His Prior Deposition Testimony.

Richard Pettit's declaration states he had two purposes for seeking out Bishop Borland: "I sought him out for the purposes of spiritual counseling and guidance . . . [and] I also hoped the Bishop might do something regarding Loholt's involvement in Scouting, which the Bishop did." Pettit Decl. ¶ 5. Plaintiff erroneously contends that this "contradicts" Mr. Pettit's deposition testimony. Plaintiff's counsel asked just three questions relating to Mr. Pettit's reasons for approaching Bishop Borland. None of Mr. Pettit's answers forecloses his sworn statement that he also sought spiritual guidance.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 1
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Mr. Pettit testified he expected the conversation to be confidential. Pettit Dep. at 32:6. (attached to the Second Rosenberger Declaration). Plaintiff's counsel then asked:

> Q. What was your reason for going to Bishop Borland?
> A. To inform him of the situation.

*Id.* at 32:16-19. This answer is extraordinarily general and could encompass not just the incident reported by his son, but also Mr. Pettit's reaction to it, his communication with his son, or other aspects of "the situation." After receiving this non-specific answer, Plaintiff's counsel then asked whether Mr. Pettit hoped Bishop Borland would "take some kind of concrete action" regarding Mr. Loholt. Consistent with his later declaration, Mr. Pettit answered yes.

Plaintiff's counsel could have asked Mr. Pettit to clarify or expand upon his testimony. Plaintiff's counsel chose not to do so. Mr. Pettit's declaration contains more information, but it does not contradict the sparse and general testimony in his deposition.

### B. Plaintiff Cites an Invented, Incorrect Test for Application of the Privilege.

Plaintiff claims a four-part test must be satisfied for the privilege to apply. Opp. at 2. The purported test does not appear in the case cited in support, and it is incorrect. First, *State v. Martin* does not require COP to prove that a clergy member had a "religious duty to keep the communication secret." Even if this were an element of the privilege, COP satisfies it given Bishop Borland's testimony that Church doctrine required him to hold Mr. Pettit's disclosure in confidence. Borland Dep. at 57:6-9; Borland Decl., Dkt. # 143 ¶ 6 and Ex. 1.

Second, Plaintiff claims that "the communication must be penitential in nature." This is inconsistent with *Martin*, and with Plaintiff's later discussion at page 6, both of which recognize the privilege applies to "confession *or* spiritual counseling." *State v. Martin*, 137 Wn.2d 774, 785, 969 P.2d 450 (1999) (emphasis added).

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN
LIMINE TO EXCLUDE CLERGY-PENITENT
COMMUNICATION - 2
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

C. **The Communication Between Pettit and Borland Was Confidential.**

1. **Mr. Pettit Reasonably Expected His Private Discussion with His Bishop Was Confidential.**

Mr. Pettit testified, in both his deposition and his sworn statement, that he considered the matter confidential. Pettit Dep. at 32:2-6; Pettit Decl. ¶¶ 6-8. He was communicating with his own bishop about a highly private matter. Indisputably, this communication was confidential for purposes of the privilege.

2. **Mr. Pettit's Hope that Bishop Borland Would Take Action is Irrelevant.**

Plaintiff contends the counseling session was not "confidential" because Mr. Pettit expected Bishop Borland to take action regarding Mr. Loholt. This is wrong, factually and legally. It is incorrect factually because Bishop Borland did not have to disclose the communication in order to release Mr. Loholt from his position as an Assistant Scout Master. Indeed, Bishop Borland did not disclose Mr. Pettit's communication to anyone at any time. Borland Dep. at 57:20-58:1.

Legally, Plaintiff's radical notion is bereft of support. An otherwise privileged communication does not lose its privileged status merely because the holder of the privilege hopes the other party takes some action. In the attorney-client context, a client shares information with the lawyer because he expects the attorney to file a complaint, draft a letter, and so on. Such expectation does not negate the privilege. So, too, with the clergy privilege. A wife may share with her clergy that her husband is away much too much, and she is worried about the effect on their marriage. In such situations, the individual may be seeking guidance for herself, but also hoping the clergy engages with the other person. That hope or expectation surely does not destroy the privilege.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 3
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Plaintiff relies on *People v. Edwards*, 203 Cal. App. 3d 1358, 248 Cal. Rptr. 53 (1998), but *Edwards* does not state a congregant cannot have a "reasonable expectation" of confidentiality merely because he hopes the clergy to take some action. Moreover, it is distinguishable on two grounds. First, the clergy member testified that he did not believe he was bound to confidentiality because he considered the statements of the embezzler to be "a secular request" and a "problem-solving" entreaty. *Id.* at 1363-64. In contrast, Bishop Borland testified he received the communication from Mr. Pettit "in connection with pastoral counseling" and was "required to keep [it] confidential under the doctrines and teaching of [his] church." Borland Dep. at 57:2-9. Second, the embezzler in *Edwards* specifically released the clergy from his vow of confidentiality. In contrast, Mr. Pettit expected Bishop Borland to maintain the confidentiality of the conversation. Pettit Decl. ¶ 8.

### 3. No Waiver Occurred.

Plaintiff argues that the privilege was somehow waived because Bishop Borland subsequently spoke to Mr. Loholt. This is incorrect. First, the privilege belonged to Mr. Pettit, and nothing Bishop Borland did could result in a waiver. *Martin*, 137 Wn.2d at 787-88. Second, while we do not know the details of the Borland-Loholt conversation because this Court held it was privileged, Dkt. # 88, we do know that Bishop Borland testified that he did not disclose the Pettit communication to any other person. Borland Dep. at 57:20-58:1.

### D. The Pettit-Borland Conversations Constituted "Spiritual Counseling in the Course of Discipline Enjoined by the Church."

