THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K. and T.D., <br><br> Plaintiffs, <br><br> vs. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDS, a Utah corporation, <br><br> Defendants. | NO. 04-2338 RSM <br><br><br> PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE <br><br> **NOTED FOR HEARING:** <br> **SEPTEMBER 15, 2006** |

## I. INTRODUCTION

Plaintiff R.K. submits this opposition to defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints ("COP") Motions in Limine to exclude certain items of evidence (the separate motions have been designated by COP as Motions A-L). Plaintiff does not object to the court granting COP's motions regarding items B through E, and H, J and L. However, COP's motions should be denied with respect to items A, F, G, I and K for the reasons set forth herein.

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 1 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## II. BRIEF STATEMENT OF RELEVANT FACTS[1]

### A. EVIDENCE REGARDING LOHOLT ABUSE OF R.K. AFTER JANUARY 1973.

The exact time period during which Loholt abused R.K. is unclear. R.K. will testify that the abuse occurred between the ages of nine and twelve. Based on R.K.'s birth date (June 22, 1962), the abuse period would have been between 1971 and 1974.[2] COP argues that because real estate records will show that Loholt purchased a house in January 1973 that 1973 is necessarily the accurate end date of R.K.'s abuse. This is incorrect. R.K. never testified that the abuse occurred during the time Loholt was **residing** in the apartment. R.K. only testified that all of his abuse occurred within the apartment at the Allenbach property (or at a field near the Allenbach property). COP wrongly infers from these facts that Loholt could not have abused R.K. in the apartment after January 1973.

The evidence will show that Loholt had access to the apartment well after 1973. First, Loholt was a construction contractor and for years he worked for Dr. Allenbach on several projects – including the construction of buildings at the compound.[3] Other witnesses will verify that Loholt was a general "handyman" for Dr. Allenbach and that he (Loholt) worked at the property.[4]

Loholt had many opportunities to abuse R.K. in the downstairs apartment after January 1973 and the evidence is sufficient to allow the jury to conclude that R.K.'s abuse occurred after 1973. Loholt's own testimony, coupled with plaintiff's testimony, supports plaintiff's position. Loholt testified that the first person he abused after he got out of sexual

---

[1] This Court has resolved multiple motions by the parties, including motions for summary judgment. A detailed statement of facts was contained in plaintiffs' opposition to defendants two motions for summary judgment (Dkt Nos. 79 and 80). In the interest of brevity, plaintiff will only repeat facts necessary for the determination of the issues address in these motions in limine.

[2] COP will suggest the abuse occurred in 1968 in an attempt to undermine R.K.'s credibility regarding whether R.K. was abused at all. As discussed in R.K.'s Motion in Limine, there is no evidence to support this argument. All the evidence indicates that Loholt did not move onto the Allenbach property until at least 1969.

[3] Loholt dep page 90, ll. 8-17 (attached to declaration of Mike Pfau as **Exhibit A**).

[4] Deposition of Dorothy Kelly, p. 6, l. 25; p. 7, ll. 1-2 (attached to declaration of Mike Pfau as **Exhibit B**).

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 2 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

deviancy treatment with LDS Social Services was R.A.[5] Loholt testified that his abuse of R.A. was "a long time after" he completed counseling with LDS Social Service.[6] R.K. recalls that his abuse was occurring at the same time Loholt was sexually abusing R.A.[7] This testimony suggests that R.K.'s abuse, or at least some of it, occurred after Loholt had gone to LDS Social Services – and after 1973. The evidence further shows that COP was continuing to place Loholt in to positions of authority working with children within the ward after January 1973,[8] which signaled to parents and children including R.K. that Loholt was trustworthy and safe to be with children at a time when COP knew the opposite to be true. COP's continued placement of its imprimatur of trustworthiness on Loholt was a causal factor in R.K.'s continuing abuse by Loholt. COP's motion to cut off evidence pertaining to Loholt at the arbitrary date of January 1973 would unfairly prejudice the plaintiff in the presentation of his case and would improperly invade the province of jury as the finder of fact.

