UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

R.K.,                                                      )
                                                           )
              Plaintiff,                                   )          CASE NO.  C04-2338RSM
                                                           )
       v.                                                  )
                                                           )          ORDER DENYING MOTION IN
THE CORPORATION OF THE PRESIDENT          )          LIMINE TO EXCLUDE CLERGY-
OF THE CHURCH OF JESUS CHRIST             )          PENITENT COMMUNICATION
OF LATTER DAY SAINTS, *et al.*,            )
                                                           )
              Defendants.                                  )
_____)

## I.  INTRODUCTION

This matter comes before the Court on defendant Corporation of the President of the

Church of Jesus Christ of Latter-Day Saints' ("COP") Motion In Limine to exclude evidence of

a confidential 1972 disclosure by Richard Pettit, a Church member, to his Bishop, regarding Mr.

LoHolt's abuse of his son.[1]  (Dkt. #141).  Defendant argues that Mr. Pettit made the disclosure

in the context of spiritual counseling, and therefore, it should be excluded under the clergy-

penitent privilege, or because it is protected by the Free Exercise Clause of the First

Amendment.  Plaintiff opposes the motion, arguing that the communication does not meet the

_____

[1] Defendant has concurrently filed a Motion In Limine to Exclude the Reporting Statute (Dkt. #140); however, defendant suggested that the Court review the instant motion first, as a resolution in its favor on this motion would render the other motion moot.  The Court agrees that it is appropriate to resolve the instant motion first.

ORDER
PAGE – 1

Dockets.Justia.com

1  criteria necessary to qualify for the clergy-penitent privilege, and that the mandatory reporting

2  statute in effect at the time of the communication required disclosure to appropriate authorities,

3  and enforcing that statute would not have offended Constitutional principles.  (Dkt. #157).

4      For the reasons set forth below, the Court agrees with plaintiff and DENIES defendant's

5  Motion In Limine.

6                                  **II.  DISCUSSION**

7      **A.  Impermissible Overlength Motion**

8      As a threshold matter, the Court addresses defendant's continued failure to follow the

9  Local Rules governing the length of motions and responses thereto.  *See* Local Rules CR 7(d)

10 and (e).  As this Court has previously informed defendant, overlength briefs will be stricken from

11 the record unless prior permission is sought and granted for the overlength pages.  *See* Local

12 Rule CR 7(f).  Pursuant to Local Rule CR 7(e)(4), motions in limine are limited to 12 pages in

13 length.  Defendant has impermissibly filed an 18-page motion in limine.  Because defendant has

14 not sought and received permission from the Court to file such overlength motion, the Court

15 hereby STRIKES pages 13-18 from consideration.  In addition, the Court hereby advises

16 defendant that any future failure to follow this Court's Local Rules will result in sanctions.

17     **B.  Clergy Penitent Privilege**

18     As a basis for his negligence claim, plaintiff argues that Bishop Borland had a mandatory

19 duty to report Mr. LoHolt's abuse of Mr. Pettit's son, pursuant to the mandatory reporting

20 statute in effect at that time.  By failing to so report, plaintiff asserts that defendant acted

21 negligently, and is now liable for damages suffered by plaintiff when he was abused by Mr.

22 LoHolt during the year following Mr. Pettit's report.  Defendant argues that Bishop Borland

23 was precluded by the clergy-penitent privilege from disclosing Mr. Pettit's report to law

24 enforcement officials, and therefore, he had a legal right not to comply with the mandatory

25

26

ORDER
PAGE – 2

1  reporting statute.[2]  Accordingly, defendant asserts that the conversation should be excluded

2  from evidence as irrelevant.

3      This Court previously addressed the clergy-penitent privilege in the context of Bishop

4  Borland's conversation with Mr. LoHolt after he received Mr. Pettit's report of abuse.  There,

5  the Court defined the privilege and the elements that must exist in order to apply it to specific

6  communications:

7      The clergy-penitent privilege, as codified in RCW 5.60.060(3), states:

8          A member of the clergy or a priest shall not, without the consent of
           a person making the confession, be examined as to any confession
9          made to him or her in his or her professional character, in the course
           of discipline enjoined by the church to which he or she belongs.
10

11      RCW 5.60.060(3).  For the privilege to apply, communications between the
        penitent and clergy must be: (1) made to an ordained member of the clergy;
        (2) a confession in the course of discipline enjoined by the church; and (3)
12      confidential.  *State v. Martin*, 137 Wn. 2d 774, 791 (1999).  The definition of
        "confession" referred to in RCW 5.60.060(3) is not set forth by statute.
13      Instead, the word "confession" is defined by the church to which the particular
        clergy member belongs.  *Id.* at 787.  The courts prefer a broad interpretation
14      of "confession" so as to avoid the discriminatory application of the statute
        based on differing judicial perceptions of a given church's practices or
15      religious doctrines.  *Id.* at 789.  The privilege is held by the penitent and only
        the penitent can waive it.  *Id.* at 791.  However, the privilege may be vitiated
16      by the presence of a third person during the penitent-clergy communication,
        unless the third person is necessary for the communication or the third person
17      is another member of the clergy.  *Id.* at 787.

