The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KENNETH FLEMING, JOHN DOE, R.K., and T.D., <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/d/a "MORMON CHURCH"; LDS SOCIAL SERVICES a/d/a LDS FAMILY SERVICES, a Utah corporation, <br><br> Defendants. | NO. 04-2338 RSM <br><br> **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE** |

## I.  ARGUMENT

**A.  This Court Should Exclude All Evidence Regarding Loholt After January 1973.**

   **1.  Plaintiff's Testimony Cannot be Read as Plaintiff Now Proposes.**

COP's opening motion argued that evidence regarding Loholt after January 1973 should be excluded because (1) Plaintiff testified that he was abused by Loholt while Loholt was living in the Allenbach residence; and (2) Loholt moved out of the residence in January 1973. Plaintiff now argues, however, that he never testified that the abuse occurred when Loholt was "residing" in the apartment. This argument is strained, at best, and is inconsistent with a fair reading of

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE - 1
No. 04-2338 RSM

**GORDON MURRAY TILDEN LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

Plaintiff's testimony. Plaintiff testified, "All the abuse occurred in his apartment." Kelly Dep. at 19:4-15. Even more specifically, Plaintiff testified:

> Q. And according to the incidents that you relate that followed after that, you apparently continued to go back to the apartment where Mr. Loholt was living, though; is that correct?
>
> A. That's correct.

Kelly Dep. at 26:4-11 (emphasis added). *See also, Id.* at 26:18-20; 75:11-17.

Moreover, Plaintiff's mother testified that Mr. Loholt was living at the Allenbach residence when the abuse occurred. Dorothy Kelly Dep. at 33-34.

> Q. Now, let me ask you this: Do you know at this time when this incident occurred, were you aware as to whether or not Jack Loholt was living in the Allenbach house?
>
> A. Yes. He lived in the mother-in-law apartment.

Dorothy Kelly Dep. at 34:16-19. Since Mr. Loholt's abuse of Plaintiff occurred over a period of months, not years, the abuse could not have occurred in 1973-74. R.K. Dep. at 19:24; 23:11.

### 2. Loholt's Testimony Regarding His Abuse of R.A. Does Not Support Plaintiff's Argument.

Plaintiff argues that because Mr. Loholt abused Plaintiff and R.A. at the same time, and Mr. Loholt abused R.A. after receiving counseling at LDS Social Services, some of Mr. Loholt's abuse of Plaintiff must have occurred after Loholt went to LDSSS. However, that conclusion would follow from the premises only if Mr. Loholt's first instance of abuse of R.A. followed Mr. Loholt's counseling at LDSSS. But, this is not true—R.A. was one of his *first* victims. Loholt Dep. at 96:1-6. Thus, Mr. Loholt abused R.A. before and after counseling at LDSSS. The fact

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE - 2
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

that Plaintiff and R.A. were abused during the same period of time is thus meaningless, and does not suggest Plaintiff's abuse followed Mr. Loholt's treatment at LDSSS.[1]

### 3. COP's Motion to Exclude Reference to LDS Social Services Should Be Granted.

Plaintiff's argument for allowing the introduction of evidence regarding LDS Social Services is based on a selective and misleading portion of Loholt's testimony. Loholt plainly states, in three separate places, that he cannot remember when he was counseled by LDS Social Services. Loholt Dep. at 138:12; 146:15; 146:24-25. Hence, Mr. Loholt's testimony does not make it more probable than not that LDSSS counseled Loholt prior to his abuse of Plaintiff.

### B. Plaintiff Does Not Rebut COP's Argument that the Term Allenbach "Compound" Should be Excluded Under FRE 403.

Plaintiff claims that calling the Allenbach property a compound "does not unfairly prejudice COP despite whatever negative modern-day connotations" are associated with the word. However, it is exactly these "negative modern-day connotations" that are the basis of the motion. Plaintiff does not dispute that the term compound is loaded, or that it is commonly used in the media to describe the base of operations of violent, fringe groups in society. COP's FRE 403 motion should thus be granted.

As to Plaintiff's claim that the Allenbach property actually was a "compound," none of the evidence cited by Plaintiff addresses the condition of the Allenbach property at the time Mr. Loholt abused Plaintiff. The only one who did that was Mr. Loholt, and he testified that there were no other buildings besides the main home on the property at that time. Loholt Dep. at

---

[1] Plaintiff also states that Loholt abused Plaintiff and R.A. simultaneously. Second Rosenberger Declaration, Ex. 1 at 6:5-15. Given that R.A. was one of Loholt's first victims, there is no basis for concluding such abuse followed Loholt's treatment at LDSSS.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE - 3
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

86:15-87:3, Loholt Dep. at 90:18-91:4. Subsequent alterations to the property after Plaintiff was abused by Loholt are irrelevant.

