The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

R.K.,

    Plaintiff,

    v.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole, a/k/a "MORMON CHURCH"; LDS
SOCIAL SERVICES a/k/a LDS, a Utah
corporation,

    Defendants.

NO.  04-2338 RSM

DEFENDANT'S TRIAL BRIEF

## I.    INTRODUCTION

In order to prevail at trial, Plaintiff must prove that Mr. Loholt abused him in the time between February 1972 and January 1973.  February 1972 is when the Church, through Bishop Borland, received information concerning Mr. Loholt's potential sexual abuse of SP.  The later date, January 1973, was when Mr. Loholt moved out of the Allenbach residence.  The parties have admitted the abuse occurred while Mr. Loholt was living in the Allenbach's downstairs apartment.  Admitted Facts, ¶¶ 2-3.  As a factual matter, Plaintiff cannot prove the abuse occurred during this period.

DEFENDANT'S TRIAL BRIEF - 1
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

apartment. Admitted Facts, ¶¶ 2-3. As a factual matter, Plaintiff cannot prove the abuse occurred during this period.

As a legal matter, this Court should dismiss Plaintiff's claim to the extent it is based on Bishop Borland's non-report. Plaintiff alleged in the complaint that the abuse occurred in "approximately 1970-1971." This is a judicial admission binding upon Plaintiff. Dismissal is required because the abuse occurred prior to the Church having received notice of the risk posed by Mr. Loholt.

This Court should also dismiss Plaintiff's claim that COP is liable for Dr. Allenbach's failure to disclose Mr. Loholt's abuse of Plaintiff to the police when informed of such by Plaintiff's parents. This claim cannot succeed, and COP will move for directed verdict on it at the end of Plaintiff's case, because there is no evidence Dr. Allenbach was COP's agent or acting within the scope of any authority granted to him by the church. During 1972, the only time period of relevance, Dr. Allenbach was not a member of the clergy (*i.e.*, he was not a bishop, the lowest level of clergy in the Church) and he was not even a counselor. At most, Dr. Allenbach taught Sunday school, and advised teenage boys, but such voluntary participation in the ecclesiastical life of the ward did not make him the church's agent, and even if it did, information he received outside these roles was outside the scope of his authority as the Church's agent. Any negligence of Dr. Allenbach is not imputable to the Church.

COP also respectfully suggests that Plaintiff's claim regarding the negligence of Bishop Borland should not even be presented to the jury because the communication from Richard Pettit is subject to the clergy-penitent privilege and therefore inadmissible. In its Order denying COP's in limine motion to exclude this conversation, the Court recognized the privileged status of the

DEFENDANT'S TRIAL BRIEF - 2
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

communication but held that Bishop Borland could have disclosed Mr. Loholt's name to law

enforcement authorities. COP respectfully urges that this ruling is incorrect because (1) the

Court's ruling cannot be harmonized with the reporting statute because the statute required

Bishop Borland to report information the Court itself found was privileged; (2) the Court

incorrectly parsed the privilege to protect some information but not other information; and (3)

under the Court's holding, the reporting statute violated the First Amendment by requiring

Bishop Borland to choose between compliance with the statutory command and adherence to his

duties as a bishop within the Church.

## II.     ARGUMENT

### A.     Plaintiff's Allegations in the Complaint are Judicial Admissions that Require Dismissal of his Claim Based on Bishop Borland's Failure to Report.

In his Complaint, Plaintiff alleged that "in approximately 1970-1971, Loholt masturbated

and ejaculated in front of boys. R.K.'s parents later complained to Dr. Allenbach." Amended

Complaint, ¶ 3.7 (emphasis added). All abuse occurred over a period of several months. Pretrial

Order, Admitted Facts, ¶ 3. Thus, Plaintiff's allegation in his Complaint is a judicial admission

that the abuse occurred prior to February 1972, the Church's first notice regarding Mr. Loholt.

COP did not owe Plaintiff any duty until it acquired notice regarding Loholt. Thus, Plaintiff's

own allegation requires that this Court dismiss the portion of his claim based on Bishop

Borland's non-report.