### 1. Mr. Pettit Sought Spiritual Counseling.

Mr. Pettit states under oath that he sought spiritual counseling. Plaintiff has no foundation for suggesting otherwise. Perhaps Mr. Pettit needed spiritual reassurance that his son

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN
LIMINE TO EXCLUDE CLERGY-PENITENT
COMMUNICATION - 4
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

hadn't done something wrong. Perhaps he felt disgust toward Mr. Loholt, and was uncomfortable with these feelings. No one knows his heart except him. Mr. Pettit's dual reasons for seeking out his bishop on a deeply sensitive matter do not vitiate the privilege, especially where, as here, both congregant and clergy understood the communication to be privileged.

Moreover, the term "confession," which includes communications for spiritual guidance, is defined by reference to the teachings of the Church. "The religious entity, and not the courts, should 'decide what types of communications constitute confessions within the meaning of a particular religion.'" *Martin*, 137 Wn.2d at 786-87 (quoting *Martin*, 91 Wn. App. at 628). Bishop Borland and the Church considered such counseling confidential. Borland Dep. at 57:9; Borland Decl., Dkt 143, Ex. 2 p. 9.

2. **Bishop Borland Received the Communication in the Course of Discipline Enjoined by the Church.**

Plaintiff urges an interpretation of the phrase "course of discipline" that equates to "teaching the penitent the error of his ways." This is inconsistent with *Martin* because it would limit the privilege to communications where the communicant admits wrongdoing. *Martin* expressly holds that the privilege applies to communications which seek spiritual guidance but are not confessions in the narrow sense. If Plaintiff were correct, counseling concerning difficulties in a marriage, concerns about the health or behavior of a child, and similar requests for guidance would be outside the privilege. This cannot be reconciled with *Martin*.

In support of his flawed analysis, Plaintiff relies on out-of-context dicta from the Court of Appeals decision in *Martin*, rather than the holding of the Supreme Court. The Supreme Court held that the "course of discipline" language requires only that the clergy member "be enjoined by the practices or rules of the clergy member's religion to receive the confidential

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 5
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

communication and to provide spiritual counseling." *Martin*, 137 Wn.2d at 789. Moreover, even if one focuses on the Court of Appeals opinion, Plaintiff's interpretation distorts the court's central holding beyond recognition. The Court of Appeals approvingly cited numerous cases from other jurisdictions that applied the privilege to communications in which the communicant did not seek atonement or admit wrongdoing. *Martin*, 91 Wn. App. at 628, n. 3.

### E. Requiring Bishop Borland to Report Would be a Free Exercise Violation.

Plaintiff implies the Free Exercise Clause protects only religious belief and not religious practice. This is not true, and is a proposition that would devastate the free *exercise* of religion.[1] The reporting statute placed a substantial burden on clergy; compliance with the statute would have caused Bishop Borland to violate Church doctrine concerning the need for confidentiality in counseling.

Plaintiff agrees that this burden is constitutionally valid only if supported by a compelling state interest, but argues the protection of children is a compelling interest. Plaintiff has the burden of proving the state had a compelling interest,[2] and he fails to meet that burden. *Motherwell* might have supported Plaintiff's argument *if* the Legislature had never repealed the statute as to clergy. However, in repealing the statute, the Legislature made a policy judgment that the state did not have a compelling interest in requiring clergy to report. An interest can hardly be described as compelling if it is so evanescent as to be here one day, gone the next, and then gone for the next 31 years.

---

[1] *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 124 L. Ed 2d 472, 113 S. Ct. 2217 (1993) (striking down as a free exercise violation a city ordinance prohibiting religious practice of animal sacrifice); *State v. Motherwell*, 114 Wn.2d 353, 361, 788 P.2d 1066 (1990) (free exercise claimant must show coercive effect of challenged law on "the practice of his religion").
[2] *Hobbie v. Unemployment Appeal Comm'n of Florida*, 480 U.S. 136, 141 (1987) (state laws burdening religions "must be subjected to strict scrutiny and could be justified only by proof *by the State* of a compelling interest") (emphasis added).

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 6
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 8th day of September, 2006.

                              **GORDON MURRAY TILDEN LLP**

                              By _/s/ Michael Rosenberger_
                              Charles C. Gordon, WSBA #1773
                              Jeffrey I. Tilden, WSBA #12219
                              Michael Rosenberger, WSBA #17730
                              Attorneys for Defendant The Corporation of the
                              President of The Church of Jesus Christ of
                              Latter-Day Saints

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CLERGY-PENITENT COMMUNICATION - 7
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following. The parties will additionally be served in the manner indicated.

| | |
|---|---|
| Michael T. Pfau<br>Gordon, Thomas, Honeywell, Malanca,<br>Peterson & Daheim LLP<br>P.O. Box 1157<br>Tacoma, WA 98401-1157<br>Telephone:  (206) 676-7500<br>Facsimile:  (206) 676-7575<br>E-Mail:  mpfau@gth-law.com<br><br>( ) Mail      ( ) Hand Delivery<br>( ) Fax       ( ) Federal Express | Timothy D. Kosnoff<br>Law Offices of Timothy D. Kosnoff, P.C.<br>600 University Street, Suite 2101<br>Seattle, WA 98101<br>Telephone:  (206) 676-7610<br>Facsimile:  (425) 837-9692<br>E-Mail:  timkosnoff@comcast.net<br><br>( ) Mail      ( ) Hand Delivery<br>( ) Fax       ( ) Federal Express |

GORDON MURRAY TILDEN LLP

By /s/ Michael Rosenberger
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the
 President of The Church of Jesus Christ of
 Latter-Day Saints
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mrosenbergrer@gmtlaw.com

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN
LIMINE TO EXCLUDE CLERGY-PENITENT
COMMUNICATION - 8
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292