**ITEM A(1)(a): REFERENCES TO LDS SOCIAL SERVICES.**

COP argues as verity that Loholt was not sent to LDS Social Services until after R.K. was abused. As stated above, R.K. testifies that his abuse occurred during the time period between June 1971 and June 1974. Loholt has a memory of going to LDS Social Services immediately after Borland removed him as assistant scoutmaster in February 1972.[9] The counseling lasted approximately one year. The first child he abused after counseling was R.A., who was abused at the same time as was R.K. Therefore, the evidence equally supports the argument that Loholt abused R.K. during or after his counseling with LDS Social Services. Consequently, evidence regarding LDS Social Services' counseling of Loholt

---

[5] Deposition of Loholt, p. 147, ll. 22-24 (**Exhibit A**).
[6] Deposition of Loholt, p. 147, ll. 15-18 (**Exhibit A**).
[7] Deposition of R.K., p. 22, ll. 8-16 (**Exhibit C** to Pfau Declaration).
[8] On October 12, 1973, Loholt was named assistant Venturer leader working with older scouts ages fourteen and fifteen; on May 15, 1974 Loholt was named ward Scoutmaster.
[9] Loholt Depo., pg. 146 (**Exhibit A**).

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 3 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

should not be excluded because it is relevant to issues of liability for non-reporting by LDS Social Services.

**B. EXPERTS.**

No objection.

**C. SUBSEQUENT REMEDIAL MEASURES.**

No objection.

**D. SETTLEMENT NEGOTIATIONS AND ATTORNEYS' FEES.**

No objection.

**E. CHURCH FINANCES AND INSURED STATUS.**

No objection

**F. REFERENCES TO THE ALLENBACH "COMPOUND".**

Use of the term "compound" to describe the Allenbach property has been used extensively throughout discovery in this case.[10] Witnesses, including defendant's own church officials, have used the term "compound" to describe the Allenbach property. In fact, Bishop Donald Boren testified:

> Q. Okay. Do you know whether or not the - the family from South Africa that you mentioned were living in a house or a portion of the acreage that the Allenbach family lived on?
>
> A. **That sort of compound –**
>
> Q. Yes.
>
> A. No.[11]

---

[10] The term "compound" as used to describe the Allenbach property appears eighteen times in eight separate depositions. It would be unduly prejudicial to plaintiff if he were forced to redact the word "compound" from these depositions before presenting them at trial.

[11] Deposition of Donald Boren, p. 30, ll. 9-14 (**Exhibit D** to Pfau Declaration).

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 4 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

In addition, plaintiff's mother lived next door to the Allenbachs for nearly forty years. She has testified that she often heard the property referred to as the "compound" and she herself used the term in referring to the Allenbach property.[12]

Furthermore, the term "compound" accurately describes the property. "Compound" means "any separate cluster of homes, often owned by members of the same family."[13] Here, the Allenbach property consisted of approximately fifteen acres upon which Dr. Allenbach initially built a very large family home with a connected downstairs apartment. On the south side of his house he built a duplex apartment for his mother and his sister. On the north side he built another duplex apartment building. He also built a large storage building to store antique furniture.[14]

Furthermore, Mormon missionaries, Mormon business associates, other Mormon family members, and Mormon employees from Dr. Allenbach's oral surgery practice resided in the apartments at various times.[15] Dr. Allenbach built a baseball diamond/athletic field which the Mormon Church Kent 2d Ward used for church league sporting events and ward social gatherings.[16]

Plainly, this property was more than a family home and referring to it as a compound does not unfairly prejudice COP despite whatever negative modern-day connotations COP frets may be associated with the term. Aside from being the Allenbach family home, the term

---

[12] Deposition of Dorothy Kelly, p. 10, ll. 7-15 (**Exhibit B**).

[13] Dictionary.com Unabridged (v 1.0.1) Based on the Random House Unabridged Dictionary, © Random House, Inc. 2006.

[14] Deposition of Dorothy Kelly, p. 7, ll. 8-25, p. 8, ll. 1-20 (**Exhibit B**); Deposition of Faye Miller, p. 13, l.12 – p. 18, l. 15 (**Exhibit E**).

[15] Deposition of Yvonne Shepard (attached to declaration of Michael T. Pfau as **Exhibit I**) pg. 22, ll. 22-25, pg. 33, ll. 1-20 (family members living on the Allenbach property); pg. 32, ll. 3-23; pg. 35, ll. 11 – pg. 36, ll. 1 (knowledge/friendship with Jack Loholt's and Loholt's work at the Allenbach property); pg. 41, ll. 3 – 14 and 66, ll. 17-19 (another Mormon, Mrs. Wieder, was the receptionist for Dr. Allenbach's dental practice and the Wieder family rented a home on the Allenbach property); *see, also,* Loholt Dep. (**Exhibit A**), pg. 172, ll. 15-18 (Weiders were another family in the church).