18  (Dkt. #88 at 4).

19      On the instant motion, plaintiff does not dispute that Bishop Borland was an ordained

20  member of the LDS Church. Nor is there any dispute that LDS Church clergy can receive

21  confessions and provide spiritual guidance in the course of discipline enjoined by the church that

22  are protected by the clergy-penitent privilege.  However, plaintiff argues that the communication

23

24

25      [2] Defendant alternatively argues that the conversation should be excluded because
    Bishop Borland was precluded from reporting the abuse by the ecclesiastical canons of his
    spiritual office.  However, the Court will not consider that argument as the majority of legal
26  authority in support has been stricken as impermissible overlength briefing.  *See supra* Part A.

ORDER
PAGE – 3

1  at issue was neither a confession nor confidential, and therefore, the clergy-penitent privilege

2  does not apply.  While the Court disagrees that the communication was not privileged, the Court

3  finds that such privilege did not excuse Bishop Borland from his mandatory duty to report, as

4  further discussed below.

5      The Washington Supreme Court has held that both confessions and spiritual counseling

6  are protected under the clergy-penitent privilege, assuming all other elements are met.  *Martin*,

7  137 Wn.2d at 785.  In asserting the clergy-penitent privilege here, defendant argues that Mr.

8  Pettit's conversation is protected because it occurred in connection with pastoral counseling.

9  Mr. Pettit declares that:

10      3.  When my son . . . was approximately 13 years of age, he told me that he
    had been touched inappropriately on a Scout outing by Jack LoHolt, a
11      member of the Kent 2nd Ward who served in a Scouting capacity.

12      4.  After [my son] told me of the inappropriate touching, I went to talk with
    the man who was Bishop of the Kent 2nd Ward at that time, Randall Borland,
13      to tell him of LoHolt's actions.  Within a week of our conversation, Bishop
    Borland released LoHolt from his Scouting position.
14
15      5.  Bishop Borland, as my Bishop, was my spiritual advisor.  I sought him out
    for the purposes of spiritual counseling and guidance.  I was not sure how to
16      respond to my son's report of LoHolt's actions.  I also hoped the Bishop
    might do something regarding LoHolt's involvement in Scouting, which the
    Bishop did.
17
18      6.  When I talked to Bishop Borland I expected that my conversation with him
    would be confidential.  I believed that Bishop Borland was bound by the
19      clergy privilege, and that he could not share what I told him with anyone else
    without my permission.
20      7.  I did not expect Bishop Borland to call Child Protective Services or the
    police department to report what Jack LoHolt had done.  If I thought that was
21      necessary or appropriate, I would have done it myself.

22  (Dkt. #142).

23      Plaintiff argues that Mr. Pettit's declaration contradicts his earlier testimony, which made

24  clear that Mr. Pettit did not go to Bishop Borland for a confessional purpose.  Previously, at

25  deposition, Mr. Pettit testified that he was not going to Bishop Borland for the purpose of

26  confessing any sin, but to inform him about Mr. LoHolt's abuse:

ORDER
PAGE – 4

1    Q. (By Mr. Kosnoff) When you went to Bishop Borland, you were not going
     to him for purposes of confessing your sin, were you?

2

3    A.  No.

     Q.  And you would hope that he would – that – strike that.  What was your
4    reason for going to Bishop Borland?

5    A.  To inform him of the situation.

6    Q.  And was it your hope or intention that Bishop Borland would use this
     information and take some kind of concrete action with respect to Jack
7    LoHolt?

8    A.  Yes.

9    Q.  And what was your – what did you hope that he would do?

10   A.  Correct it.

11   Q.  What did Bishop Borland say to you?

12   A.  I don't remember.

13   Q.  Did he tell you that he would do something about Jack?

14   A.  Yes.

15   Q.  And did you trust that the matter would be handled?

16   A.  Yes.

17   Q.  Was it handled?

18   A.  Yes.

19   (Dkt. #158, Ex. A).

20        First, the Court agrees with defendant that Mr. Pettit's subsequent declaration does not

21   conflict with that testimony.  Instead, the Court finds that Mr. Pettit's declaration further

22   explains his purpose in seeking out Bishop Borland.  While Mr. Pettit admits both at deposition

23   and in his declaration that he hoped Bishop Borland would take some action with respect to Mr.

24   LoHolt, nothing at deposition suggests that it was Mr. Pettit's only purpose.  Instead, it appears

25   that plaintiff's counsel simply chose not to ask Mr. Pettit whether he sought advice or pastoral

26   care at the same time, or ask any other follow up questions about the purpose of his

ORDER
PAGE – 5

1  communication.  In addition, Bishop Borland confirms that he received Mr. Pettit's

2  communication in connection with pastoral counseling within the Church.[3]  (Dkt. #144, Borland

3  Dep. at 57).

4      Second, the Court finds plaintiff's reading of the clergy-penitent privilege too narrow.

5  Plaintiff asserts that, in order to be considered privileged, spiritual counseling must be given in

6  the "course of discipline enjoined by the church," and that equates to teaching the communicant

7  the error of his ways, teaching the penitent the right way, pointing the way toward faith, hope

8  and consolation, and leading the penitent to seek atonement, none of which occurred here.