### C. The Court Should Grant COP's Motions Regarding Church Doctrine.

COP filed three separate motions on the subject of church doctrine. Plaintiff's response does not correspond to the motions numbered 10 through 12 in COP's opening brief. The discussion below follows COP's original motions.

#### 10. COP's Motion to Exclude References to or Interpretation of Church Doctrine Should be Granted.

Plaintiff appears not to take issue with the overwhelming majority of this motion. Plaintiff addresses only item G on page 14 of COP's motion, which seeks to exclude the Church's General Handbook of Instructions.

The Handbook is, indeed, an official church publication, but Plaintiff apparently seeks to put to use the Handbook for impermissible purposes.[2] Plaintiff argues that the Handbook, and other documents, are admissible "as bearing upon the issues of special relationship, foreseeability, . . . and the reasonableness of Defendant's conduct." Plaintiff's Opp. at 8. It is impermissible to utilize church doctrine and organization to establish secular duties or to prove breach of such duties (i.e., negligence) because such uses would foster excessive entanglement with religion. *See, e.g., Schmidt v. Bishop*, 779 F. Supp. 329, 328 (S.D.N.Y. 1991). At minimum, the motion should be granted as to all evidence other than the Handbook that Plaintiff seeks to introduce to contradict the Church's interpretation of its own doctrine, including the meaning of the title "high priest."

---

[2] COP cannot cite the specific Handbook provisions in question because, despite requests from COP counsel, Plaintiff had not produced his proposed exhibits.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE - 4
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### 11. The Court Should Exclude the Encyclopedia of Mormonism.

The Encyclopedia of Mormonism is hearsay because it is not an official publication of the Church, and the preface so indicates: "[the authors'] statements and opinions remain their own. The Encyclopedia of Mormonism . . . and the contents do not necessarily represent the official position of The Church of Jesus Christ of Latter-Day Saints." Dkt. #171, Ex. 2.

Moreover, Plaintiff fails to rebut COP's argument that such a document cannot be used to contradict the official position of the church. Bishop Borland will testify at trial regarding matters such as the organization of the church, the duties of the Bishop and the meaning of the phrase "high priest." The church's view on such subjects, as offered by Bishop Borland, cannot be contradicted by extrinsic evidence as that would force the jury to decide between Bishop Borland or the Encyclopedia regarding matters of Church policy and doctrine.

### 12. Motion to Exclude Mrs. Kelly's Testimony.

Plaintiff presents no opposition to this motion. It should be granted.

### D. The Motion to Exclude Prior Deposition Testimony Should be Granted.

COP moved to exclude the deposition testimony of Harold Brown and Dwayne Liddell from the 1998 case of *Scott v. COP*, which was litigated in Oregon. That motion should be granted because Plaintiff concedes he will not offer such testimony. Plaintiff, however, identifies a new deponent from the *Scott* case, Dr. Lloyd Hale, whose testimony he seeks to offer. This testimony should be excluded. Plaintiff's new disclosure is untimely and Plaintiff does not meet his burden of showing "substantial similarity" between this case and *Scott*.

Plaintiff did not disclose his intent to use Dr. Hale's testimony until Plaintiff filed his opposition to the motion in limine. Plaintiff's Pretrial Statement was served upon defense counsel on August 21 and, even at that late date, Dr. Hale was not identified as a witness.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE - 5
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Rosenberger Decl. Exhibit 2. Pursuant to CR 16 (h), Plaintiff was required to list all witnesses and exhibits. CR 16(n)(1) provides that "the provisions of this rule will be strictly enforced. Sanctions and penalties for failure to comply are set forth in GR 3 . . ." GR 3(a), in turn, provides that the Court may exclude testimony not disclosed pursuant to the rule.

Moreover, Plaintiff still has not shown "substantial similarity" of issues. The testimony cited by Plaintiff provides the witness with a hypothetical, but does not include the critical fact that gave rise to the clergy-penitent motion in this case: whether the member in this case (Richard Pettit) was seeking spiritual counsel. More generally, Plaintiff fails to present any evidence that the specific issues in the *Scott* case were similar. Plaintiff has the burden of proof on this issue, and has failed to meet it. *Hub v. Sun Valley*, 682 F.2d 776, 778 (9th Cir. 1982) ("*Hub* failed to show that the deposition relates to issues common to both lawsuits.").

Finally, Dr. Hale's testimony relates solely to the question of whether the communication from Richard Pettit to Bishop Borland was privileged. This Court has now resolved that issue, and Dr. Hale's testimony is irrelevant.

DATED this 15th day of September, 2006.

GORDON MURRAY TILDEN LLP

By /s/ Michael Rosenberger
Charles C. Gordon, WSBA #1773
Jeffrey I. Tilden, WSBA #12219
Michael Rosenberger, WSBA #17730
Attorneys for Defendant The Corporation of the President of The Church of Jesus Christ of Latter-Day Saints

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS IN LIMINE - 6
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292