Plaintiff should not get to the jury based on his later-adopted position that the abuse

occurred sometime after February 1972. As the Seventh Circuit stated:

> The Soo has fallen victim to the well-settled rule that a party is
> bound by what it states in its pleadings. "Judicial admissions are
> formal concessions in the pleadings, or stipulations by a party or its
> counsel, that are binding upon the party making them." A plaintiff

DEFENDANT'S TRIAL BRIEF - 3
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> can "plead himself out of the Court by alleging facts which show
> that he has no claim, even though he was not required to allege
> those facts." We have applied this rule on numerous occasions in
> the past, and although the rule smacks of legalism, <u>judicial
> efficiency demands that a party not be allowed to controvert what
> it is already unequivocally told the court by the most formal and
> considered means possible</u>.

*Soo Line Railroad Company v. St. Louis Southwestern Railway Company*, 125 F.3d 481, 483 (7th Cir. 1997) (emphasis added) (citations omitted). The Ninth Circuit cited this case approvingly in *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989-89 (9th Cir. 2001).

Taking Plaintiff's allegation as a judicial admission, the sexual abuse preceded any notice to Bishop Borland. Plaintiff's claim based on Bishop Borland's failure to report should thus be dismissed.

**B.      COP is Not Vicariously Liable for Loholt's Actions.**

Plaintiff's contentions in the Pretrial Order include the allegation that Mr. Loholt was the Church's agent. Plaintiff's Contentions ¶ 4. COP is entitled to dismissal of any claim based upon Loholt's agency.

The Washington Supreme Court held as a matter of law that an employer cannot be held liable for employee's sexual misconduct.

> As stated, "[v]icarious liability for intentional or criminal actions
> of employees would be incompatible with recent Washington cases
> rejecting vicarious liability for sexual assault, *even in cases
> involving recognized protective special relationships*." *C.J.C.'s*
> argument that the Priests were, from his perspective, acting within
> the scope of their authority does not persuade us to establish a
> contrary rule. Our Courts have never before adopted such an
> approach in the present context and we decline to do so now.

*C.J.C. v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 718-719 (1999).

Hence, COP is not liable for Loholt's abuse of Plaintiff.

**C.    Dr. Allenbach's Knowledge and Inaction Cannot be Imputed to the Church.**

Plaintiff's parents told Dr. Allenbach of an instance of Loholt's abuse of Plaintiff and one of Dr. Allenbach's sons. As an oral surgeon and hence "practitioner" within the language of the reporting statute, Dr. Allenbach had a mandatory duty to report when he had reasonable cause to believe a child had experience sexual abuse. Plaintiff alleges that Dr. Allenbach was an agent of the Church, Plaintiff's Contentions, ¶ 6, and thus seeks to impose liability upon the Church for Dr. Allenbach's inaction. As a matter of law, this claim fails.

Unlike a bishop, who has authority over the affairs of the ward, Dr. Allenbach had no such authority. He was simply a member of the Church who advised teenage boys and may have taught Sunday school. To the extent he was an agent of the Church at all, which the Church denies, he received the knowledge of Loholt's abuse outside the scope of his authority. His actions cannot be imputed to the Church.

During the relevant period, Dr. Allenbach served as a "priest quorum advisor," which meant that he advised gatherings of boys 16 to 18 years of age.[1] In the late 1960s, he had taught an adult Sunday school class, and it is currently unclear whether he was still teaching it after 1970. Even if evidence is admitted that he taught Sunday school and served as priest quorum advisor, and that such volunteer activity made Dr. Allenbach an agent when teaching Sunday school or chaperoning teenage boys, he was not acting in such a role when told by Plaintiff's parents (or his son) about the abuse.

The doctrine of *respondeat superior* provides for liability of an employer or principal where acts of a servant or agent are committed "within the scope and course of his employment."