[16] *Id.* See, also, deposition of Dorothy Kelly, pg. 8, ll. 17-20 and pg. 154, ll. 12-22 **(Exhibit B)**.

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 5 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

conveys the nature and use to which the property was put and will assist the jury in understanding the nexus between the location of R.K.'s abuse, Dr. Allenbach's status in the Kent 2d Ward, and the activities of the Mormon Church at that location.

Finally, any possible unfair prejudice from the use of the term compound would presumably inure to the benefit of COP not its detriment because COP has identified Dr. and Mrs. Allenbach as "at-fault" entities in its Answer.

G. **REFERENCES TO CHURCH DOCTRINE -- PLAINTIFF MUST BE PERMITTED TO OFFER DOCUMENTS AND PUBLICATIONS AND PRIOR TESTIMONY WHICH CONTRADICT COP'S ARGUMENTS.**

A church is not immune from civil liability simply because it is entitled to certain protections under the First Amendment. The First Amendment was never meant as a protection for tortious activities. *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 728, 986 P.2d 262 (1999). A church can be liable for tortious conduct "so long as liability is predicated on secular conduct and does not involve the interpretation of church doctrine or religious beliefs." *Id.* Stated otherwise, a Church is liable in tort for the activities of its pastors and/or clergy if the determination of liability can be made according to "neutral principles of law." *See, e.g., Southside Tabernacle v. Pentecostal Church of God, Pacific Northwest Dist.*, 32 Wn.App. 814, 817-20, 650 P.2d 231 (1982).

There is no prohibition on utilizing literature published by a church in making the determination as to whether a cause of action can lie. *See, e.g., M.K. v. Archdiocese of Portland in Oregon*, 228 F.Supp.2d 1168 (D. Oregon 2002). The plaintiff in M.K. alleged that she had been sexually abused by priests employed by the defendant Archdiocese of Portland. M.K. sought to establish the Diocese liability under a theory of *respondeat superior*. In moving to dismiss plaintiff's claim, the Diocese asserted that the First Amendment barred plaintiff's claim because the resolution of the issue would require the

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 6 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Court to "review, interpret and consider the religious rules and canons of the Roman Catholic Church." *Id.* at 1170. The District Court disagreed stating, in pertinent part,

> ". . . it is impossible to know what acts the church has specifically authorized and directed the priest to engage in simply by watching the priest's routine. One must look more deeply into the relationship between the church and the priest to differentiate between those acts required by the job and those engaged in independently by the priest.
>
> As with any employer-employee relationship, the parameters of a priest's duties can be discerned by reviewing the "job description" of the priest, in addition to communications between the church and the priest. While this will require the court to consider a number of Defendants' canons delineating the duties of a priest, the court will not need to make any judgment on appropriateness, correctness or validity of any of the canons. The canons will merely define the duties of a priest and the court will then consider whether the Priests' acts of "grooming" fall within this definition. The court will not in any matter limit the priests duties or the ability of the church to supervise the Priests. Accordingly, the consideration by the court of Defendants' canons, or other religious rules, will not infringe in any way upon Defendants' freedom of religion and will not implicate the First Amendment."

*Id.* at 1172.

Likewise, in *Organization for Preserving the Constitution of Zion Lutheran Church v. Mason*, 49 Wn. App. 441; 743 P.2d 848 (1987), the court, following a long-line of authority found that even in resolving internal church civil, contract or property disputes it was constitutionally permissible for the court to examine internal church documents as long as it did not involve the interpretation of ecclesiastical or doctrinal issues. *Id.* at 445.

Here, just as in *M.K.,* and *Zion Lutheran Church*, plaintiff is not asking this or any other Court to make any determination with regard to the validity or correctness of the Mormon Church's definitions or doctrines. The use of the definitions contained in the

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 7 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Handbook of Instructions,[17] the Church's Encyclopedia of Mormonism[18] or the 30(b)(6) testimony of COP's designee, Dr. Lloyd Hale, on these subjects simply uses the Mormon Church's own definitions and interpretations on matters such as the organizational structure of the church, the meaning of church terminology and designations, the roles and responsibilities of bishops, bishoprics, bishopric counselors, High Priests and stake presidents. It contains sections regarding temporal counseling of members, COP's guidelines regarding the handling of complaints of child sexual abuse, policy regarding the handling of confessions, the role of the bishopric and High Priests in the Church. The jury will not be asked to interpret anything COP says on these matters but to merely to accept what the Church says about these subjects as evidence bearing upon the issues of special relationship, foreseeabililty, agency,[19] management and control, and the reasonableness of the defendant's conduct under the circumstances.