9  Plaintiff relies on the Washington Court of Appeals' decision in *State v. Martin*, 91 Wn. App.

10  621, 629-30 (1998) in support of that definition.  However, in affirming that decision, the

11  Washington Supreme Court made clear that the "course of discipline" language requires only

12  that the clergy member "be enjoined by the practices or rules of the clergy member's religion to

13  receive confidential communication and to provide spiritual counsel."  *Martin*, 137 Wn.2d at

14  789.  The court further made clear that the term confession should be construed in the broadest

15  sense, and such construction should be made by the church of which the clergy is a member.  *Id.*

16  at 786-87.  Further, the Washington Court of Appeals had cited approvingly to several cases

17  from other jurisdictions that applied the privilege to communications in which the communicant

18  did not seek atonement or admit wrongdoing.  *Martin*, 91 Wn. App. at 628 n.3.  Thus, the

19  Court agrees with defendant that Mr. Pettit's communication was a "a confession in the course

20  of discipline enjoined by the church" for purposes of this motion.

21      With respect to the statute's confidentiality requirement, Bishop Borland makes clear that

22  the tenets of his faith require him to remain silent regarding the conversation with Mr. Pettit.

23  Further, the LDS Church Handbook explicitly states that "leaders must keep confidences about

24  _____

25  [3] The Court notes that at the time Bishop Borland testified, Mr. Pettit had not yet waived
his privilege and questions were asked in hypothetical terms.  Bishop Borland later confirmed
26  that he received the communication he had been referring to at deposition from Mr. Pettit.

ORDER
PAGE – 6

1   matters discussed when interviewing and counseling." Indeed, Bishop Borland has testified that

2   prior to Mr. Pettit waiving privilege, Bishop Borland maintained the confidentiality of their

3   conversation, and never revealed it to anyone, including Mr. LoHolt.  Moreover, even if Bishop

4   Borland had revealed the source of the report when confronting Mr. LoHolt, the Court notes

5   that the privilege is not his to waive, and there is no evidence that Mr. Pettit waived the privilege

6   prior to his deposition in December 2005.  Accordingly, the Court finds that the conversation

7   between Bishop Borland and Mr. Pettit was confidential within the meaning of the statute.

8           However, regardless of whether the communication was subject to the clergy-penitent

9   privileged, defendant's argument reveals a fundamental misunderstanding as to who the privilege

10  is designed to protect.  The privilege, as courts have noted:

11          recognizes the human need to disclose to a spiritual counselor, in total and absolute
            confidence, what are believed to be flawed acts or thoughts and to receive priestly
12          consolation and guidance in return....[T]he privilege is a legislative response to the
            urgent need of people to confide in, without fear of reprisal, those entrusted with the
13          pressing task of offering spiritual guidance so that harmony with one's self and others
            can be realized. Thus, the privilege exists because of a belief that people should be
14          encouraged to discuss their flawed acts with individuals who, within the spiritual
            traditions and doctrines of their faith, are qualified and capable of encouraging the
15          communicants to abandon and perhaps make amends for wrongful and destructive
            behavior.

16
    *Waters v. O'Connor*, 103 P.3d 292, 296 (Ariz. Ct. App. 2005) (internal citations and quotations
17
    omitted).  Thus, while the privilege may have protected Bishop Borland from being examined as
18
    to anything specific Mr. Pettit confided, it does not excuse Bishop Borland from his mandatory
19
    duty to report Mr. LoHolt's abuse.  That is because Bishop Borland could have reported to law
20
    enforcement authorities that he had knowledge Mr. LoHolt was abusing children in the church
21
    without violating Mr. Pettit's privilege.  He could have simply reported that he had knowledge
22
    of the abuse without revealing the name of the child or the person who reported it, or even that
23
    he had actually received a report of abuse.  *See State v. Motherwell*, 114 Wn.2d 353, 366 (1990)
24
    (emphasizing that the statute simply requires reporting, and does not require an individual to
25
    take any other steps to prevent the abuse).  Indeed, this is apparently what Bishop Borland did
26

ORDER
PAGE – 7

1  by confronting Mr. LoHolt after receiving Mr. Pettit's report.  If Bishop Borland was able to

2  confront Mr. LoHolt without violating the privilege, as he asserts he did, he certainly could have

3  contacted the appropriate law enforcement authorities in the same manner.

4        Accordingly, the Court declines to preclude evidence of Mr. Pettit's conversation with

5  Bishop Borland on the basis of clergy-penitent privilege.

6                                **III.  CONCLUSION**

7        Having reviewed defendant's motion, plaintiff's opposition, defendant's reply, the

8  declarations and exhibits in support of those briefs, and the remainder of the record, the Court

9  hereby finds and ORDERS:

10        (1)  Defendant's Motion In Limine to Exclude Clergy-Penitent Communication (Dkt.

11  #141) is DENIED.

12        (2)  The Clerk shall send a copy of this Order to all counsel of record.

13        DATED this 14th day of September, 2006.

14

15

16                                RICARDO S. MARTINEZ
                                 UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE – 8