---

[1]. As reflected in the Admitted Facts in the Pretrial Order, "16-18 year old boys hold the title of 'priest.'" Agreed Facts, ¶ 8.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

*Dickenson v. Edwards*, 105 Wn.2d 457, 466 (1986). The issue arises most commonly in connection with employment, but the principle is the same for an agency relationship outside of the employment context. The test for whether an individual is working within his scope of authority is whether he is performing duties assigned to him by the principal or whether he was engaged at the time of the incident in furtherance of the principal's interest. *Dickenson*, 105 Wn.2d at 467. "In following this test we have emphasized the importance of the benefit to the employer in the determination of the scope of employment." *Id.*

Dr. Allenbach did not receive notice of Mr. Loholt's abuse of Plaintiff while performing any duties assigned to him by the Church, and he was not acting in furtherance of the Church's interests. The information conveyed by Plaintiff's parents: (a) was not conveyed during Sunday school: (b) had nothing to do with Sunday school, of which Plaintiff was not a member since he was not even a member of the Church; (c) had nothing to do with the priest's quorum which, again, Plaintiff did not participate in; and (d) had nothing to do with Dr. Allenbach's participation in those activities. Plaintiff's parents did not come to Dr. Allenbach to report such information because of his role in those activities. Rather, they reported the incident to him because he was their neighbor and Mr. Loholt's landlord. The Church gained no benefit from Dr. Allenbach's renting a room to Mr. Loholt. This was a purely private transaction between Dr. Allenbach and Mr. Loholt.

These circumstances put Dr. Allenbach's action and inaction far outside the scope of any authority. By way of comparison, *Dickenson* notes that "under ordinary circumstances, a workman is not acting in the course of his employment while going to or from work." *Id.* Hence, an employer is not liable for the employee's negligence during such trips, despite the fact

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

that the employer benefits from the employee's travel to work, and that there is some nexus

between such travel and the employee's job. In receiving the information from his neighbors,

Dr. Allenbach actions and inaction were even further removed from being engaged in any

activity beneficial to the Church. Dr. Allenbach was acting solely in the capacity of neighbor to

the Kelly family and landlord of Mr. Loholt.

In sum, even if Dr. Allenbach was an agent for limited purposes, no reasonable juror

could find that in his dealings with Mr. Loholt Dr. Allenbach was acting within the scope of any

authority he had in his limited church volunteer roles. Imputing Dr. Allenbach's negligence to

the Church in such circumstances would be as nonsensical as holding the Church liable if Dr.

Allenbach had negligently caused a motor vehicle accident during a family summer vacation.

His limited volunteer activities on behalf of the Church do not mean that all of his negligent

conduct can be imputed to the Church.

## D. Liability Cannot Be Based on Bishop Borland's Failure to Report Because the Pettit Communication Is Inadmissible.

COP respectfully contends that while the Court's Order on the clergy-penitent motion

correctly held that Pettit communication to Bishop Borland was subject to the clergy-penitent

privilege, it incorrectly held that Bishop Borland was still free to disclose Loholt's identity and

potential sexual abuse to law enforcement authorities.

### 1. The Court's Order is Inconsistent With the Reporting Statute.

The Court's Order denying the in limine motion cannot be reconciled with the reporting

statute. On the one hand, the Court correctly notes that Bishop Borland was precluded from

disclosing key details of the communication from Richard Pettit, including Richard Pettit's name

and the victim, SP. The Court suggests, nevertheless, that Bishop Borland could have complied

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

with the reporting statute by reporting Mr. Loholt's name to law enforcement. However, it was impossible for Bishop Borland to comply with the reporting statute while simultaneously withholding the information which this Court correctly stated he could not disclose.

The Court may have overlooked the fact that the reporting statute specifically required a reporter to identify "the name, address and age of the child; [and] the name and address of the child's parents . . . ." 1971 Washington Laws First Ex. Sess. Ch. 167 § 2 (emphasis added). Thus, the reporting statute required Bishop Borland to report the very information that this Court stated Bishop Borland could not report. Since the privilege precluded Bishop Borland from disclosing the information required in a report to law enforcement, the communication from Richard Pettit is irrelevant.