**H. OTHER LITIGATION.**

No objection.

---

[17] The Church Handbook of Instructions is a copyrighted publication of COP. It is directed to Stake Presidents and Bishops and contains policies and guidelines for them in carrying out their responsibilities within the church.

[18] The Encyclopedia of Mormonism is a treatise developed by the Mormon Church's Brigham Young University and published by the Deseret Book Company, the publishing arm of the Mormon Church. It presents the work of hundreds of LDS lay scholars and others that "provides a comprehensive reporting of Mormon history, scripture, doctrines, life and knowledge, intended for both the non-Mormon and the LDS reader." According to the preface, the work was produced in collaboration with Church authorities. Two members of the Quorum of the Twelve Apostles and four members of the Quorum of the Seventy, both governing bodies of the Mormon Church, were appointed by the President of Mormon Church to serve as advisers to the project. *See,* **Exhibits F and G** to Pfau Decl.).

A statement of a Party-Opponent is not hearsay if the statement is offered against a party and is the party's own statement or a statement of which the party has manifested an adoption or belief in its truth. FRE 801 (d)(2) (A) and (B). Clearly the defendant would not have participated in the creation of the Encyclopedia nor published it if it had not manifested a belief in its truth and accuracy.

[19] COP admits that Dr. Herman Allenbach was a member of the Bishopric, a High Priest and a Scout leader in the ward. Defendants' Amended Answer to Plaintiffs' Amended Complaint, p. 4. (Dkt. No. 33). Plaintiff's mother will testify she informed Dr. Allenbach about Jack Loholt's sexual deviancy with her two sons sometime in approximately 1971.

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 8 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

I. PRIOR DEPOSITION TESTIMONY.

(1) THE DEPOSITION TESTIMONY IS RELEVANT.

Plaintiff will not offer the deposition testimony of Church officials Harold Brown or Duane Liddell from the *Scott v. COP* case. However, plaintiff will offer the 30(b)(6) deposition testimony of Dr. Lloyd A. Hale from the *Scott* case.

COP is defending its failure to warn plaintiff or report to CPS its knowledge regarding Loholt's abuse of S.P. on clergy-penitent privilege grounds, and upon the purported "reasonableness" of its conduct in light of the religious doctrines of the Mormon Church with respect to confessions.[20]

As discussed in earlier briefing,[21] COP's argument is refuted by the deposition testimony of Bishop Pettit and by the clear language of the clergy-penitent privilege statute itself. Moreover, COP's defense of privilege is flatly contradicted by its own 30(b)(6) designee, Dr. Lloyd D. Hale.[22] Dr. Hale testified in the *Scott* case that a parent's report of child sexual abuse to a Bishop is **not** a confession under the confession doctrines of the Mormon Church:

> Q.: (By Mr. Joel Salmi) Let me rephrase that. Let me give you an example. If a member reports to the bishop of a church

---

[20] In fact, in Defendants' Motion in Limine to Exclude Reporting Statute, COP specifically asserted p. 3.

> "The conduct here questioned – the decision of a Bishop to maintain the confidentiality of a church member's disclosure that both the member and the Bishop believed was privileged – has been legal and reasonable since 1975, and was legal and reasonable prior to 1971 as well."

[21] *See* Plaintiff's Opposition to Motion to Exclude Reporting Statute (Dkt No. 159).

22 Dr. Hale is a resident of Oregon. In *Scott v. Corporation of the President of the Church of Jesus Christ of Latter day Saints, a Utah Corporation Sole and the Mormon Church*, 9812-08640 (Multnomah County, OR), COP designated Dr. and Stake President Hale to testify regarding its policies and practices regarding reporting sexual abuse to law enforcement and social service agencies; church discipline, disciplinary practices and confession practices within the Mormon Church; and the organizational structure and lines of authority within the Church.

The *Scott* case involved allegations of negligence and intentional infliction of emotional distress against this defendant, Corporation of the President of the Church of Jesus Christ of Latter-day Saints based upon its knowledge and cover-up of sexual abuse by Mormon High Priest Franklyn Richard Curtis over a seventeen year period.