COP notes the Court's Order adopted an interpretation of the privilege that even Plaintiff did not advocate, and placed on Bishop Borland an extraordinarily difficult task of correctly ascertaining his legal obligation. If Bishop Borland had been familiar with the law and had studied it after receiving the Pettit report, it is unlikely he (or a skilled lawyer, for that matter) would have understood he had a duty to make a report despite the fact that the privilege precluded the disclosure of the victims' name. The Court's Order required Bishop Borland to display remarkable legal insight—one might well say omniscience—by requiring him: (1) to parse the nature of the privilege to determine what was permissible to disclose; and (2) parse the effect of the statute to determine that he had a duty to report even if he could not report the most important fact—the name of the victim.

DEFENDANT'S TRIAL BRIEF - 8
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## 2.    The Clergy-Penitent Privilege Precludes Disclosure of All Information Subject to the Privilege, Not Just Some of It.

The Court's Order states that, on the one hand, Richard Pettit's disclosure of the identity

of a victim's possible sexual abuse cannot be disclosed, but on the other hand the identity of the

abuser is not protected.  Bishop Borland received both pieces of information during a privileged

communication and the privilege applied equally to both.  The Court's Order does not articulate

a basis on which a person duty-bound to hold a conversation confidential can unilaterally

determine which component of the privileged conversation can be disclosed to third parties.  The

Court notes the privilege is intended to protect the holder of the privilege, but this still provides

no basis by which the other party can decide to disclose portions of the privileged

communication.[2]

The clergy-penitent privilege, as all other privileges, protects the contents of the

confidential communications, not merely the source.  *State v. Martin*, 137 Wn.2d 774, 789, 975

P.2d 1020 (1999).  Indeed, in all areas of privilege—*e.g.*, attorney-client, physician-patient,

clergy-penitent—it is the content conveyed in the confidential communication that is protected

from disclosure.[3]

---

[2] Regarding the Court's suggestion in its order that the privilege is intended to protect the holder of the privilege (COP "misunderstand[s] . . . who the privilege is intended to protect", Dkt. 174 at 7), COP notes that Mr. Pettit specifically stated that if he thought it necessary or appropriate to call the police, he would have done it himself. Dkt. No. 142 ¶ 7.  One can readily imagine a protective father not wanting to expose his teenage son to the embarrassment of being questioned by police about an encounter with a person of the same sex, which embarrassment could be exacerbated if it became public knowledge.  Whatever one may think of Mr. Pettit's judgment, he held the privilege and he expected Bishop Borland to keep the discussion strictly private.

[3] *See, e.g., Soter v. Cowles Pub. Co.*, 131 Wn. App. 882, 903, 130 P.3d 840 (2006) ("The [attorney-client] privilege applies to any information generated by a request for legal advice." (emphasis added)); *Randa v. Bear*, 50 Wn.2d 415, 420, 312 P.2d 640 (1957) ("The [physician-patient] privilege applies to all information acquired by the physician for the purpose of enabling him to treat the patient, including that which he learns through observation as well as through communications with him." (emphasis added)); *Seventh Elect Church in Israel v. Rogers*, 34 Wn. App. 91, 94, 660 P.2d 290 (1983) ("The [marital-privilege] statute encompasses two privileges.  The first part covers testimony as to factual matters known to the spouse regardless of how the spouse received the information.  The

DEFENDANT'S TRIAL BRIEF - 9
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

In *Martin*, for example, the clergyman "refused to answer questions regarding the content of those conversations." *Id*. at 782.   The Court held that he was correct to do so and dismissed a contempt order against him. *Id*. at 791.   Thus, the Court knew was forbidden from compelling the disclosure of the content of the communication. Conversely, there is no case law in any area of privileged communications that indicates that the protector of the privilege can maintain his duty of confidentiality while disclosing the content of the communication, even if he does not disclose the source. Again, the law is exactly the opposite.