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 9 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

that their child has been molested by another member of the church, do you consider that a confession?

A: No, because I consider that the member reporting an incident.

Q: And in particular, if that member, when they report this alleged molestation, ask you to do something about it, that's not a confession, is it?

A: No.[23]

Dr. Hale's testimony is relevant and admissible[24] to prove that contrary to what COP now maintains, it is the Mormon Church's policy that a report of child sexual abuse by a parent to a Bishop is not a confession under the doctrines of the LDS Church.

**(2) THE DEPOSITION TESTIMONY IS ADMISSIBLE UNDER FRE 804(b)(1).**

In *Osborne v. The Corporation of the Church of Jesus Christ of Latter Day Saints*, (King County, Washington), another case tried by plaintiff's counsel before the Hon Richard McDermott in November 2005, Dr. Hale was subpoenaed to testify and when he failed to respond to counsel, plaintiff's counsel requested COP's counsel to produce Dr. Hale for trial. When Dr. Hale failed to appear Judge McDermott ruled that Dr. Hale was "unavailable" and admitted Dr. Hale's prior deposition testimony under ER 804(b)(1).

Here, a Subpoena for Dr. Hale has been issued. However, Dr. Hale is a resident of Oregon, plaintiff does not subpoena power over Dr. Hale. Should Dr. Hale voluntarily fail to appear, his prior testimony under FRE804(b)(1) is admissible. His testimony is relevant to demonstrate that Bishop Pettit's complaint to Bishop Borland is not regarded as a confession

---

[23] Deposition of Dr. Lloyd Hale, p. 41, ll. 19-25; p.42, ll. 1-4. in *Scott v. COP and Mormon Church*, 9812-08640 (Multnomah County, OR (**Exhibit H** to Pfau Declaration).

[24] FRE 804(b) provides that a witness's testimony is not excluded by the hearsay rule if the witness is (1) unavailable and (2) the former testimony was given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. A witness is "unavailable" if he or she is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 10 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

in the defendant's church and that Bishop Borland could have complied with is statutory duty to report without offending the religious beliefs of the Mormon Church.

**J. FACT WITNESSES GIVING EXPERT OPINIONS.**

No objection.

**K. PRESENTATION OF THE CASE.**

No objection.

**L. TRIAL ATTENDANCE AND WITNESSES.**

No objection.

RESPECTFULLY SUBMITTED this ___ day of September, 2006.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By /s/ Michael T. Pfau
Michael T. Pfau, WSBA No. 24649
mpfau@gth-law.com
Michelle A. Menely, WSBA No. 28353
mmenely@gth-law.com
Co-Counsel for Plaintiff

LAW OFFICES OF TIMOTHY D. KOSNOFF

By _____
Timothy D. Kosnoff, WSBA No. 16586
timkosnoff@comcast.net
Co-Counsel for Plaintiff

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 11 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH";<br>LDS SOCIAL SERVICES a/d/a LDA FAMILY SERVICES, a Utah corporation,<br><br>Defendants. | NO. C04-2338 RSM<br><br>**CERTIFICATE OF ELECTRONIC FILING**<br><br>**HEARING DATE:** September 15, 2006 |

I hereby certify that on September 12, 2006, I electronically filed the foregoing Plaintiff's Opposition to Defendants' Motions in Limine and the Declaration of Michael T. Pfau Re: Plaintiff's Opposition to Defendants' Motions in Limine with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 12 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

| | |
|---|---|
| **Charles Cooper Gordon**<br>GORDON MURRAY TILDEN<br>1001 4TH AVE<br>STE 4000<br>SEATTLE, WA 98154<br>206-467-6477<br>Email: cgordon@gmtlaw.com | **Jeffrey I Tilden**<br>GORDON MURRAY TILDEN<br>1001 4TH AVE<br>STE 4000<br>SEATTLE, WA 98154<br>206-467-6477<br>Email: jtilden@gmtlaw.com |

**Michael Rosenberger**
GORDON MURRAY TILDEN
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477
Fax: 206-467-6292
Email: mrosenberger@gmtlaw.com

DATED this 12th day of September, 2006.

/s/ Bernadette Lovell
Bernadette Lovell
Assistant to Michelle A. Menely

PLTF.'S OPP. TO DEF.S' MTNS IN LIMINE - 13 of 13
(04-2338RSM)
[169785 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575