In the attorney-client context, for example, it is well established that where an attorney knows certain facts only from a confidential communication, he cannot disclose those facts.

> Although attorneys, like all other individuals, must disclose information within
> their knowledge that is relevant to the litigation in which the discovery is sought
> or that will assist in the discovery of other relevant information, the attorney has
> no obligation to—indeed, may not—disclose information that would breach the
> confidentiality that the attorney-client privilege protects. Consequently, whenever
> the attorney lacks personal knowledge of the information sought because the
> client was the source of his knowledge, the attorney should be privileged to refuse
> to supply the information. Although supplying the information may not
> necessarily reveal the confidential source (perhaps because there could logically
> be several sources independent of the client), the knowledge should still be
> privileged because once the information is supplied, its source would be obvious
> when the attorney is asked about the basis of his knowledge and asserts the
> attorney-client privilege. Because the status of the attorney as a potential witness
> to those facts necessarily must be ascertained, questions addressed to basis would
> follow the attorney's answer. Thus, the initial information must be protected.

Paul R. Rice, Attorney-Client Privilege in the United States § 5.14 (1993).[4]

---

second part sets out a separate and distinct privilege relating to confidential communications . . . ." (emphasis
added)).

[4] *See United States v. Rakes*, 136 F.3d 1, 4 n.4 (1st Cir. 1998) ("Where an attorney knows facts only because they
were confidentially communicated by the client, the government cannot circumvent the privilege by asking the
attorney about 'the facts.'"); *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) ("[The privilege]
applies regardless of the manner in which it is sought to put the communications in evidence, whether by direct
examination, cross-examination, or indirectly as by bringing out facts brought to knowledge solely by reason of
confidential communications."); *In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement*

In sum, COP respectfully contends that the Court erred when it stated that Bishop

Borland could report to law enforcement that Mr. Loholt may have committed an act of abuse—

information Bishop Borland obtained solely through a privileged communication. COP knows

of no authority that would allow the protector of the privilege to unilaterally determine which

components of the privileged communication could be disclosed to the police.

### 3. The Reporting Statute Could Not Have Been Applied to Bishop Borland Consistent With the First Amendment.

Bishop Borland testified that the communication from Richard Pettit must remain

confidential "under the doctrine and teachings of [his] Church." Borland Dep. at 57:6-9 (Dkt.

No. 144). Mr. Pettit also believed he spoke in complete confidence. Dkt. No. 142. Church

doctrine, cited in the Court's Order, required Bishop Borland to keep confidences of matters

discussed when counseling. Thus, Bishop Borland's beliefs, and that of his Church, precluded

him from disclosing Mr. Pettit's communication to anyone.

The Court's interpretation of the privilege and the reporting statute thus posed to Bishop

Borland an unconstitutional choice: adhere to the tenants of his faith and keep all matters

disclosed by Richard Pettit confidential, or violate his faith by disclosing some of them.[5] The

Court's Order does not address this constitutional issue. The reporting statute could not be

constitutionally applied to Bishop Borland in this circumstance, and thus he was not obligated to

---

*Accounts) II, L.P. Securities Litigation*, 848 F. Supp. 527, 566-67 (D. Del. 1994) ("[I]f the only reason the attorney has knowledge of the fact is by communications with a client, then the attorney can not be compelled to reveal it absent some exception to the attorney-client privilege. This goes to the heart of the attorney-client privilege."); *Bucks County Bank and Trust Co. v. Storck*, 297 F. Supp. 1122, 1123 (D. Hawaii 1969) (holding that attorney properly refused to answer deposition questions because they sought "to elicit information which Attorney Ahrens could only have known as a result of communications made to him by his client").

[5] The Court's Order makes an unwarranted factual assumption. The Court assumed Bishop Borland disclosed some portion of the Pettit communication when Bishop Borland spoke with Mr. Loholt. We do not know if this is true or not. Bishop Borland may simply have inquired whether Mr. Loholt felt an attraction to boys. This would not have required disclosure of any portion information received from Mr. Pettit.

DEFENDANT'S TRIAL BRIEF - 11
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

report anything spoken by Richard Pettit. This conversation is thus irrelevant and should be excluded.

The First Amendment to the United States Constitution bars government from enacting laws "prohibiting the free exercise" of religion. During the time frame at issue here, all free exercise claims were subject to the exacting compelling interest test articulated in *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963). "Under this test, government actions that substantially burden a religious practice must be justified by a compelling state interest and must be narrowly tailored to achieve that interest." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994).[6]

To show a free exercise violation, a religious adherent must demonstrate that the challenged law imposes a substantial burden on his or her free exercise of religion. A substantial burden exists where government "put[s] substantial pressure on an adherent to modify his behavior and to violate his [religious] beliefs." *Vernon*, 27 F.3d at 1393, quoting *Thomas v. Review Board, Indiana Employment Security Division*, 450 U.S. 707, 717-18, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981). If one assumes the reporting statute applied even to privileged communications, as this Court held, the statute specifically targeted clergy and, as applied to this case, imposed just such a burden. Bishop Borland was in an unenviable position: comply with

---

[6] In 1990, the Supreme Court held that strict scrutiny does not apply in certain free exercise cases, namely, those where the law at issue is religiously neutral and generally applicable. *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). However, the holding in *Smith* is inapplicable here because (1) the compelling interest standard in *Sherbert* governed free exercise claims in 1973 and, (2) in any event, a statute specifically singling out clergy and a small handful of others for reporting duties is not "generally applicable" and thus, even under *Smith*, is still subject to the compelling interest test. *Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 546, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) ("A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny.").

DEFENDANT'S TRIAL BRIEF - 12
No. 04-2338 RSM

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292


## III.   CONCLUSION

For the reasons stated above, COP respectfully requests:  (1) that the claim based upon the non-report by Bishop Borland be dismissed because of Plaintiff's judicial admission that the abuse preceded the Church's first notice of the abuse; (2) that if the claim is not dismissed, that the communication between Bishop Borland and Richard Pettit be excluded; and (3) that, at the close of Plaintiff's case, that directed verdict be granted on Plaintiff's theory that the Church is liable for Dr. Allenbach's failure to protect Plaintiff.

DATED this _27_ day of _September_, 2006.

**GORDON MURRAY TILDEN LLP**

By _____
   Charles C. Gordon, WSBA #1773
   Jeffrey I. Tilden, WSBA #12219
   Michael Rosenberger, WSBA #17730
   Attorneys for Defendant The Corporation of the
   President of The Church of Jesus Christ of
   Latter-Day Saints

DEFENDANT'S TRIAL BRIEF - 14
No. 04-2338 RSM

**GORDON MURRAY TILDEN LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## IV.  CERTIFICATE OF SERVICE

I hereby certify that on _____ 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following.  The parties will additionally be served in the manner indicated.

| | |
|---|---|
| Michael T. Pfau<br>Gordon, Thomas, Honeywell, Malanca,<br>Peterson & Daheim LLP<br>P.O. Box 1157<br>Tacoma, WA 98401-1157<br>Telephone:    (206) 676-7500<br>Facsimile:    (206) 676-7575<br>E-Mail:    mpfau@gth-law.com<br><br>(  ) Mail    (  ) Hand Delivery<br>(  ) Fax    (  ) Federal Express | Timothy D. Kosnoff<br>Law Offices of Timothy D. Kosnoff, P.C.<br>600 University Street, Suite 2101<br>Seattle, WA 98101<br>Telephone:    (206) 676-7610<br>Facsimile:    (425) 837-9692<br>E-Mail:    timkosnoff@comcast.net<br><br>(  ) Mail    (  ) Hand Delivery<br>(  ) Fax    (  ) Federal Express |

### GORDON MURRAY TILDEN LLP

By_____
Jeffrey I. Tilden, WSBA #12219
Attorneys for Defendant The Corporation of the
President of The Church of Jesus Christ of
Latter-Day Saints
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: jtilden@gmtlaw.com